# Plaintiffs' Exhibit 12
# Civ. No. 02-0265 (CKK)



United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

December 21, 2005

The Honorable Ed Whitfield
U.S. House of Representatives
301 Cannon House Office Building
Washington, D.C. 20515

Dear Congressman Whitfield:

Thank you for your letter to Secretary of Agriculture Mike Johanns dated December 7, 2005, raising questions regarding steps the Department of Agriculture (USDA) may take after enactment of section 794 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006 (2006 Act), Public Law 109-97, signed by the President on November 10, 2005.

Section 794 provides that, effective 120 days after the date of enactment, no funds made available by the 2006 Act may be used to pay the salaries and expenses of personnel to inspect horses under section 3 of the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 603, or under guidelines issued by USDA pursuant to section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (FAIR Act), 7 U.S.C. § 1901 note. As enacted, section 794 prohibits the use of appropriated funds to pay the salaries and expenses of USDA employees to perform inspections of horses under either section 3 of the FMIA or the guidelines issued under section 903 of the FAIR Act. Therefore, barring further amendment, the prohibition effected by section 794 will become effective 120 days after the date of enactment of the 2006 Act, *i.e.*, on March 10, 2006.

Your letter indicates your view that the Congress, in enacting section 794 of the Act, intended to "prevent horse slaughter for human consumption during FY 2006." In fact, section 794 does not prevent horse slaughter at all. It merely prohibits expenditure of funds provided under the 2006 Act to pay the salaries and expenses of personnel to inspect horses under section 3 of the FMIA, *i.e.*, to conduct ante-mortem inspection of horses presented for slaughter. Importantly, section 794 did not prohibit inspections under section 4 of the FMIA, 21 U.S.C. § 604, under which USDA is required to provide post-mortem inspection of eligible species presented for slaughter thereunder.

It is also important to note that language contained in the statement of managers on the 2006 Act indicates the Congress clearly understands that USDA is required to provide for the inspection of meat intended for human consumption:

> It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported). The conferees recognize that the funding

The Honorable Ed Whitfield
Page 2

> limitation in Section 794 prohibits the use of appropriated funds *only* for payment of salaries and expenses of personnel to inspect horses.

H. Rept. No. 109-255, p. 107. (Emphasis added.) Nonetheless, assuming section 794 becomes effective as scheduled on March 10, 2006, USDA will in fact comply with the prohibition it levies.

Under the Agricultural Marketing Act of 1946, 7 U.S.C. § 1621 *et seq.* (AMA), however, USDA is also "directed and authorized" to provide, when requested, inspection of eligible species on a fee-for-service basis. *See* 7 U.S.C. § 1622(h). Such fee-for-service inspections have long been provided by FSIS inspection personnel for other species not eligible for inspection under the FMIA. Of course, the 2006 Act did nothing to alter or prohibit USDA's provision of inspection services under the AMA. Therefore, notwithstanding the prohibition on expenditure of funds contained in section 794 of the 2006 Act, USDA is authorized to provide fee-for-service inspection of horses presented for slaughter if such inspection service is requested. In fact, USDA has received and is considering such a request.

I hope that this explanation is sufficient to respond to your inquiry. Similar letters are also being sent to Senator Robert C. Byrd and to Congressmen John M. Spratt, Jr., and John E. Sweeney.

Sincerely,

James Michael Kelly
Acting General Counsel