# Plaintiffs' Exhibit 17
# Civ. No. 02-0265 (CKK)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, ET AL.,<br><br>Plaintiffs,<br>v.<br><br>MIKE JOHANNS, ET AL.<br><br>Defendants. | Civ. No. 1:06CV00265 (CKK) |

## DECLARATION OF GAIL VACCA

I, GAIL VACCA, declare as follows:

1. I am a plaintiff in the above-entitled action.

2. I was a resident of DeKalb, Illinois from 1999 to 2005. My residence and business were previously located at 16217 State Route 23, approximately two miles from the Cavel International horse slaughtering plant.

3. I formerly operated a twenty acre horse farm called "Top of the Hill" that housed and rehabilitated race horses in the city of DeKalb, Illinois. When Cavel reopened for horse slaughtering in June 2004, my business began to decline, and over half of my farm's available stalls remained unoccupied for an eighteen month period. Because of the stigma that was attached to a town with a horse slaughter plant, clients were fearful of housing their horses at my facility. My clients feared that their horses would be stolen and taken to the nearby plant to be slaughtered, and for this reason decided to house their horses elsewhere.

4. While I lived in DeKalb, I was unable to enjoy going outside on my property, because I was so disturbed by the sight of the double-decker trucks driving by that were full of horses being taken to the slaughterhouse. Because of my love of horses, the sight of the trucks

carrying so many beautiful horses to slaughter made me sick and kept me up at night thinking about it.

5. The horses at my farm would not leave the periphery of the barn area on days they could sense and hear the slaughter. The horses were nervous, uncomfortable, and ill at ease with their surroundings and would be unwilling to venture out into their pasture. It was upsetting to see my horses stressed by their environment, and I often had to put them back into the barn, resulting in additional work and anxiety.

6. I was also constantly afraid to leave the farm after Cavel reopened. I was fearful that the horses would be stolen for slaughter. I would only leave the farm for short periods of time to run basic errands, and only if someone else was able to stay behind at the farm. For eighteen months, my life was filled with constant stress and apprehension.

7. I love the community of DeKalb, and although I now reside in Wilmington, Illinois, I would move back to DeKalb if it was not for the operation of the Cavel International plant. My suppliers are still in DeKalb, and I frequently make the hour and a half drive back to DeKalb to do business with those suppliers. If Cavel were no longer in operation, I could move back to DeKalb and lease the property I previously leased or any of the other pasture properties that are currently available for lease in DeKalb. Because of the stigma of operating a horse farm in the same town as a horse slaughter plant, I am prevented from living and operating my business in my preferred community.

8. I am also the Illinois Coordinator for the National Horse Protection Coalition and desire to obtain advance notice from USDA concerning the fee-for-service horse inspection program, so I can use that advance notice to participate in and comment on any rulemaking

process concerning the program. I also wish that my comments be considered by the USDA before the Final Rule is issued.

9. My interest in moving back to DeKalb, Illinois and pursuing my business there has been injured by USDA's decision to provide for a voluntary fee-for-service program for establishments that slaughter horses, because this program will allow the Cavel International slaughterhouse to remain in operation. As a result of this program, Cavel's operations will continue to adversely affect my ability to live and operate a business in the location of my choice.

10. Because USDA has issued its fee-for-service program without complying with the notice and comment requirements of the Administrative Procedure Act or with the National Environmental Policy Act, the USDA has also deprived me of my right to the public comment process, as well as the information that would be developed through the preparation of an adequate National Environmental Policy Act document concerning the environmental impacts and consequences of horse slaughter.

11. These harms would be eliminated if the Court were to declare that the USDA's decision to implement fee-for-service horse inspection unlawful and order USDA not to inspect horses for human consumption, as directed by Congress.

Pursuant to 28 U.S.C. § 1746, I declare, under penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

*Gail Vacca*

Dated: February 20, 2006