IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY<br>OF THE UNITED STATES, et al.<br><br>Plaintiffs,<br><br>MIKE JOHANNS, et al.<br><br>Defendants. | )<br>)<br>)<br>)    Civ. No. 1:06cv00265 (CKK)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO INTERVENE
## AS DEFENDANTS

NOW COMES Beltex Corporation ("Beltex"), Cavel International, Inc. ("Cavel"), and Dallas Crown, Inc. ("Dallas Crown") and move this Court, pursuant to Rule 24(a)(2), Fed. R. Civ. P., for an order granting them permission to intervene as Defendants in this action as of right for the reasons that they have an interest relating to the property which is the subject of the action, the disposition of the action could as a practical matter impair or impede movants' ability to protect that interest, and movants' interests are not adequately represented by existing parties. A Memorandum in support of this Motion is attached hereto and incorporated herein.

Pursuant to LCvR 7(m), we notified counsel for all parties of our intention to file this Motion to Intervene and to oppose the Plaintiffs' Motion for a Temporary Restraining Order and for a Preliminary Injunction filed on February 22, 2006 ("Plaintiffs' Motion"). Counsel for the Plaintiffs has authorized us to state that Plaintiffs take no position on the Motion to Intervene. Counsel for the Government Defendants has authorized us to say that the Government takes no position on the Motion to Intervene.

We have been advised by counsel for the other parties that the Government will file a motion in opposition to Plaintiffs' Motion on Monday, February 27, 2006 and Plaintiffs will file

a reply on Wednesday, March 1, 2006. Consistent with that schedule, Applicant Defendant-Intervenors will file their opposition to Plaintiff's Motion on Monday, February 27, 2006.

A proposed Order is attached.

                                                       Respectfully submitted,

                                      /s/_____
                                      James P. Murphy, Esq. (D.C. Bar No. 380857)
                                      SQUIRE, SANDERS & DEMPSEY L.L.P.
                                      1201 Pennsylvania Ave., N.W.
                                      Suite 500
                                      Washington, DC  20004
                                      Telephone: 202.626.6793
                                      Fax: 202.626.6780

Date: February 24, 2006                    *Attorney for Applicant Defendant-Intervenors*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY<br>OF THE UNITED STATES, et al.<br><br>Plaintiffs,<br><br>MIKE JOHANNS, et al.<br><br>Defendants. | Civ. No. 1:06cv00265 (CKK) |

## MEMORANDUM IN SUPPORT OF
## MOTION TO INTERVENE

I.   INTRODUCTION.

Beltex Corporation ("Beltex"), Cavel International, Inc. ("Cavel"), and Dallas Crown, Inc. ("Dallas Crown") (collectively "the Operators") are the only operators of facilities in the United States that slaughter horses and process horse meat for export to overseas purchasers. Beltex operates a facility located in Fort Worth, Texas. Cavel operates a facility located in DeKalb, Illinois. Dallas Crown operates a facility located in Kaufman, Texas. All three of these companies have been in business for over a decade. Together, they employ more than 200 people. If this Court grants the relief plaintiffs request, the Operators will be unable to obtain inspection of their facilities as required by federal law and, consequently, will be forced to shut down. Indeed, that is the exact purpose of the Complaint filed in this action. By any measure, and as detailed in the Declarations to be filed on February 27, 2006 as part of the Applicant Defendant-Intervenors' opposition to Plaintiffs' Motion for a Temporary Restraining Order and for a Preliminary Injunction ("Plaintiffs' Motion"), the Operators plainly will suffer irreparable harm if this Court grants the requested relief. As described below, the Operators satisfy the requirements for intervention pursuant to Rule 24(a)(2).

II. **INTERVENTION AS OF RIGHT IS APPROPRIATE BECAUSE THE OPERATORS HAVE A DIRECT ECONOMIC INTEREST IN THE OUTCOME OF THIS CASE AND, IF THE COURT GRANTS THE REQUESTED RELIEF, THEY WILL BE IRREPARABLY HARMED.**

Rule 24(a)(2) provides:

> **(a) Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: . . .; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(Emphasis in text).

As this Court recognized in *Southern Utah Wilderness Alliance v. Norton*, No 01-2518, 2002 U.S. Dist. LEXIS 27414 (D.D.C. 2002) (copy attached):

> This Circuit recognizes four requirements for intervention of right: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties. *See Williams & Humbert, Ltd. v. W & H. Trade Marks, Ltd.*, 268 U.S. App. D.C. 192, 840 F.2d 72, 74 (D.C. Cir. 1988); *see also Dimond v. District of Columbia*, 253 U.S. App. D.C. 111, 792 F.2d 179, 192 (D.C. Cir. 1986).

