# Case No. 06-00265 (CKK)

# APPLICANT DEFENDANT-INTERVENORS'

# EXHIBIT 1

PETITION OF
BELTEX CORPORATION,
DALLAS CROWN, INC., AND
CAVEL INTERNATIONAL, INC.,
FOR EMERGENCY RULEMAKING TO PROVIDE FOR
VOLUNTARY, ANTE-MORTEM INSPECTION OF HORSES
AND RELATED RELIEF

This petition is submitted on behalf of Beltex Corporation, Dallas Crown, Inc., and Cavel International, Inc., ("Petitioners") and requests action by the United States Department of Agriculture's Food Safety and Inspection Service (collectively "USDA") to promulgate on an expedited basis an interim final rule, effective as of March 10, 2006, to provide for voluntary, "fee-for-service" ante-mortem inspection of horses and transportation-related inspection of equines to slaughter under the Agriculture Marketing Act, as amended, 7 U.S.C. § 1622. As further discussed below, this action is necessary due to the apparent lack of appropriated funds for ante-mortem inspection of horses, as required by Section 3 of the Federal Meat Inspection Act (FMIA). If USDA should fail to provide ante-mortem inspection required by Section 3 of the FMIA, affected establishments would likely be forced out of operation, causing substantial economic damage contrary to the public good.

I.     **Action Requested**

Pursuant to the Administrative Procedure Act[1] and USDA's implementing regulation,[2] the undersigned Petitioners request that USDA issue an emergency interim final rule, effective as of March 10, 2006, to provide voluntary, "fee-for-service" ante-mortem inspection of horses and transportation-related inspection of equines to slaughter under the Agriculture Marketing Act, as amended, 7 U.S.C. § 1622.

---

[1] 5 U.S.C. § 553(e).
[2] 7 C.F.R. § 1.28

II.     **Interests of Petitioners**

Petitioner Beltex Corporation is a domestic and international exotic meat processor founded in 1976 providing fresh and frozen high-quality products to restaurants, institutions, wholesalers, and retailers. Beltex operates in Fort Worth, Texas, and is located in the industrial Stockyard sector near the Meacham Field Airport. Beltex employs between 80 and 120 people necessary in the day-to-day operations of the plant. This payroll accounts for a multimillion-dollar direct impact on the local economy.

Petitioner Dallas Crown, Inc., in Kaufman, Texas, is a meat packing plant, specializing in the processing of fresh and frozen horsemeat products and was founded in 1981. Products are packaged and shipped according to the demand and the specification of customers. Dallas Crown provides local institutions and foreign importers, wholesalers, supermarkets, butchers, and retailers. Dallas Crown currently employs 46 people necessary in the day-today operations of the plant, making it the largest employer in the town.

Petitioner Cavel International, Inc., located in DeKalb, Illinois, processes fresh and frozen horsemeat for export. Cavel has been in operation since 1987. The company also operates under a horsemeat license issued by the Illinois Department of Agriculture. Cavel is a significant employer and contributor of tax revenues in the DeKalb area. The company employs 56 workers from around the region.

III.    **Legal Background**

      A. Inspection Under the Federal Meat Inspection Act, the Federal Agriculture Improvement and Reform Act of 1996, and the Agriculture Marketing Act of 1946, As Amended

One of the most distinctive features of the Federal Meat Inspection Act (FMIA) is the requirement for continuous government inspection at establishments that slaughter cattle, sheep,

swine, and equine (hereinafter "livestock") to prevent the inhumane treatment of livestock and the distribution of adulterated meat food products. Specifically, Section 3 of the FMIA requires the Food Safety and Inspection Service (FSIS) to inspect all livestock before slaughter ("ante-mortem inspection") for human food.[3] Without ante-mortem inspection, establishments are prohibited from selling the meat food product for human food.[4]

As part of ante-mortem inspections of horses, USDA guidelines issued under Section 903 of the Federal Agriculture Improvement and Reform Act of 1996[5] governing the commercial transportation of equines to slaughter require USDA inspections at slaughter facilities of such horses and the trucks used to transport them.[6]

