# Case No. 06-00265 (CKK)

# APPLICANT DEFENDANT-INTERVENORS'

# EXHIBIT 5

Case 1:06-cv-00265-CKK    Document 9-7    Filed 02/27/2006    Page 1 of 6

# Rules and Regulations

Federal Register
Vol. 71, No. 26
Wednesday, February 8, 2006

This section of the FEDERAL REGISTER contains regulatory documents having general applicability and legal effect, most of which are keyed to and codified in the Code of Federal Regulations, which is published under 50 titles pursuant to 44 U.S.C. 1510.

The Code of Federal Regulations is sold by the Superintendent of Documents. Prices of new books are listed in the first FEDERAL REGISTER issue of each week.

## DEPARTMENT OF AGRICULTURE

## Food Safety and Inspection Service

## 9 CFR Part 352

[Docket No. 05-036IF; FDMS Docket Number FSIS-2005-0040]

RIN 0583-AD21

## Ante-Mortem Inspection of Horses

**AGENCY:** Food Safety and Inspection Service, USDA.

**ACTION:** Interim final rule with request for comments.

**SUMMARY:** The Food Safety and Inspection Service (FSIS) is amending the Federal meat inspection regulations to provide for a voluntary fee-for-service program under which official establishments that slaughter horses will be able to apply for and pay for ante-mortem inspection. The fiscal year (FY) 2006 Appropriations Act prohibits the use of appropriated funds to pay the salaries or expenses of FSIS personnel to conduct ante-mortem inspection of horses. The Joint Explanatory Statement of the Committee of Conference on the FY 2006 appropriations bill for Agriculture, Rural Development, Food and Drug Administration, and Related Agencies, however, provides that the Department of Agriculture is obliged to provide for inspection of meat for human consumption. FSIS is establishing this fee-for-service program under the Agricultural Marketing Act (AMA). Post-mortem inspection and other inspection activities authorized by the Federal Meat Inspection Act (FMIA) at official establishments that slaughter horses would continue to be paid for with appropriated funds, except for overtime or holiday inspection services.

**DATES:** *Effective date:* March 10, 2006. Comments must be received on or before March 10, 2006. FSIS is providing a shortened comment period because it is issuing an interim final rule and finds that it is in the public interest for it to receive comments on an expedited basis.

**ADDRESSES:** FSIS invites interested persons to submit comments on this interim final rule. Comments may be submitted by any of the following methods:

*Federal eRulemaking Portal:* This Web site provides the ability to type short comments directly into the comment field on this Web page or attach a file for lengthier comments. FSIS prefers to receive comments through the Federal eRulemaking Portal. Go to *http://www.regulations.gov* and, in the "Search for Open Regulations" box, select "Food Safety and Inspection Service" from the agency drop-down menu, then click on "Submit." In the Docket ID column, select the FDMS Docket Number to submit or view public comments and to view supporting and related materials available electronically. After the close of the comment period, the docket can be viewed using the "Advanced Search" function in Regulations.gov.

*Mail, including floppy disks or CD-ROM's, and hand- or courier-delivered items:* Send to Docket Clerk, U.S. Department of Agriculture, Food Safety and Inspection Service, 300 12th Street, SW., Room 102 Cotton Annex, Washington, DC 20250.

*Electronic mail:* fsis.regulationscomments@fsis.usda.gov.

All submissions received must include the Agency name and docket number 05-036IF.

All comments submitted in response to this interim final rule, as well as research and background information used by FSIS in developing this document, will be posted to the regulations.gov Web site. The background information and comments also will be available for public inspection in the FSIS Docket Room at the address listed above between 8:30 a.m. and 4:30 p.m., Monday through Friday.

**FOR FURTHER INFORMATION CONTACT:** Lynn Ellen Dickey, Ph.D., Director, Regulations and Petitions Policy Staff, Office of Policy, Program, and Employee Development, Food Safety and Inspection Service, 300 12th Street, SW., Room 112 Cotton Annex Building, Washington, DC 20250-3700, (202) 720-5627.

