UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) |
| | ) Civil Action No. 06-0265(CKK) |
| MIKE JOHANNS, Secretary, United States Department of Agriculture, et al., | ) ) ) ) |
| Defendants. | ) ) |

# ADMINISTRATIVE RECORD
# PAGES 150 - 176

# Congress of the United States
## Washington, DC 20515

December 7, 2005

The Honorable Mike Johanns
Secretary of Agriculture
U.S. Department of Agriculture
1400 Independence Avenue
Washington, DC 20250-0003

Dear Mr. Secretary:

We write to you with great concern after being informed that your Department is considering taking action related to horse slaughter that clearly defies Congressional intent.

As you are aware, both the House and Senate overwhelmingly passed identical amendments to the FY 2006 Agriculture Appropriations bill that prevents funding for inspections of horsemeat intended for human consumption. Congressional intent was to prevent horse slaughter for human consumption during FY 2006. We are concerned your Department is attempting to use the 120 day grace period before the amendment takes effect to circumvent Congressional intent and allow horses and/or horsemeat to be inspected on a per-fee basis, thus permitting horse slaughter for human consumption to continue during FY 2006.

To that end, is your Department attempting to allow per-fee inspections? In addition, is it your understanding that without such per-fee inspections, and in light of the restrictions contained in the amendment passed by Congress, the slaughter of horses for human consumption cannot occur during FY 06 once the 120 day grace period is met?

Thank you for time and we appreciate your prompt attention to our concerns. Due to the time sensitive nature of our concerns, we request that you supply your response to our two questions in writing no later than December 21st, 2005.

Sincerely,

0150

TOTAL P.01



United States          Office of the          Washington,
Department of          General               D.C.
Agriculture            Counsel               20250-1400


December 21, 2005


The Honorable Robert C. Byrd
United States Senate
311 Hart Senate Office Building
Washington, D.C. 20510

Dear Senator Byrd:

Thank you for your letter to Secretary of Agriculture Mike Johanns dated December 7, 2005, raising questions regarding steps the Department of Agriculture (USDA) may take after enactment of section 794 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006 (2006 Act), Public Law 109-97, signed by the President on November 10, 2005.

Section 794 provides that, effective 120 days after the date of enactment, no funds made available by the 2006 Act may be used to pay the salaries and expenses of personnel to inspect horses under section 3 of the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 603, or under guidelines issued by USDA pursuant to section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (FAIR Act), 7 U.S.C. § 1901 note. As enacted, section 794 prohibits the use of appropriated funds to pay the salaries and expenses of USDA employees to perform inspections of horses under either section 3 of the FMIA or the guidelines issued under section 903 of the FAIR Act. Therefore, barring further amendment, the prohibition effected by section 794 will become effective 120 days after the date of enactment of the 2006 Act, i.e., on March 10, 2006.

Your letter indicates your view that the Congress, in enacting section 794 of the Act, intended to "prevent horse slaughter for human consumption during FY 2006." In fact, section 794 does not prevent horse slaughter at all. It merely prohibits expenditure of funds provided under the 2006 Act to pay the salaries and expenses of personnel to inspect horses under section 3 of the FMIA, i.e., to conduct ante-mortem inspection of horses presented for slaughter. Importantly, section 794 did not prohibit inspections under section 4 of the FMIA, 21 U.S.C. § 604, under which USDA is required to provide post-mortem inspection of eligible species presented for slaughter thereunder.

It is also important to note that language contained in the statement of managers on the 2006 Act indicates the Congress clearly understands that USDA is required to provide for the inspection of meat intended for human consumption:

> It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported). The conferees recognize that the funding

The Honorable Robert C. Byrd
Page 2

limitation in Section 794 prohibits the use of appropriated funds *only* for payment
of salaries and expenses of personnel to inspect horses.

H. Rept. No. 109-255, p. 107. (Emphasis added.) Nonetheless, assuming section 794 becomes
effective as scheduled on March 10, 2006, USDA will in fact comply with the prohibition it
levies.

Under the Agricultural Marketing Act of 1946, 7 U.S.C. § 1621 *et seq.* (AMA), however, USDA
is also "directed and authorized" to provide, when requested, inspection of eligible species on a
fee-for-service basis. *See* 7 U.S.C. § 1622(h). Such fee-for-service inspections have long been
provided by FSIS inspection personnel for other species not eligible for inspection under the
FMIA. Of course, the 2006 Act did nothing to alter or prohibit USDA's provision of inspection
services under the AMA. Therefore, notwithstanding the prohibition on expenditure of funds
contained in section 794 of the 2006 Act, USDA is authorized to provide fee-for-service
inspection of horses presented for slaughter if such inspection service is requested. In fact,
USDA has received and is considering such a request.

I hope that this explanation is sufficient to respond to your inquiry. Similar letters are also being
sent to Congressmen John E. Sweeney, John M. Spratt, Jr., and Ed Whitfield.

Sincerely,

James Michael Kelly
Acting General Counsel

0152



United States
Department of
Agriculture

Office of the
General
Counsel

Washington,
D.C.
20250-1400

December 21, 2005

The Honorable John M. Spratt, Jr.
U.S. House of Representatives
1401 Longworth House Office Building
Washington, D.C.   20515

Dear Congressman Spratt:

Thank you for your letter to Secretary of Agriculture Mike Johanns dated December 7, 2005, raising questions regarding steps the Department of Agriculture (USDA) may take after enactment of section 794 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006 (2006 Act), Public Law 109-97, signed by the President on November 10, 2005.

Section 794 provides that, effective 120 days after the date of enactment, no funds made available by the 2006 Act may be used to pay the salaries and expenses of personnel to inspect horses under section 3 of the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 603, or under guidelines issued by USDA pursuant to section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (FAIR Act), 7 U.S.C. § 1901 note. As enacted, section 794 prohibits the use of appropriated funds to pay the salaries and expenses of USDA employees to perform inspections of horses under either section 3 of the FMIA or the guidelines issued under section 903 of the FAIR Act. Therefore, barring further amendment, the prohibition effected by section 794 will become effective 120 days after the date of enactment of the 2006 Act, *i.e.*, on March 10, 2006.

Your letter indicates your view that the Congress, in enacting section 794 of the Act, intended to "prevent horse slaughter for human consumption during FY 2006." In fact, section 794 does not prevent horse slaughter at all. It merely prohibits expenditure of funds provided under the 2006 Act to pay the salaries and expenses of personnel to inspect horses under section 3 of the FMIA, *i.e.*, to conduct ante-mortem inspection of horses presented for slaughter. Importantly, section 794 did not prohibit inspections under section 4 of the FMIA, 21 U.S.C. § 604, under which USDA is required to provide post-mortem inspection of eligible species presented for slaughter thereunder.

It is also important to note that language contained in the statement of managers on the 2006 Act indicates the Congress clearly understands that USDA is required to provide for the inspection of meat intended for human consumption:

> It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported). The conferees recognize that the funding

The Honorable John M. Spratt, Jr.
Page 2

limitation in Section 794 prohibits the use of appropriated funds *only* for payment of salaries and expenses of personnel to inspect horses.

H. Rept. No. 109-255, p. 107. (Emphasis added.) Nonetheless, assuming section 794 becomes effective as scheduled on March 10, 2006, USDA will in fact comply with the prohibition it levies.

Under the Agricultural Marketing Act of 1946, 7 U.S.C. § 1621 *et seq.* (AMA), however, USDA is also "directed and authorized" to provide, when requested, inspection of eligible species on a fee-for-service basis. *See* 7 U.S.C. § 1622(h). Such fee-for-service inspections have long been provided by FSIS inspection personnel for other species not eligible for inspection under the FMIA. Of course, the 2006 Act did nothing to alter or prohibit USDA's provision of inspection services under the AMA. Therefore, notwithstanding the prohibition on expenditure of funds contained in section 794 of the 2006 Act, USDA is authorized to provide fee-for-service inspection of horses presented for slaughter if such inspection service is requested. In fact, USDA has received and is considering such a request.

I hope that this explanation is sufficient to respond to your inquiry. Similar letters are also being sent to Senator Robert C. Byrd and to Congressmen John E. Sweeney and Ed Whitfield.

Sincerely,

James Michael Kelly
Acting General Counsel

 United States        Office of the        Washington,
Department of        General            D.C.
Agriculture          Counsel            20250-1400

December 21, 2005

The Honorable Ed Whitfield
U.S. House of Representatives
301 Cannon House Office Building
Washington, D.C. 20515

Dear Congressman Whitfield:

Thank you for your letter to Secretary of Agriculture Mike Johanns dated December 7, 2005,
raising questions regarding steps the Department of Agriculture (USDA) may take after
enactment of section 794 of the Agriculture, Rural Development, Food and Drug Administration,
and Related Agencies Appropriations Act, 2006 (2006 Act), Public Law 109-97, signed by the
President on November 10, 2005.

Section 794 provides that, effective 120 days after the date of enactment, no funds made
available by the 2006 Act may be used to pay the salaries and expenses of personnel to inspect
horses under section 3 of the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 603, or under
guidelines issued by USDA pursuant to section 903 of the Federal Agriculture Improvement and
Reform Act of 1996 (FAIR Act), 7 U.S.C. § 1901 note. As enacted, section 794 prohibits the use
of appropriated funds to pay the salaries and expenses of USDA employees to perform
inspections of horses under either section 3 of the FMIA or the guidelines issued under section
903 of the FAIR Act. Therefore, barring further amendment, the prohibition effected by section
794 will become effective 120 days after the date of enactment of the 2006 Act, i.e., on
March 10, 2006.

Your letter indicates your view that the Congress, in enacting section 794 of the Act, intended to
"prevent horse slaughter for human consumption during FY 2006." In fact, section 794 does not
prevent horse slaughter at all. It merely prohibits expenditure of funds provided under the 2006
Act to pay the salaries and expenses of personnel to inspect horses under section 3 of the FMIA,
i.e., to conduct ante-mortem inspection of horses presented for slaughter. Importantly, section
794 did not prohibit inspections under section 4 of the FMIA, 21 U.S.C. § 604, under which
USDA is required to provide post-mortem inspection of eligible species presented for slaughter
thereunder.

It is also important to note that language contained in the statement of managers on the 2006 Act
indicates the Congress clearly understands that USDA is required to provide for the inspection of
meat intended for human consumption:

    It is the understanding of the conferees that the Department is obliged under
    existing statutes to provide for the inspection of meat intended for human
    consumption (domestic and exported). The conferees recognize that the funding

The Honorable Ed Whitfield
Page 2

limitation in Section 794 prohibits the use of appropriated funds *only* for payment of salaries and expenses of personnel to inspect horses.

H. Rept. No. 109-255, p. 107. (Emphasis added.) Nonetheless, assuming section 794 becomes effective as scheduled on March 10, 2006, USDA will in fact comply with the prohibition it levies.

Under the Agricultural Marketing Act of 1946, 7 U.S.C. § 1621 *et seq.* (AMA), however, USDA is also "directed and authorized" to provide, when requested, inspection of eligible species on a fee-for-service basis. *See* 7 U.S.C. § 1622(h). Such fee-for-service inspections have long been provided by FSIS inspection personnel for other species not eligible for inspection under the FMIA. Of course, the 2006 Act did nothing to alter or prohibit USDA's provision of inspection services under the AMA. Therefore, notwithstanding the prohibition on expenditure of funds contained in section 794 of the 2006 Act, USDA is authorized to provide fee-for-service inspection of horses presented for slaughter if such inspection service is requested. In fact, USDA has received and is considering such a request.

I hope that this explanation is sufficient to respond to your inquiry. Similar letters are also being sent to Senator Robert C. Byrd and to Congressmen John M. Spratt, Jr., and John E. Sweeney.

Sincerely,

James Michael Kelly
Acting General Counsel

0156

December 21, 2005

The Honorable John E. Sweeney
U.S. House of Representatives
Washington, D.C.  20515

Dear Mr. Sweeney:

Thank you for your letter to Secretary of Agriculture Mike Johanns dated December 7, 2005, raising questions regarding steps the Department of Agriculture (USDA) may take after enactment of section 794 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006 (2006 Act), Public Law 109-97, signed by the President on November 10, 2005.

Section 794 provides that, effective 120 days after the date of enactment, no funds made available by the 2006 Act may be used to pay the salaries and expenses of personnel to inspect horses under section 3 of the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 603, or under guidelines issued by USDA pursuant to section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (FAIR Act), 7 U.S.C. § 1901 note.  As enacted, section 794 prohibits the use of appropriated funds to pay the salaries and expenses of USDA employees to perform inspections of horses under either section 3 of the FMIA or the guidelines issued under section 903 of the FAIR Act.  Therefore, barring further amendment, the prohibition effected by section 794 will become effective 120 days after the date of enactment of the 2006 Act, *i.e.*, on March 10, 2006.

Your letter indicates your view that the Congress, in enacting section 794 of the Act, intended to "prevent horse slaughter for human consumption during FY 2006."  In fact, section 794 does not prevent horse slaughter at all.  It merely prohibits expenditure of funds provided under the 2006 Act to pay the salaries and expenses of personnel to inspect horses under section 3 of the FMIA, *i.e.*, to conduct ante-mortem inspection of horses presented for slaughter.  Importantly, section 794 did not prohibit inspections under section 4 of the FMIA, 21 U.S.C. § 604, under which USDA is required to provide post-mortem inspection of eligible species presented for slaughter thereunder.

It is also important to note that language contained in the statement of managers on the 2006 Act indicates the Congress clearly understands that USDA is required to provide for the inspection of meat intended for human consumption:

> It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported).  The conferees recognize that the funding

2

limitation in Section 794 prohibits the use of appropriated funds *only* for payment of salaries and expenses of personnel to inspect horses.

H. Rept. No. 109-255, p. 107. (Emphasis added.) Nonetheless, assuming section 794 becomes effective as scheduled on March 10, 2006, USDA will in fact comply with the prohibition it levies.

Under the Agricultural Marketing Act of 1946, 7 U.S.C. § 1621 *et seq.* (AMA), however, USDA is also "directed and authorized" to provide, when requested, inspection of eligible species on a fee-for-service basis. *See* 7 U.S.C. § 1622(h). Such fee-for-service inspections have long been provided by FSIS inspection personnel for other species not eligible for inspection under the FMIA. Of course, the 2006 Act did nothing to alter or prohibit USDA's provision of inspection services under the AMA. Therefore, notwithstanding the prohibition on expenditure of funds contained in section 794 of the 2006 Act, USDA is authorized to provide fee-for-service inspection of horses presented for slaughter if such inspection service is requested. In fact, USDA has received and is considering such a request.

I hope that this explanation is sufficient to respond to your inquiry. Similar letters are also being sent to Senator Robert C. Byrd and to Representatives John M. Spratt, Jr., and Edward Whitfield.

Sincerely,


James Michael Kelly
Acting General Counsel

# Congress of the United States
## Washington, DC 20515

January 17, 2006

JAN 2 0 2006

By Overnight Mail

The Honorable Mike Johanns
Secretary of Agriculture
United States Department of Agriculture
1400 Independence Avenue, S.W.
Washington, DC 20250

Dear Secretary Johanns:

We are writing in response to United States Department of Agriculture's December 21, 2005 correspondence concerning your agency's plans for implementation of section 794 of the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006, Public Law 109-97 (2006 Amendment). We were shocked and deeply upset to learn that the agency has apparently decided it need not carry out Congress' clearly expressed intent to halt horse slaughter for human consumption in FY 2006, but, rather, intends to engage in a complex regulatory maneuver to willfully circumvent legislation that was passed by an overwhelming majority in both the House and the Senate.

As clearly stated in a letter by the Amendment's sponsors, dated *December 7, 2005*, Congress intended section 794 of the 2006 Act to remove funding for horse slaughter inspection under the Federal Meat Inspection Act, and thus "*prevent* horse slaughter for human consumption during FY 2006." In a gross misrepresentation of this clearly expressed intent, your acting general counsel has suggested that "section 794 does not prevent horse slaughter at all," and has shared the agency's plan to continue horse slaughter inspection under a "fee-for-service" arrangement pursuant to a convoluted interpretation of an entirely different federal law. We are simply astounded by these statements in light of the bipartisan and overwhelming expression of Congress' intent to *stop*, and not just alter the funding mechanism for, horse slaughter for human consumption.

Each year an estimated 90,000 U.S. horses are slaughtered and processed for human consumption in foreign countries. To end this practice, Congress, with widespread public support, passed the 2006 Amendment by a landslide vote in both the House and the Senate. Section 794 of the final 2006 Act prohibited USDA from using congressionally appropriated funds to pay for federally-mandated inspection of horses prior to slaughter.

Instead of deferring to Congress' intent, the agency appears poised to continue horse slaughter inspections under a different law. This action is a direct defiance of Congressional intent. Every statement of record regarding this amendment reflects the directive mandated by Congress. After introducing the Amendment, Senator John Ensign declared that "[t]he goal of our amendment is simple: *to end the slaughter of America's horses* for human consumption

overseas." Senator Robert C. Byrd reiterated the purpose of the Amendment, declaring unequivocally that he had joined with Senator Ensign and "offered *an amendment to stop the slaughter of horses for human consumption* by preventing taxpayer dollars from being used to inspect the horses intended for slaughter.

The House shared this understanding. Representative Spratt, a sponsor of the Amendment, squarely presented the matter to be voted on: "What is the effect of this amendment? This amendment in simple terms will stop the slaughter [f]or human consumption of horses. . . . [Their] brutal slaughter . . . is the kind of slaughter that this bill *will prohibit*." Even congressional opponents of the bill – who presumably represent the interests of the petitioners here – predicted that the Amendment would "prohibit USDA from inspecting horses."

To justify its decision to willfully ignore this clear legislative history, USDA cites an isolated statement from the Conference Report accompanying the Amendment that states:

> It is the understanding of the conferees that the Department is obliged under existing statutes to provide for the inspection of meat intended for human consumption (domestic and exported). The conferees recognize that the funding limitation in Section 794 prohibits the use of appropriated funds only for payment of salaries or expenses of personnel to inspect horses.

The agency apparently believes that this isolated and cryptic snippet somehow overrides the overwhelming documented evidence that Congress intended to prevent horse slaughter for human consumption. Such an interpretation of this ambiguous statement – which would render the amendment meaningless – is absurd on its face, and is fundamentally insufficient to justify the agency's attempt to circumvent the clear intent of our Amendment.

Moreover, as the USDA is well-aware, for many years Congress has used language similar to that found in section 794 of the FY 2006 Appropriations Act to effectuate congressional policy on a variety of subjects ("*none of the funds made available in this Act may be used*"). To our knowledge, these mandates are routinely carried out. Accordingly, we can only conclude that the USDA has special, and as of yet undisclosed, reasons for attempting to circumvent this particular de-funding mandate. We therefore request that you immediately provide our offices with copies all agency documents concerning its actions in this matter -- including any and all contacts and correspondence with industry representatives -- so that we can ensure that USDA is carrying out its duly assigned role of *implementing* congressional policy, rather than attempting to *determine or circumvent* such policy for itself.

We understand that the USDA is considering implementing this without prior public notice and comment rulemaking. As should be plainly apparent to the agency by now, the issue of horse slaughter is of significant national interest, and each and every one of our constituents is entitled to prior notice and a full opportunity to comment on the USDA's proposal *before* it is implemented.

Therefore, should USDA continue the course of directly violating Congressional intent, we request that any new rule or regulation promulgated to allow "fee-for-service" inspections of

2

horses intended for human consumption not be in done in an expedited manner. Furthermore, we also request that you detail the exact procedure for determining who will be required to pay for such inspections, how such costs will be determined, what inspections will require payment, will a contract need to be signed for such service, how do you plan to insure 21 U.S.C. § 331 is properly enforced, etc.

As required by the 2006 Amendment, the agency must cease inspection of horses for slaughter. Failure to do so constitutes willful disregard of clear Congressional intent on the part of USDA. The agency has absolutely no authority to circumvent a Congressional mandate and effectively rewrite an unambiguous law at the request of the horse slaughter industry. We would appreciate your prompt response on this important matter.

Sincerely,

Rep. John Sweeney
Member of Congress

Rep. Ed Whitfield
Member of Congress

Rep. John Spratt, Jr.
Member of Congress

Rep. Nick Rahall, II
Member of Congress

Senator Trent Lott
Member of Congress

Senator Jim DeMint
Member of Congress

Senator Diane Feinstein
Member of Congress

Senator Robert Byrd
Member of Congress

Senator Evan Bayh
Member of Congress

Rep. Peter King
Member of Congress

3

0161

Rep. Christopher Shays
Member of Congress

Rep. Mike Ferguson
Member of Congress

Rep. Rob Simmons
Member of Congress

Rep. Katherine Harris
Member of Congress

Rep. Mark Foley
Member of Congress

Rep. Robert Wexler
Member of Congress

Rep. George Miller
Member of Congress

Rep. Chris Van Hollen
Member of Congress

Rep. Dale Kildee
Member of Congress

Rep. Richard Neal
Member of Congress

Rep. Thaddeus McCotter
Member of Congress

Rep. Barbara Lee
Member of Congress

Rep. Stephen Lynch
Member of Congress

Rep. Jim McGovern
Member of Congress

Rep. Doris Matsui
Member of Congress

Rep. Frank Pallone
Member of Congress

0162

Rep. Jo Ann Davis
Member of Congress

Rep. Donald Payne
Member of Congress

Rep. Raul Grijalva
Member of Congress

Rep. Walter Jones
Member of Congress

Rep. Pete Stark
Member of Congress

Rep. Gwen Moore
Member of Congress

Rep. Henry Brown, Jr.
Member of Congress

Rep. Rush Holt
Member of Congress

Rep. Rick Larsen
Member of Congress

Rep. Jim Gerlach
Member of Congress

Rep. Tom Lantos
Member of Congress

Rep. Carolyn Maloney
Member of Congress

Rep. Janice Schakowsky
Member of Congress

Senator Mary Landrieu
Member of Congress

0163

From: Cornett, Julie <Julie.Cornett@fsis.usda.gov>
To: Almanza, Al <Al.Almanza@fsis.usda.gov>; Mackey, Richard <Richard.Mackey@fsis.usda.gov>
CC: Cornett, Julie <Julie.Cornett@fsis.usda.gov>; Arrington, Isabel <Isabel.Arrington@fsis.usda.gov>
Sent: Mon Oct 31 10:24:13 2005
Subject: FW: horse slaughter establishments

Hi Al and Richard;
I have just received this message from OPPED HQ regarding horse slaughter operations.  Would you be able to assign someone to respond to the questions posed below?  Please let me know if there are questions.  Thanks, Julie

J.A.Cornett, DVM, MPH
Sr. Staff Officer, Public Health Veterinarian
Technical Assistance/Correlation Division
Technical Service Center, Omaha, NE
Ph: 402-221-7400/800-233-3935
email: julie.cornett@fsis.usda.gov

-----Original Message-----
From: Mayberry, Tamara
Sent: Monday, October 31, 2005 6:38 PM
To: Mackey, Richard; Cornett, Julie; Edelstein, Rachel
Subject: Re: horse slaughter establishments

Hi, Cavel International,( Est. 15849 E), is the horse slaughter establishment in the
Chicago District. It is classified as a "small" establishment. The establishment is gated
and therefore all the animals receive antemortem inspection and are held in holding pens
on the official establishment premises prior to slaughter. There are 2 USDA, FSIS program
emplyees assigned to this establishment. 1 PHV and 1 GS-9 CSI. The establishment would
have to continue to pay for overtime, holiday's, etc.

Tamara Mayberry Davis, DVM
Deputy District Manager
Chicago District Office

--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Mackey, Richard <Richard.Mackey@fsis.usda.gov>
To: Mayberry, Tamara <Tamara.Mayberry@fsis.usda.gov>
Sent: Mon Oct 31 11:51:10 2005
Subject: Fw: horse slaughter establishments

As discussed.
--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Cornett, Julie <Julie.Cornett@fsis.usda.gov>
To: Almanza, Al <Al.Almanza@fsis.usda.gov>; Mackey, Richard <Richard.Mackey@fsis.usda.gov>
CC: Cornett, Julie <Julie.Cornett@fsis.usda.gov>; Arrington, Isabel
<Isabel.Arrington@fsis.usda.gov>
Sent: Mon Oct 31 10:24:13 2005
Subject: FW: horse slaughter establishments

Hi Al and Richard;
I have just received this message from OPPED HQ regarding horse slaughter operations.
Would you be able to assign someone to respond to the questions posed below?  Please let
me know if there are questions.  Thanks, Julie

J.A.Cornett, DVM, MPH
Sr. Staff Officer, Public Health Veterinarian
Technical Assistance/Correlation Division
Technical Service Center, Omaha, NE
Ph: 402-221-7400/800-233-3935
email: julie.cornett@fsis.usda.gov

1

0165

-----Original Message-----
From: Edelstein, Rachel
Sent: Monday, October 31, 2005 9:11 AM
To: Arrington, Isabel; Ragland, Robert; Cornett, Julie
Cc: Derfler, Philip; Dickey, Lynn
Subject: horse slaughter establishments

There is a bill in Congress (passed the House) to prohibit FSIS funds to be used for ante mortem inspection of horses.  Therefore, FSIS will propose that official establishments that slaughter horses apply for voluntary ante mortem inspection under 9 CFR 352.  FSIS will have to propose this rule quickly.  Phil Derfler suggested I check with you on some questions I have related to this rule and the required economic analysis.

1.  I understand there are three establishments that slaughter horses:  two in TX and one in IL.  What size are these establishments?  Are they very small, small, or large? (based on HACCP definitions).

2.  If they go under voluntary ante mortem inspection, would these establishments continue to hold horses in pens on the premises of the establishment (as is required under 9 CFR 309.1?)

3. FSIS will have to estimate the expenses these horse slaughter establishments will incur should they go under voluntary inspection.  Therefore, do you know about how many program employees typically work in these establishments, for purposes of estimating the base time rates (391.2) that would apply to these establishments under voluntary ante mortem inspection?  A reasonable estimate would be fine.  Would these horse slaughter establishments pay fees for overtime and holidays, laboratory services, or laboratory accreditation (as in 391.3, 391.4, and 391.5)?

Thanks for your help!  Rachel 703/780-2252

0166

## Edelstein, Rachel

| | |
|---|---|
| **From:** | Pena, Roy |
| **Sent:** | Tuesday, November 01, 2005 1:57 PM |
| **To:** | Cornett, Julie |
| **Cc:** | Almanza, Al; McKean, Jennifer; Cannon, Gary; Parsley, Leonard; Edelstein, Rachel; Pena, Roy |
| **Subject:** | FW: horse slaughter establishments |

**Importance:**      High


Texas has two small plants that slaughter horses, Est. 07041-E and Est. 02018-E.

Both establishments will continue to hold horses in pens on the premises.

Using the formula of 2088 hours per year, $42.64 Base rate, $50.04 Overtime rate, and $61.80 Laboratory rate I have calculated the average cost for voluntary inspection for each establishment.

Est. 02018 has one VMO, this plant works 10 to 12 hours per day during the week and 7 to 9 hours on Saturday, they work every Saturday, and we collect on average, one USDA sample per day. The average cost would be a total of $160,000.00 for one year.

Est.07041-E has one SVMO and two inspectors. This plant works 10 to 12 hours per day during the week and 6 to 9 hours on Saturday, they work Saturdays about 5 months per year, and we collect on average, two USDA samples per day. The average cost would be a total of $537,023 for one year. If you have any questions, give me a call.


Roy G. Pena
District Analyst
Dallas District  Office
1100 Commerce St Room 516
Dallas, Texas  75242
Phone (214) 767-9116 Extension 601
Fax (214) 767-8439

-----Original Message-----
From: Al.Almanza@fsis.usda.gov [mailto:Al.Almanza@fsis.usda.gov]
Sent: Monday, October 31, 2005 3:36 PM
To: Roy.Pena@fsis.usda.gov
Subject: Fw: horse slaughter establishments
Importance: High

Can you answer these questions?
------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Cornett, Julie <Julie.Cornett@fsis.usda.gov>
To: Almanza, Al <Al.Almanza@fsis.usda.gov>; Mackey, Richard <Richard.Mackey@fsis.usda.gov>
CC: Cornett, Julie <Julie.Cornett@fsis.usda.gov>; Arrington, Isabel
<Isabel.Arrington@fsis.usda.gov>
Sent: Mon Oct 31 10:24:13 2005
Subject: FW: horse slaughter establishments

Hi Al and Richard;
I have just received this message from OPPED HQ regarding horse slaughter operations. Would you be able to assign someone to respond to the questions posed below?  Please let me know if there are questions.  Thanks, Julie

**Edelstein, Rachel**

| | |
|---|---|
| **From:** | Pena, Roy |
| **Sent:** | Wednesday, November 02, 2005 3:51 PM |
| **To:** | Edelstein, Rachel |
| **Subject:** | RE: horse slaughter establishments |

Only the PHV or VMO perform ante-mortem. Est. 2018-E will have 10 or less hours and Est. 7041-E will have 15 or less hours.

# Roy G. Pena

*District Analyst*
*Dallas District Office*
*1100 Commerce St Room 516*
*Dallas, Texas 75242*
*Phone (214) 767-9116 Extension 601*
*Fax (214) 767-8439*

-----Original Message-----
**From:** Edelstein, Rachel
**Sent:** Wednesday, November 02, 2005 11:05 AM
**To:** Cornett, Julie; Mayberry, Tamara; Pena, Roy
**Cc:** Derfler, Philip; Dickey, Lynn
**Subject:** horse slaughter establishments

Thank you very much for the useful information you provided about horse slaughter establishments. I have some follow up questions. The overtime and laboratory services that the horse slaughter establishments would incur would be based on current regulations, so we don't have to estimate those. We only have to estimate the costs the establishments would have to pay for ante mortem inspection. These horse slaughter establishments won't incur costs for 40 hours a week of ante mortem inspection, would they? I'm assuming ante mortem inspection would take less time (less than 40 hours per week). Could we estimate that ante mortem inspection would take place during 20 hours/week? Or less than that—10, 15 hours?

Thanks for providing information on the number of program employees at each establishment. Do all program employees at the horse slaughter establishments provide ante mortem inspection? Or would only the PHV or VMOs provide ante mortem inspection?

Thanks for your help! Rachel (at 202/720-0399 today)

0168

**Edelstein, Rachel**

| | |
|---|---|
| **From:** | Larsen, Lynn |
| **Sent:** | Wednesday, November 16, 2005 3:31 PM |
| **To:** | Edelstein, Rachel |
| **Cc:** | Haxton, Wanda |
| **Subject:** | RE: FSIS lab tests at horse slaughter establishments |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

OK, I understand where Loren is coming from (and Alice Thaler as well), and how I may have mis-interpreted "Wanda's" fees proposal.

The voluntary inspection is covered by the base/overtime/holiday fee structure.  However, IF we take a sample for analysis, that is no longer voluntary and the cost of the analysis is built into the overhead of the base/overtime/holiday fee. That is the part I didn't understand.  I had been thinking that we would charge separately for the analysis because the sample was under a "voluntary" process.

The lab services fee would be what we would charge if an establishment took its own samples and wished to use our FSIS labs instead of a commercial lab.

SO, I reverse myself.  All analyses under the "voluntary" inspection in your proposal would be covered by the base/overtime/holiday fee.

Sorry for the confusion.  This was a learning experience for me.

Lynn

-----Original Message-----
**From:** Larsen, Lynn
**Sent:** Wednesday, November 16, 2005 3:11 PM
**To:** Edelstein, Rachel
**Cc:** Haxton, Wanda
**Subject:** RE: FSIS lab tests at horse slaughter establishments

I don't know what is charged for exotics.  I was responding with respect to the voluntary inspection and laboratory service fees in the document Wanda has been trying to get through the system.  If laboratory analyses were covered as part of inspection overhead, then there would be no reason to even compute a laboratory service fee and include it in Wanda's regulation.  So I don't understand Loren's response.  I tried to call so that I could better understand why he said what he did – but he was in a meeting.

As I look again at Loren's response and your question I see that we are still having confusion over "sampling" and "sample

1

0169

analysis." As Loren states in his 1:53pm response below, "sampling" is included in the hourly rate. That is exactly what I said in my 2:01pm email to you. However, in Loren's 12:42pm email below, he addresses analysis as being covered by inspector time charges – so I see him as being inconsistent in his reply. I don't know that I can get a clarification from him to you today, but I will try.


Lynn


-----Original Message-----
**From:** Edelstein, Rachel
**Sent:** Wednesday, November 16, 2005 2:09 PM
**To:** Larsen, Lynn
**Cc:** Haxton, Wanda
**Subject:** FW: FSIS lab tests at horse slaughter establishments



Please see the message below. Loren thinks these costs are NOT assessed to exotic animal establishments, so they would not be assessed to horses. Is Loren's understanding different from your understanding?



_____

**From:** Lange, Loren
**Sent:** Wed 11/16/2005 1:53 PM
**To:** Edelstein, Rachel; Derfler, Philip
**Subject:** RE: FSIS lab tests at horse slaughter establishments

Yes that is my understanding.   Sampling is included in the price per hour.



-----Original Message-----
**From:** Edelstein, Rachel
**Sent:** Wednesday, November 16, 2005 1:17 PM
**To:** Lange, Loren; Derfler, Philip
**Subject:** RE: FSIS lab tests at horse slaughter establishments



Exotic animals under voluntary inspection do not pay separate lab costs for standard FSIS testing and sampling then. Do I understand that correctly?



_____

**From:** Lange, Loren
**Sent:** Wed 11/16/2005 12:42 PM
**To:** Edelstein, Rachel; Derfler, Philip
**Subject:** RE: FSIS lab tests at horse slaughter establishments

I had forgotten that laboratory  analyses are part of the overhead in the inspector cost per hour.  Sorry

0170

-----Original Message-----
**From:** Edelstein, Rachel
**Sent:** Wednesday, November 16, 2005 7:23 AM
**To:** Lange, Loren; Derfler, Philip
**Subject:** RE: FSIS lab tests at horse slaughter establishments


numbers 15849, 2018, and 7041


_____

**From:** Lange, Loren
**Sent:** Wed 11/16/2005 7:20 AM
**To:** Derfler, Philip; Edelstein, Rachel
**Subject:** RE: FSIS lab tests at horse slaughter establishments

Do you have the three plant numbers handy????


-----Original Message-----
**From:** Derfler, Philip
**Sent:** Wednesday, November 16, 2005 7:01 AM
**To:** Edelstein, Rachel; Lange, Loren
**Subject:** RE: FSIS lab tests at horse slaughter establishments


Loren--To meet deadlines, we need this asap, like today.  I am sorry, but this is being imposed by the Under Secretary.

   -----Original Message-----
   **From:** Edelstein, Rachel
   **Sent:** Tuesday, November 15, 2005 8:58 AM
   **To:** Lange, Loren
   **Cc:** Derfler, Philip
   **Subject:** FSIS lab tests at horse slaughter establishments

Loren--Yesterday, the Under Secretary said that FSIS has to propose a rule that would require horse slaughter establishments to pay for inspection.  I can estimate the costs of base time inspection.  But I need some additional information to estimate lab fees.  According to the field, FSIS conducts residue tests and diagnostic pathology sampling on horses.  Phil recommended I contact you for information on this testing.  Can you tell me how many hours and how many program employees are needed to conduct this testing on horses each year?  Can you estimate these annual costs per establishment?  There are three horse slaughter establishments.  We need to estimate these costs based on 9 CFR 391.4 ($61.80 per hour per program employee).  Thanks, Rachel (703/780-2252)

0171

# Edelstein, Rachel

| | |
|---|---|
| **From:** | Mayberry, Tamara |
| **Sent:** | Friday, November 18, 2005 4:35 PM |
| **To:** | Edelstein, Rachel |
| **Subject:** | RE: costs of inspection for horse establishments |

OK thanks.

-----Original Message-----
**From:** Edelstein, Rachel
**Sent:** Friday, November 18, 2005 3:34 PM
**To:** Mayberry, Tamara
**Subject:** RE: costs of inspection for horse establishments

According to the regs, the fee for base time voluntary inspection is $43.64 per program employee per hour (§ 391.2). Whether the inspector conducts the inspection or the PHV conducts the inspection, there doesn't appear to be any difference in the rate charged to the establishment.

**From:** Mayberry, Tamara
**Sent:** Fri 11/18/2005 4:27 PM
**To:** Edelstein, Rachel
**Subject:** RE: costs of inspection for horse establishments

Are the rates listed based on an hourly rate for an inspector or for a PHV??

-----Original Message-----
**From:** Edelstein, Rachel
**Sent:** Friday, November 18, 2005 3:24 PM
**To:** Mayberry, Tamara; Cornett, Julie; Pena, Roy
**Cc:** Derfler, Philip; Dickey, Lynn; Mackey, Richard
**Subject:** RE: costs of inspection for horse establishments

Thanks Tamara. Your response is consistent with the Dallas District. I'll leave the costs as they are.

**From:** Mayberry, Tamara
**Sent:** Fri 11/18/2005 4:21 PM
**To:** Edelstein, Rachel; Cornett, Julie; Pena, Roy
**Cc:** Derfler, Philip; Dickey, Lynn; Mackey, Richard
**Subject:** RE: costs of inspection for horse establishments

In the Chicago District, at Est. 15847 E (Cavel International), the PHV is on premises 100 % of the time and performs all of the antemortem inspection. 15 hours per week minimum. The GS-9 inspector only verifies the processing inspection. Hope this helps.

Tamara

-----Original Message-----
**From:** Edelstein, Rachel

0172

2/14/2006

**Sent:** Friday, November 18, 2005 1:54 PM
**To:** Edelstein, Rachel; Cornett, Julie; Pena, Roy; Mayberry, Tamara
**Cc:** Derfler, Philip; Dickey, Lynn
**Subject:** RE: costs of inspection for horse establishments

FSIS is now moving forward with a regulation to charge establishments fees for ante-mortem inspection only. Post-mortem inspection and other inspection services authorized by the FMIA would continued to be paid for with appropriated funds.

I estimated the costs of ante-mortem inspection as follows: Each establishment will pay approximately $22,693 ($43.64 * 10 hours * 52 weeks * 1 FSIS employee) to $34,039 ($43.64 * 15 hours * 52 weeks *1 FSIS employee) for base time ante-mortem inspection in FY 2006.

When Barb Masters reviewed the workplan, she said that the PHV determines disposition but that inspectors actually conduct ante-mortem inspection. Based on that information, do I need to raise the estimates for ante-mortem inspection? Or would one employee at a time be conducting ante-mortem inspection?

Thanks for your help, Rachel 703/780-2252 today.

**From:** Porretta, Mary
**Sent:** Tue 1/3/2006 11:03 AM
**To:** Edelstein, Rachel
**Subject:** horse slaughter petition

Hi Rachel—I have a message on my voice mail from Richard Garcia of Beltex asking about the status of the horse slaughter petition and I need to figure out what I should tell him. Can you give me a cal when you get a chance? I am in the office. Thanks.

Mary Porretta

Regulations and Petitions Policy Staff

Food Safety and Inspection Service

Washington, DC

Ph: (202) 690-2282

mary.porretta@fsis.usda.gov

SHELLEY BERKLEY
1ST DISTRICT, NEVADA

438 CANNON HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-5965
FAX (202) 225-3119
shelley.berkley@mail.house.gov

2340 PASEO DEL PRADO
SUITE D106
LAS VEGAS, NEVADA 89102
(702) 220-9823
FAX: (702) 220-9841
www.house.gov/berkley

# Congress of the United States
## House of Representatives
### Washington, DC 20515–2801

January 31, 2006

COMMITTEES:
INTERNATIONAL RELATIONS
SUBCOMMITTEE ON
EUROPE AND EMERGING THREATS
SUBCOMMITTEE ON
MIDDLE EAST AND CENTRAL ASIA
TRANSPORTATION AND
INFRASTRUCTURE
SUBCOMMITTEE ON AVIATION
SUBCOMMITTEE ON
HIGHWAYS, TRANSIT AND PIPELINES
VETERANS' AFFAIRS
RANKING MEMBER, SUBCOMMITTEE ON
DISABILITY AND MEMORIAL AFFAIRS

CAUCUS TASK FORCES:
CHAIR, TAX AND BUDGET TASK FORCE
CO-CHAIR, GAMING CAUCUS
CO-CHAIR, STOP DUI CAUCUS

The Honorable Mike Johanns
U.S. Department Of Agriculture
1400 Independence Avenue SW Room 200-A
Washington, D.C. 20250-0003

Dear Secretary Johanns:

I am writing regarding the slaughter of American horses. I am concerned that the USDA is ignoring the will of Congress with regard to the sale and slaughter of wild horses.

In November, Congress overwhelmingly passed an amendment, which I voted for, to withhold funding for inspectors at meatpacking plants for the slaughter of horses. By law, the meat cannot be processed without inspectors. Currently, the USDA is considering a petition from the three foreign-owned slaughter plants, which are offering to pay the inspectors under a fee-for-service program. The USDA presently allows such an arrangement for inspection of exotic game. Extending this policy to the processing of horses would clearly undermine the intent of Congress in adopting the amendment.

I am currently a cosponsor of H.R. 503, which would amend the Horse Protection Act to end the practice of slaughtering horses for human consumption. Until this legislation is passed, I urge the USDA to avoid taking any action that would contradict the intent of Congress.

I urge the USDA to follow the will of Congress regarding this amendment. Thank you for your consideration in this matter.

Sincerely,

SHELLEY BERKLEY
Member of Congress

PRINTED ON RECYCLED PAPER



# Illinois Association of Meat Processors

| PRESIDENT | VICE PRESIDENT | TECHNICAL ADVISOR | TREASURER | EXECUTIVE SECRETARY |
|---|---|---|---|---|
| Gary Schwand | Dan Weber | Dr. Floyd McKeith | Merlyn Eickman | Dianne Handsaker |
| Trenton | Geneseo | University of Illinois | Pecatonica | Lena |
| 618-224-7383 | 309-944-6328 | 217-333-1684 | 815-239-1249 | 815-443-2492 |

**DIRECTORS**
Tom Eickman
Kae Hankes
Doug Houser
Tom Inboden
Kevin Miller
Jean Shupp
Brad Schmitz
Chuck Stiles
Jim Tucker

**SUPPLIER ADVISERS**
Bob Condon
Jeff Seaberg

**POLITICAL DIRECTOR**
Joe Turesky
217-622-3345

**PAST PRESIDENT**
Don Nihiser

February 5, 2006

Secretary Mike Johanns
U.S. Department of Agriculture
1400 Independence Ave., S.W.
Washington, D.C. 20250

Dear Secretary Johanns:

The Illinois Association of Meat Processors urge you to approve a fee for service arrangement for USDA Inspection of the horse processing industry in the United States.

Cavel International in Dekalb, IL is a member of our association and has asked the Department of Agriculture to consider a fee for service considering prior legislation that was passed that included discontinuing the USDA inspection at no cost for horse processing plants in the United States.

Cavel International certainly meets the needs of thousands of horse owners that desperately need a facility for the euthanasia of horses. Many horse owners have no other option than to pay outrageous rendering fees or for a worse option leave them to lay.

Thank you for your attention to this matter,

Dianne Handsaker

Executive Secretary
Illinois Association of Meat Processors

P. O. Box 574 • Lena, Illinois 61048 • E-mail: iamp@aeroinc.net • Fax: 815-443-2494
Web: www.IllinoisMeatProcessors.com

0176