IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, *et al.*, ) ) ) ) PLAINTIFFS, ) ) v. ) ) ) ) MIKE JOHANNS, Secretary ) United States Department of Agriculture, *et al.*, ) ) DEFENDANTS. ) | CASE NO. 1:06CV00265 |

### DECLARATION OF RICHARD GARCIA, BELTEX CORPORATION.

Mr. Richard Garcia, General Manager of Beltex Corporation, declares pursuant to 28 U.S.C. § 1746:

1. My name is Richard Garcia. I reside in Arlington, Texas. I am currently General Manager of Beltex Corporation.

2. Beltex Corporation ("Beltex") is located in Fort Worth, Texas, and has been in operation since 1976.

3. Beltex is a meat processing facility that processes fresh and frozen horsemeat for export. Beltex purchases the majority of livestock from private buyers and auctions throughout the United States. Beltex exports approximately 5,000 tons of horsemeat each year and sells 1000 tons of horsemeat annually domestically to zoos; these domestic customers require that their product be USDA inspected to comply with their specially certified diets for large animals.

4. In 2005, Beltex adopted the policy that it would not accept any / and all wild horses for slaughter, including those for sale by the Bureau of Land Management ("BLM").

DC/192679.2



Southwestern Cattle Raisers Association provides a Brand Inspector to inspect and identify each horse presented for slaughter. The Brand Inspector prevents all wild horses from entering processing at Beltex Corporation. Even before 2005, the number of wild horse mustangs slaughtered by Beltex was relatively small, and Beltex would not accept any horse lacking appropriate documentation.

5. Beltex operates under inspection by the U.S. Department of Agriculture (USDA) and is Establishment No. E7041. Beltex is a Texas corporation organized under Texas law and is regulated, in pertinent part, by the following statues and regulations: *See* Packer and Stockyards Act, 7 U.S.C. § 181 *et seq.*; Humane Methods of Livestock Slaughter, 7 U.S.C. § 1901 *et seq.*; Implementation of the North American Free Trade Agreement Act; Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*; Agreement Between the United States of America and the European Community on Sanitary Measures to Protect Public and Animal Health in Trade in Live Animals and Animal Products; Preemption of Transportation Authority Act, 49 U.S.C. § 41713; 9 C.F.R. Part 88 (Commercial Transportation of Equines for Slaughter); 9 C.F.R. Part 91 (Inspection and Handling of Livestock for Exportation); 9 C.F.R. Part 94; (prohibited and restrict importation of certain animals); Humane Slaughter of Livestock Regulation, 9 C.F.R. Part 313; Tex. Admin. Code Regulations §221.1; Tex. Agric. Code §148.001 et seq., Preventing Stolen Horses from Being Slaughtered (Vernon 2002); Production, Processing & Sale of Livestock, Tex Agric. Code, Chap. 161-168 (Vernon 2002); Texas Meat Inspection Act, Tex. Health & Safety Code § 433.001 et seq. (Vernon 2002).

6. Beltex is a significant employer and contributor of tax revenues in the Dallas-Fort Worth Metroplex. The company employs approximately 100 workers from around the region. Its total payroll was in excess of five million dollars ($5,000,000.00) in 2005.

7. Beltex and its employees would be irreparably harmed if USDA is enjoined from implementing a voluntary fee-for-service ante-mortem inspection program for horses, as promulgated in the *Federal Register* on February 8, 2006. 70 Fed. Reg. 6,337, 6,341 (Feb. 8, 2006) (the "Regulation").

8. Because livestock, including horses, intended for human consumption must be inspected by the Food Safety and Inspection Service ("FSIS") prior to slaughter, withholding such services will force Beltex to curtail these operations unless the fee-for-service inspection program is implemented as intended by the USDA and provided for in the Regulation. The necessary result of the cessation of these operations will be to halt sales and shipping and force the layoff of nearly all, if not all, Beltex employees. Beltex has no means to immediately replace the business that would be shut down in the absence of the Regulation going into effect on March 10, 2006. The losses are, therefore, irreparable.

9. Beltex has also acquired, or contracted to acquire, additional supplies for use after March 10 at a cost of over one hundred and fifty thousand dollars ($150,000.00). If USDA were enjoined from making the Regulation effective on March 10, Beltex would suffer further irreparable losses from these obligations because of the inability to process and ship product.

10. In addition to these direct irreparable economic impacts on Beltex, there would be indirect economic effects on the Dallas-Fort Worth Metroplex if USDA were enjoined from making the Regulation effective on March 10 and Beltex would effectively shut down. Such indirect impacts include the loss of air freight business by American Airlines at the Dallas-Fort Worth International Airport, tax revenue from Beltex and its employees, and the economic activity otherwise generated by Beltex employees. Beltex has estimated these economic impacts on the order of twenty-five million dollars ($25,000,000.00) annually.

11. Beltex would not be able to replace this lost business with the processing and shipping of any other species under current market conditions.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Richard Garcia

Dated: February 24, 2006.