I

107TH CONGRESS
1ST SESSION

# H. R. 2622

To prohibit the interstate transport of horses for the purpose of slaughter
or horse flesh intended for human consumption, and for other purposes.

———————————

## IN THE HOUSE OF REPRESENTATIVES

JULY 25, 2001

Mr. REYNOLDS introduced the following bill; which was referred to the
Committee on Agriculture

———————————

# A BILL

To prohibit the interstate transport of horses for the purpose
of slaughter or horse flesh intended for human consump-
tion, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2    *tives of the United States of America in Congress assembled,*

3    **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the "Helping Out to Rescue

5    and Save Equines Act".

6    **SEC. 2. INTERSTATE TRANSPORT OF HORSES FOR SLAUGH-**

7    **TER PROHIBITED.**

8    (a) PROHIBITION.—It shall be unlawful for any per-

9    son to willingly and knowingly transport or cause to be



GOVERNMENT
EXHIBIT
5
06-0265CKK

2

1 transported between any place in a State and any place

2 outside of such State—

3        (1) any horse (other than a downed horse) for

4     the purpose of slaughtering the horse; or

5        (2) any horse flesh processed or intended to be

6     processed for human consumption.

7     (b) INSPECTIONS.—The Secretary shall make such

8 investigations or inspections as the Secretary deems nec-

9 essary to determine whether any person has violated or

10 is violating any provision of this section or any regulation

11 issued under this section.

12     (c) CONFISCATION.—The Secretary shall promulgate

13 regulations to permit inspectors to confiscate any horse

14 or horse flesh found to be in transport or to have been

15 transported in violation of subsection (a).

16     (d) PENALTIES.—

17        (1) ILLEGAL TRANSPORT.—Any person who is

18     found to have violated subsection (a) shall be fined

19     $5,000. Such a fine shall be assessed per horse that

20     is transported in violation of subsection (a)(1) and

21     per property-carrying unit (as defined in section

22     31112 of title 49, United States Code) for a viola-

23     tion of subsection (a)(2) regardless of how many

24     State lines were crossed during that transport. In

25     addition to such fine, in the case of a violation of

3

1    subsection (a)(1), such person shall be fined an

2    amount determined by the Secretary to defray or

3    help defray the costs of confiscating, transporting,

4    boarding, and providing veterinary care to the horse

5    until it is placed in a rescue facility pursuant to sub-

6    section (e).

7    (2) INTERFERENCE WITH OFFICIALS.—Any

8    person who forcibly assaults, resists, opposes, im-

9    pedes, intimidates, or interferes with any person

10    while engaged in or on account of the performance

11    of official duties under this section shall be fined not

12    more than $5,000, or imprisoned not more than

13    three years, or both. Whoever, in the commission of

14    such acts, uses a deadly or dangerous weapon shall

15    be fined not more than $10,000, or imprisoned not

16    more than ten years, or both. Whoever kills any per-

17    son while engaged in or on account of the perform-

18    ance of official duties under this section shall be

19    punished as provided under sections 1111 and 1114

20    of title 18, United States Code.

21    (e) PLACEMENT OF CONFISCATED HORSES.—After

22  confiscation of a live horse pursuant to subsection (c), the

23  Secretary shall donate the horse to a rescue facility that

24  is an organization described in section 501(c)(3) of the

25  Internal Revenue Code of 1986 and is exempt from tax

4

1 under section 501(a) of such Code. The Secretary shall

2 make reasonable efforts to place the horse in such a rescue

3 facility located within the State where the horse last re-

4 sided.

5 (f) GRANTS.—

6 (1) IN GENERAL.—The Secretary may make

7 grants to rescue facilities described in subsection (e)

8 that have given adequate assurances to the Sec-

9 retary that they are willing to accept horses donated

10 pursuant to that subsection.

11 (2) AUTHORIZATION OF APPROPRIATIONS.—

12 There are authorized to be appropriated for the pur-

13 poses of this subsection amounts equal to amounts

14 collected under subsection (d).

15 (g) DEFINITIONS.—For the purposes of this section,

16 the following definitions apply:

17 (1) DOWNED HORSE.—The term "downed

18 horse" means a horse that is unable to stand and

19 walk unassisted.

20 (2) SECRETARY.—The term "Secretary" means

21 the Secretary of Agriculture.

22 (3) STATE.—The term "State" means the sev-

23 eral States, the District of Columbia, and any terri-

24 tory or possession of the United States.

5

**SEC. 3. REGULATIONS.**

Not later than 180 days after the date of the enact-
ment of this Act, the Secretary shall issue final regulations
to carry out this Act, including regulations for enforce-
ment of and inspections under this Act. This Act shall
take effect on the date of the enactment of this Act with-
out regard to whether such regulations have been issued.

○

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

# NEW SEARCH | HOME | HELP | ABOUT STATUS

**H.R.3781**
**Title:** To prevent the slaughter of horses in and from the United States for human consumption by prohibiting the slaughter of horses for human consumption and by prohibiting the trade and transport of horseflesh and live horses intended for human consumption, and for other purposes.
**Sponsor:** Rep Morella, Constance A. [MD-8] (introduced 2/14/2002)    Cosponsors (65)
**Latest Major Action:** 2/25/2002 Referred to House subcommittee. Status: Referred to the Subcommittee on Livestock and Horticulture.

**ALL ACTIONS:**

**2/14/2002:**
    Referred to the Committee on Agriculture, and in addition to the Committees on International Relations, and Ways and Means, for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned.
**2/14/2002:**
    Referred to House Agriculture
        **2/25/2002:**
            Referred to the Subcommittee on Livestock and Horticulture.
**2/14/2002:**
    Referred to House International Relations
**2/14/2002:**
    Referred to House Ways and Means
**2/15/2002:**
    Introductory remarks on measure. (CR E178)

THOMAS Home | Contact | Accessibility | Legal | FirstGov

I

107TH CONGRESS
2D SESSION

# H. R. 3781

To prevent the slaughter of horses in and from the United States for human consumption by prohibiting the slaughter of horses for human consumption and by prohibiting the trade and transport of horseflesh and live horses intended for human consumption, and for other purposes.

––––––––––––––––––––––––

## IN THE HOUSE OF REPRESENTATIVES

FEBRUARY 14, 2002

Mrs. MORELLA (for herself, Mr. GILMAN, Mr. JONES of North Carolina, Mr. HORN, Mr. PALLONE, Mr. HINCHEY, and Mr. LANTOS) introduced the following bill; which was referred to the Committee on Agriculture, and in addition to the Committees on International Relations, and Ways and Means, for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned

––––––––––––––––––––––––

# A BILL

To prevent the slaughter of horses in and from the United States for human consumption by prohibiting the slaughter of horses for human consumption and by prohibiting the trade and transport of horseflesh and live horses intended for human consumption, and for other purposes.

1   *Be it enacted by the Senate and House of Representa-*

2   *tives of the United States of America in Congress assembled,*

3   **SECTION 1. SHORT TITLE.**

4       This Act may be cited as the "American Horse

5   Slaughter Prevention Act".

2

1  **SEC. 2. FINDINGS.**

2      Congress makes the following findings:

3          (1) Horses have played a significant role in the

4      history and culture of the United States.

5          (2) Horses in the United States are not raised

6      for food or fiber.

7          (3) Approximately 50,000 horses from the

8      United States are slaughtered for human consump-

9      tion annually at three United States-based, foreign-

10     owned slaughterhouses. Thousands of live horses are

11     exported across United States borders annually for

12     slaughter and consumption.

13         (4) Many horses shipped to slaughter are

14     young, healthy animals. Others are in poor body

15     condition and may be suffering broken limbs and

16     other serious ailments. Many are shipped on double-

17     deck trucks designed for shorter-necked species,

18     such as pigs, cattle, and sheep, and are forced to

19     travel in a bent position. Many suffer horribly dur-

20     ing the long journey to the slaughterhouse. Horses

21     that collapse due to injury or illness during the long

22     journey may be trampled. Mares at risk of foaling,

23     sick, emaciated, very young, or badly injured ani-

24     mals may not survive transport.

25         (5) Poor conditions and callous treatment in

26     slaughterhouses for horses often result in prolonged

3

1    suffering. Due to improper stunning methods, horses

2    often endure repeated blows to the head with stun-

3    ning equipment that often does not render the ani-

4    mals unconscious. Some animals proceed still con-

5    scious through the remaining stages of slaughter, in-

6    cluding throat slitting.

7        (6) The slaughtering of horses for human con-

8    sumption outside of the United States is a commer-

9    cial activity that generally occurs in, and affects,

10    both interstate and international commerce. While

11    horses are slaughtered for human consumption pri-

12    marily outside the United States, a ban on slaugh-

13    tering horses for human consumption either inside

14    or outside the United States is necessary to ensure

15    effective enforcement of the ban on slaughtering

16    horses for human consumption outside of the United

17    States.

18        (7) The imposition of a ban on the sale of

19    horseflesh for human consumption, regardless of its

20    source, is consistent with the international obliga-

21    tions of the United States because it applies equally

22    to domestic and foreign producers and avoids any

23    discrimination among foreign sources of competing

24    products. Such a ban is also consistent with provi-

25    sions of international agreements to which the

4

1    United States is a party that expressly allow for

2    measures designed to protect the health and welfare

3    of animals and to enjoin the use of deceptive trade

4    practices in international or domestic commerce.

**SEC. 3. PURPOSE.**

6    The purpose of this Act is to ensure that horses in

7  the United States are not slaughtered for human con-

8  sumption by prohibiting—

9        (1) the slaughter of horses for human consump-

10    tion; and

11        (2) the trade in horseflesh for human consump-

12    tion or live horses destined for slaughter for human

13    consumption.

**SEC. 4. DEFINITIONS.**

15    For the purposes of this Act, the following definitions

16  apply:

17        (1) EUTHANASIA.—The term "euthanasia"

18    means to kill an animal humanely by chemical or

19    other means, excluding electrocution, that imme-

20    diately renders the animal unconscious, with this

21    state remaining until the animal's swift death.

22        (2) EXPORT.—The term "export" means to

23    take from any place subject to the jurisdiction of the

24    United States to a place not subject to such jurisdic-

25    tion, whether or not the taking constitutes an expor-

5

1    tation within the meaning of the customs laws of the

2    United States.

3        (3) HORSE.—The term "horse" means all mem-

4    bers of the equid family, including horses, ponies,

5    donkeys, mules, asses, and burros.

6        (4)  HORSEFLESH.—The  term  "horseflesh"

7    means the flesh of a dead horse, including the ani-

8    mal's viscera, skin, hair, hide, hooves, and bones.

9        (5) HUMAN CONSUMPTION.—The term "human

10   consumption" means ingestion by people as a source

11   of food.

12       (6) IMPORT.—The term "import" means to

13   bring into any place subject to the jurisdiction of the

14   United States from a place not subject to such juris-

15   diction, whether or not the bringing constitutes an

16   importation within the meaning of the customs laws

17   of the United States.

18       (7) PERSON.—The term "person" means—

19           (A) an individual, corporation, partnership,

20       trust, association, or other private entity;

21           (B) an officer, employee, agent, depart-

22       ment, or instrumentality of—

23               (i) the Federal Government; or

24               (ii) any State, municipality, or polit-

25           ical subdivision of State; or

6

1          (C) any other entity subject to the jurisdic-

2     tion of the United States.

3          (8) SECRETARY.—The term "Secretary" means

4     the Secretary of Agriculture.

5          (9) SLAUGHTER.—The term "slaughter" means

6     the commercial slaughter of a horse.

7          (10) STATE.—The term "State" means the sev-

8     eral States, the District of Columbia, the Common-

9     wealth of Puerto Rico, the Virgin Islands, Guam, the

10    Commonwealth of the Northern Mariana Islands,

11    American Samoa, and any other territory, or posses-

12    sion of the United States.

13          (11)   TRANSPORT.—The   term   "transport"

14    means to move by any means, or to receive or load

15    onto a vehicle for the purpose of movement.

16          (12)   UNITED   STATES.—The   term   "United

17    States" means the customs territory of the United

18    States, as defined in general note 2 of the Har-

19    monized Tariff Schedule of the United States.

20  **SEC. 5. PROHIBITED ACTS.**

21    (a) IN GENERAL.—A person shall not—

22          (1) slaughter a horse for human consumption;

23          (2) import into, or export from, the United

24    States horseflesh for human consumption or live

7

1     horses intended for slaughter for human consump-

2     tion;

3        (3) sell or barter, offer to sell or barter, pur-

4     chase, possess, transport, deliver, or receive horse-

5     flesh for human consumption or live horses intended

6     for slaughter for human consumption; or

7        (4) solicit, request, or otherwise knowingly

8     cause any act prohibited under paragraph (1), (2),

9     or (3).

10 **SEC. 6. PENALTIES AND ENFORCEMENT.**

11     (a) CRIMINAL PENALTIES.—A person who violates

12 section 5 shall be fined under title 18, United States Code,

13 imprisoned for not more than 1 year, or both.

14     (b) CIVIL PENALTIES.—

15        (1) IN GENERAL.—Any person who violates any

16     provision of section 5 shall, in addition to any other

17     civil or criminal penalty that may be imposed under

18     title 18, United States Code, or any other provision

19     of law, be assessed, by the Secretary, a civil penalty

20     of not more than $5,000 but not less than $2,500,

21     and shall have confiscated all horses in that person's

22     physical or legal possession at the time of arrest, if

23     said horses are intended for slaughter.

24        (2) DEBARMENT.—The Secretary shall prohibit

25     a person from importing, exporting, transporting,

8

1    trading, or selling horses in the United States, if the

2    Secretary finds that the person has engaged in a

3    pattern or practice of actions that has resulted in a

4    final administrative determination with respect to

5    the assessment of criminal or civil penalties for vio-

6    lations of any provision of this Act.

7    (c) NOTICE; HEARING.—No monetary penalty may

8 be assessed under this subsection against a person unless

9 the person is given notice and opportunity for a hearing

10 with respect to such violation in accordance with section

11 554 of title 5, United States Code.

12    (d) ENFORCEMENT.—

13    (1) IN GENERAL.—The provisions of this Act

14    shall be enforced by the Secretary. When imposing

15    penalties under this section, the Secretary shall take

16    into account the seriousness of the violation, the cul-

17    pability of the violator, and the violator's record of

18    cooperating with the Government in disclosing the

19    violation.

20    (2) PLACEMENT OF CONFISCATED HORSES.—

21    (A) TEMPORARY PLACEMENT.—After con-

22    fiscation of a live horse pursuant to this Act,

23    the arresting authorities shall work with animal

24    welfare societies and animal control depart-

25    ments to ensure the temporary placement of the

9

1        horse with an animal rescue facility that is an

2        organization described in section 501(c)(3) of

3        the Internal Revenue Code of 1986 and is ex-

4        empt from taxation under section 501(a) of

5        such Code, while the person charged with vio-

6        lating this Act is prosecuted. If placement at

7        such a facility is not possible, the arresting au-

8        thorities shall work with animal welfare soci-

9        eties and animal control departments to tempo-

10       rarily place the horse with a facility that has as

11       its primary purpose the humane treatment of

12       animals, or another suitable location.

13       (B) BONDS.—

14       (i) POSTING OF BOND.—The owner of

15       a horse confiscated pursuant to this Act

16       may prevent permanent placement of the

17       horse by the facility that has temporary

18       custody of the horse by posting a bond

19       with the court in an amount the court de-

20       termines is sufficient to provide for the

21       necessary care and keeping of the horse for

22       at least 60 days, including the day on

23       which the horse was taken into custody.

24       Such bond shall be filed with the court

25       within 10 days after the horse is con-

10

1    fiscated. If a bond is not so posted, the

2    custodial facility shall determine perma-

3    nent placement of the horse in accordance

4    with reasonable practices for the humane

5    treatment of animals. If the animal has

6    not yet been returned to the owner at the

7    end of the time for which expenses are cov-

8    ered by the bond, and if the owner desires

9    to prevent permanent placement of the ani-

10    mal by the custodial facility, the owner

11    shall post a new bond with the court within

12    ten days following the prior bond's expira-

13    tion. If a new bond is not so posted, the

14    custodial facility shall determine perma-

15    nent placement of the horse in accordance

16    with reasonable practices for the humane

17    treatment of animals.

18    (ii) COSTS FOR PROVIDING CARE FOR

19    HORSE DEDUCTED FROM BOND.—If a

20    bond has been posted in accordance with

21    clause (i), the custodial facility may draw

22    from the bond the actual reasonable costs

23    incurred by the facility in providing the

24    necessary care and keeping of the con-

25    fiscated horse from the date of the initial

11

1    confiscation to the date of final disposition

2    of the horse in the criminal action charg-

3    ing a violation of this Act.

4    (C) PERMANENT PLACEMENT.—Any horse

5    confiscated pursuant to this Act and not re-

6    turned to the owner thereafter (except where

7    otherwise provided in paragraph (3)) shall be

8    placed permanently with an animal rescue facil-

9    ity or other suitable facility as described in this

10    section upon—

11    (i) the conviction of the horse's owner

12    pursuant to this Act;

13    (ii) the owner's surrender of the

14    horse;

15    (iii) the failure of the horse's owner to

16    post a bond as required in accordance with

17    subparagraph (B); or

18    (iv) the Secretary's inability to iden-

19    tify the owner.

20    (3) EUTHANASIA OF HORSES.—

21    (A) HORSES PAST RECOVERY.—The Sec-

22    retary or any individual charged with enforcing

23    this Act shall order or perform the immediate

24    euthanasia of any confiscated horse when such

25    horse is injured, disabled, or diseased past re-

12

1    covery. Methods used shall be in accordance
2    with the most recent Report of the American
3    Veterinary Medical Association's Panel on Eu-
4    thanasia and State and local laws, but shall not
5    include electrocution.

6        (B) UNPLACEABLE HORSES.—The Sec-
7    retary or any individual charged with enforcing
8    this Act may order or perform the euthanasia
9    of any confiscated horse when placement at an
10   animal rescue facility or other suitable facility,
11   as described in this section, is not possible with-
12   in 30 days of any circumstance as described in
13   Section 6(d)(2)(C).

14   (e) FUNDING OF ANIMAL RESCUE FACILITIES.—

15       (1) GRANTS.—To the extent that funds are
16   made available for this purpose by Acts of appro-
17   priation, the Secretary shall make grants to animal
18   rescue facilities described in this section that have
19   given adequate assurances to the Secretary that they
20   are willing to accept horses confiscated pursuant to
21   this Act.

22       (2) PENALTIES, FINES, AND FORFEITED PROP-
23   ERTY.—Amounts received as penalties, fines, or for-
24   feited property under this Act shall be used for the
25   care of any live horses seized from violators of this

13

1      Act and taken into the possession of the United
2   States or placed with an animal rescue facility as de-
3   scribed in this section.

4      (f) CALCULATION OF VIOLATIONS.—For purposes of
5   this section, a separate offense shall be calculated as fol-
6   lows:

7         (1) Each live horse transported, traded, or pos-
8      sessed in violation of this Act shall constitute a sepa-
9      rate offense.

10        (2) Five hundred pounds of confiscated horse-
11     flesh shall constitute a separate offense.

**12 SEC. 7. REPORT ON ENFORCEMENT EFFORTS.**

13     Not later than 2 years after the date of the enact-
14  ment of this Act, and on an annual basis thereafter, the
15  Secretary shall submit a report to Congress on the efforts
16  of the United States Government to enforce the provisions
17  of this Act and the adequacy of the resources to do so.

**18 SEC. 8. EXEMPTIONS.**

19     (a) IN GENERAL.—Except as provided in section 5,
20  nothing in this Act shall be construed to affect the regula-
21  tion by any State of its horse population.

22     (b) EXCEPTION FOR DESIGNATED LAW ENFORCE-
23  MENT OFFICIAL PURPOSES.—A person described in sec-
24  tion 4(7)(B) may engage in activities described in para-

14

1  graphs (2), (3), and (4) of section 5 solely for purposes

2  of enforcing this Act.

**3  SEC. 9. DATE OF ENFORCEMENT.**

4      This Act shall take effect one year after the date of

5  the enactment of this Act.

○

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

## NEW SEARCH | HOME | HELP | ABOUT STATUS

**H.R.857**
**Title:** To prevent the slaughter of horses in and from the United States for human consumption by prohibiting the slaughter of horses for human consumption and by prohibiting the trade and transport of horseflesh and live horses intended for human consumption, and for other purposes.
**Sponsor:** Rep Sweeney, John E. [NY-20] (introduced 2/13/2003)     Cosponsors (228)
**Related Bills:** S.2352
**Latest Major Action:** 3/3/2003 Referred to House subcommittee. Status: Referred to the Subcommittee on Trade.

## ALL ACTIONS:

**2/13/2003:**
Referred to the Committee on Agriculture, and in addition to the Committees on International Relations, and Ways and Means, for a period to be subsequently determined by the Speaker, in each case for consideration of such provisions as fall within the jurisdiction of the committee concerned.
**2/13/2003:**
Referred to House Agriculture
**3/3/2003:**
Referred to the Subcommittee on Livestock and Horticulture.
**2/13/2003:**
Referred to House International Relations
**2/13/2003:**
Referred to House Ways and Means
**3/3/2003:**
Referred to the Subcommittee on Trade.

THOMAS Home | Contact | Accessibility | Legal | FirstGov

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

## NEW SEARCH | HOME | HELP

**S.2352**
**Title:** A bill to prevent the slaughter of horses in and from the United States for human consumption by prohibiting the slaughter of horses for human consumption and by prohibiting the trade and transport of horseflesh and live horses intended for human consumption, and for other purposes.
**Sponsor:** Sen Ensign, John [NV] (introduced 4/27/2004)      Cosponsors (11)
**Related Bills:** H.R.857
**Latest Major Action:** 4/27/2004 Referred to Senate committee. Status: Read twice and referred to the Committee on Agriculture, Nutrition, and Forestry.

| All Information (except text) | Text of Legislation | CRS Summary | Major Congressional Actions |
|---|---|---|---|
| Titles | Cosponsors (11) | Committees | All Congressional Actions |
| Related Bills | Amendments | Related Committee Documents | All Congressional Actions with Amendments |
| CBO Cost Estimates | Subjects | | With links to *Congressional Record* pages, votes, reports |

THOMAS Home | Contact | Accessibility | Legal | FirstGov

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

## **NEW SEARCH | HOME | HELP | ABOUT STATUS**

**H.R.503**
**Title:** To amend the Horse Protection Act to prohibit the shipping, transporting, moving, delivering, receiving, possessing, purchasing, selling, or donation of horses and other equines to be slaughtered for human consumption, and for other purposes.
**Sponsor:** Rep Sweeney, John E. [NY-20] (introduced 2/1/2005)    Cosponsors (148)
**Related Bills:** S.1915
**Latest Major Action:** 2/25/2005 Referred to House subcommittee. Status: Referred to the Subcommittee on Commerce, Trade and Consumer Protection.

## **ALL ACTIONS:**

**2/1/2005:**
     Referred to the House Committee on Energy and Commerce.
     **2/25/2005:**
          Referred to the Subcommittee on Commerce, Trade and Consumer Protection.

THOMAS Home | Contact | Accessibility | Legal | FirstGov

I

109TH CONGRESS
1ST SESSION

# H. R. 503

To amend the Horse Protection Act to prohibit the shipping, transporting, moving, delivering, receiving, possessing, purchasing, selling, or donation of horses and other equines to be slaughtered for human consumption, and for other purposes.

---

## IN THE HOUSE OF REPRESENTATIVES

FEBRUARY 1, 2005

Mr. SWEENEY (for himself, Mr. SPRATT, Mr. WHITFIELD, Mrs. BONO, Mr. BROWN of Ohio, Mr. COX, Mrs. CAPPS, Mr. ENGEL, Ms. ESHOO, Mr. FERGUSON, Mr. GENE GREEN of Texas, Mr. PALLONE, Mr. TOWNS, Mr. GALLEGLY, Mr. MORAN of Virginia, and Mr. SHAYS) introduced the following bill; which was referred to the Committee on Energy and Commerce

---

# A BILL

To amend the Horse Protection Act to prohibit the shipping, transporting, moving, delivering, receiving, possessing, purchasing, selling, or donation of horses and other equines to be slaughtered for human consumption, and for other purposes.

1    *Be it enacted by the Senate and House of Representa-*

2 *tives of the United States of America in Congress assembled,*

2

1    SECTION 1. PROHIBITION ON SHIPPING, TRANSPORTING,

2            MOVING, DELIVERING, RECEIVING, POS-

3            SESSING, PURCHASING, SELLING, OR DONA-

4            TION OF HORSES AND OTHER EQUINES FOR

5            SLAUGHTER FOR HUMAN CONSUMPTION.

6        (a) DEFINITIONS.—Section 2 of the Horse Protection

7    Act (15 U.S.C. 1821) is amended—

8            (1) by redesignating paragraphs (1), (2), (3),

9        and (4) as paragraphs (2), (3), (5), and (6), respec-

10        tively;

11            (2) by inserting before paragraph (2), as so re-

12        designated, the following new paragraph:

13        "(1) The term 'human consumption' means in-

14        gestion by people as a source of food."; and

15            (3) by inserting after paragraph (3), as so re-

16        designated, the following new paragraph:

17        "(4) The term 'slaughter' means the killing of

18        one or more horses or other equines with the intent

19        to sell or trade the flesh for human consumption.".

20        (b) FINDINGS.—Section 3 of the Horse Protection

21    Act (15 U.S.C. 1822) is amended—

22            (1) by redesignating paragraphs (1) through

23        (5) as paragraphs (6) through (10), respectively;

24            (2) by adding before paragraph (6), as so redes-

25        ignated, the following new paragraphs:

3

1   "(1) horses and other equines play a vital role

2   in the collective experience of the United States and

3   deserve protection and compassion;

4   "(2) horses and other equines are domestic ani-

5   mals that are used primarily for recreation, pleasure,

6   and sport;

7   "(3) unlike cows, pigs, and many other animals,

8   horses and other equines are not raised for the pur-

9   pose of being slaughtered for human consumption;

10   "(4) individuals selling horses or other equines

11   at auctions are seldom aware that the animals may

12   be bought for the purpose of being slaughtered for

13   human consumption;

14   "(5) the Animal and Plant Health Inspection

15   Service of the Department of Agriculture has found

16   that horses and other equines cannot be safely and

17   humanely transported in double deck trailers;"; and

18   (3) by striking paragraph (8), as so redesig-

19   nated, and inserting the following new paragraph:

20   "(8) the movement, showing, exhibition, or sale

21   of sore horses in intrastate commerce, and the ship-

22   ping, transporting, moving, delivering, receiving,

23   possessing, purchasing, selling, or donation in intra-

24   state commerce of horses and other equines to be

4

1    slaughtered for human consumption, adversely affect

2    and burden interstate and foreign commerce;".

3    (c) PROHIBITION.—Section 5 of the Horse Protection

4    Act (15 U.S.C. 1824) is amended—

5        (1) by redesignating paragraphs (8) through

6    (11) as paragraphs (9) through (12), respectively;

7    and

8        (2) by inserting after paragraph 7 the following

9    new paragraph:

10        "(8) The shipping, transporting, moving, deliv-

11    ering, receiving, possessing, purchasing, selling, or

12    donation of any horse or other equine to be slaugh-

13    tered for human consumption.".

14    (d) AUTHORITY TO DETAIN.—Section 6(c) of the

15    Horse Protection Act (15 U.S.C. 1825(c)) is amended—

16        (1) by striking the first sentence of paragraph

17    (1);

18        (2) by redesignating paragraphs (1) and (2)

19    and as paragraphs (2) and (3), respectively; and

20        (3) by inserting before paragraph (2), as so re-

21    designated, the following new paragraph:

22    "(1) The Secretary may detain for examination, test-

23    ing, or the taking of evidence—

24        "(A) any horse at any horse show, horse exhi-

25    bition, or horse sale or auction which is sore or

5

1    which the Secretary has probable cause to believe is

2    sore; and

3        "(B) any horse or other equine which the Sec-

4    retary has probable cause to believe is being shipped,

5    transported, moved, delivered, received, possessed,

6    purchased, sold, or donated in violation of section

7    5(8).".

8    (e) AUTHORIZATION OF APPROPRIATIONS.—Section

9    12 of the Horse Protection Act (15 U.S.C. 1831) is

10    amended by striking "$500,000" and inserting

11    "$5,000,000".

○

The Library of Congress > THOMAS Home > Bills, Resolutions > Search Results

# **NEW SEARCH | HOME | HELP**

**S.1915**
**Title:** A bill to amend the Horse Protection Act to prohibit the shipping, transporting,
moving, delivering, receiving, possessing, purchasing, selling, or donation of horses and
other equines to be slaughtered for human consumption, and for other purposes.
**Sponsor:** Sen Ensign, John [NV] (introduced 10/25/2005)     Cosponsors (15)
**Related Bills:** H.R.503
**Latest Major Action:** 10/25/2005 Referred to Senate committee. Status: Read twice
and referred to the Committee on Commerce, Science, and Transportation.

| All Information (except text) | Text of Legislation | CRS Summary | Major Congressional Actions |
|---|---|---|---|
| Titles | Cosponsors (15) | Committees | All Congressional Actions |
| Related Bills | Amendments | Related Committee Documents | All Congressional Actions with Amendments |
| CBO Cost Estimates | Subjects | | With links to *Congressional Record* pages, votes, reports |

THOMAS Home | Contact | Accessibility | Legal | FirstGov