# Plaintiffs' Exhibit C
# Civ. No. 02-0265 (CKK)

# HUMANE METHODS OF SLAUGHTER ACT OF 1978

*P.L. 95-445, see page 92 Stat. 1069*

**Senate Report (Agriculture, Nutrition, and Forestry Committee) No. 95-1059, Aug. 1, 1978 [To accompany S. 3092]**

**House Report (Agriculture Committee) No. 95-1336, July 10, 1978 [To accompany H.R. 1464]**

**Cong. Record Vol. 124 (1978)**

**DATES OF CONSIDERATION AND PASSAGE**

**Senate August 7, September 28, 1978**

**House September 19, 1978**

**The Senate bill was passed in lieu of the House bill after amending its language to contain the text of the House bill.**

**The House Report is set out.**

## HOUSE REPORT NO. 95-1336

[page 1]

The Committee on Agriculture, to whom was referred the bill (H.R. 1464) to amend the Federal Meat Inspection Act for purposes of requiring that meat inspected and approved under such act be produced only from livestock slaughtered in accordance with humane methods, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

* * * * * * * * *

[page 2]

### Brief Explanation of the Legislation

H.R. 1464 would amend the Federal Meat Inspection Act (21 U.S.C. 601 et seq.) to require the Secretary of Agriculture to survey all inspected establishments to determine whether humane methods of slaughter and handling in connection with slaughter are being used. Effective 1 year after date of enactment, Federal and State inspected establishments would be required to employ methods of slaughter and handling in connection with slaughter which are in accordance with the Humane Slaughter Act of 1958 (7 U.S.C. 1901-1906). Out of a total of approximately 4,335 Federal and State inspected establishments the committee is advised that only about 337 remain which do not, with respect to all species slaughtered, employ methods of slaughter and handling in connection with slaughter which accord with the Humane Slaughter Act. Foreign firms exporting meat to the United States would also have 1 year to bring their operations into compliance with the Humane Slaughter Act. Again, the committee is advised that most are already in compliance. The bill entails no additional cost to the Government since both the survey and enforcement of the humane slaughter provisions of the bill would be carried out by existing personnel.

Ritual slaughter is not affected in any way by this bill. Both the provisions of the Humane Slaughter Act which find ritual slaughter according to the tenets of the Jewish or any other religious faith to be humane and the provision exempting ritual slaughter and the handling or other preparation of livestock for ritual slaughter from the terms of

[page 3]

the act are preserved intact and would govern application of the humane slaughter amendments to the Federal Meat Inspection Act made by the bill.

Finally, the bill would repeal provisions of the Humane Slaughter Act which become obsolete on the effective date of the bill, viz., provisions which impose humane slaughter and handling requirements only with respect to slaughterers and processors which sell meat to the Federal Government, require the Secretary to provide for the separate identification of humanely slaughtered carcasses, and give the Secretary discretionary authority to appoint an advisory committee to assist in the implementation of the act.

## Background and Purpose

In 1958, in response to intense and broadly based public concern about cruelty to and abuse of livestock in meatpacking plants, Congress passed Public Law 85-765, commonly known as the Humane Slaughter Act. That act established as the policy of the United States that the slaughtering of livestock and the handling of livestock in connection with slaughter shall be carried out only by humane methods. The act specifically found several methods of slaughtering and handling to be humane and required the Secretary of Agriculture to designate methods of slaughter and handling which must be adhered to in all plants of any packer desiring to sell meat to the Federal Government. The act also found ritual slaughter in accordance with the Jewish or any other religious faith to be humane and further went on to exempt such slaughter from the provisions of the act.

While the Humane Slaughter Act had its genesis in concern for the humane treatment of animals, meat packers and processors soon found an economic incentive to adopt humane methods of slaughter and of handling in connection with slaughter. Humane methods proved to be more efficient and less hazardous to plant personnel and such methods also eliminated much of the bruising and other damage to meat which had been the occasion of significant financial loss to the industry.

In the approximately 20 years since the act was passed, the vast majority of meat slaughterers and processors in the United States and those in foreign countries who export meat to the United States have adopted humane methods of slaughter and handling. According to information furnished to the committee, out of a total of some 4,335 State and Federal inspected establishments in the United States, only some 337 have not yet adopted humane methods of slaughter and handling for all species handled at those plants. Out of a total of approximately 522 foreign plants exporting meat to the United States, only 64 sheep slaughtering plants in Australia are presently not in compliance.

In view of the widespread acceptance of humane methods of slaughter by the industry, both out of concern for humane treatment

of the animals and in their own economic self-interest, and in view of the abiding concern of numerous humane groups and other concerned citizens over isolated by persistent reports of continued abuse of or cruelty to livestock at the few plants which are not already in compliance, the committee feels that the time has come to apply humane standards uniformly throughout the industry.

[page 4]

The impact on the packers should be slight since a captive-bolt stunning pistol of the type used in one acceptable method of humane slaughter costs only about $100. As an added precaution, however, at the suggestion of a witness representing the meatpacking industry, the committee has delayed the effective date of the bill until 1 year after date of enactment. The committee has further, at the suggestion of the Department of Agriculture, given the Secretary of Agriculture discretionary authority in individual cases to extend the deadline for compliance for up to 6 months beyond the effective date where undue hardship would otherwise result. The committee is informally advised that the nonconforming plants in Australia can be brought into compliance within a year's time.

The bill would amend the Federal Meat Inspection Act to require the Secretary of Agriculture to conduct a survey of all inspected establishments to determine the methods of slaughter and of handling in connection with slaughter which are being used. It would further amend that act to empower the Secretary of Agriculture to cause inspection to be temporarily suspended where inhumane methods of slaughter or handling in connection with slaughter are found and to prohibit slaughter or handling in connection with slaughter by methods other than those in accordance with the Humane Slaughter Act at all inspected establishments in the United States. In the case of federally inspected plants, such prohibition would be enforceable by Federal injunction and by a criminal penalty of a fine of up to $1,000 and imprisonment for up to 1 year, or both. Comparable remedies would be available at State inspected plants. Importation of meat derived from livestock slaughtered or handled in connection with slaughter by methods other than humane would be prohibited. The provisions of the Humane Slaughter Act which find ritual slaughter according to the tenets of the Jewish or any other religious faith to be humane and which exempt ritual slaughter and handling or other preparation of livestock for such slaughter from the provisions of that act are preserved intact and would govern application of the humane amendments made by the bill. Obsolete provisions of the Humane Slaughter Act which confine its application to Federal meat purchases, require identification of carcasses of livestock slaughtered and handled in connection with slaughter by humane methods, and give the Secretary discretionary authority to form an advisory committee to assist in implementing the act are repealed.

Since the amendments to the Federal Meat Inspection Act made by the bill would be carried out by existing personnel, the Department of Agriculture has indicated, and the committee agrees, that no additional costs will be incurred as a result of its enactment.

The committee did not have the benefit of the views of the Department of State at the time it considered the bill. However, that Department subsequently sent a letter expressing concern lest the provision of the bill prohibiting importation of meat slaughtered

or handled in connection with slaughter by other than humane methods be considered as a nontariff trade barrier or an unwarranted intrusion into the affairs of other nations. In its letter, the State Department distinguished between inspections of foreign plants currently made by USDA inspectors to assure the wholesomeness of the product, and the additional determinations the bill would require those same inspectors to make regarding humane slaughter and handling of the animals.

[page 5]

The Department characterized American inspection of foreign plants for wholesomeness as legitimate because it relates directly to the health and safety of American consumers. The Department implies that the additional determination made by the inspector as to whether or not the livestock were slaughtered and handled in connection with slaughter humanely is not a legitimate subject of U.S. Government interest since the method of slaughter per se does not affect the health of our people.

The committee does not accept the assumption that the method of slaughter does not affect the health of our people. Witnesses have testified to having been sickened, physically as well as emotionally, upon learning of cruel abuses to livestock from which food they were eating or had eaten was derived. Some changed diet and now needlessly forego a valuable source of protein out of revulsion at the inhumane manner in which some livestock are handled. The committee believes that this bears directly on the health of American consumers.

However, even if this were not true, the committee believes that considerations of decency which transcend national boundaries should render this bill unobjectionable for our trading partners. The committee heard testimony, for example, that in one country nominally employing humane methods of slaughter and handling in connection with slaughter the eyes of cattle are punched out with sharp instruments to render them easier to handle. This and similar examples are primarily a problem of enforcement since the countries involved require humane handling.

The committee hopes that the added certification by USDA inspectors required by this bill will assist our trading partners in making humane treatment of slaughter of livestock a reality. It is perhaps also worth noting that assurance that livestock from which imported meat was derived were humanely treated should improve rather than harm the competitive position of such meat in the U.S. market.

## Section-by-Section Analysis

Section 1 provides that this act may be cited as the "Humane Methods of Slaughter Act of 1978".

Section 2 would amend section 3 of the Federal Meat Inspection Act (which deals with antemortem inspection) by designating the existing language as subsection (a) and adding a new subsection (b) which for the purpose of preventing the inhumane slaughtering of livestock would require the Secretary of Agriculture to cause to be made by inspectors appointed for that purpose an examination and inspection of all slaughtering establishments inspected under the Act to determine the methods of slaughter and handling in connection with slaughter which are being used.

Section 3 would amend section 4 of the Federal Meat Inspection Act (which deals with post mortem inspection) by inserting immediately

before the first semicolon therein a proviso which gives the Secretary of Agriculture discretionary authority to cause inspection to be temporarily suspended if he finds that any livestock have been slaughtered or handled in connection with slaughter by any method not in accordance with the act entitled "An Act to establish the use of humane methods of slaughter of livestock as a policy of the United States, and for other purposes", approved August 27, 1958, commonly known as the Humane Slaughter Act (7 U.S.C. 1901–1906).

[page 6]

Section 4 would amend section 10 of the Federal Meat Inspection Act (which prohibits slaughter or preparation of livestock capable of use as human food except in compliance with the act, et cetera) to add, to the list of actions which are prohibited by that section, the slaughtering or handling of animals in connection with slaughter in any manner not in accordance with the Humane Slaughter Act.

Section 5 would amend section 20(a) of the Federal Meat Inspection Act to prohibit importation into the United States of carcasses, parts of carcasses, meat, or meat food products unless the livestock from which they were produced was slaughtered and handled in connection with slaughter in accordance with the Humane Slaughter Act.

Section 6 would amend the Humane Slaughter Act by deleting in their entirety sections 3 and 5 (which prohibit the Federal Government from purchasing livestock products from any slaughterer or processor which, in any of its plants, slaughters or handles, in connection with slaughter, livestock by any method other than a method approved by the Secretary of Agriculture under section 4, and give the Secretary discretionary authority to appoint an advisory committee to assist in implementing that act) and by deleting those portions of sections 4(b) and 4(c) which confine application of humane methods of slaughter and handling designated by the Secretary to slaughterers or processors who sell to the Federal Government and require the Secretary to provide suitable means of identifying the carcasses of animals that have been slaughtered and handled in connection with slaughter by humane methods.

Section 7 would make explicit that ritual slaughter as defined in section 2(b) of the Humane Slaughter Act is exempt from the provisions of the Humane Methods of Slaughter Act of 1978.

Section 8 would make the provisions of this bill effective one year after the date of enactment except that the Secretary of Agriculture may withhold application of such provisions for such additional period not to exceed 6 months in individual cases when the Secretary finds that compliance on their effective date would cause undue hardship.

## Committee Consideration

### A. Hearings

The Subcommittee on Livestock and Grains held a public hearing on Tuesday, April 25, 1978. Congressman George E. Brown, author of the legislation, and cosponsors Congressmen Newton Steers and John Moakley, led nearly 2 dozen witnesses who testified in support of the bill or presented supporting statements for the record. The Deputy Assistant Secretary of Agriculture for Food and Consumer Services testified in support of the bill, on behalf of the administration, as did a representative of the American Meat Institute, representing the Nation's meatpacking industry.

A number of witnesses appeared on behalf of organizations actively supporting legislation providing for the humane treatment of animals. The committee heard testimony from representatives of the Society for Animal Protective Legislation, the American Humane Association, the Livestock Conservation Institute, the International Society for Protection of Animals, the Massachusetts Society for the Prevention of Cruelty to Animals, the Humane Society of the United States, the

[page 7]

Animal Protection Institute, Humane Information Services, Inc., the National Association for Humane Legislation, the Rachel Carson Trust for the Living Environment, and the Albert Schweitzer Fellowship. In addition, testomony was received from Ms. Temple Grandin, a consultant on livestock handling equipment, and Mr. John Hosum of Seattle, Wash.

The witnesses were unanimous in their support for the bill. The testimony indicated that since passage of the Humane Slaughter Act of 1958, all but about 300 of the several thousand inspected slaughtering establishments, Federal and State, have adopted humane methods of slaughter not only for protection of the animals but also in the interests of efficient handling, safety of plant personnel, and productivity, since humane methods minimize bruising and other costly damage to the animals. The testimony also indicated that most of the approximately 30 nations which export meat to the United States have adopted humane methods of slaughter, the principal exception being Australia in the case of lambs and sheep.

As originally introduced, the bill provided for an effective date 90 days after enactment. Both the witness for the administration and the representative of the American Meat Institute suggested that the bill be amended to permit more time for the few packers affected to bring their operations into compliance. The administration witness suggested that the Secretary be given discretion to grant extensions of the deadline for compliance where undue hardship would otherwise result. The representative of the American Meat Institute urged that the bill be made effective 1 year after date of enactment.

The administration witness also criticized as wasteful the penalty provision of the bill which required destruction, for food purposes, of meat derived from animals found to have been slaughtered other than humanely. He suggested that the bill be amended to require instead withdrawal of inspection or a monetary penalty.

Finally, the administration witness expressed concern lest the provision of the bill which prohibits importation of meat derived from animals not humanely slaughtered be viewed by our trading partners as an unwarranted intrusion into their internal affairs or as a nontariff trade barrier.

### B. SUBCOMMITTEE CONSIDERATION

The Subcommittee on Livestock and Grains met in business session on Thursday, June 8, 1978, to consider the bill (H.R. 1464). The principal provisions of the bill as introduced amended the Federal Meat Inspection Act to:

(1) Require the Secretary of Agriculture to survey all slaughtering establishments inspected under the act to determine whether or not humane methods of slaughter and handling in connection with slaughter were being employed;

(2) Require condemnation and destruction for use as food of meat derived from animals not slaughtered, and handled in connection with slaughter, by humane methods;

(3) Require the Secretary of Agriculture by regulation to prohibit, from and after 90 days after enactment of the bill, importation into the United States of meat unless the livestock from which it was

[page 8]

produced was slaughtered, and handled in connection with slaughter, by humane methods; and

(4) Make the provisions requiring a survey of establishments and destruction of meat derived from inhumanely handled and slaughtered livestock effective 90 days after enactment of the bill.

Mr. Sebelius offered an amendment in the nature of a substitute designed to accommodate some of the suggestions made during the hearings. The Sebelius substitute retains the provisions of the bill which require the Secretary to conduct a survey. It also prohibits importation into the United States of meat derived from livestock not humanely handled and slaughtered. However, in response to suggestions of the administration and other witnesses, it deletes the provision requiring condemnation and destruction of meat derived from animals not humanely handled and slaughtered. Instead the substitute makes inhumane slaughter and inhumane handling in connection with slaughter a violation of section 10 of the Federal Meat Inspection Act punishable by imprisonment for not more than 1 year, or a fine of not more than $1,000, or both. The substitute also makes the amendments effective one year after date of enactment, as suggested by the American Meat Institute, with a provision giving the Secretary of Agriculture discretion to postpone compliance for up to 6 additional months in individual cases to prevent undue hardship.

In addition, the Sebelius substitute repeals provisions of the Humane Slaughter Act which (a) confined the act's humane slaughter and handling requirements to plants which sell to the Federal Government, (b) required the Secretary of Agriculture to provide for identification of the carcasses of humanely slaughtered animals, and (c) provided the Secretary authority to appoint an advisory committee to assist in implementing the provisions of that act. Mr. Sebelius pointed out that if this bill is enacted, the first two of these provisions would become obsolete since all livestock would have to be slaughtered, and handled in connection with slaughter, by humane methods. He also noted that the Secretary's discretionary authority to appoint an advisory committee to assist in implementing the act was no longer needed since the act had long since been implemented and indeed the committee had not met in more than 12 years.

A brief discussion ensued during which it was brought out that the substitute would not be expected to interfere with imports since most countries exporting meat to the United States have already adopted humane standards. Those few which may not have done so with respect to certain species of livestock would have a year to achieve compliance.

The question of whether the bill affected ritual slaughter was raised. The subcommittee chairman, Mr. Poage, assured the subcommittee that ritual slaughter is not affected in any way by the substitute.

Finally, the subcommittee noted that, since the requirements of the bill would be carried out by inspection personnel already in the plants, little or no additional cost would be incurred.

Thereupon, the subcommittee, by show of hands vote, unanimously adopted the Sebelius amendment and ordered the bill (H.R. 1464), as so amended, reported favorably to the full committee.

[page 9]

### C. FULL COMMITTEE CONSIDERATION

The full Committee on Agriculture met in business session on Thursday, June 15, 1978, to consider the bill (H.R. 1464) as reported by the Subcommittee on Livestock and Grains. The chairman of the subcommittee, Mr. Poage, briefly explained the provisions of the bill and then yielded the floor to Mr. Brown, the author of the legislation, for the purpose of offering an amendment. Mr. Brown offered an amendment to section 4 of the Federal Meat Inspection Act which gives the Secretary of Agriculture discretionary authority to temporarily suspend inspection if he finds that any livestock have been slaughtered or handled in connection with slaughter by any method not authorized by the Humane Slaughter Act of 1958 until the packer agrees to slaughter and handle in connection with slaughter all livestock by such a method. Mr. Brown explained that his amendment was designed to provide an expeditious remedy in such situations as when slaughter or handling in connection with slaughter is rendered inhumane by malfunction or improper use of equipment. He characterized the amendment as a compromise between a subsequently imposed monetary penalty, which humane groups regard as ineffective, and total withdrawal of inspection which most agree would be too drastic a remedy. It is designed to empower the inspector, for example, to stop the line until malfunctioning slaughter or handling equipment is put in proper working order or plant personnel are instructed in the proper use of such equipment or are replaced by competent personnel. The Brown amendment was agreed to by voice vote.

Thereupon there was a brief discussion in which it was made clear that the bill applies to all packers subject to Federal or State inspection and to packers in foreign countries who wish to export meat to the United States. The impact on those few packers not already in compliance with the Humane Slaughter Act would be minimal since a captive-bolt stunning pistol, used in one of the approved humane methods of slaughter, can be purchased for approximately $100. In addition, compliance would not be required for at least 1 year, and in cases of hardship up to 18 months, after enactment of the bill.

It was also brought out that the bill should occasion no additional Government expenditures since it would be carried out by existing Federal and State inspection personnel.

The question was again raised as to the effect of the bill on ritual slaughter and the committee satisfied itself that ritual slaughter is not affected in any way by this bill. Both the provisions of the Humane Slaughter Act of 1958 finding ritual slaughter according to the tenets of the Jewish faith to be humane and the provision exempting ritual slaughter and the handling or other preparation of livestock for ritual slaughter from the terms of the act are preserved intact and govern the application of the humane slaughter amendments to the Federal Meat Inspection Act made by the bill.

Then the committee by voice vote in the presence of a quorum ordered the bill (H.R. 1464), as amended, reported to the House with a recommendation that it do pass.

[page 10]

ADMINISTRATION POSITION

The committee requested the views of the administration on January 31, 1978. The following report on H.R. 1464 dated June 9, 1978, was received from the U.S. Department of Agriculture. On June 16, 1978, the day after the committee had completed action on the bill, an additional report was received from the Department of State. Although it was received too late to be considered by the committee, this report too is set forth below.

DEPARTMENT OF AGRICULTURE,
OFFICE OF THE SECRETARY,
*Washington, D.C., June 9, 1978.*

Hon. TOM FOLEY,
*Chairman, Committee on Agriculture,*
*House of Representatives,*
*Washington, D.C.*

DEAR MR. CHAIRMAN: This is in reply to your request for a report on H.R. 1464, a bill to amend the Federal Meat Inspection Act for purposes of requiring that meat inspected and approved under such act be produced only from livestock slaughtered in accordance with humane methods.

This Department recommends that the bill be enacted if amended as suggested below.

The bill would amend sections 3 and 4 of the Federal Meat Inspection Act (21 U.S.C. 603 and 604) to require the condemnation of carcasses and parts thereof of livestock not slaughtered in accordance with specified humane methods of slaughter at official establishments inspected under the act. The bill would also amend section 20(a) of the Federal Meat Inspection Act (21 U.S.C. 620(a)) to prohibit the importation of any carcass, part thereof, meat or meat food products from livestock not slaughtered and handled in accordance with specified humane methods of slaughter.

We support the basic intent of H.R. 1464. The humane handling and slaughter of livestock, which this bill would require, is consistent with the purpose of animal welfare laws which this Department now administers.

This Department is troubled by the provisions which would require other countries to adopt our values with respect to humane handling and slaughter of livestock. Although humane handling and slaughter methods have already been generally adopted in countries exporting meat products to the United States, a requirement that they do so might well be viewed by these countries as an unwarranted intrusion into their affairs. Further, since the requirements of this legislation may constitute a nontariff barrier to trade, its passage could be inconsistent with U.S. efforts to reduce such barriers in the multilateral trade negotiations now underway in Geneva. In light of these concerns, we defer to the Department of State for its recommendations concerning these provisions.

The penalty provision of the bill—destruction for food purposes of carcasses not handled or slaughtered humanely—is inconsistent with the mission of this Department to encourage greater production of

wholesome food in a world short of food. A monetary penalty for non-compliance, or a provision which would permit the Department to withhold inspection until the person or firm agreed to conduct future operations humanely, might be more appropriate. We recommend an amendment to this effect to section 2(b) of the bill.

H.R. 1464 provides that the provisions of the bill would become effective 90 days after enactment of the bill. Some foreign and domestic establishments would be required to make extensive changes in their facilities in order to comply with the provisions of the bill, and we believe that 90 days may not be sufficient time for such changes to be made. States operating inspection programs may also need additional time to amend their laws and regulations. Section 4 should be amended to give the Secretary authority to grant appropriate extensions, upon application, to provide the flexibility needed to apply requirements without undue hardships to some firms.

Enactment of H.R. 1464 would impose no additional cost upon this Department, since existing personnel will be able to check and verify compliance with the law.

The Office of Management and Budget advises that there is no objection to the presentation of this report from the standpoint of the administration's program.

Sincerely,

CAROL TUCKER FOREMAN,
*Acting Secretary.*

DEPARTMENT OF STATE,
*Washington, D.C., June 15, 1978.*

HON. THOMAS S. FOLEY,
*Chairman, Committee on Agriculture,*
*House of Representatives.*

DEAR MR. CHAIRMAN: We understand that your committee is currently considering H.R. 1464, a bill which would prohibit the marketing of meat not certified to come from animals slaughtered by humane methods approved by the Department of Agriculture.

The bill would require the condemnation of meat from animals slaughtered in the United States by other than approved methods, and would prohibit the importation of meat from animals slaughtered in foreign countries by other than approved methods. To ensure that these provisions are complied with, the bill also provides for a system of inspection of slaughterhouses and certification of meat. This inspection/certification system would be similar to that which has been in effect for many years to protect the public from unhealthful meat.

The inspection of slaughterhouses and the certification of meat in the United States are matters which fall outside the area of responsibility of the Department of State. We thus defer to the judgment of the agencies directly involved, particularly the Department of Agriculture, concerning the bill's domestic effects.

There remains, however, the question of whether or not the United States should require that other countries adopt American slaughtering methods which reflect our norms on the treatment of animals if they are to be allowed to export to our market. We believe that the United States should not impose these requirements, and consequently we recommend against the enactment of section 3 of the bill.

In addition to obliging foreign meat processors to observe American norms on the treatment of animals about to be slaughtered, section 3 would in effect broaden, to encompass slaughtering methods, the existing requirement that foreign packers submit to inspection in their own countries by U.S. officials. This would be an exercise of extraterritorial jurisdiction which would very likely give rise to strong opposition on the part of our trading partners.

It may be argued that the countries which sell meat to the United States have already accepted our exercise of extraterritorial jurisdiction by allowing American inspection of meat processing facilities for the purpose of seeing that meat exported to us meets U.S. standards regarding health and sanitation. This is true, but it differs from the situation which section 3 would create in two important respects.

First, the current inspections are directly related to the health and safety of American consumers, because they are directed at the wholesomeness of the meat itself. Section 3 is directed not at the condition of the product, but at the slaughtering method. The condition of the product affects the health of American consumers, and hence is a legitimate subject of U.S. Government interest; the method of slaughter per se does not affect the health of our people, and hence is not a legitimate subject for our government to control beyond our borders. Further, should the method of slaughter affect the healthfulness of the meat, the meat could be kept out of the United States under existing procedures.

Second, when the United States signed the General Agreement on Tariffs and Trade (GATT), the United States committed itself to the principle that no new nontariff barriers to imports should be created. The imposition of a new condition for the exportation of meat to the United States, which condition does not fall within the GATT exemption for protection of domestic public health, would undoubtedly be considered a new non-tariff barrier by our trading partners, and would subject the United States to criticism in the GATT and to the possibility of retaliation against the exports of the United States to the affected countries.

The Office of Management and Budget advises that from the standpoint of the administration's program there is no objection to the submission of this report.

Sincerely,

DOUGLAS J. BENNET, Jr.,
*Assistant Secretary for Congressional Relations.*

## CURRENT AND FIVE SUBSEQUENT FISCAL YEAR COST ESTIMATE

Pursuant to clause 7 of rule XIII of the Rules of the House of Representatives, the committee estimates that there would be no additional cost to the Government incurred as a result of enactment of H.R. 1464, as amended. The cost estimate of the committee agrees with those of the U.S. Department of Agriculture and the Congressional Budget Office.

## INFLATIONARY IMPACT STATEMENT

Pursuant to clause 2(1)(4) of rule XI of the Rules of the House of Representatives, the committee estimates that enactment of H.R. 1464, as amended, will have no inflationary impact on the national economy.