IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF <br> THE UNITED STATES, et al. <br>     Plaintiffs, <br><br> v. <br><br><br> MIKE JOHANNS, Secretary <br> United States Department of Agriculture, et al. <br><br>     Defendants. | Civ. No. 1:06cv00265 (CKK) |

**DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION UNDER FED. R. CIV. P. 54(b) FOR RECONSIDERATION OF THE COURT'S *SUA SPONTE* DISMISSAL OF CLAIMS ONE AND TWO OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF THOSE CLAIMS FOR IMMEDIATE APPELLATE <u>REVIEW, AND REQUEST FOR AN EXPEDITED HEARING</u>**

James P. Murphy, Esq.
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, DC 20004
Telephone: 202.626.6793
Fax: 202.626.6780

Case 1:06-cv-00265-CKK Document 27-1 Filed 04/07/2006 Page 2of 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ANR Pipeline Co. v. FERC, et al.*, 205 F.3d 403 (D.C. Cir. 2000) .................................. 8, 9

*Am. Library Ass'n v. FCC*, 401 F.3d 489 (D.C. Cir. 2005) ............................................... 8

*Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150 (1970) ............................... 9

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185 (7th Cir. 1990) .......... 7

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................................. 10

*Building Indus.l Ass'n of Super. Calif. v. Babbitt*, 161 F.3d 740 (D.C. Cir. 1998) ......... 5, 6

*Cobell v. Norton*, 355 F.Supp.2d 531 (D.D.C. 2005) ..................................................... 7, 8

*Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980) ............................................ 4, 6

*Goldring, et al. v. District of Columbia*, 416 F.3d 70 (D.C. Cir. 2005) .......................... 10

*Keyston Tobacco, Inc. v. United States Tobacco Co.*, 217 F.R.D. 235 (D.D.C. 2003) ...... 7

*Kifafi, et al. v. Hilton Hotel Retirement Plan, et al.*, 228 F.R.D. 382 (D.D.C. 2005) ........ 7

*Moore v. Hartman*, 332 F.Supp.2d 252 (D.D.C. 2004) ..................................................... 7

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) ................................................. 7

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956) ................................................. 2, 4

*In re Ski Train Fire in Kaprun, Austria, on November 11, 2004*, 224 F.R.D. 543 (S.D.N.Y. 2004) ............................................................................................................ 7

*Taylor, et al. v. FDIC, et al.*, 132 F.3d 753 (D.C. Cir. 1997) ............................................. 4

*Timex V.I., Inc. v. United States*, 157 F.3d 879 (Fed. Cir. 1998) ..................................... 10

*Tolson v. United States*, 732 F.2d 998 (D.C. Cir. 1984) ................................................. 5, 6

*Town of Stratford, Connecticut v. FAA, et al.*, 285 F.3d 84 (D.C. Cir. 2002) .................... 9

Case 1:06-cv-00265-CKK Document 27-1 Filed 04/07/2006 Page 3 of 15

## FEDERAL STATUTES

5 U.S.C. § 500 *et seq*..................................................................................................9

5 U.S.C. § 702 ............................................................................................................9

5 U.S.C. § 706 ....................................................................................................2, 5, 6

21 U.S.C. § 603 ..............................................................................................9, 10, 11

## MISCELLANEOUS

Fed. R. Civ. P. 54......................................................................................2, 3, 4, 5, 6, 7, 11

Pub. L. 109-97, § 794, 119 Stat. 2164 ........................................................................9

71 Fed.Reg. 6,337, 6,341 ............................................................................................2

*Note, Appealability in the Federal Courts,* 75 Harv.L.Rev. 351 (1961) ..................6

Case 1:06-cv-00265-CKK   Document 27-1   Filed 04/07/2006   Page 4 of 15

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................ 2

III. ARGUMENT ...................................................................................................................... 3

    A.   THE COURT SHOULD NOT CERTIFY THE DISMISSED CLAIMS
         FOR  IMMEDIATE APPELLATE REVIEW UNDER RULE 54(b) ................... 3

    B.   THE COURT SHOULD NOT EXERCISE ITS DISCRETION AND
         RECONSIDER ITS DISMISSAL UNDER RULE 54(b) ...................................... 7

IV.  CONCLUSION ................................................................................................................. 11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF ) <br> THE UNITED STATES, et al. ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> MIKE JOHANNS, Secretary ) <br> United States Department of Agriculture, et al. ) <br> ) <br> Defendants. ) <br> ) | Civ. No. 1:06cv00265 (CKK) |

**DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION UNDER FED. R. CIV. P. 54(b) FOR RECONSIDERATION OF THE COURT'S *SUA SPONTE* DISMISSAL OF CLAIMS ONE AND TWO OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF THOSE CLAIMS FOR IMMEDIATE APPELLATE REVIEW, AND REQUEST FOR AN EXPEDITED HEARING**

I.   INTRODUCTION

Defendant-Intervenors Beltex Corporation ("Beltex"), Cavel International, Inc. ("Cavel"), and Dallas Crown, Inc. ("Dallas Crown") (collectively "Defendant-Intervenors") oppose Plaintiffs' motion requesting that the Court certify these claims for immediate appellate review or, in the alternative, reconsider its dismissal of Claims 1 and 2 of Plaintiffs' First Amended Complaint ("Motion").

While we discuss the standing issue briefly in this Opposition, Defendant-Intervenors have no interest in duplicating the Department of Justice on briefing this issue. Instead, this Opposition focuses primarily on why this Court should use its limited resources to resolve the claim relating to the National Environmental Protection Act ("NEPA") rather than the motion for

1

certification or reconsideration. Doing so will provide the best means for resolving this entire case in the most expeditious way and avoid unnecessary expenditure of the Court's time.

The Plaintiffs' Motion simply delays the ultimate resolution of this case and unnecessarily turns all parties' attention from resolution of the one claim that is still pending before this Court: the claim that the United States Department of Agriculture ("USDA") and the Food Safety Inspection Service ("FSIS") allegedly violated NEPA and the Council on Environmental Quality ("CEQ") implementing regulations when it promulgated the interim final rule to provide for a "voluntary fee-for-service program under which official establishments that slaughter horses will be able to apply for and pay for ante-mortem inspection." 71 *Fed. Reg.* 6,337, 6,341 (Feb. 8, 2006) (to be codified at 9 C.F.R. § 352) ("interim final rule").

The Court established a schedule that, with possible supplementation of the administrative record, permits the NEPA claim to proceed on its merits. There is no reason that the other two claims for which the Plaintiffs have been unable to establish prudential standing should now be pursued at the appellate level. Resolution of the NEPA claim, if made in Plaintiffs' favor, will result in the same remedy as would the successful pursuit of the jurisdictional issues related to Claims 1 and 2: the interim rule will be set aside. *See* 5 U.S.C. § 706(2)(A). If Plaintiffs' NEPA claim fails, as it should, then at that time the entire case will be ripe for appeal. To grant Plaintiffs' Motion now would result in piecemeal litigation, an outcome which courts in this district have warned against when considering motions under FED. R. CIV. P. 54(b). *See Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 438 (1956).

**II.    BACKGROUND**

The background of this case is set forth in Defendant-Intervenors' Memorandum in Support of the Motion to Deny Plaintiffs' Motion for a Temporary Restraining Order and for a

2

Preliminary Injunction ("Defendant-Intervenors' Memorandum"), and will not be repeated here. For purposes of this motion, the following is relevant.

On March 14, 2006, the Court dismissed Claims 1 and 2 of Plaintiffs' First Amended Complaint ("Complaint") for lack of jurisdiction. In its Memorandum Opinion and accompanying Order ("Opinion"), the Court found that the Plaintiffs lacked prudential standing to bring these claims.

Ten days later, on March 24, 2006, Plaintiffs filed a motion, pursuant to FED. R. CIV. P. 54(b), to request that the Court reconsider its dismissal of these claims or, in the alternative, to certify these claims for immediate appellate review. In essence, the Plaintiffs argue that their grievances fall within the zone of interests protected and regulated by the statues implicated by Claims 1 and 2 and that the Court overlooked "important contrary precedents and arguments" in finding otherwise. *See* Motion at 1. As an alternative to this Court's reconsideration of their claims, the Plaintiffs request that it direct the entry of final judgment as to Claims 1 and 2 so that they may appeal dismissal of these claims. *See* FED. R. CIV. P. 54(b). In their Motion, Plaintiffs only briefly allude to the NEPA claim, which has not been dismissed, and do not address why this claim, alone, is not worthy of being pursued now, particularly as the remedy it affords is the same as that afforded if Plaintiffs were to be ultimately successful in their pursuit of Claim 1 or 2. *See* Motion at 4, 24 n. 12. It is on the alternative portion of Plaintiffs' motion that this Opposition focuses.

### III. ARGUMENT

#### A. THE COURT SHOULD NOT CERTIFY THE DISMISSED CLAIMS FOR IMMEDIATE APPELLATE REVIEW UNDER RULE 54(b)

FED. R. CIV. P. 54(b) allows the entry of final judgment as to fewer than all of the claims or parties upon "an express determination that there is no just reason for delay." The Rule

"mediates between the sometimes antagonistic goals of avoiding piecemeal appeals and giving parties timely justice." *Taylor, et al. v. FDIC, et al.*, 132 F.3d 753 (D.C. Cir. 1997). In *Curtiss-Wright Corp. v. Gen. Elec. Co.*, the Supreme Court outlined the three step analysis that district courts must undertake in deciding whether to certify part of a case pursuant to FED. R. CIV. P. 54(b). *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1 (1980). First, a district court must determine that the decision for certification constitutes "a 'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Id.* at 7 (citation omitted). Second, the judgment must be "final," meaning that it is an "ultimate disposition of an individual claim entered in the course of a multiple claims action." *Id.* at 8. Finally, and most crucially here, the trial court must determine "whether there is any reason for delay." *Id.* The Supreme Court cautioned that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.*

What most often guides a court in determining whether to certify a decision for appeal is whether doing so will serve "judicial administrative interests, as well as the equities involved" in a case. *Id.* By considering judicial administration at the forefront of its analysis, a trial court will assure that "application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* (citing *Mackey*, 351 U.S. at 438). To vindicate this preference for one appeal, courts study the interrelationship of the claims and whether the "nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals." *Id.*

The Plaintiffs' request for certification does not satisfy any of these guiding considerations. First, it is not at all clear that Plaintiffs' claims are in "some sense separable from the remaining unresolved [NEPA] claim." *Curtiss-Wright Corp.*, 446 U.S. at 8. The

4

District of Columbia Circuit Court of Appeals has held that "[w]hen alleged 'claims [are] so closely related that they would fall afoul of the rule against splitting claims if brought separately,' they do not qualify as 'separate' claims within the meaning of Rule 54(b)." *Tolson v. United States,* 732 F. 2d 998, 1001 (D.C. Cir. 1984) (internal citations omitted). With the exception of standing, many of the facts and legal issues that must be addressed on appeal of Claims 1 and 2 will also likely need to be addressed in any appeal of the NEPA claim. All of Plaintiffs' claims are based upon the APA and are concerned with the procedures that the USDA allegedly did or did not follow in the promulgation of the interim final rule.[1]

One of the cases that Plaintiffs cite actually illustrates and reinforces the "rule of thumb" stated in *Tolson. Id.* In *Bldg. Indus. Ass'n of Super. Calif. v. Babbitt,* 161 F.3d 740 (D.C. Cir. 1998), the Fish and Wildlife Service ("FWS") published a final rule listing four species of fairy shrimp as endangered or threatened. The agency did not, however, designate a critical habitat for the shrimp, concluding that the publication of precise maps and descriptions of habitats in the Federal Register would make these species more vulnerable to vandalism. The association brought suit challenging the final listing decision and the FWS' failure to designate a critical habitat. The district court granted summary judgment upholding the FWS' listing only and subsequently certified, pursuant to Rule 54(b), those issues relating to the decision to list the four species of shrimp.

On appeal, the circuit court reversed the certification. It concluded that the separate claims, one brought under the Endangered Species Act, and another brought under regulations promulgated pursuant to it, "arise from a nexus of fact and law so intertwined that if we decide the one now, we may nonetheless face many of the same questions in determining the other

---

[1] In particular, Claims 2 and 3 are both based on 5 U.S.C. § 706(2)(A), and resolution of both these actions will turn upon the Administrative Record prepared by the USDA when considering the Defendant-Intervenors' petition and the substance of the interim final rule.

5

later." *Id.* at 745. Likewise, Plaintiffs' claims here arise from a nexus of law and fact so intertwined that the same issues will likely have to be addressed by the Court of Appeals.

Second, there is a strong likelihood that certification will lead to multiple appeals, hampering judicial administration. For instance, if Claims 1 and 2 were to be certified, and the NEPA claim proceeds and later is also appealed, for instance, after one of the parties succeeds on a summary judgment motion, the District of Columbia Circuit Court of Appeals will face at least two appeals in this case, if not more. In addition, the need for appellate review of Claims 1 and 2 could well be mooted by future developments with regard to the NEPA claim. Clearly, either result would fail to further judicial administration and the "historic federal policy against piecemeal appeals." *Curtiss-Wright Corp.,* 446 U.S. at 8

Finally, refusing to certify Claims 1 and 2 for immediate appeal in no ways denies Plaintiffs "timely justice," the competing factor that courts must weigh when considering a motion under Rule 54(b). *See id.* at 5. While Plaintiffs' claims may address different alleged harms caused to them by the interim final rule, *see* Motion at 24 n. 12, only one remedy is available to them in the event that any one of the claims succeeds: the Court will hold unlawful and set aside the interim final rule pursuant to 5 U.S.C. § 706. *See Tolson,* 732 F.2d at 1001 (comparing Note, *Appealability in the Federal Courts,* 75 Harv. L. Rev. 351, 359-61 (1961) ("Courts generally hold 54 (b) inapplicable when 'fewer than all of a party's legal theories based on the same transaction' have been dismissed, so that it remains possible 'that the party will still be awarded relief, an event that would render unnecessary an appellate determination of the dismissal.'"). In fact, the very existence of the NEPA claim is a "just reason" for delaying the entry of judgment under Rule 54(b). Plaintiffs are free to pursue the one available remedy in

6

conjunction with its remaining NEPA claim, which can be briefed and decided on the schedule promulgated by this Court in order to ensure "timely justice" for all parties.

### B. THE COURT SHOULD NOT EXERCISE ITS DISCRETION AND RECONSIDER ITS DISMISSAL UNDER RULE 54(B)

FED. R. CIV. P. 54(b) also permits and governs a court's reconsideration of orders that do not constitute final judgments in a case. It permits a court to revisit interlocutory orders that adjudicate fewer than all the claims in a given case at any time prior to final judgment of the entire case. *See Cobell v. Norton,* 355 F. Supp. 2d 531, 539 (D.D.C. 2005). Whether or not to consider such a motion lies solely within the discretion of the trial court. *Kifafi, et al. v. Hilton Hotel Retirement Plan, et al.,* 228 F.R.D. 382, 385 (D.D.C. 2005).

While standards used to evaluate a motion for reconsideration vary among the circuit courts of appeal, *Moore v. Hartman,* 332 F. Supp. 2d 252, 257 n.7 (D.D.C. 2004), courts in this circuit have generally held that reconsideration may be granted "as justice requires."[2] *Cobell,* 355 F. Supp. at 539; *but see Keyston Tobacco, Inc. v. United States Tobacco Co.,* 217 F.R.D. 235, 237 (D.D.C. 2003) (Friedman, J.) ("[T]he Court generally will grant a motion for reconsideration only when the movant demonstrates (1) an intervening change in law; (2) the discovery of new evidence not previously available; or (3) a clear error of law in the first order.")(citations omitted).

Whether "justice requires" reconsideration is dependent upon the relevant circumstances of each case, but as Judge Lamberth stated in *Cobell,* "in order for justice to require reconsideration, logically, it must be the case that, some sort of 'injustice' will result if

---

[2] Plaintiffs cite a string of case law, referred to in the district court's opinion in *Cobell,* that lists particular standards other circuits and courts have employed when determining whether a motion for reconsideration should be granted. None of these cases is binding precedent in this Circuit. *See* Motion at 9 (citing *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995); *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990); *In re Ski Train Fire in Kaprun, Austria, on November 11, 2004,* 224 F.R.D. 543, 546 (S.D.N.Y. 2004)).

Case 1:06-cv-00265-CKK   Document 27-1   Filed 04/07/2006   Page 12 of 15

reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration." *Cobell,* 355 F.Supp. 2d at 540.

Plaintiffs face no potential "injustice" or "harm" if this motion is denied. The Court's decision to dismiss Claims 1 and 2 for lack of jurisdiction was neither contrary to law nor clearly erroneous, and justice does not require reconsideration of that decision. *See id.*

Federal courts have an obligation to address jurisdictional questions *sua sponte*. *See Am. Library Ass'n v. FCC,* 401 F.3d 489, 492 (D.C. Cir. 2005). The fact that neither the government Defendants nor Defendant-Intervenors raised the threshold question of prudential standing is of no consequence. *See ANR Pipeline Co. v. FERC, et al.,* 205 F.3d 403, 407-8 (D.C. Cir. 2000)(holding "[a]lthough neither FERC nor the intervenor has questioned ANR's standing to raise this claim, we are obliged to do so *sua sponte*").

In *ANR Pipeline,* the company petitioned the FERC for permission to expand the capacity of its offshore pipeline system after one of its competitors was allowed to do so. The FERC denied ANR Pipeline Company's request, and the company filed a petition for review of the Commission's rulings, claiming that the agency erred in refusing to hold a comparative hearing on both the petitioner's and the competitor's applications to construct additional pipelines. The court dismissed the petition because holding a comparative hearing was not a requirement. In its petition for review, the company also argued that the Commission violated NEPA by failing to conduct such a hearing, contending that its project was more environmentally friendly than its competitor's design. Neither the Commission nor the intervenors questioned the pipeline company's standing to raise such an issue, and, presumably, the issue was not argued before the court. However, the court held that the petitioners lacked standing with regard to this claim

Case 1:06-cv-00265-CKK   Document 27   Filed 04/07/2006   Page 13 of 15
Case 1:06-cv-00265-CKK   Document 27-1   Filed 04/07/2006   Page 13 of 15

because its economic interests do not fall "within the zone of interests to be protected by NEPA," a statute meant only to protect the environment and prevent environmental injury *Id.* at 408.

Furthermore, this Court correctly applied the law with regard to prudential standing under the Administrative Procedures Act. 5 U.S.C. § 500 *et seq.* ("APA"). The "APA…limits prudential standing to an "aggrieved party" within the meaning of the substantive statute upon which the claim is based." *Town of Stratford, Connecticut v. FAA, et al.,* 285 F. 3d 84, 88 (D.C. Cir. 2002)(citing 5 U.S.C. § 702; *Ass'n of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150 (1970)). Thus, as required, the Court turned to examine the meaning and purpose of Section 794 of the Fiscal Year 2006 Agricultural Appropriations Act ("Appropriations Act") and the Federal Meat Inspection Act ("FMIA"). *See* Pub. L. 109-97, § 794, 119 Stat. 2164 (AR 51); 21 U.S.C. § 603.

The Court was not required to search for purposes "implicit" in the Appropriations Act, contrary to Plaintiffs' suggestion. *See* Motion at 12. Instead, the "classic formulation of the zone-of-interests test is set forth in *Data Processing:* 'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *See* Opinion at 8 (citations omitted). It is clear that, on its face, the Appropriations Act is, as this Court found, a statutory provision that "effectuates a change in federal funding." *Id.* The purpose of the statute is not even marginally related to the injuries the Plaintiffs assert, which are based on environmental, aesthetic and informational concerns.

There is no reason that the Court must explore hundreds of pages of legislative history, as well as the exhibits attached to Plaintiffs' Motion, when the purpose of the statute in question is so clear. The purpose and intent of a statute should first be gleaned from the statute's text – "if

9

the text answers the question, that is the end of the matter." *Timex V.I., Inc. v. United States,* 157 F.3d 879, 882 (Fed. Cir. 1998). Furthermore, "statutory text enacted by Congress trumps the views expressed by one of its [legislators]." *Goldring, et al. v. District of Columbia,* 416 F. 3d 70, 75 (D.C. Cir. 2005). Employing these guiding principles, it is apparent that the interests Plaintiffs assert fall outside the zone-of-interests sought to be protected and regulated by the Appropriations Act.

Finally, the Court was well within its legal authority when finding that the FMIA primarily serves to prevent the use of adulterated meat and meat food products in commerce and subsequently holding that the Plaintiffs did not fall within the "zone of interests" protected or regulated by the statute. *See* Opinion at 9. The Supreme Court's decision in *Bennett v. Spear* leads to the inevitable determination that Plaintiffs fail the test for prudential standing on their APA claim based upon FMIA. *See Bennett v. Spear,* 520 U.S. 154, 175-76 (1997). As this Court noted, *Bennett* ruled that the zone-of-interests test used to determine prudential standing focuses not on the overall purpose of a statute, but on the "*particular provision…invoked by the Plaintiffs.*" Opinion at 9. While the Plaintiffs did mention that the FMIA also serves to prevent "inhumane slaughtering" in their Motion for a Temporary Restraining Order and for a Preliminary Injunction, they did not *rely* on this particular provision of law in asserting their APA claim based upon FMIA. *See Bennett,* 520 U.S. at 175-76 ("the meaning of the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question…, but by reference to the *particular provision* of the law upon which the plaintiff relies.")(emphasis added).

In fact, this lack of reliance on 21 U.S.C. § 603(b) was highlighted, without subsequent dispute by the Plaintiffs, in the government Defendants' Opposition to Plaintiffs' Motion for a

Temporary Restraining Order and Preliminary Injunction ("Defendants' Opposition"). When arguing that Plaintiffs have failed to allege a cognizable injury traceable to the interim final rule, the Defendants specifically noted that "Plaintiffs do not argue that, based on personal observations, Petitioners' operations are contrary to the provisions of the FMIA governing humane treatment of animals at meat processing facilities, see 21 U.S.C. § 603(b)...." Defendants' Opposition pp. 17. Plaintiffs cannot now argue that it is upon this particular provision that they have relied since the inception of this action. Justice simply does not require reconsideration of the dismissal of Claims 1 and 2 for lack of jurisdiction.

## IV.  CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court deny Plaintiffs' Motion Under FED. R. CIV. P. 54(b) for Reconsideration of the Court's *Sua Sponte* Dismissal of Claims One and Two or, in the Alternative, for Certification of those Claims for Immediate Appellate Review.

Respectfully submitted,

/s/ _____
James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W.
Suite 500
Washington, DC  20004
Telephone:  202.626.6793
Fax:  202.626.6780

Date:  April 7, 2006      *Attorney for Defendant-Intervenors*