UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
THE HUMANE SOCIETY OF THE        )
 UNITED STATES, et al.,          )
                                 )
             Plaintiffs          )
                                 )
     v.                          )
                                 ) Civil Action No. 06-0265(CKK)
MIKE JOHANNS, Secretary,         )
   United States Department      )
   of Agriculture, et al.,       )
                                 )
             Defendants.         )
_____)
```

**DEFENDANT'S OPPOSITION TO
"PLAINTIFF'S MOTION UNDER FED. R. CIV. P. 54(b) FOR
RECONSIDERATION OF THE COURT'S *SUA SPONTE* DISMISSAL OF CLAIMS ONE
AND TWO OR, IN THE ALTERNATIVE, FOR CERTIFICATION OF THOSE CLAIMS
FOR IMMEDIATE APPELLATE REVIEW AND
REQUEST FOR AN EXPEDITED HEARING"**

Based on well-established legal principles, the Court dismissed plaintiffs' claims brought pursuant to the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601, et seq. and the Fiscal Year 2006 Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act ("Appropriations Act"), Pub. L. 109-97, 119 Stat. 2120 (2005), for lack of standing. Nevertheless, on grounds devoid of any legal merit, plaintiffs seek reconsideration of the Court's determination, or alternatively, immediate appellate review, arguing (1) the Court erred in making prudential standing determinations "based on specific reasons that were not advanced in the briefs filed by federal defendants and intervenors,"(2) the Court erred in deciding that plaintiffs do

not fall within the zone of interests protected by the Appropriations Act because the legislative history "is replete with references" saying they do, (3) the Court erred in deciding that plaintiffs do not fall within the zone of interest protected by the FMIA because that statute was enacted in part to promote the humane treatment of animals, and (4) plaintiffs have an independent cause of action under the provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq., because any "interested person" may assert a violation of the public notice and comment requirement of 5 U.S.C. § 553.  For reasons stated below, plaintiffs' motion for reconsideration and their request for "immediate appellate review" should both be denied.

## LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure allows courts to reconsider "any order or other form of decision, however designated, which adjudicates fewer than all the claims. . .at any time before the entry of judgment adjudicating all the claims. . .[,]" and to certify those claims dismissed pursuant to the Rule that are segregable or separable from claims that have not otherwise been dismissed for appellate review.  See Fed. R. Civ. P. 54(b); Tolson v. United States, 732 F.2d 998 (D.C. Cir. 1984).  The District of Columbia Circuit recognizes that the law on what constitutes a "separate" or separable claim within the meaning of Rule 54(b) is untidy, id. at 1001, but

nevertheless states that Rule 54(b) certification for appellate review may not be invoked based solely on the argument that the claims dismissed pursuant to the Rule involve different facts and distinguishable law from those claims that are still before the district court, id. at 1003.  Further, parties, like plaintiffs, must be mindful not to run afoul of the "fundamental rule against splitting causes of action and deciding appellate cases piecemeal." Tolson, 732 F.2d at 1001-02, quoting, Page v. Preisser, 585 F.2d 336, 339 (8th Cir. 1978).  Rule 54(b) does not amend or dilute this rule. Id.

**ARGUMENT**

**I.   THIS COURT CORRECTLY MADE THRESHOLD STANDING DETERMINATION SUA SPONTE.**

Issues of standing deal with a court's subject matter jurisdiction, i.e., the court's power "to hear [a] plaintiff's claims in the first place, and therefore[,] impose[] upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power."  4 Wright & Miller: Federal Prac. & Proc. § 1350 (R12)(2002 Supplement).  A court is obliged to determine a party's standing to bring suit even if it does so sua sponte. Davis v. Blackburn, 803 F.2d 1371, 1372-73 (5th Cir. 1986); Thompson v. County of Franklin, 15 F.3d 245, 248 (2d Cir. 1994)(The Courts have an independent obligation to address standing and moreover, the obligation extends "to the prudential rules of standing that, apart from Art. III's minimum

requirements, serve to limit the role of the courts in resolving public disputes," Warth [v. Seldin,] 422 U.S. [490, 500 (1975)].")

Accordingly, this Court appropriately made an independent determination of plaintiffs' standing to bring suit. Mem. Op. at 1, n.1, quoting Am. Library Ass'n v. Fed. Comm'n, 401 F.3d 489, 492 (D.C. Cir. 2005)(internal citations omitted). Further, contrary to plaintiffs' allegation, both Article III standing (i.e., whether plaintiffs had alleged an injury in fact that was concrete, particularized, and actual or imminent; traceable to USDA's actions; and redressable by a favorable decision, see Fund Democracy, LLC v. Securities and Exchange Commission, 278 F.3d 21, 25 (D.C. Cir. 2002), quoting Florida Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996)(en banc)(citation and internal quotation marks omitted)) and prudential standing (i.e., whether the plaintiffs' claims were in the zone of interests protected by the FMIA and the Appropriations statute) were, in fact, discussed *in Defendants' Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction*. See Defs.' Op. Pl.'s Mot. TRO/PI, at 15 - 20. It is true that defendants used the word "standing" and "Article III standing" but not "prudential standing;" nevertheless, the theory behind this latter jurisdictional standard was present in defendants' opposition memorandum. Accordingly, plaintiffs' apparent

4

concerns about the Court making an independent determination regarding plaintiffs' standing to bring suit pursuant to the Appropriations Act and the FMIA are without merit.

**II. This Court Correctly Determined That Plaintiff Lacked Standing To Sue Pursuant to the Appropriations Act and the FMIA.**

A party who invokes the jurisdiction of a federal court must meet the "case or controversy" requirement of Article III of the Constitution. To satisfy "the irreducible constitutional minimum of standing," a party must establish three elements: an "injury in fact," a "causal connection between the injury and the conduct complained of," and redressability of the injury by a favorable decision. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992) (citations omitted). In addition to establishing Article III standing, a party seeking to challenge an administrative agency's decision must also demonstrate that it meets the requirements of prudential standing.

To establish prudential standing, a party must show that "the interest sought to be protected by the [party] is arguably within the zone of interests to be protected or regulated by the statute... in question." <u>Association of Data Processing Serv. Orgs. v. Camp</u>, 397 U.S. 150, 153 (1970). Stated another way, a party must either be: (1) "regulated by the particular regulatory action being challenged"; or (2) "within the zone of interests Congress intended to protect." <u>Hazardous Waste Treatment Council</u>

5

v. Thomas, 885 F.2d 918, 922-23 (D.C. Cir. 1989). To determine "[w]hether a plaintiff's interest is 'arguably ... protected ... by the statute' within the meaning of the zone-of-interests test," the Court must not look to the "overall purpose of the Act in question. . .but. . .to the particular provision of law." Bennett v. Spear, 520 U.S. 154, 175-176 (U.S. 1997).

Here, the Court correctly determined that plaintiffs lack standing to sue pursuant to the Appropriations Act provision prohibiting the use of appropriated funds for ante-mortem inspection of horses (Pub. L. 109-97, § 794, 119 Stat. 2164). The relevant provision states,

> Effective 120 days after the date of enactment of this Act, none of the funds made available in this Act may be used to pay the salaries or expenses of personnel to inspect horses under section 3 of the Federal Meat Inspection Act (21 U.S.C. 603) or under the guidelines issued under section 903 of the Federal Agriculture Improvement and Reform Act of 1996 (7 U.S.C. 1901 note; Public Law 104-27).

Pub. L. 109-97, § 794, 119 Stat. 2164.

As this Court stated and as clearly evidenced by the Appropriations language, the provision lacks any indication that plaintiffs' "environmental, aesthetic, informational or economic interests" are within the zone covered by this particular provision. See Mem. Op. at 8. Further, plaintiffs would have this Court act contrary to law by looking to representations by various members of Congress as guidance on whether plaintiffs

6

have prudential standing.[1]  Pl.'s Mot. at 2.  The Supreme Court made clear in Bennett v. Spear, 520 U.S. at 175-176, that the Court must not look at the overall purpose of an Act to determine prudential standing but the language of the particular provision.

Of course, the overall intent of the Appropriations Act is to provide funds to the U.S. Department of Agriculture ("USDA") and to control, manage or direct how those funds are to be spent. The plain language of the particular provision at issue in this case, section 794, quoted supra, makes clear that the provision's objective is to ensure that appropriated funds are not used to pay the salaries and expenses associated with ante-mortem inspection of horses under section 3 of the FMIA, 21 U.S.C. § 603.

---

[1] Besides, assuming arguendo that plaintiffs' argument had a scintilla of merit, the Court should resist turning to statements of individual floor members for guidance on Congressional intent. In Garcia v. United States, 469 U.S. 70, 75 (1984), the Supreme Court stated that, "[i]n surveying legislative history we have repeatedly stated that the authoritative source for finding the Legislator's intent lies in the Committee Reports on the bill ... we have eschewed reliance on the passing comments of one member ... and casual statements from floor debates."  In this regard, the legislative history is absent of any language suggesting that plaintiffs' interest are within the zone protected by the provision of the Appropriations Act at issue. See Defs.' Op. Pl.'s Mot. TRO/PI, AR 112 (H.R. Rep. No. 109-255, p. 107 (2005)(AR 112).  Accordingly, even if it would not be contrary to law for this Court to seek guidance from legislative history in determining prudential standing, the legislative history applicable here (i.e., the Committee Report) is of no assistance whatsoever to plaintiffs.

By creating the user fee program to pay for the salaries and expenses associated with the ante-mortem inspection of horses, the USDA is complying with the plain language and the objective of the Appropriations Act, in general, and section 794, in particular. Examining the language of the funding statute, plaintiffs simply do not fall within the zone of interests contemplated by the Act, generally, or section 794, in particular. Accordingly, plaintiffs' request that this Court act contrary to the Bennett holding and find that plaintiffs have standing to sue under the Appropriations Act should clearly be rejected. See 520 U.S. at 175-176.

Plaintiffs' claim pursuant to the FMIA fails on similar grounds. Pl.'s Mot. at 2. The FMIA provision cited by plaintiffs state,

> For the purpose of preventing the inhumane slaughtering of livestock, the Secretary shall cause to be made, by inspectors appointed for that purpose, an examination and inspection of the method by which amenable species are slaughtered and handled in connection with slaughter in the slaughtering establishments inspected under this chapter. The Secretary may refuse to provide inspection to a new slaughtering establishment or may cause inspection to be temporarily suspended at a slaughtering establishment if the Secretary finds that any amenable species have been slaughtered or handled in connection with slaughter at such establishment by any method not in accordance with the Act of August 27, 1958 (72 Stat. 862; 7 U.S.C. 1901-1906) until the establishment furnishes assurances satisfactory to the Secretary that all slaughtering and handling in connection with slaughter of livestock shall be in accordance with such a method.

21 U.S.C.A. § 603(b).

Plaintiffs fail to establish Article III standing because they have not alleged any injury fairly traceable to an action under this statutory provision. Lujan v. Defenders of Wildlife, 504 U.S. at 560-61.  There is no private right of action to enforce 21 U.S.C. § 603(b) or any other provision of the FMIA.

Furthermore, there is no allegation of a failure on the part of the USDA with regard to its inspection and examination obligations for purposes of ensuring the humane slaughter of livestock.  In fact, plaintiffs' objection is to the slaughter of horses period.  Plaintiffs' claim does not raise any concern as to whether such slaughter is done humanely.  Given that plaintiffs' injury is not traceable to any action undertaken by the USDA pursuant to this statutory provision, plaintiffs lack standing to this suit under 21 U.S.C. § 603.

Plaintiffs are also not within the "zone of interests" of 21 U.S.C. § 603(b) for purposes of establishing "prudential standing" for multiple reasons.  First, plaintiffs evidently do not seek to ensure humane slaughtering of livestock  by ensuring the use of proper examination and inspection methods.  Plaintiffs have no "sincere interest" in advancing humane slaughter of livestock. Clarke v. Securities Industry Assn., 479 U.S. 388, 396 (1987)(a plaintiff must establish that "the interest sought to be protected... [is] arguably within the 'zone of interests'

9

to be protected or regulated by the statute" at issue.)  Instead, plaintiffs' objective is to stop the slaughtering of horses altogether which is clearly not the purpose of the statutory provision.[2]  Second, plaintiffs do not allege that they have been refused the examination and inspection services which the USDA, by law, is required to provide. <u>Id.</u>  Third, plaintiffs also do not allege that the USDA has been deficient in its use of inspectors for examination and inspection of livestock to ensure humane slaughtering of livestock.  Fourth, plaintiffs evidently are not alleging that they have been denied examination or inspection services by the USDA, or had such services suspended.  Clearly, defendant-intervenors, not plaintiffs, are the parties who would have the better argument on standing pursuant to this provision.  In summary, as this Court found and for reasons discussed herein, plaintiffs simply cannot establish standing under this provision.

---

[2]<u>See, e.g.</u> Am. Compl. ¶¶ 29 -45 and 47 (Individual plaintiffs claim that sights, sounds, and smells from the horse slaughter plants are nuisances that interfere with their ability to obtain the full use and enjoyment of their lands and drive down their property values.); Am. Compl. ¶¶ 3 - 28 (plaintiffs claim that the slaughter of horses interferes with their ability to observe, photograph, study, appreciate, and otherwise enjoy horses and to protect horses from slaughter.)

**IV. Plaintiffs Do Not Have an Independent Right of Review Under the APA.**

Generally, the APA does not create an independent right of action.  See Your Home Visiting Nursing Services v. Shalala, 525 U.S. 449, 457-58 (1999)(The Supreme Court holds that the "judicial-review provision of the Administrative Procedure Act, 5 U.S.C. § 706. . .is not an independent grant of subject-matter jurisdiction."); see also Califano v. Sanders, 430 U.S. 99, 105 (1977); Stockman v. Federal Election Comm'n, 138 F. 3d 144, n.13 (5th Cir. 1998)(...APA does not create an independent grant of jurisdiction to bring suit.).  "Section 702 of the APA crates a cause of action for '[a] person suffering legal wrong because of agency action, or adversely affected by agency action *within the meaning of a relevant statute*. . .'" and "[t]he relevant statute, of course, is the statute whose violation is the gravaman of the complaint."  Id. at 151, quoting 5 U.S.C. § 702 and Lujan v. National Wildlife Fed'n, 497 U.S. 871, 886 (1990)(emphasis added).

Plaintiffs' argument that they have standing based on the denial of an opportunity to provide advance notice and comment pursuant to 5 U.S.C. § 553 lacks merit.  Specifically, plaintiffs cannot demonstrate injury.  As stated by defendants in their opposition to plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, the USDA accepted public comment on the ante-mortem horse inspection rule from February 8,

11

2006 to March 10, 2006, thereby providing the very procedural interests of which plaintiffs complain.

    Notwithstanding this point, if the Court determines that plaintiffs presented an independent claim under 5 U.S.C. § 553, the claim should nevertheless be dismissed for reasons stated in defendants' Opposition to Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, and defendants' Sur-Reply.  In brief, the USDA was justified in issuing the Interim Final Rule without prior notice or comment because the Agency expressly made a determination under the "good cause" exception of the APA, 5 U.S.C. § 553(b)(B), that it was impracticable and contrary to the public interest to require said notice and comment with respect to this particular Rule.  <u>See</u> 71 Fed. Reg. 6337, 6340.  Requiring a prior notice and comment period for this Rule was impracticable because there was insufficient time to complete the notice and comment period prior to the effective date of section 794 and still meet the requirements of USDA's rule-making process. <u>Id.</u>; <u>see also</u> <u>National Women, Infants, and Children Grocers Ass'n v. Food and Nutrition Service</u>, -- F.Supp.2d --, 2006 WL 416266, *10-11 (D.D.C. Feb. 23, 2006)(discussing favorably the invocation of the "good cause" exception to the requirement for advance notice and comment under the Administrative Procedure Act, 5 U.S.C. § 701 <u>et seq</u>., where the Agency, with less of a time constraint than presented in this case, demonstrated that it worked diligently to

12

complete its interim final rule and proffered that it would have been difficult to set aside a period to undertake advance notice and comment.)

Further, requiring a notice and comment period prior to the effective date of section 794 of the Appropriations Act also would have been contrary to the public interest because it would have delayed the implementation of the interim final rule and caused significant, immediate, and concrete financial and economic harm to the intervenors, their employees, and their suppliers and customers, see Defs.' Op. to Pls.' Mot. TRO/PI, Petition (AR 122 - 125), a harm recognized by this Court in its memorandum opinion (pp. 27 -28) in discussing denial of plaintiffs' motion for a preliminary injunction.  Given that this issue has been fully briefed (as asserted by plaintiffs' in their reply memorandum in support of their motion for a temporary restraining order and preliminary injunction, see R. 14, Reply at 3), the claim, if not dismissed on jurisdictional grounds, should be dismissed on the merits.[3]

---

[3] On the one remaining issue to be briefed pursuant to the Court's Memorandum Opinion and Order (i.e., plaintiffs' NEPA claim), defendant-intervenors, in their opposition memorandum, state that "[r]esolution of the NEPA claim, if made in Plaintiffs' favor, will result in the same remedy as would the successful pursuit of the jurisdictional issues related to Claims 1 and 2: the interim will be set aside." See Defendant-Intervenors' Memorandum in Opposition to Plaintiffs' Motion Under Fed.R.Civ.P. 54(b) for Reconsideration of the Court's Sua Sponte Dismissal of Claims One and Two or, in the Alternative, for Certification of Those Claims for Immediate Appellate Review, and Request for an Expedited Hearing" at 2.  Defendants respectfully disagree for reasons not yet briefed by defendants. Specifically, even a favorable ruling on the NEPA claim (which is a procedural issue), would not likely provide plaintiffs with the remedy requested.

**CONCLUSION**

For reasons stated herein, plaintiffs' motion for reconsideration should be denied.  Further, plaintiffs have set forth no reason for the Court to make an exception to the general proposition that issues should not be considered for appeal in a piecemeal fashion, and thus, the Court should not certify the dismissed issues for appeal.[4]

Date: April 12, 2006           Respectfully Submitted,


                               /s/ Kenneth L. Wainstein /kvm
                               _____
                               KENNETH L. WAINSTEIN, D.C. BAR # 451058
                               United States Attorney


                               /s/ Rudolph Contreras
                               _____
                               RUDOLPH CONTRERAS, D.C. BAR #434122
                               Assistant United States Attorney

---

[4] Additionally, this case does not involve any issues or arguments implicating the "collateral order" doctrine, see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546 (1949). "A major characteristic of the denial or granting of a claim appealable" under this doctrine is that, unless the claim or issue can be reviewed prior to disposition or termination of the entire case, the claim or issue can never be reviewed at all. See Mitchell v. Forsyth, 472 U.S. 511, 525 (1985), quoting Stack v. Boyle, 342 U.S. 1, 12 (1952)(opinion of Jackson, J.). Plaintiffs, if they so choose, may seek review of the district court's determinations after disposition of this case in its entirety.

```
                                    /s/ Beverly M. Russell
                                    _____
Of Counsel:                         BEVERLY M. RUSSELL, D.C. Bar #454257
Thomas Bolick, Esq./                Assistant United States Attorney
Rick Herndon, Esq.                  U.S. Attorney's Office for the
U.S. Dept. of Agriculture             District of Columbia
                                    555 4th Street, N.W., Rm. E-4915
                                    Washington, D.C.  20530
                                    Ph:  (202) 307-0492
```

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing ***Defendant's Opposition to Plaintiffs' Motion Under Fed. R. Civ. P. 54(b) for Reconsideration of the Court's Sua Sponte Dismissal of Claims One and Two or, in the Alternative, for Certification of Those Claims for Immediate Appellate Review and Request for an Expedited Hearing*** was sent by the Court's Electronic Case Filing System, this 12th day of April, 2006 to:

Eric R. Glitzenstein, Esq.
Howard M. Crystal, Esq.
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W., Suite 700
Washington, D.C.  20009
eric@meyerglitz.com
howardcrystal@meyerglitz.com

James P. Murphy, Esq.
Squire, Sanders & Dempsey L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, DC  20004
JMurphy@ssd.com

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney