```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE           )
 UNITED STATES, et al.,             )
                                    )
         Plaintiffs                 )
                                    )
   v.                               )
                                    ) Civil Action No. 06-0265(CKK)
MIKE JOHANNS, Secretary,            )
   United States Department         )
   of Agriculture, et al.,          )
                                    )
         Defendants.                )
_____)
```

## DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants, Mike Johanns, Secretary, U.S. Department of Agriculture, and Barbara J. Masters, Administrator, Food Safety and Inspection Service, by and through their undersigned attorneys, respectfully move to dismiss Plaintiffs' claim brought pursuant to the National Environmental Policy Act, 42 U.S.C. § 4321, et seq., for failure to state a claim upon which relief can be granted. Alternatively, pursuant to Fed. R. Civ. P. 56, Defendants move for summary judgment because there are no genuine factual issues in dispute and Defendants are entitled to judgment as a matter of law.

Pursuant to Local Rules 7(a) and 7(c), respectively, a memorandum of points and authorities supporting this motion and a statement of genuine issues as to which there is no dispute are

attached. Consistent with the Court's March 1, 2006 Order in this matter, a proposed Order does not accompany this Motion.

Date: May 1, 2006                    Respectfully Submitted,


/s/ Kenneth L. Wainstein /kvm
_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
_____
Of Counsel:                          BEVERLY M. RUSSELL, D.C. Bar #454257
Thomas Bolick, Esq./                 Assistant United States Attorney
Rick Herndon, Esq.                   U.S. Attorney's Office for the
U.S. Dept. of Agriculture              District of Columbia
                                     555 4th Street, N.W., Rm. E-4915
                                     Washington, D.C.  20530
                                     Ph:  (202) 307-0492

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | ) ) ) |
| Plaintiffs | ) ) |
| v. | ) ) ) Civil Action No. 06-0265(CKK) |
| MIKE JOHANNS, Secretary, United States Department of Agriculture, et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT**

This Court has already sua sponte dismissed two of the three counts in Plaintiffs' complaint for lack of standing. See Mem. Op. at 7 - 10 and 30. Specifically, the Court dismissed the following claims: (1) Plaintiffs' allegation that the U.S. Department of Agriculture ("USDA" or "Agency") violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, by not providing for advance notice and comment on its Interim Final Rule creating a voluntary fee-for-service program for ante-mortem inspection of horses at horse slaughter facilities, see Ante-Mortem Inspection of Horses, 71 Fed. Reg. 6337 (Feb. 8, 2006)(to be codified at 9 C.F.R. pt. 352), Administrative Record ("AR") at 177, and (2) Plaintiffs' allegation that the USDA "ignored" the Fiscal Year 2006 Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act and violated the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §

601, et seq., by creating the fee-for-service inspection program.[1]

Accordingly, the sole remaining claim relates to Plaintiffs' allegation that the USDA violated the APA by creating the fee-for-service interim final rule without first conducting an environmental review under the National Environmental Policy Act ("NEPA"), 42 U.S.C. 4321, et seq. and the Council on Environmental Quality's ("CEQ") implementing regulations. Compl. ¶ 92. However, a review of applicable case law, the uncontroverted facts of this suit, and the governing regulations demonstrate that Plaintiffs fail to state a claim upon which relief can be granted because the USDA's action here merely changes the method by which one of the Agency's longstanding programmatic duties is funded.  Thus, the Agency's action maintains the status quo ante and does not constitute a "major federal action" that triggers NEPA procedural requirements. Defendant-Intervenors' commercial activities likewise do not constitute "major federal action" for purposes of NEPA.  Further, even if NEPA were triggered, FSIS's program and activities, like the fee-for-service inspection program created by the interim

---

[1] Plaintiffs have moved for reconsideration or alternatively for immediate appeal on the dismissed claims notwithstanding the clear legal propriety of dismissing those claims on the threshold basis of lack of jurisdiction.

final rule, are categorically exempt from NEPA procedural requirements.

I.  **STANDARD OF REVIEW**

    A.  **Motion for Failure to State a Claim (Fed.R.Civ.P. 12(b)(6))**

A motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules should be granted if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Although the plaintiff is given the benefit of all inferences that reasonably can be derived from the facts alleged in the complaint, the court need not accept inferences that are not supported by such facts, nor must the court accept plaintiff's legal conclusions cast in the form of factual allegations.  Id.

Additionally, if a party relies on matters outside the pleading to support a motion to dismiss pursuant to Rule 12(b)(6), such motion is treated and disposed as one for summary judgment pursuant to Rule 56 of the Federal Rules.  Fed.R.Civ.P. 12(b)(6).

    B.  **Motion for Summary Judgment (Fed.R.Civ.P. 56)**

Summary judgment may be granted when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A genuine issue is one that could change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 243 (1986). While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the nonmoving party - when faced with a summary judgment motion - has the burden of establishing more than the "mere existence of a scintilla of evidence" demonstrating a genuine issue in dispute for purposes of defeating the moving party's motion. See Lester v. Natsios, 290 F.Supp.2d 11, 19-20 (D.D.C. 2003), citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-250. As the Supreme Court has stated, "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex, 477 U.S at 323-324.

    **C.    NEPA Review**

Congress enacted NEPA to establish a consistent process through which federal agencies must consider the consequences of their actions upon the environment. NEPA is a procedural statute, the purpose of which is to ensure informed agency decision

4

making, and not a particular substantive decision. Robertson v. Methow Valley Citizen's Counsel, 490 U.S. 332, 350 (1989).

NEPA is only triggered if there is a "major federal action" which significantly affects the quality of the human environment. 42 U.S.C. § 4332(2)(C); Fund for Animals, Inc. v. Thomas, 127 F.3d 80, 83 (D.C. Cir. 1987). If triggered, NEPA requires a federal agency to prepare an Environmental Impact Statement ("EIS") "concerning the environmental impacts of the proposed action and any adverse environmental effects which cannot be avoided. . ." 42 U.S.C. 4332(2)(C); see also 40 C.F.R. 1502.1, 1508.11.

The CEQ, an agency created by NEPA, has promulgated regulations that are applicable to federal agencies in their compliance with NEPA. See 40 C.F.R. § 1500-1517. CEQ's regulations establish two primary mechanisms for determining whether a proposed "major federal action" requires preparation of an EIS. First, the agency may conduct a preliminary examination, which is called an environmental assessment ("EA"), of the proposed action. See 40 C.F.R. 1501.4, 1508.9. The essential purpose of the EA is to determine whether the proposal will have a "significant" effect on the environment, the threshold for the EIS requirement. Second, CEQ's regulations instruct agencies to identify classes of actions -- referred to as "categorical exclusions" -- that normally do not result in significant

environmental impacts (either individually or cumulatively) and thus presumably do not require preparation of an EIS. See 40 C.F.R. 1507.3(b)(2)(ii).  Notably, neither an EIS nor an EA is required for actions categorically excluded from NEPA review. See 40 C.F.R. 1507.3(b)(2)(ii).

Finally, judicial review of NEPA compliance is limited in scope and is deferential to agency expertise.  The Court of Appeals for the District of Columbia Circuit has characterized the applicable arbitrary and capricious standard as "highly deferential." Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275, 283 (D.C. Cir. 1981).  The standard "presumes the agency's action to be valid" and additionally precludes the reviewing court from substituting its judgment for the agency's. Id.

## II.  ARGUMENT

### A.  NEPA Requirements are Not Triggered.

NEPA's procedural requirements are triggered only where there is "major federal action."  Fund for Animals, Inc., 127 F.3d at 83.  In instances where the agency's action does nothing more than maintain the substantive status quo, "it cannot be characterized as a 'major federal action' under NEPA." Id. at 84.  The sole purpose of the Interim Final Rule at issue here is to provide an alternative funding mechanism for ante-mortem inspection of horses at horse slaughter plants by establishing a

6

fee-for-service program.  This funding mechanism allows the continuation of USDA's longstanding and on-going obligation to perform ante-mortem inspection of horses, an agency activity that has been conducted at horse slaughter plants for nearly 30 years.  See Ante-Mortem Inspection of Horses, 71 Fed. Reg. 6337 (AR 177 - 181).  Thus, the Rule simply maintains the status quo ante and does not constitute "major federal action" that triggers NEPA requirements.[2]  Accordingly, Plaintiffs' NEPA count should be dismissed for failure to state a claim upon which relief can be granted.[3]

---

[2]Further, the Interim Final Rule does not implicate "major federal action" because Defendant-Intervenors are private parties who are not facilitating, effectuating, implementing or assisting with "major federal action."  Defendant-Intervenors' horse slaughter operations are commercial endeavors, not "federal" and thus, NEPA does not apply.  See Citizens for Responsible Area Growth v. Adams, 680 F.2d 835, 839 (1st Cir. 1982)(An activity "not itself federally funded nor significantly bound up in a federally funded project, is not 'federal'" for purposes of triggering NEPA procedural requirements).

[3]In a 1987 memorandum regarding the NEPA-related Executive Order 12114, FSIS reiterated that its statutory obligations relate primarily to inspection-related activities under the FMIA and the Poultry Products Inspection Act, activities that do not affect the environment. Ex. 6, Letter from Ralph Stafko to Dinah Bear.  As its name clearly indicates, FSIS is a food safety agency and does not approve or exercise control over the location or operation of meat processing facilities.  FSIS merely conducts inspections of these facilities to ensure that meat food products produced by them for human consumption are wholesome.

7

**B.   FSIS Programs and Activities are Categorically Excluded from NEPA Procedural Requirements**.

**1.   Background**

On May 1, 1979, the USDA issued a Proposed Rule on NEPA and the CEQ's implementing regulations. <u>See</u> National Environmental Policy Act; Proposed Policies and Procedures, 44 Fed. Reg. 25,606 (May 1, 1979)(AR00057, filed April 12, 2006).  The USDA's proposed rule recognized that major agency actions affecting the quality of the human environment implicate certain NEPA review procedures (AR00058, filed April 12, 2006), but also acknowledged that certain "categories of agency activities" had been identified as having no significant individual or cumulative adverse effect on the human environment and therefore were excluded from the NEPA review process.  Excluded programs encompassed, for example, "[a]ctivities which deal solely with funding of programs, such as program budget proposals disbursement, transfer, or reprogramming of funds. . ." AR00058.  The USDA's Proposed Rule on NEPA, again, consistent with CEQ regulations at 40 C.F.R. § 1508.4, also mandated that agencies identify their own activities which do not require an environmental assessment or environmental impact statement. 44 Fed. Reg. 25,607 (AR00058, April 12, 2006).  The Rule became final on July 30, 1979.  <u>See</u> National Environmental Policy Act; Final Policies and Procedures, 44 Fed. Reg. 44,802 (July 30, 1979)(AR00060, filed on April 12, 2006).

8

On September 27, 1982, the USDA issued a notice of proposed rulemaking categorically excluding the actions and activities of certain agencies, like the FSIS, from the requirements of preparing an EA and EIS unless the agency head determines that an action may have a significant environmental impact. See Revision of National Environmental Policy act (NEPA) Policies and Procedures, 47 Fed. Reg. 42,364 (Sept. 27, 1982)(AR00062, April 12, 2006).  Consistent with CEQ regulations, 40 C.F.R. 1507.3(a), the proposed rule included a comment period (AR00062, filed April 12, 2006).  The Rule became final on March 18, 1983 and was codified at 7 C.F.R. § 1b.[4]  AR00064 - 65.

In 1981, the CEQ as part of its oversight of implementation of NEPA, requested comments from the public on how the various federal agencies were implementing CEQ regulations. See Council on Environmental Quality, Guidance Regarding NEPA Regulations, 48 Fed. Reg. 34,263 (July 28, 1983)(AR00066, filed April 12, 2006). Based on these comments, in 1983, the CEQ issued guidance to all federal agencies regarding NEPA procedures. Id.  The CEQ had particular concern about agencies (1) "use of detailed lists of specific activities for categorical exclusions," (2) "excessive use of environmental assessments/findings of no significant impact and (3) excessive documentation." Id. at 34,265

---

[4]Minor changes were subsequently made to the Rule on December 22, 1995.  60 Fed. Reg. 66,479 (Dec. 22, 1995)(AR00072 - 75, filed April 12, 2006)

9

(AR00068). In this regard, the guidance "encourage[d] the agencies to consider broadly defined criteria which characterize types of actions that, based on the agency's experience, do not cause significant effects." Id.

### 2.   The Categorical Exclusion

In its March 14, 2006 Memorandum Opinion in this suit, the Court posed a specific question on the NEPA claim at issue here, i.e., "does [7 C.F.R. § 1b.4] presume exemption of the FSIS's programs and require no action whatsoever unless and until the agency head makes an affirmative determination that an action may have a significant impact, or does 7 C.F.R. § 1b.4 simply allow the FSIS to escape certain requirements but still ensures that an agency head's affirmative or tacit determination that 'no significant' impact is likely can still be reviewed under the arbitrary and capricious' standard?" Mem. Op. at 24.  It is the former inquiry that is apposite and the response to that is "yes."  A positive response to the latter inquiry (i.e., a case-by-case or project-by-project review) would entirely undercut the purpose behind CEQ regulations where, as here, there has been a determination that certain activities are categorically excluded from NEPA procedural requirements.  See 7 C.F.R. § 1b; see also Ex. 6 (various documents reiterating that FSIS activities are categorically exempt from NEPA requirements)(attached hereto).

As evidenced supra, the regulatory history demonstrates that, in 1982 and 1983, the Agency met its obligation under the NEPA by issuing a proposed and final rule categorically excluding FSIS activities and programs from NEPA requirements. The categorical exclusion expressly means that a determination has already been made that FSIS activities have no significant environmental impact. Accordingly, no EIS or EA is required, and there has been no affirmative determination by the Agency head to the contrary.

Further, with regard to the Interim Final Rule on ante-mortem horse inspections, the "Summary of Laws and Executive Orders Governing Regulations Development" accompanying FSIS's November 20, 2001 Directive on Regulations Development and Clearance reiterates that "FSIS has been granted a categorical exclusion from NEPA requirements by USDA regulation (7 CFR 1b.4), unless the agency head determines that an action may have a significant environmental impact." In turn, the Regulatory Workplan for the Interim Final Rule on Ante-Mortem Inspection of Horses has a listing of potential required analyses, including but not limited to an Environmental Impact Assessment, with a requirement to check all that apply. AR0202 - 06. Consistent with 7 C.F.R. § 1b.4 and FSIS's regulatory clearance directive, "Environmental Impact Assessment" is not checked on the Workplan for the Interim Final Rule at issue thus indicating that neither an EA nor an EIS

11

is required.  AR0205.  Requiring the USDA to take any additional steps absent a finding of a significant environmental impact by the agency head would be redundant and superfluous, and would simply frustrate the purpose of NEPA by increasing the paperwork under the statute without yielding any additional useful information.  See 40 C.F.R. 1500.1(c).

        **3.**    **Any Challenge to 7 C.F.R. § 1b.4 is Time-Barred.**

To the extent Plaintiffs' claim is construed as a collateral attack on the exemptions asserted in 7 C.F.R. § 1b.4 (i.e., the determination of no significant environmental impact and the resulting categorical exclusion), the argument is barred by the general six-year statute of limitations applicable to suits against the United States.  See 28 U.S.C. § 2401(a); Harris v. FAA, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004), cert. denied, 543 U.S. 809 (2004); Common Sense Salmon Recovery v. Evans, 329 F. Supp. 2d 96, 100 (D.D.C. 2004).  A right of action challenging final agency action accrues on the date of the final agency action.  Harris, 353 F.3d at 1010.  Plaintiffs' right of action with respect to 7 C.F.R. § 1b.4 (i.e., that FSIS, as an agency, is categorically excluded from the requirement to prepare an environmental assessment or environmental impact statement) could not have accrued any later than the publication date of the final rule on March 18, 1983.  See 48 Fed. Reg. 11,403(March 18, 1983).

Thus, any challenge to 7 C.F.R. § 1b.4 , and its exempting provision, was time-barred after March 19, 1989.[5]

### III. CONCLUSION

For reasons stated herein, Plaintiffs' NEPA claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), and consistent with dismissal of the remaining counts in Plaintiffs' complaint, the entire suit dismissed with prejudice. Alternatively, Defendants respectfully request summary judgment in their favor.

---

[5] Deference to the USDA's determination is appropriate given that the Agency enacted 7 C.F.R. § 1b consistent with NEPA and CEQ regulations and the Ante-Mortem Inspection Interim Final Rule cannot be described as "contrary" to 7 C.F.R. § 1b. However, to the extent that it is determined that the USDA was required to take action pursuant to NEPA beyond that which is evident from 7 C.F.R. § 1b, the Court should exercise its discretion and allow the Agency to move forward with funding ante-mortem inspection activities while conducting whatever NEPA analysis and documentation are deemed required for the Interim Final Rule. See State of Alaska v. Andrus, 580 F.2d 465, 485-86 (D.C. Cir. 1978)(The D.C. Circuit refused to enjoin lease sales while the agency conducted additional NEPA analysis because allowing the sales to go forward would not preclude the agency from later modifying its actions based on the results of the NEPA determination.); Border Power Plant Working Group v. Dep't of Energy, No. 02-CV-513-IEG, 2003 WL 22331251, *4 (S.D.Cal. June 4, 2003)(noting that Ninth Circuit "has held that while a violation of the APA ordinarily makes invalid the resulting agency action, the regulation can be left in place while the agency remedies the violation when equity so demands.")(citation omitted). Such remedy is particularly appropriate here where Defendant-Intervenors will be harmed by enjoinment of the Rule and, in fact, the Rule simply maintains the status quo.

Date: May 1, 2006                    Respectfully Submitted,


                                     /s/ Kenneth L. Wainstein /kvm
                                     _____
                                     KENNETH L. WAINSTEIN, D.C. BAR # 451058
                                     United States Attorney


                                     /s/ Rudolph Contreras
                                     _____
                                     RUDOLPH CONTRERAS, D.C. BAR #434122
                                     Assistant United States Attorney



                                     /s/ Beverly M. Russell
                                     _____
Of Counsel:                          BEVERLY M. RUSSELL, D.C. Bar #454257
Thomas Bolick, Esq./                 Assistant United States Attorney
Rick Herndon, Esq.                   U.S. Attorney's Office for the
U.S. Dept. of Agriculture              District of Columbia
                                     555 4th Street, N.W., Rm. E-4915
                                     Washington, D.C.  20530
                                     Ph:  (202) 307-0492

14