*Id.* at **15-16.

### A. The Motion to Intervene Is Timely.

The Complaint was filed on February 14, 2006, the First Amended Complaint was filed on February 21, 2006 and the Plaintiffs' Motion was filed on February 22, 2006. This Motion is being filed on February 24, 2006, before the Government has filed a motion in opposition to Plaintiffs' Motion and before the Court has heard oral arguments in this case.

### B. The Operators Have a Cognizable Interest in the Outcome of the Case.

It is self-evident that the Operators have a very substantial interest in the outcome of this case. They are the only three operators of facilities that slaughter horses and process horse meat in the United States. Beltex and Dallas Crown operate facilities in Texas. Cavel's facility is

located in DeKalb, Illinois. All three of these companies have been in business for at least a decade. Together, they employ more than 200 people.

If this Court grants the requested relief, the three Operators will be forced to shut their facilities. They have a direct and dramatic interest in the outcome of this action.

### C. The Operators' Interest Will Be Impaired If the Court Grants the Requested Relief.

As stated above, the three Operators will suffer serious irreparable injury if they are forced to close their doors. Economically, they will suffer. Their employees will be out of work. Instead of earning profits, they will lose money. The impairment to their interests is plain.

### D. Lack of Adequate Representation by Existing Parties.

The Operators are confident that the lawyers representing the Government Defendants will represent their interests adequately. But the Government's interests differ from those of the Operators. This precise issue was discussed in *Southern Utah Wilderness Alliance, supra*. There, in a situation where the intervenor's leases with the Department of the Interior would have been rescinded had the plaintiff's request for injunctive relief been granted, this Court stated:

> Finally, Yates Petroleum must demonstrate that its interests will not adequately be represented if it is not allowed to intervene. This requirement requires only a "minimal" showing and is satisfied if the applicant "shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10, 30 L.Ed. 2d 686, 92 S. Ct. 630 (1972). Yates Petroleum contends that Defendants in this action are required to represent the "broad public interest as owners of the public lands and as lessors under the Leases." Yates Petroleum Mem. at 4. Yates Petroleum maintains that as a lessee, it has expended substantial funds in its pursuit of the leases and that Defendants "will not adequately represent the specific interests or economic concerns of Yates Petroleum, a private entity." *Id.* The Court finds that Yates Petroleum has met its minimal burden of demonstrating that its interests may not be satisfactorily represented by Defendants in this action. Accordingly, this Court will grant Yates Petroleum's motion to intervene.

*Id.* at **17-18.

The three Operators, all private entities that have expended substantial funds to ensure and maintain their operations, and who seek to intervene in this action, are in the same position as Yates Petroleum.

III.  **CONCLUSION.**

For the foregoing reasons, Beltex, Cavel and Dallas Crown urge this Court to grant their Motion to Intervene pursuant to Rule 24(a)(2).

                            Respectfully submitted,

                            /s/_____
                            James P. Murphy, Esq. (D.C. Bar No. 380857)
                            SQUIRE, SANDERS & DEMPSEY L.L.P.
                            1201 Pennsylvania Ave., N.W.
                            Suite 500
                            Washington, DC  20004
                            Telephone:  202.626.6793
                            Fax:  202.626.6780

Dated:  February 24, 2006            *Attorney for Applicant Defendant-Intervenors*

LEXSEE 2002 US DIST LEXIS 27414

SOUTHERN UTAH WILDERNESS ALLIANCE, et al., Plaintiffs, v. GALE NORTON, et al., Defendants.

Civil Action No. 01-2518 (CKK)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

2002 U.S. Dist. LEXIS 27414

June 28, 2002, Decided
June 28, 2002, Filed

**DISPOSITION:** [*1] Defendants' motion to transfer the action to the District Court of the District of Utah granted.

**COUNSEL:** For SOUTHERN UTAH WILDERNESS ALLIANCE, NATURAL RESOURCES DEFENSE COUNCIL, INC., Plaintiffs: Sharon Buccino, NATURAL RESOURCES DEFENSE COUNCIL, Washington, DC.

For GALE NORTON, Secretary of Interior, BUREAU OF LAND MANAGEMENT, Defendants: Ann D. Navaro, UNITED STATES DEPARTMENT OF JUSTICE, Environment and Natural Resources, Washington, DC.

For YATES PETROLEUM CORPORATION, Movant: William P. Horn, BIRCH, HORTON, BITTNER & CHEROT, Washington, DC.

**JUDGES:** COLLEEN KOLLAR-KOTELLY, United States District Judge.

**OPINIONBY:** COLLEEN KOLLAR-KOTELLY

**OPINION:**

### MEMORANDUM OPINION

(June 28, 2002)

Presently before this Court is Defendants' Motion to Transfer Venue to the United States District Court for the District of Utah pursuant to *28 U.S.C. § 1404(a)*. Also pending before the Court is Yates Petroleum Corporation's ("Yates Petroleum") unopposed Motion to Intervene as a Defendant, and Notice of Support for Federal Defendants' Motion to Transfer Venue. Plaintiffs, the Southern Utah Wilderness Alliance ("SUWA") and the National Resources Defense Council ("NRDC") (collectively [*2] "Plaintiffs"), brought the present action in order to challenge the sale and issuance of mineral leases for twelve parcels of public land located in southern Utah. Defendants, Gale Norton, the United States Department of the Interior ("DOI"), and the Bureau of Land Management ("BLM") (collectively "Defendants") argue that the action is more appropriately brought in the District of Utah and, accordingly, request that the case be transferred pursuant to *§ 1404(a)*. Yates Petroleum is a company that was awarded two of the challenged leases issued by the Utah BLM and joins in Defendants' request for transfer. Upon consideration of Defendants' motion to transfer venue, memorandum of law, Yates Petroleum's notice of support, Plaintiffs' Opposition thereto, Defendants' reply, and the relevant law, the Court shall grant Defendants' motion to transfer and shall grant Yates Petroleum's motion to intervene.

### I. BACKGROUND

The facts of this case are set out briefly below. Plaintiffs filed the instant action to challenge the sale and issuance of certain oil and gas leases granted by the Utah Bureau of Land Management ("Utah BLM"). On September 6, 2001, the Utah BLM sold oil and gas leases [*3] for sixty-eight parcels of land located in southern Utah. Plaintiffs argue that, in allowing the sales related to twelve of those parcels, the Utah BLM failed to comply with the National Environmental Policy Act ("NEPA") n1, *42 U.S.C. §§ 4332, et seq.* and the National Historic Preservation Act ("NHPA") n2, *16 U.S.C. §§ 470, et seq.* Plaintiffs also allege that the sale and issuance of the challenged leases was arbitrary and capricious, in violation of § 706 of the Administrative Procedures Act ("APA"), *5 U.S.C. § 706*. Plaintiffs seek a remedy of both declaratory and injunctive relief. *See generally* Plaintiffs' Complaint.

n1 NEPA requires a federal agency to prepare an Environmental Impact Statement if the agency proposes to undertake a "major federal action significantly affecting the quality of the human environment." *42 U.S.C. § 4332(2)(C)*.

n2 NHPA directs federal agencies to consider historic resources in carrying out their discretionary activities. *16 U.S.C. §§ 470, et seq*

[*4]

The United States Bureau of Land Management ("BLM") delegates the authority to determine the propriety of all oil and gas lease sales in Utah to the Utah State Director of the Utah BLM. See Declaration of Robert Lopez ("Lopez Decl.") PP4-5, 9, dated January 16, 2002. Utah BLM offered the twelve parcels of public land at issue in this action as part of a quarterly oil and gas lease sale. See *30 U.S.C. § 226(b)(1)* (requiring BLM state offices to conduct quarterly oil and gas lease sales of available public lands). On July 6, 2001, the Utah BLM posted a Notice of Competitive Lease Sale for sixty-eight parcels of public land, including the twelve at issue here. Utah BLM determined that the lease sales fell within the existing NEPA analyses and were proper under local land use plans. Def. Mem. at 4. SUWA objected to the proposed sales and filed a protest with Utah BLM on August 20, 2001. The lease sales occurred on September 6, 2001, and Utah BLM formally denied SUWA's protest on September 17, 2001. Lopez Decl. P7, Attachment A (September 17, 2001 Decision). Defendants assert that "the BLM Washington, D.C. Office did not assist BLM Utah in reviewing SUWA's [*5] protest of the September 6, 2001, lease sale, in deciding to deny SUWA's protest, or in conducting the lease sale and issuing the leases. These decisions were made and actions were taken entirely by the Utah BLM." *Id.* P9. The twelve parcels of land in question are administered by the Utah BLM's Price, Moab and Monticello Field Offices. *Id.* P6.

Defendants argue that transfer is appropriate in this action to the District Court for the District of Utah because 1) the specific lands at issue are located in Utah, 2) the leasing process at issue was undertaken solely in Utah, 3) leasing actions relating to land in Utah are of most direct interest to and most significantly affect the residents of that state, and 4) the convenience of the parties, counsel, and witnesses, should any be required, support transfer of the case. Def. Reply at 2. Plaintiffs contend that this Court should defer to their choice of forum because the issues related to the lands in Southern Utah are of "national interest," Pl. Opp'n at 2-3, and because the Washington, D.C. BLM headquarters "played a major role in determining the fate of Utah's public lands, including those at issue here . . . ." Pl. Opp'n at [*6] 5.

## II. DISCUSSION

*28 U.S.C. § 1404(a)* states that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *28 U.S.C. § 1404(a)*. n3 The Court is afforded broad discretion to determine whether transfer from one jurisdiction to another is proper. *Securities & Exchange Commission v. Savoy Indus. Inc., 190 U.S. App. D.C. 252, 587 F.2d 1149, 1154 (D.C. Cir. 1978)*. The decision to transfer is made pursuant to an "individualized, case by case consideration of convenience and fairness." *Stewart Organization v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*. In determining whether transfer is appropriate the Court takes into consideration and balances a number of case specific factors relating to the private interests of the parties and the public interests of the courts. *Id.* at 30. The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the [*7] claim arose elsewhere; (4) the convenience of the parties; (5) the availability of witnesses; and (6) the ease of access to sources of proof. See *Trout Unlimited v. U.S. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996)*; see also *Hawksbill Sea Turtle v. Federal Emergency Management Agency, 939 F. Supp. 1, 3 (D.D.C. 1996)*. The public interest considerations include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Trout Unlimited, 944 F. Supp. at 16*. The party moving for transfer of venue bears the burden of demonstrating that these factors weigh in favor of transfer pursuant to *§ 1404(a)*. See *Shapiro, Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d 66, 71 (D.D.C. 1998)*. The Court will consider each factor in turn.

N3 Whether an action "might have been brought" in a particular jurisdiction is determined by the venue provisions contained in *28 U.S.C. § 1391*. It is undisputed that in this case venue is also proper in the United States District Court for the District of Utah pursuant to *28 U.S.C. § 1391(e)(2)* because a substantial part of the events in dispute took place in that state and the property in question is located in that state. *28 U.S.C. § 1391(e)(2)* states in relevant part "[a] civil action in which a defendant is an officer or employee of the United States or any agency thereof . . . or an agency of the United States . . . may be brought in any judicial district in which . . . a substantial part of the events or omissions giving rise to the claim oc-

curred, or a substantial part of the property that is the subject of the action is situated."

[*8]

A. Private Interest Factors

The first of the private interest factors, the plaintiff's choice of forum, "is due substantial deference and, unless the balance of convenience is strongly in favor of the defendants, should rarely be disturbed" *International Brotherhood of Painters & Allied Trades Union v. Best Painting and Sandblasting Co., Inc., 621 F. Supp. 906, 907 (D.D.C. 1985)*. A case should not be transferred "from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." *Pain v. United Technologies Corp., 205 U.S. App. D.C. 229, 637 F.2d 775, 783 (D.C. Cir. 1980)*. However, the deference afforded to a plaintiff's choice of forum is diminished where "that forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co., 477 F. Supp. 142, 144 (D.D.C. 1979)*; see also *Hawksbill Sea Turtle v. FEMA, 939 F. Supp. 1, 3 (D.D.C. 1996)* (noting that a plaintiff's choice of forum is entitled to less deference when there is "an insubstantial factual nexus with the plaintiff's choice.").

In the [*9] present case, Plaintiffs have failed to demonstrate a substantial link between their choice of forum, the District of Columbia, and the facts of the controversy. The relationship between the challenged agency action -- the sale and issuance of twelve oil and gas leases granted by the Utah Bureau of Land Management -- and this District is attenuated at best. In contrast, Utah has a substantial connection to the controversy. The authority to determine the propriety of such leases is vested in the Utah BLM State Director. The administrative decision of the Utah BLM to deny SUWA's protest was made without assistance from the BLM Washington, D.C. office and the lease sales took place at the direction of and under the auspices of the Utah BLM. Lopez Decl. P9. In addition, the land at issue in this action is located entirely within Southeast Utah and the twelve protested parcels of land are administered by the Utah BLM's Price, Moab and Monticello Field Offices. *Id.* P6. Moreover, any decision regarding the Utah lands will have an impact most directly on the citizens of Utah.

Plaintiffs attempt to argue that the fate of these parcels of land is of "national interest" and [*10] that, therefore, there is a sufficient connection with this District. Plaintiffs further contend that the Washington, D.C. BLM office had a hand in influencing the decision of the Utah BLM. Plaintiffs rely primarily on *The Wilderness Soc'y v. Babbitt, 104 F. Supp. 2d 10 (D.D.C. 2000)*, in which the court found that transfer was inappropriate. In *Wilderness Soc'y* the plaintiffs challenged the Department of Interior's Final Integrated Activity Plan/Environmental Impact Statement ("FEIS") and alleged that the DOI failed to properly address the environmental impact of oil and gas development in the National Petroleum Reserve Planning area in Alaska ("NPR-A"). *Wilderness Soc'y, 104 F. Supp. 2d at 11*. In concluding that transfer was inappropriate the court found that there was a sufficient connection between the challenged conduct and the District of Columbia. Specifically, the court noted that the DOI had held a public meeting in Washington, D.C. to solicit comments on the draft FEIS, that former Secretary Babbitt was substantially involved in the DOI's review of the impact of oil and gas leasing on the environment in the NPR-A, and that Secretary Babbitt [*11] personally made the final challenged decision regarding the FEIS. *Id. at 14*; see also *Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124 (D.D.C. 2001)* (finding that where federal government officials in the District of Columbia were involved in the decision to issue grazing permits, the case had national significance and transfer was inappropriate). In addition, the *Wilderness Soc'y* court determined that the NPR-A related to the oil supply that would be used nationwide and therefore, impacted more than just the local residents of Alaska. No similar claim can be made here. Plaintiffs have not pointed to significant action taken in Washington, D.C. such as the public hearing held in *Wilderness Soc'y* and has not demonstrated the type of substantial personalized involvement by a member of the Washington, D.C. BLM that supports a finding of "meaningful ties" to this District. Additionally, Robert Lopez, Chief, Branch of Minerals Adjudication, BLM Utah State Office affirmed that the "decisions [at issue] were made and actions were taken entirely by the Utah BLM." Lopez Decl. P9.

Turning to the second factor, the Court finds that the [*12] Defendants and Yates Petroleum's preference for having this case heard in the District Court in Utah is justified and must be given some weight. The District of Columbia's connection to this case is limited at best. The decisionmaking process and the decision itself occurred entirely within Utah and the administrative record and agency decision-makers reside in Utah. The third factor to consider, whether the claim arose elsewhere, also weighs in favor of transfer. As discussed above, the complained of action, the lease sale of twelve parcels of public land, occurred in Utah and Plaintiffs have not pointed to actions arising in Washington, D.C. that support a finding that the claim arose in this District. The fourth factor, the convenience of the parties is balanced between the parties. Plaintiff, SUWA, is headquartered in Utah and cannot claim inconvenience. Plaintiff NRDC, maintains an office in San Francisco, California, as well as in Washington D.C. Yates Petroleum maintains that Utah is a more convenient location for it as its headquarters are located in

Artesia, New Mexico. Yates Petroleum's Notice of Support at 9. Defendants' counsel is located in Washington, D.C., however, "any [*13] inconvenience to [Defendants' counsel] is offset by the fact that they represent the party requesting transfer." *Northwest Forest Resource Council v. Babbitt*, 1994 WL 908586, *3 n.6 (D.D.C., April 13, 1994).

The fifth and sixth private interest factors to consider, the availability and convenience of witnesses, and the ease of access to sources of proof may be considered together. The parties agree that the agency's challenged action will likely require no witnesses and will therefore, be decided on the administrative record. *See* Pl. Opp'n at 13; Def. Mem. at 10. In a case such as this one, "the convenience of witnesses . . . has less relevance because this case involves judicial review of an administrative decision." *Trout Unlimited*, 944 F. Supp. at 17. Moreover, if witnesses are necessary it appears that any relevant witnesses regarding the agency's decision and actions reside in Utah. The administrative record in this case was generated by the Utah BLM and is currently maintained in "either BLM's Utah State Office or the relevant field offices." Lopez Decl. P10. Therefore, the Court finds that the availability and the convenience of the witnesses [*14] do not weigh in favor of either party and that the ease of access to sources of proof weighs in favor of transfer.

2. Public Interest Factors

The Court now turns to the three public interest factors. The first two factors, the degree to which the courts in both venues are familiar with the governing laws and the relative congestion of the calendars of the potential transferee and transferor courts weigh in favor of neither Plaintiffs nor Defendants. Both the District of Columbia and Utah Federal Courts are equally capable of determining issues of compliance with federal law under the NEPA, NHPA and APA. It is not apparent that transfer to the District of Utah will lead to any unnecessary delay due to docket congestion. Transfer to Utah would not lead to delay as this Court has not dealt with any issue in this suit other than the ones present here and has not become familiar with the underlying merits of the case. *See Trout*, 944 F. Supp. at 19 (finding that where the case was "in its earliest stages," no delay would be associated with the transferee court's having to familiarize itself with the case).

The third, and arguably most important of the public interest [*15] factors, the local interest in deciding local controversies at home, weighs in favor of transfer. It is undisputed that "there is a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 91 L. Ed. 1055, 67 S. Ct. 839 (1947); *see also Hawksbill Sea Turtle* at 3 n.5 ("The Court also notes the importance of allowing local citizens to attend and observe the proceedings of the case" due to the local nature of the action). As the dispute in this instance will have the greatest impact on the citizens of Utah the Court finds that the third public interest factor weighs in favor of transfer.

*Yates Petroleum's Motion to Intervene*

Yates Petroleum proposes to intervene in this action as a defendant pursuant to *Federal Rule of Civil Procedure 24(a)(2)*. n4 Neither Plaintiffs nor Defendants in this action oppose Yates Petroleum's intervention. This Circuit recognizes four requirements for intervention of right: (1) timeliness; (2) a cognizable interest; (3) impairment of that interest; and (4) lack of adequate representation by existing parties. *See Williams & Humbert, Ltd. v. W & H. Trade Marks, Ltd.*, 268 U.S. App. D.C. 192, 840 F.2d 72, 74 (D.C. Cir. 1988); [*16] *see also Dimond v. District of Columbia*, 253 U.S. App. D.C. 111, 792 F.2d 179, 192 (D.C. Cir. 1986). The Court of Appeals has described the interest test under *Rule 24(a)(2)* as "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 128 U.S. App. D.C. 172, 385 F.2d 694, 700 (D.C. Cir. 1967); *see also Huron Envtl. Activist League v. United States EPA*, 917 F. Supp. 34 (D.D.C. 1996). Applying this liberal approach to the case at bar this Court will grant Yates Petroleum's motion.

---

n4 *Federal Rule of Civil Procedure 24(a)* states in relevant part "upon timely application anyone shall be permitted to intervene in an action . . . (2) when an applicant claims an interest relating to the property or transaction which is the subject of the action and applicant is so situated that the disposition of the action may as a practical matter impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

---

[*17]

The first requirement of timeliness has been satisfied. Plaintiffs filed their Complaint on December 6, 2001. Yates Petroleum filed its motion to intervene sixty days after the Complaint on February 12, 2002. The Court finds that there has been no prejudicial delay in Yates Petroleum's filing of its motion. Yates Petroleum must also demonstrate a "cognizable interest" in the present action. Yates Petroleum, as the lessee of two of the challenged leases has a "direct, substantial, and legally protectable" interest in the subject matter of this litigation. *Stewart v. Rubin*, 948 F. Supp. 1077, 1105 (D.D.C. 1996). Should Plaintiffs prevail in this action Yates Petroleum's interest in the leases will be significantly impaired. Plaintiff re-

quests injunctive relief requiring the recision of the twelve challenged leases until Defendants comply with the requirements of NEPA and NHPA. Thus, Yates Petroleum has demonstrated compliance with the third requirement necessary for intervention. Finally, Yates Petroleum must demonstrate that its interests will not adequately be represented if it is not allowed to intervene. This requirement requires only a "minimal" showing and is [*18] satisfied if the applicant "shows that representation of his interest 'may be' inadequate." *Trbovich v. United Mine Workers of America, 404 U.S. 528, 538 n.10, 30 L. Ed. 2d 686, 92 S. Ct. 630 (1972)*. Yates Petroleum contends that Defendants in this action are required to represent the "broad public interest as owners of the public lands and as lessors under the Leases." Yates Petroleum Mem. at 4. Yates Petroleum maintains that as a lessee, it has expended substantial funds in its pursuit of the leases and that Defendants "will not adequately represent the specific interests or economic concerns of Yates Petroleum, a private entity." *Id.* The Court finds that Yates Petroleum has met its minimal burden of demonstrating that its interests may not be satisfactorily represented by Defendants in this action. Accordingly, this Court will grant Yates Petroleum's motion to intervene.

### III. CONCLUSION

Having consider the arguments of all parties for and against transfer, the Court finds that transfer in appropriate. Plaintiffs have failed to demonstrate that this District has meaningful ties to the controversy. The Court concludes that the public and private interest factors weigh in favor of transfer [*19] to the District of Utah. Accordingly, this Court will grant Defendants' motion to transfer the action to the District Court of the District of Utah. In addition, the Court shall grant Yates Petroleum's Motion to Intervene pursuant to *Federal Rule of Procedure 24(a)(2)*. An appropriate Order accompanies this Memorandum Opinion.

Dated: June 28, 2002

COLLEEN KOLLAR-KOTELLY

United States District Judge

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 28 day of June, 2002, hereby

**ORDERED** that Defendants' Motion to Transfer Venue to the United States District Court for the District of Utah [# 3] is GRANTED; and it is further

**ORDERED** that Proposed Intervenor-Defendant Yates Petroleum Corporation's Motion to Intervene [# 11] is GRANTED; and it is further

**ORDERED** that Proposed Intervenor-Defendant Yates Petroleum Corporation's Motion to Re-set the Briefing Schedule for the Motion to Transfer [# 12] is DENIED AS MOOT

**SO ORDERED.**

COLLEEN KOLLAR-KOTELLY

United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY<br>OF THE UNITED STATES, et al.<br><br>Plaintiffs,<br><br>MIKE JOHANNS, et al.<br><br>Defendants. | )<br>)<br>)<br>)  Civ. No. 1:06cv00265 (CKK)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**(PROPOSED) ORDER GRANTING APPLICANT DEFENDANT-INTERVENORS'
MOTION TO INTERVENE**

The Court, having reviewed Applicant Defendant-Intervenors' Motion to Intervene finds Applicant Defendant-Intervenors' Motion well taken and hereby grants them leave to intervene in this action.

It is therefore ORDERED, ADJUDGED AND DECREED,

SO ORDERED this _____ day of _____, 2006.

 

                                                                         The Honorable Colleen Kollar-Kotelly
United States District Court for the
District of Columbia

The following attorneys should be notified of the foregoing Order:

> Eric R. Glitzenstein
> Ethan Carson Eddy
> Howard M. Crystal
> MEYER GLITZENSTEIN & CRYSTAL
> Suite 700
> 1601 Connecticut Ave., N.W.
> Washington, DC  20009
> eric@meyerglitz.com
> howardcrystal@meyerglitz.com
>
> *Attorneys for Plaintffs*
>
>
> Beverly M. Russell
> U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
> 555 Fourth Street, N.W.
> Suite E-4915
> Washington, DC  20530
> beverly.russell@usdoj.gov
>
> *Attorney for Defendants*
>
>
> James P. Murphy, Esq.
> SQUIRE, SANDERS & DEMPSEY L.L.P.
> 1201 Pennsylvania Ave., N.W.
> Suite 500
> Washington, DC  20004
> jmurphy@ssd.com
>
> *Attorney for Applicant Defendant-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February, 2006 the foregoing Motion to Intervene as Defendants, Memorandum in Support, and Proposed Order were served via facsimile and electronic mail on the following counsel in order to supplement service through the Court's electronic filing system:

Eric R. Glitzenstein
Ethan Carson Eddy
Howard M. Crystal
MEYER GLITZENSTEIN & CRYSTAL
Suite 700
1601 Connecticut Ave., N.W.
Washington, DC 20009
eric@meyerglitz.com
howardcrystal@meyerglitz.com
Fax: 202-588-5049


Beverly M. Russell
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, N.W.
Suite E-4915
Washington, DC 20530
beverly.russell@usdoj.gov
Fax: 202-514-8780


/s/
James P. Murphy