The mandatory inspection provisions under the FMIA only apply to livestock. In 1946, Congress amended the Agricultural Marketing Act (AMA) to provide USDA with the authority to furnish voluntary inspection for all agriculture products, including animals, for a fee.[7] Such inspection services are commonly referred to as "fee-for-service" inspection. Specifically, subsection 203(h) of the AMA provides that the Secretary of Agriculture has authority to:

> Inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, including assessment and collection of such fees as will be reasonable and as nearly as may be to cover the cost of the service rendered....[8]

---

[3] 21 U.S.C. § 603.
[4] 21 U.S.C. § 610.
[5] 7 U.S.C. § 1901 note.
[6] 9 C.F.R. § 88.5. Although these regulations are issued by the Animal and Plant Health Inspection Service (APHIS), the inspections may be conducted by any authorized USDA employee, including FSIS inspectors. *See* Final Rule, 66 Fed. Reg. 63,588 at 63,605, col. 1 (Dec. 7, 2001).
[7] 7 U.S.C. § 1622(h).
[8] Id.

Pursuant to regulations promulgated under the Act,[9] FSIS currently provides voluntary inspection of certain exotic animals and rabbits. The inspected and passed meat from such animals is stamped with the FSIS mark of inspection and can be sold interstate and exported.[10]

B. Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006

On November 10, 2005, the President signed into law the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006, Pub. L. 109-97 ("Appropriations Act").[11] Section 794 of the Appropriations Act provides:

> Effective 120 days after the date of enactment of this Act, none of the funds made available in this Act may be used to pay the salaries or expenses of personnel to inspect horses under Section 3 of the Federal Meat Inspection Act (21 U.S.C. 603) or under the guidelines issued under section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. 1901 note; Public Law 104-127).

As noted above, Section 3 of the FMIA requires FSIS to conduct ante-mortem inspection of horses, and the guidelines issued under Section 903 of the Federal Agriculture Improvement and Reform Act of 1996 require inspections relating to the transportation of horses. Thus, as of 120 days after the date of enactment of the Appropriations Act (*i.e.*, March 10, 2006), funds appropriated under this Appropriations Act cannot be used to pay the salaries and expenses of USDA personnel to conduct the required ante-mortem inspections of horses.

Although the Appropriations Act prevents USDA from using funds appropriated under that Act for ante-mortem inspection services, it is important to note what the Appropriations Act does not provide. First and foremost, Section 794 does not amend the FMIA or otherwise alter USDA's

---

[9] 9 C.F.R. Parts 350, 352 and 354.
[10] Id.
[11] H.R. 2744, 109th Cong. (2005)

4

obligation to provide ante-mortem inspection for horse slaughter. This fact is explicitly acknowledged in the conference report explaining Section 794:

> It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported).[12]

Thus, notwithstanding the limitation on funds available under the Appropriations Act, FSIS remains obliged by law to provide for ante-mortem inspection of horses intended for human consumption.

Second, the Appropriations Act does not have the broader effect of prohibiting all funds for ante-mortem inspection activities. The plain language of Section 794 only prevents the use of funds appropriated under the Appropriations Act of fiscal year 2006 to pay salaries or expenses of personnel to inspect horses under Section 3 of the FMIA or under the guidelines issued under section 903 of the Federal Agriculture Improvement and Reform Act of 1996, effective 120 days after enactment. Funds otherwise available may be used to fund horse inspection activities, such as user-fees collected by FSIS for meat inspections involving overtime, holidays or exotic animals.[13] Significantly, Section 794 does not prohibit the payment of salaries and expenses of personnel performing such inspections using these funds or as part of a voluntary, fee-for-service program promulgated pursuant to the authority of the AMA.

## IV.    Legal Grounds for the Petitioned Action

As noted above, USDA is required by law to conduct ante-mortem inspection of horses before they are slaughtered for human food.[14] Without funds appropriated under the Appropriations Act, USDA must seek other means to provide ante-mortem inspection of horses slaughtered for

---

[12] H.R. REP. NO. 109-255 at 107 (2005)
[13] 9 C.F.R. § 391.

human food. If funds are not available through other sources within the Department, USDA may meet its statutory obligation by promulgating a rule providing for voluntary, fee-for-service ante-mortem inspection under the AMA.

As described above, USDA has authority to establish voluntary, fee-for-service inspection of horses pursuant to the AMA.[15] Indeed, USDA has already exercised its authority to establish voluntary, fee-for-service inspection of animals such as reindeer, elk, deer, antelope, water buffalo, bison, and rabbits.[16]

## V.    Good Cause Exists for Expedited Rulemaking

Pursuant to the Administrative Procedures Act,[17] USDA must provide notice and the opportunity to comment upon proposed regulations unless the agency "for good cause finds that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."[18] In the normal course, a substantive regulation is not made effective less than 30 days after its publication except "as otherwise provided by the agency for good cause found and published with the rule."[19] Petitioners respectfully submit that good cause exists for USDA to promulgate and make immediately effective an interim final regulation establishing fee-for-service ante-mortem inspection.

As noted above, USDA has a statutory obligation to provide ante-mortem inspection for horse slaughter. To meet its inspectional duties under Section 3 of the FMIA, USDA must provide for

---

[14] 21 U.S.C. § 603. The transportation-related inspection of equines is required by USDA regulation, not by statute. 9 C.F.R. § 88.5. If these inspections cannot be funded as outlined in this petition for emergency rulemaking, USDA should not continue to require such inspections.
[15] 7 U.S.C. § 1622(h). This authority also extends to inspections relating to the commercial transportation of equines to slaughter.
[16] 9 C.F.R. Parts 350, 352, 354.
[17] 5 U.S.C. § 553(b) and (c)
[18] 5 U.S.C. § 553(b)(B).

6

funding of salaries and expenses of ante-mortem inspectional personnel on or before March 10, 2006. Notice-and-comment proceedings and an effective date not less than 30 days after publication of the petitioned-for regulation is unnecessary. Petitioners, who are the only persons that will be currently affected by the establishment of fee-for-service ante-mortem inspection for horse slaughter, are fully prepared to accept this regulatory change upon publication. Alternatively, USDA may dispense with notice-and-comment insofar as:

> General notice of proposed rule making shall be published in the Federal Register, *unless persons subject thereto are named and either personally serviced or otherwise have actual notice thereof in accordance with law.*[20]

Petitioners submit that they will accept personal service of a regulation establishing fee-for-service ante-mortem inspection. Therefore, notice-and-comment rulemaking and delayed implementation of a fee-for-service inspectional program are unnecessary.

Completion of a notice-and-comment rulemaking prior to March 10, 2006, is practically impossible. We are unable to find precedent for USDA initiating and completing a notice-and-comment in such a short period of time. Therefore, notice-and-comment rulemaking is both unnecessary and impracticable.

The adverse economic impact of USDA's failure to provide ante-mortem inspection as required by Section 3 of the FMIA would be substantial and contrary to the public interest as defined by statute. Specifically, if USDA fails to provide ante-mortem inspection required by Section 3 of the FMIA, each affected establishment would be prohibited from continuing a large portion of their operations. As a result, petitioners expect that these facilities would be forced to close, with substantial adverse economic affect.

---

[19] 5 U.S.C. § 553(d)(3).
[20] 5 U.S.C. § 553(b) (emphasis supplied).

7

Petitioners estimate that the combined direct economic impact of their affected facilities would exceed $41,000,000 annually, including:

- Combined payroll, not including state and federal inspectors, exceeds $11,000,000.

- Petitioners Dallas Crown, Inc., and Beltex Corporation spend $6 million annually on airfreight services at Dallas-Fort Worth International Airport (DFW). Petitioners' combined use of airfreight services makes them the single largest airfreight customer for DFW. Petitioners exclusively use U.S. carriers for their airfreight needs, with significant airfreight employment and flights attributable to shipment of Petitioners' products.

- Dallas Crown and Beltex's combined overhead expenses of approximately $27 million, the majority of which is spent in the Dallas-Fort Worth Metroplex.

- Petitioner Cavel International, Inc., spends approximately $8 million a year to purchase livestock from farmers throughout the Midwest and Western United States. It spends another $1.4 million each year with local suppliers of goods and services.

- Cavel also pays transportation companies approximately $1.5 million a year to transport livestock to its facility in DeKalb, Illinois. It spends an additional $2.5 million a year to ship its finished meat products abroad.

- Petitioners' operations, which focus on the export of products to foreign markets, make a favorable contribution to the U.S. balance of trade. If Petitioners were forced to cease operations and close their facilities, the approximately $41,000,000 that Petitioners now contribute to their local economies would disappear and constitute a net loss to the U.S. economy.

Though more difficult to quantify, Petitioners' facilities have further benefit to the public good, including:

- Pharmaceutical industries, universities, and other institutions use these facilities for research and training for veterinary and medical studies.

- Zoo animal diets across the country rely heavily upon the products of Petitioners' facilities. Zoos, which are dedicated to animal welfare, attach importance to sourcing their meat-based animal diets from USDA-inspected facilities because of the assurance that stringent animal welfare and food safety requirements are met. Forcing a change in zoo animal diets may adversely affect zoo animal health.

- Petitioners provide a humane and economically beneficial solution for the tens of thousands of horses that must be euthanized each year.

Therefore, the ordinary timeframes for notice and public comment, as well as for delayed implementation from publication, would be impracticable, unnecessary, and contrary to the public interest. USDA should find and describe in a FEDERAL REGISTER notice good cause for promulgation and implementation of an interim final rule on an expedited basis.

## VI.     Conclusion

For the foregoing reasons, Petitioners respectfully request that the USDA promulgate on an expedited basis an interim final rule, as of March 10, 2006, to provide for voluntary, "fee-for-service" ante-mortem inspection of horses and transportation-related inspection of horses and the trucks used to transport them under the Agriculture Marketing Act, as amended, 7 U.S.C. § 1622.

Respectfully submitted,

Mr. Richard Garcia
General Manager
Beltex Corporation
3801 North Grove Street
Fort Worth, TX 76106

Mr. Chris Soenen
General Manager
Dallas Crown, Inc.
2000 West Fair
Kaufman, TX 75142

Mr. James Tucker
General Manager
Cavel International, Inc.
108 Harvestore Drive
DeKalb, IL 60115

9

Therefore, the ordinary timeframes for notice and public comment, as well as for delayed implementation from publication, would be impracticable, unnecessary, and contrary to the public interest. USDA should find and describe in a FEDERAL REGISTER notice good cause for promulgation and implementation of an interim final rule on an expedited basis.

## VI.    Conclusion

For the foregoing reasons, Petitioners respectfully request that the USDA promulgate on an expedited basis an interim final rule, as of March 10, 2006, to provide for voluntary, "fee-for-service" ante-mortem inspection of horses and transportation-related inspection of horses and the trucks used to transport them under the Agriculture Marketing Act, as amended, 7 U.S.C. § 1622.

Respectfully submitted,

Mr. Richard Garcia
General Manager
Beltex Corporation
3801 North Grove Street
Fort Worth, TX 76106

Mr. Chris Soenen
General Manager
Dallas Crown, Inc.
2000 West Fair
Kaufman, TX 75142

Mr. James Tucker
General Manager
Cavel International, Inc.
108 Harvestore Drive
DeKalb, IL 60115

9

Therefore, the ordinary timeframes for notice and public comment, as well as for delayed implementation from publication, would be impracticable, unnecessary, and contrary to the public interest.  USDA should find and describe in a FEDERAL REGISTER notice good cause for promulgation and implementation of an interim final rule on an expedited basis.

## VI.     Conclusion

For the foregoing reasons, Petitioners respectfully request that the USDA promulgate on an expedited basis an interim final rule, as of March 10, 2006, to provide for voluntary, "fee-for-service" ante-mortem inspection of horses and transportation-related inspection of horses and the trucks used to transport them under the Agriculture Marketing Act, as amended, 7 U.S.C. § 1622.

Respectfully submitted,

Mr. Richard Garcia
General Manager
Beltex Corporation
3801 North Grove Street
Fort Worth, TX  76106

Mr. Chris Soenen
General Manager
Dallas Crown, Inc.
2000 West Fair
Kaufman, TX  75142

Mr. James Tucker
General Manager
Cavel International, Inc.
J08 Harvestore Drive
DeKalb, IL 60115

9