**SUPPLEMENTARY INFORMATION:**

### Background

To prevent adulterated meat and meat food products from entering interstate commerce, the FMIA requires that FSIS inspection personnel conduct ante-mortem examination and inspection of all livestock (cattle, sheep, swine, goats, horses, mules, and other equines) before they are allowed to enter any slaughtering, packing, meat-canning, rendering, or other similar establishment, in which they are to be slaughtered and the meat and meat food products thereof are to be used in commerce (21 U.S.C. 603). The FMIA also requires that FSIS inspection personnel conduct post-mortem examination and inspection of the carcasses and parts thereof of all livestock to be prepared at any slaughtering, meat-canning, salting, packing, rendering, or similar establishment in any State, Territory, or the District of Columbia as articles of commerce that are capable of use as human food (21 U.S.C. 604). Additionally, the FMIA requires that FSIS inspection personnel conduct inspection of official establishments that slaughter livestock and prepare meat and meat food products thereof to determine whether the establishments maintain sanitary conditions (21 U.S.C. 608).

The Humane Methods of Slaughter Act (HMSA) (7 U.S.C. 1901 *et seq.*) requires that humane methods be used for handling and slaughtering livestock, including horses. The ante-mortem inspection provisions of the FMIA reference the HMSA and provide that, for the purposes of preventing inhumane slaughter of livestock, the Secretary of Agriculture will assign inspectors to examine and inspect the methods by which livestock are slaughtered and handled in connection with slaughter in slaughtering establishments subject to inspection (21 U.S.C. 603(b)).

### Fiscal Year 2006 Appropriations Act

The FY 2006 Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act (Pub. L. 109-97) was enacted on November 10, 2005. Section 794 of the Appropriations Act states that, effective 120 days after the date of its enactment, none of the FY 2006 appropriated funds may be used to

pay the salaries or expenses of personnel to inspect horses under section 3 of the FMIA (21 U.S.C. 603) or under the guidelines issued under section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. 1901 note; Pub. L. 104–127). Section 3 of the FMIA (21 U.S.C. 603) requires that FSIS inspection personnel conduct ante-mortem examination and inspection of all livestock, including horses, before they are allowed to enter an official establishment for slaughter. Section 903 of the Federal Agriculture Improvement and Reform Act of 1996 provides that, subject to the availability of appropriations, the Secretary of Agriculture may issue guidelines for the regulation of the commercial transportation of equine for slaughter by persons regularly engaged in that activity within the United States. Such guidelines have been issued and are administered by the Animal and Plant Health Inspection Service (APHIS), rather than by FSIS.

Although the FY 2006 Appropriations Act specifically prohibits the use of appropriated funds for ante-mortem inspection of horses (section 794 of the Act), it does not preclude the use of FY 2006 appropriated funds for post-mortem inspection of horse carcasses and parts thereof or other inspection services authorized by the FMIA at official establishments that slaughter horses. The Joint Explanatory Statement of the Committee of Conference that accompanies the FY 2006 appropriations bill states, "It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported). The conferees recognize that the funding limitation in section 794 prohibits the use of appropriated funds only for payment of salaries or expenses of personnel to inspect horses" (p. 107). Therefore, according to the Joint Explanatory Statement, conferees recognize that horse *meat* intended for human consumption must undergo inspection. Similarly, it is significant that the Joint Explanatory Statement explains that section 794 prohibits the use of appropriated funds only for payment of salaries or expenses of personnel to inspect *horses* and does not refer to any prohibition on the use of appropriated funds to inspect horse *carcasses or parts thereof*. Thus, the Joint Explanatory Statement is consistent with the FY 2006 Appropriation Act's language that specifically prohibits the use of appropriated funds to pay for ante-mortem inspection of horses but makes no such restriction on the use of appropriated funds for post-mortem inspection of horse carcasses and parts thereof. The Appropriations Act also includes no limitation on the Agency's ability to establish a voluntary fee-for-service program for ante-mortem inspection.

Section 798 of the FY 2006 Appropriations Act amends the FMIA by striking the phrase "cattle, sheep, swine, goats, horses, mules, and other equines" each place it appears and replacing it with the phrase "amenable species." Section 798 defines "amenable species" as "those species subject to the provisions of the Act [FMIA] on the day before the date of the enactment of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006; and any additional species of livestock that the Secretary considers appropriate." Horses slaughtered in official establishments were subject to the provisions of the FMIA on the day before the FY 2006 Appropriations Act was passed. Therefore, according to section 798 of the FY 2006 Appropriations Act, horses slaughtered for use as human food in commerce are an "amenable species" and continue to be subject to applicable provisions of the FMIA.

### Petition on Voluntary Ante-Mortem Inspection of Horses

On November 23, 2005, the USDA received a petition on behalf of the three official establishments that slaughter horses in the United States requesting that FSIS promulgate an interim final rule to provide for voluntary, fee-for-service ante-mortem inspection of horses under the AMA. The petition also requested that the USDA provide for voluntary, fee-for-service transportation-related inspection of equines to slaughter under the Agricultural Marketing Act (AMA).

### The Interim Final Rule

Because the FY 2006 Appropriations Act prohibits FSIS from using FY 2006 appropriated funds for the salaries or expenses of personnel to conduct ante-mortem inspection of horses and because the Joint Explanatory Statement makes clear that the Department is obliged to provide for inspection of meat for human consumption, FSIS is establishing a voluntary fee-for-service program under the AMA (7 U.S.C. 1622 and 1624) in which official establishments that slaughter horses can apply and pay for ante-mortem inspection. Therefore, this interim final rule is consistent with the petitioners' request that FSIS promulgate an interim final rule to provide for voluntary, fee-for-service ante-mortem inspection of horses under the AMA.

Regulations for the commercial transportation of equines for slaughter are administered by APHIS, rather than by FSIS. (*See* 9 CFR part 88, "Commercial Transportation of Equines for Slaughter.") Thus, FSIS referred the petitioner's request that USDA establish a program for voluntary fee-for-service transportation-related inspection of equines under the AMA to APHIS. While not all of the activities conducted by APHIS under 9 CFR part 88 are affected by the restrictions imposed by Congress on using appropriated funds during FY 2006, activities involving inspection of horses are affected. To continue to ensure the humane transportation or horses to slaughter, APHIS is prepared to establish a voluntary fee-for-service program in order to continue its inspection of horses under 9 CFR part 88.

APHIS intends to establish such a program under the authority provided in the FY 2006 Appropriations Act, which authorizes the agency to collect fees to cover the total costs of providing technical assistance, goods, or services requested by States, other political subdivisions, domestic and international organizations, foreign governments, or individuals, provided that such fees are structured such that any entity's liability for such fees is reasonably based on the technical assistance, goods, or services provided to the entity by the agency, and such fees shall be credited to a trust fund account established for this purpose, to remain available until expended, without further appropriation, for providing such assistance, goods, or services. APHIS will make this program available to the three domestic entities that slaughter horses via agreements under which APHIS will be reimbursed for services provided to inspect horses delivered to the facilities. No changes to the regulations are necessary. APHIS anticipates that the costs for each facility would average approximately $10,100 to cover the salary of one animal health technician for the time necessary to inspect horses at the facility for the remainder of FY 2006.

In this interim final rule, FSIS is amending part 352 of the Federal meat inspection regulations to include this program. Part 352 of Title 9 of the CFR includes provisions for the voluntary inspection and certification service for wholesomeness relating to the slaughter and processing of exotic animals (reindeer, elk, deer, antelope, water buffalo, or bison) (§ 352.2).

As is explained above, the FMIA requires that horses, like all amenable species, undergo examination and inspection before they can enter an establishment in which they are to be slaughtered for their meat that will be used for human consumption. Thus, with the passage of the FY 2006 Appropriations Act, if FSIS does not establish a means for official establishments that slaughter horses to obtain ante-mortem inspection, these establishments will not be able to operate and presumably will be forced out of business.

In this interim final rule, FSIS is establishing a program under which official establishments that slaughter horses can pay for ante-mortem inspection under the AMA. Section 203(h) of the AMA (7 U.S.C. 1622(h)) provides the Secretary of Agriculture with the authority: "To inspect, certify, and identify the class, quality, quantity, and condition of agricultural products when shipped or received in interstate commerce, under such rules and regulations as the Secretary of Agriculture may prescribe, including assessment and collection of such fees as will be reasonable and as nearly as may be to cover the cost of the service rendered, to the end that agricultural products may be marketed to the best advantage, that trading may be facilitated, and that consumers may be able to obtain the quality product which they desire, except that no person shall be required to use the service authorized by this subsection."

The fees that this interim final rule will require for ante-mortem inspection of horses are necessary to cover the costs of inspection services rendered. Under this rule, official establishments that slaughter horses will pay for ante-mortem inspection at the rates that apply to exotic animal establishments under voluntary inspection (§ 352.5). Therefore, the fees that official establishments that slaughter horses will pay for ante-mortem inspection are reasonable.

In this interim final rule, FSIS is amending part 352 of the regulations so that the existing regulations that apply to exotic species would become Subpart A. FSIS is also adding a new Subpart B that will apply to horses. In Subpart B, FSIS is specifying which provisions in part 352 Subpart A will also apply to official establishments that slaughter horses. Subpart B specifies that official establishments that wish to slaughter horses can apply for voluntary ante-mortem inspection according to § 352.3, and that such establishments will pay the base time, overtime, and holiday rates for ante-mortem inspection that apply to exotic species establishments under voluntary inspection according to § 352.5. Such inspections shall be made only in pens on the premises of the establishment at which the horses are offered for slaughter, in accordance with § 309.1(b). Subpart B also specifies that official establishments that slaughter horses will be required to meet all other applicable requirements in §§ 352.8 and 352.9 to receive voluntary ante-mortem inspection. Specifically, under § 352.8, such establishments will be required to notify the District Manager or designee, in advance, of the hours when ante-mortem inspection is desired and will be required to provide inspection personnel access at all times to every part of the official establishment. Under § 352.9, official establishments that slaughter horses and receive voluntary ante-mortem inspection will be required to provide such information as may be required on forms provided by FSIS.

This interim final rule requires that, if an establishment that wishes to slaughter horses meets the applicable requirements in part 352 Subpart A, FSIS inspection personnel will conduct ante-mortem inspection at the establishment in accordance with § 352.10, and all provisions in part 309 that pertain to horses will continue to apply. Thus, under this interim final rule, official establishments that slaughter horses will continue to receive ante-mortem inspection services consistent with those provided to other official establishments that slaughter livestock. In addition, under this rule, FSIS can deny or withdraw ante-mortem inspection services at horse slaughter establishments for any applicable reason under § 352.6.

Finally, this interim final rule provides that the official marks and devices used to identify Federally-inspected and passed horse carcasses, and parts of horse carcasses, and horse meat food products will continue to be those set forth in § 312.3. Although this interim final rule will provide that official establishments that slaughter horses receive ante-mortem inspection services pursuant to a fee-for-service program governed by the AMA, all other inspection services conducted at such establishments, including post-mortem inspection of horse carcasses, parts thereof, and horse meat food products, will continue to be rendered pursuant to, and in accordance with the requirements of the FMIA. Therefore, it is appropriate that inspected and passed horse carcasses, parts of horse carcasses, and horse meat food products continue to receive the official inspection legend in § 312.3.

As is explained above, in accord with the FY 2006 Appropriations Act, horses slaughtered for use in human food in commerce are an "amenable species" and continue to be subject to applicable provisions in the FMIA. Therefore, all requirements in the regulations authorized by the FMIA that pertain to official establishments that slaughter horses will continue to apply. For example, as is currently required, the slaughter or other preparation of horses will be required to be done in establishments separate from any establishment in which cattle, sheep, swine, or goats are slaughtered or their products prepared (§ 305.2(b)). Official establishments that slaughter horses will also be required to continue to use humane methods for handling and slaughtering horses (§ 352.10).

The FY 2006 Appropriations Act will be in effect until October 1, 2007 (the first day of FY 2007). FSIS will make any necessary changes to this interim final rule based on any applicable legislation in future fiscal years.

### Executive Order 12866 and the Regulatory Flexibility Act

This interim final rule has been determined to be non-significant and was not reviewed by the Office of Management and Budget under Executive Order 12866.

### Need for the Rule

The FY 2006 Appropriations Act for Agriculture, Rural Development, Food and Drug Administration, and Related Agencies prohibits the use of appropriated funds for ante-mortem inspection of horses at official establishments. The FMIA requires that horses undergo examination and inspection before they can enter an official establishment in which they are to be slaughtered. This interim final rule is necessary to allow official establishments that slaughter horses to continue to operate in FY 2006.

### Description of the Affected Industry

There are three small official establishments that slaughter horses in the United States. According to the Pathogen Reduction; Hazard Analysis and Critical Control Point final rule, a small establishment is one that has 10 or more but fewer than 500 employees (61 FR 38819). The establishments that will be affected by this rule slaughter horses to be processed into human food overseas.

### Costs to Industry

To be consistent with the Joint Explanatory Statement and to allow horse slaughter establishments to

continue to operate, this interim final rule provides that these establishments may apply and pay for ante-mortem inspection under the regulations for the voluntary inspection of exotic animals (part 352). According to these regulations, the base time rate is $43.64 per program employee (§ 391.2). FSIS personnel typically conduct ante-mortem inspection for 10 to 15 hours per week at each official establishment that slaughters horses. Each establishment will pay approximately $22,693 ($43.64 * 10 hours * 52 weeks) to $34,039 ($43.64 * 15 hours * 52 weeks) for base time ante-mortem inspection in FY 2006. Therefore, total costs of the rule will range from $68,079 to $102,117 in FY 2006.

### Net Benefits

The benefits of this rule are those revenues that horse slaughter establishments realize by continuing to operate in FY 2006. The costs of this rule are the user fees, estimated above, which official establishments that slaughter horses will have to pay for ante-mortem inspection in order to continue operating in FY 2006. These fees are reasonable, and the establishments should be able to continue to realize a profit after paying these expenses.

### Regulatory Flexibility Analysis

FSIS has examined the economic implications of this interim final rule as required by the Regulatory Flexibility Act (5 U.S.C. 601–012). FSIS has made an initial determination that this rule will not have a significant effect on a substantial number of small entities.

All the establishments affected by this rule qualify as small under the Small Business Administration definition of a small business. FSIS has estimated that each official establishment affected by this proposal would pay approximately $22,693 to $34,039 in FY 2006 for base time ante-mortem inspection. These fees are reasonable, and, therefore, not likely to have a significant negative effect on affected establishments.

### Executive Order 12988

This interim final rule has been reviewed under Executive Order 12988, Civil Justice Reform. This rule: (1) Preempts all State and local laws and regulations that are inconsistent with this rule; (2) has no retroactive effect; and (3) does not require administrative proceedings before parties may file suit in court challenging this rule.

### Need for Immediate Action

In accordance with the Administrative Procedures Act (5 U.S.C. 553), it is the practice of FSIS to offer interested parties the opportunity to comment on proposed regulations. However, adoption of this interim final rule without prior notice and an opportunity to comment is appropriate and necessary following enactment of the FY 2006 Appropriations Act. The FY 2006 Appropriations Act prohibits the use of appropriated funds for ante-mortem inspection of horses, effective 120 days after the date of its enactment (November 10, 2005). Nevertheless, horses slaughtered for human food continue to be subject to all requirements of the FMIA, including the requirements for ante-mortem inspection, post-mortem inspection, and other inspection activities. As is explained above, the FY 2006 Appropriations Act does not preclude the use of appropriated funds for post-mortem inspection and other inspection activities conducted under the FMIA at official establishments that slaughter horses. Furthermore, the Appropriations Act includes no limitation on the Agency's ability to establish a voluntary fee-for-service program for ante-mortem inspection.

This interim final rule must be published in the **Federal Register** and must be effective within 120 days following enactment of the FY 2006 Appropriations Act to ensure continuity of operations at official establishments that slaughter horses. With the passage of the FY 2006 Appropriations Act, if FSIS does not establish a means for official establishments that slaughter horses to obtain ante-mortem inspection, these establishments will not be able to operate and presumably will be forced out of business. This interim final rule is necessary to avoid disruption of operations at official establishments that slaughter horses. Therefore, the Administrator has determined that prior notice and opportunity for public comment are impracticable and contrary to the public interest under 5 U.S.C. 553(b), and that there is good cause under 5 U.S.C. 553(d) for making the action effective as specified herein.

### Paperwork Reduction Act of 1996

There is no new paperwork associated with this action. Under this interim final rule, official establishments that slaughter horses will be required to submit an application for ante-mortem inspection according to § 352.3. The OMB approval number for applications for voluntary inspection is 0583–0082. The interim final rule contains no other paperwork requirements.

FSIS is committed to compliance with the Government Paperwork Elimination Act (GPEA), which requires Government agencies, in general, to provide the public the option of submitting information or transacting business electronically to the maximum extent possible.

### Additional Public Notification

Public awareness of all segments of rulemaking and policy development is important. Consequently, in an effort to ensure that the public and, in particular, minorities, women, and persons with disabilities are aware of this interim final rule, FSIS will announce it on-line through the FSIS Web page located at *http://www.fsis.usda.gov/regulations_&_policies/2006_Interim_&_Final_Rules_Index/index.asp.* The Regulations.gov Web site is the central online rulemaking portal of the United States government. It is being offered as a public service to increase participation in the Federal government's regulatory activities. FSIS participates in Regulations.gov and will accept comments on documents published on the site. The site allows visitors to search by keyword or Department or Agency for rulemakings that allow for public comment. Each entry provides a quick link to a comment form so that visitors can type in their comments and submit them to FSIS. The website is located at *http://www.regulations.gov/.*

FSIS also will make copies of this **Federal Register** publication available through the FSIS Constituent Update, which is used to provide information regarding FSIS policies, procedures, regulations, **Federal Register** notices, FSIS public meetings, recalls, and other types of information that could affect or would be of interest to our constituents and stakeholders. The update is communicated via Listserv, a free e-mail subscription service consisting of industry, trade, and farm groups, consumer interest groups, allied health professionals, scientific professionals, and other individuals who have requested to be included. The update also is available on the FSIS Web page. Through Listserv and the Web page, FSIS is able to provide information to a much broader, more diverse audience.

In addition, FSIS offers an e-mail subscription service which provides an automatic and customized notification when popular pages are updated, including **Federal Register** publications and related documents. This service is available at *http://www.fsis.usda.gov/news_and_events/email_subscription/* and allows FSIS customers to sign up for subscription options across eight categories. Options range from recalls to export information to regulations,

directives and notices. Customers can add or delete subscriptions themselves and have the option to password protect their account.

### List of Subjects in 9 CFR Part 352

Food labeling, Meat inspection, Reporting and recordkeeping requirements.

■ For the reasons discussed in the preamble, FSIS is amending 9 CFR part 352 of the Federal meat inspection regulations as follows:

## PART 352—EXOTIC ANIMALS AND HORSES; VOLUNTARY INSPECTION

■ 1. The heading of part 352 is revised to read as set forth above.

■ 2. The authority citation for part 352 continues to read as follows:

Authority: 7 U.S.C. 1622, 1624; 7 CFR 2.17(g) and (i), 2.55.

■ 3. A new subpart A heading is added before § 352.1 to read as follows:

### Subpart A—Exotic Animals

■ 4. A new Subpart B is added to read as follows:

### Subpart B—Horses

#### § 352.19  Ante-mortem inspection and applicable requirements.

Notwithstanding part 309 of this subchapter, an official establishment that wishes to slaughter horses can apply for voluntary ante-mortem inspection according to § 352.3. Such establishments shall pay the applicable base time, overtime, and holiday rates for ante-mortem inspection in accordance with § 352.5. Such ante-mortem inspection shall be made in pens on the premises of the establishment at which the horses are offered for slaughter in accordance with § 309.1(b), and such establishments also shall comply with all applicable provisions of §§ 352.8 and 352.9. If the establishment complies with all these requirements for ante-mortem inspection, FSIS will conduct ante-mortem inspection at that establishment in accordance with § 352.10, and all other provisions in part 309 of this subchapter that pertain to horses will apply. FSIS may deny or withdraw ante-mortem inspection services at official establishments that slaughter horses for any applicable reason under § 352.6. Official marks and devices to identify inspected and passed horse carcasses and parts of carcasses, or horse meat food products shall be those in § 312.3 of this subchapter.

Done at Washington, DC, on February 2, 2006.

**Barbara J. Masters,**
*Administrator.*
[FR Doc. 06–1101 Filed 2–7–06; 8:45 am]
**BILLING CODE 3410–DM–P**

## FEDERAL RESERVE SYSTEM

### 12 CFR Part 201

[Regulation A]

### Extensions of Credit by Federal Reserve Banks

**AGENCY:** Board of Governors of the Federal Reserve System.
**ACTION:** Final rule.

**SUMMARY:** The Board of Governors of the Federal Reserve System (Board) has adopted final amendments to its Regulation A to reflect the Board's approval of an increase in the primary credit rate at each Federal Reserve Bank. The secondary credit rate at each Reserve Bank automatically increased by formula as a result of the Board's primary credit rate action.

**DATES:** The amendments to part 201 (Regulation A) are effective February 8, 2006. The rate changes for primary and secondary credit were effective on the dates specified in 12 CFR 201.51, as amended.

**FOR FURTHER INFORMATION CONTACT:** Jennifer J. Johnson, Secretary of the Board (202/452–3259); for users of Telecommunication Devices for the Deaf (TDD) only, contact 202/263–4869.

**SUPPLEMENTARY INFORMATION:** The Federal Reserve Banks make primary and secondary credit available to depository institutions as a backup source of funding on a short-term basis, usually overnight. The primary and secondary credit rates are the interest rates that the twelve Federal Reserve Banks charge for extensions of credit under these programs. In accordance with the Federal Reserve Act, the primary and secondary credit rates are established by the boards of directors of the Federal Reserve Banks, subject to the review and determination of the Board.

The Board approved requests by the Reserve Banks to increase by 25 basis points the primary credit rate in effect at each of the twelve Federal Reserve Banks, thereby increasing from 5.25 percent to 5.50 percent the rate that each Reserve Bank charges for extensions of primary credit. As a result of the Board's action on the primary credit rate, the rate that each Reserve Bank charges for extensions of secondary credit automatically increased from 5.75 percent to 6.00 percent under the secondary credit rate formula. The final amendments to Regulation A reflect these rate changes.

The 25-basis-point increase in the primary credit rate was associated with a similar increase in the target for the Federal funds rate (from 4.25 percent to 4.50 percent) approved by the Federal Open Market Committee (Committee) and announced at the same time. A press release announcing these actions indicated that:

Although recent economic data have been uneven, the expansion in economic activity appears solid. Core inflation has stayed relatively low in recent months and longer-term inflation expectations remain contained. Nevertheless, possible increases in resource utilization as well as elevated energy prices have the potential to add to inflation pressures.

The Committee judges that some further policy firming may be needed to keep the risks to the attainment of both sustainable economic growth and price stability roughly in balance. In any event, the Committee will respond to changes in economic prospects as needed to foster these objectives.

### Regulatory Flexibility Act Certification

Pursuant to the Regulatory Flexibility Act (5 U.S.C. 605(b)), the Board certifies that the new primary and secondary credit rates will not have a significantly adverse economic impact on a substantial number of small entities because the final rule does not impose any additional requirements on entities affected by the regulation.

### Administrative Procedure Act

The Board did not follow the provisions of 5 U.S.C. 553(b) relating to notice and public participation in connection with the adoption of these amendments because the Board for good cause determined that delaying implementation of the new primary and secondary credit rates in order to allow notice and public comment would be unnecessary and contrary to the public interest in fostering price stability and sustainable economic growth. For these same reasons, the Board also has not provided 30 days prior notice of the effective date of the rule under section 553(d).

### 12 CFR Chapter II

### List of Subjects in 12 CFR Part 201

Banks, Banking, Federal Reserve System, Reporting and recordkeeping.

### Authority and Issuance

■ For the reasons set forth in the preamble, the Board is amending 12 CFR Chapter II to read as follows: