Case 1:06-cv-00265-CKK          Document 38          Filed 5/01/06          Page 1 of 21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 1:06cv00265 (CKK) |
| MIKE JOHANNS, Secretary United States Department of Agriculture, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |
| BELTEX CORPORATION, CAVEL INTERNATIONAL, INC., and DALLAS CROWN, INC., | ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

## DEFENDANT-INTERVENORS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant-Intervenors Beltex Corporation, Cavel International, Inc., and Dallas Crown, Inc. (collectively "Defendant-Intervenors") hereby move this Court to dismiss Claim Three of Plaintiffs' First Amended Complaint (the National Environmental Policy Act or "NEPA" claim), on the grounds that the allegations asserted therein fail to state a claim upon which relief can be granted. In the alternative, Defendant-Intervenors move this Court to grant summary judgment pursuant to FED. R. CIV. P. 56 against Plaintiffs with respect to their NEPA claim.

Plaintiffs' claim that the USDA's Food Safety and Inspection Service ("FSIS") violated NEPA in promulgating the Interim Final Rule suffers from two distinct and fundamental shortcomings that mandate the dismissal of this claim:

(1)     Activities of the FSIS (such as promulgation of the Interim Final Rule) are categorically excluded from NEPA's procedural requirements by the USDA's regulations implementing NEPA; and

(2)     The Interim Final Rule merely maintains the status quo of a long-standing FSIS inspection program and, accordingly, cannot constitute a "major federal action" triggering NEPA's procedural requirements.

The grounds supporting this motion are more fully set forth in the accompanying memorandum in support, which is attached hereto and incorporated herein by reference.

Respectfully submitted,

/s/ _____
James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 626-6793
Fax: (202) 626-6780

Date: May 1, 2006

Attorney for Defendant-Intervenors
BELTEX CORPORATION, CAVEL INTERNATIONAL, INC., and DALLAS CROWN, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HUMANE SOCIETY OF** )<br>**THE UNITED STATES, et al.** )<br>)<br>    **Plaintiffs,** )<br>)<br>        **v.** )<br>)<br>**MIKE JOHANNS, Secretary** )<br>**United States Department of Agriculture, et al.,** )<br>)<br>    **Defendants.** )<br>)<br>)<br>**BELTEX CORPORATION, CAVEL** )<br>**INTERNATIONAL, INC., and DALLAS** )<br>**CROWN, INC.,** )<br>)<br>    **Defendant-Intervenors.** )<br>) | **Civ. No. 1:06cv00265 (CKK)** |

### DEFENDANT-INTERVENORS' MEMORANDUM IN SUPPORT OF THEIR
### MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT
### ON CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT

James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 626-6793
Fax: (202) 626-6780

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................8

II.   FACTS AND BACKGROUND ...........................................................................9

      A. Promulgation of the Interim Final Rule by the FSIS................................9

      B. The NEPA Claim Asserted in Plaintiffs' First Amended Complaint ..............12

III.  LAW AND ARGUMENT.....................................................................................12

      A. To Prevail on Their NEPA Claim, Plaintiffs Must Overcome the
         Arbitrary and Capricious Standard of Review...................................12

      B. The FSIS' Conclusion that the Interim Final Rule Was Categorically
         Excluded from Further NEPA Analysis Was Not Arbitrary or
         Capricious. ........................................................................................14

         1. The Plain Language of the CEQ's and USDA's Regulations Implementing
            NEPA Confirm that Promulgation of the Interim Final Rule by the FSIS Was
            Categorically Excluded from NEPA's Procedural Requirements..................14

         2. The Administrative Record Further Documents the Agency's Reasonable
            Conclusion that Promulgation of the Interim Final Rule Was Categorically
            Excluded from NEPA's Procedural Requirements. ...............................17

      C. Even if Promulgation of the Interim Final Rule by the FSIS Was Not
         Categorically Excluded from NEPA Review, NEPA Was Never
         Implicated because the Interim Final Rule Merely Maintains the
         Environmental Status Quo and Does Not Constitute a "Major Federal
         Action". ............................................................................................19

IV.   CONCLUSION .....................................................................................................21

Case 1:06-cv-00265-CKK    Document 38    Filed 5/01/06    Page 5 of 21

## TABLE OF AUTHORITIES

### <u>CASES</u>

*Alaska Center for the Environment v. Forest Service,*
    189 F.3d 851 (9th Cir. 1999) ..................................................................................11

*Alliance for Bio-Integrity et al. v. Shalala,*
    116 F. Supp. 2d 166 (D.D.C. 2000) .......................................................................12

*Burbank Anti-Noise Group v. Goldschmidt,*
    623 F.2d 115 (9th Cir. 1981) ..................................................................................13

*City of Alexandria v. Federal Highway Administration,*
    756 F.2d 1014 (4th Cir. 1985) ................................................................................11

*City of San Francisco v. United States,*
    615 F.2d 498 (9th Cir. 1980) ..................................................................................13

*Coalition on Sensible Transp., Inc. v. Dole,*
    826 F.2d 60 (D.C. Cir. 1987) ...................................................................................6

*Committee for Auto Responsibility v. Solomon,*
    603 F.2d 992 (D.C. Cir. 1979) ..........................................................................12, 13

*Fund for Animals v. Babbitt,*
    89 F.3d 128 (2d Cir. 1996)........................................................................................8

*Fund for Animals v. Thomas,*
    127 F.3d 80 (D.C. Cir. 1997) .............................................................................12, 13

*Nat'l. Trust for Historic Preservation v. Dole,*
    828 F.2d 776 (D.C. Cir. 1987) ..................................................................................7

*Nat'l. Wildlife Fed'n v. Espy,*
    45 F.3d 1337 (9th Cir. 1995) ..................................................................................13

*Robertson v. Methow Valley Citizens Council,*
    490 U.S. 332 (1989)..................................................................................................6

*Sierra Club v. Andrus,*
    581 F.2d 895 (D.C. Cir. 1978), *rev'd on other grounds,* 442 U.S. 347 (1979)..................12, 13

*Thomas Jefferson University v. Shalala,*
    512 U.S. 504 (1990)................................................................................................11

*Valley Ctmy. Pres. Comm'n v. Mineta*,
     231 F. Supp. 2d 23 (D.D.C. 2002) ...................................................................6

*Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Counsel, Inc.*,
     435 U.S. 519 (1978)........................................................................................6

*West Houston Air Comm. v. FAA*,
     784 F.2d 702 (5th Cir. 1986) .........................................................................11

## STATUTES

5 U.S.C. § 706 ...........................................................................................................5, 6

41 U.S.C. § 4321 *et seq*.................................................................................................5

42 U.S.C. § 4231 *et seq*.................................................................................................1

42 U.S.C. § 4332(2)(C) .................................................................................................5

21 U.S.C. § 601 *et seq*..................................................................................................2

21 U.S.C. § 603 .............................................................................................................2

## FEDERAL REGULATIONS

7 C.F.R. § 1b.3 ..............................................................................................................8

7 C.F.R. § 1b.4 ...........................................................................................1, 3, 7, 8, 9, 10, 11

9 C.F.R. § 352 ...............................................................................................................3

40 C.F.R. Parts 1500-1508............................................................................................5

40 C.F.R. § 1500.1(c) ....................................................................................................8

40 C.F.R. §§ 1500.4(p) & 1500.5(k) .............................................................................8

40 C.F.R. § 1508.4 ........................................................................................................7

## OTHER

47 FED. REG. 42,364 (Sept. 27, 1982) ..........................................................................9

48 FED. REG. 11403 (March 18, 1983) ..........................................................................8

48 FED. REG. 34,263 (July 28, 1983) .............................................................................8

60 FED. REG. 66,479 (Dec. 22, 1995) ............................................................................9

71 FED. REG. 6,337 (Feb. 8, 2006) ............................................................................3, 4

FED. R. CIV. P. 12(b)(6) ...........................................................................................1, 2

FED. R. CIV. P. 56..........................................................................................................2

## I.    **INTRODUCTION**

Plaintiffs' third and only remaining claim for relief in this case fails as a matter of law because Plaintiffs have not alleged (and cannot establish) that the USDA has taken any action requiring further procedural review or documentation under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4231 *et seq.* Plaintiffs' NEPA claim is predicated entirely on the allegation that the Food Safety and Inspection Service ("FSIS") of the USDA was obligated to conduct an "environmental review" before promulgating the interim final rule that Plaintiffs find objectionable. See Plaintiffs' First Amended Complaint ("PL. CMPLT.") at ¶¶98-99; see also 71 FED. REG. 6,377 (Feb. 8, 2006) (to be promulgated at 9 C.F.R. Part 352) (the "Interim Final Rule").[1]  This claim is fatally flawed for several straightforward reasons.

First, the USDA's own regulations implementing NEPA's procedural requirements categorically **exclude** the actions and activities of the FSIS from any further NEPA analysis unless the head of the FSIS makes a specific determination to rebut the presumptive categorical exclusion. See 7 C.F.R. § 1b.4. The head of the FSIS did not make any such determination with respect to the Interim Final Rule. Second, even if the actions of the FSIS were not categorically excluded, the agency's decision to promulgate the Interim Final Rule is not subject to NEPA review because, from an environmental perspective, the rule simply maintains the long-standing substantive status quo of the USDA's ante-mortem inspection program. Agency actions which merely maintain the existing status quo cannot constitute a "major federal action" under NEPA.

Accordingly, the Court should dismiss Plaintiffs' NEPA claim pursuant to FED. R. CIV. P. 12(b)(6) because the allegations asserted therein fail to state a claim upon which relief can be granted. In the alternative, this Court should enter summary judgment against Plaintiffs and in

---

[1]  Pursuant to the Court's MEMORANDUM OPINION dated March 14, 2006, the Court *sua sponte* dismissed Claims One and Two of Plaintiffs' First Amended Complaint for lack of jurisdiction.

favor of Defendant-Intervenors pursuant to FED. R. CIV. P. 56. The undisputable facts, as set

forth herein, establish that the FSIS reasonably determined that NEPA was not implicated by the

promulgation of the Interim Final Rule and, accordingly, further environmental review was not

required. Therefore, even if Plaintiffs' NEPA claim could somehow survive scrutiny under FED.

R. CIV. P. 12(b)(6), there are no genuine issues of material fact in dispute and Defendant-

Intervenors are entitled to summary judgment on that claim.

## II.    FACTS AND BACKGROUND

### A.    Promulgation of the Interim Final Rule by the FSIS

The facts relevant to the resolution of Plaintiffs' NEPA claim are relatively narrow and

not in dispute. Pursuant to Section 3 of the Federal Meat Inspection Act, 21 U.S.C. § 601 *et seq.*

("FMIA"), FSIS inspection personnel are subject to a long-standing and ongoing requirement to

conduct ante-mortem examinations and inspections of all livestock, including horses, before the

livestock enter any slaughtering, packing, meat-canning, rendering, or other similar

establishment. 21 U.S.C. § 603.

In the past, the ante-mortem inspection program for horses conducted by the FSIS was

funded pursuant to annual appropriations made to the USDA. However, Section 794 of the

Fiscal Year 2006 Appropriations Act changed the established federal funding arrangement for

ante-mortem inspection of horses to provide that, as of March 10, 2006, funds appropriated to the

USDA under the FMIA could not be used to pay the salaries or expenses of USDA personnel to

conduct the statutorily-mandated ante-mortem inspection of horses.

To address the newly-created conflict between its statutory mandate and the

Congressional funding authorization, the USDA sought other regulatory means to provide the

required inspection services to the three official establishments that slaughter horses in the

United States, which are owned and operated by the Defendant-Intervenors. See Interim Final Rule, 71 FED. REG. 6,337 (Feb. 8, 2006) (to be codified at 9 C.F.R. § 352); USDA-FSIS Regulatory Review Workplan #05-007 (Nov. 23, 2005) ("Workplan," AR0202-0206), attached hereto as Exhibit 1.[2] The Interim Final Rule was promulgated by the USDA to address this conflict. See 71 FED. REG. 6,337.

FSIS Directive 1234.2 governs the development and clearance of rulemaking actions by the FSIS. See FSIS Directive 1232.4, "Regulations Development and Clearance" (Nov. 20, 2001) ("FSIS Directive," AR0192-AR0201), attached hereto as Exhibit 2. The FSIS Directive includes a "Summary of Laws and Executive Orders Governing Regulations Development" enumerating the various requirements that are covered, including an express reference to NEPA and the Council for Environmental Quality ("CEQ") regulations. See Ex. 2, FSIS Directive at p. 10 (AR0201). In this summary, the FSIS Directive expressly recognizes that the FSIS has been granted a categorical exclusion from NEPA requirements by USDA regulation (7 C.F.R. § 1b.4), unless "the agency head determines that an action may have a significant environmental effect." See Ex. 2, FSIS Directive at p. 10 (AR0201).

Pursuant to the FSIS Directive, regulatory actions by the FSIS are initiated by a Regulatory Review Workplan. See Ex. 2, FSIS Directive at p. 6 (AR0197); Ex. 1, Workplan (AR0202-0206). To implement this Directive, the Regulatory Review Workplan has a section captioned "Required Analysis:  (check all that apply)," with a separate box for "Environmental Impact Analysis" that may be checked if and when the FSIS determines that such an analysis is required by NEPA. See Ex. 2, FSIS Directive at pp. 4-5 (AR0205-0206).  Therefore, through the

---

[2] The official administrative record for this rulemaking has been marked and is referenced herein as "AR_____."

Regulatory Review Workplan, the FSIS considers and determines whether any further environmental analysis is required under NEPA for each of its regulatory actions.

The FSIS completed the required Regulatory Review Workplan in developing and clearing the Interim Final Rule. See Ex. 1, Workplan (AR0202-0206). By not checking the box for "Environmental Impact Analysis" in the Required Analysis section, the FSIS confirmed that no further analysis was required under NEPA. See Ex. 1, Workplan at p. 4 (AR0205). The Regulatory Review Workplan was reviewed and approved without comment by the FSIS agency head and the Under/Assistant Secretary, with no determination to contradict the conclusion that NEPA was not implicated. See Ex. 1, Workplan at pp. 1, 5 (AR0202, AR0206).

Accordingly, on February 8, 2006, the FSIS promulgated the Interim Final Rule to:

> amend[] the Federal meat inspection regulations to provide for a voluntary fee-for-service program under which official establishments that slaughter horses will be able to apply for and pay for ante-mortem inspection.

71 FED. REG. at 6,337. On its face, the Interim Final Rule effects only a change in the source of funding for the ante-mortem inspection of horses conducted by the FSIS at the official establishments continuing their pre-existing operations. The Interim Final Rule does not otherwise change or alter either the substance of the ante-mortem inspection program or the regulatory requirements applicable to the operations of these official establishments. 71 FED. REG. at 6,339. In fact, the Interim Final Rule repeatedly states that the actual inspection services rendered by the FSIS will continue to remain subject to the substantive requirements of the FMIA and are otherwise unchanged. Id. For instance, the FSIS made expressly clear that:

- "[U]nder this the interim rule, official establishments that slaughter horses will continue to receive ante-mortem inspection services consistent with those provided to other official establishments that slaughter livestock." Id.

- "Although this interim final rule will provide that official establishments that slaughter horses will receive ante-mortem inspection services pursuant to a fee-for-

service program governed by the [Agricultural Marketing Act], all other inspection services conducted at such establishments, including post-mortem inspection of horse carcasses, parts thereto, and horse meat food products, will continue to be rendered pursuant to, and in accordance with the requirements of the FMIA." *Id.*

- "As explained above, in accordance with the FY 2006 Appropriations Act, horses slaughtered for use in human food in commerce are an 'amenable species' and continue to be subject to the provisions in the FMIA. Therefore, all requirements in the regulations authorized by the FMIA that pertain to official establishments that slaughter horses continue to apply. . . . Official establishments that slaughter horses will also be required to continue to use humane methods for handling and slaughtering horses (Section 352.10)." *Id.*

### B.    The NEPA Claim Asserted in Plaintiffs' First Amended Complaint

Plaintiffs' third claim for relief in their First Amended Complaint asserts that:

> By creating a fee-for-service ante-mortem horse slaughter inspection system without first conducting any environmental review under the National Environmental Policy Act, 41 U.S.C. § 4321, et. seq., USDA has violated NEPA and the CEQ's implementing regulations, abused its discretion, and acted arbitrarily and capriciously in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2).

PL. CMPLT. ¶98.  Plaintiffs specifically acknowledge in their First Amended Complaint that NEPA does not require a federal agency to conduct an environmental analysis for actions that the agency has "categorically excluded" from NEPA review.  PL. CMPLT. ¶62.

## III.    LAW AND ARGUMENT

### A.    To Prevail on Their NEPA Claim, Plaintiffs Must Overcome the Arbitrary and Capricious Standard of Review.

NEPA requires a federal agency to prepare a "detailed environmental statement" for "proposals for legislation and other major federal actions significantly affecting the quality of the human environment."  NEPA § 102(2)(C), 42 U.S.C. § 4332(2)(C).  The CEQ has promulgated regulations to guide federal agencies with respect to implementing procedures to determine which governmental proposals and activities are subject to this statutory requirement and, if so, the procedural method by which to satisfy the requirement.  See 40 C.F.R. Parts 1500-1508

(AR0004-0057). NEPA's "mandate to the agencies is essentially procedural" and is designed "to insure a fully informed and well-considered decision." *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Counsel, Inc.*, 435 U.S. 519, 558 (1978). It is "well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process." *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989).

Judicial review of NEPA compliance is accordingly very limited in scope. Review is principally governed by the Administrative Procedure Act (APA), which provides that agency action shall be set aside only if undertaken "without observance of procedure required by law," or if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 706(2)(A), (2)(D); see *Valley Ctmy. Pres. Comm'n v. Mineta*, 231 F. Supp. 2d 23, 29 (D.D.C. 2002) ("The Court's role in reviewing a challenge to an agency's compliance with NEPA is limited to ensuring 'that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary and capricious.'") (quoting *Baltimore Gas & Elec. Co. v. Nat'l. Resource Defense Counsel, Inc.*, 462 U.S. 87, 97-98 (1983)); *Coalition on Sensible Transp., Inc. v. Dole*, 826 F.2d 60, 66 (D.C. Cir. 1987) ("The NEPA process involves an almost endless series of judgment calls. . . . The line-drawing necessitated by this fact of life are vested in the agencies, not the courts.").

For the reasons set forth below, Plaintiffs are simply unable to overcome the strong deference that must be afforded to the FSIS with respect to its determination that NEPA environmental review in the form of an environmental impact statement ("EIS") or environmental assessment ("EA") was not required in this instance.

**B.    The FSIS' Conclusion that the Interim Final Rule Was Categorically Excluded from Further NEPA Analysis Was Not Arbitrary or Capricious.**

**1.    The CEQ's and USDA's Regulations Implementing NEPA Confirm that Promulgation of the Interim Final Rule by the FSIS Was Categorically Excluded from NEPA's Procedural Requirements.**

In its MEMORANDUM OPINION, this Court questioned whether 7 C.F.R. § 1b.4 presumptively excludes the actions of FSIS from further NEPA review, or whether the regulation requires the FSIS to make an affirmative or tacit determination for each action that no "significant impact" is likely. See MEMORANDUM OPINION at 24.  The NEPA-implementing regulations of both the CEQ and the USDA confirm that the first interpretation offered by the Court is correct.  An environmental review under NEPA is only required if and when the head of the FSIS makes a specific finding that a particular FSIS action may have a significant effect on the environment, thereby rebutting the otherwise applicable presumption of exclusion.

The CEQ's regulations implementing NEPA specifically authorize and require federal agencies such as the USDA to define and identify "categorical exclusions" from NEPA's environmental analysis for those:

> categor[ies] of actions which do not individually or cumulatively have a significant effect on the human environment and which have been found to have no such effect in procedures adopted by a Federal agency in implementation of these regulations (§ 1507.3) and for which, therefore, neither an environmental assessment nor an environmental impact statement is required.

40 C.F.R. § 1508.4 (AR0048-0049).  Thus, by definition, categorical exclusions are "categories of actions that have been *predetermined* not to involve significant environmental impacts, and therefore require no further agency analysis absent extraordinary circumstances." *Nat'l. Trust for Historic Preservation v. Dole*, 828 F.2d 776, 781 (D.C. Cir. 1987) (emphasis added).

Accordingly, no "hard look" test or other more searching environmental review is required for actions that are encompassed within an established categorical exclusion.  See *id.*

The CEQ regulations additionally make clear that NEPA is not intended to force agencies to undertake further analysis or to create unnecessary documentation for activities that have been predetermined to fall within a categorical exclusion.  In fact, the CEQ's regulations mandate that agencies shall reduce excessive paperwork and delay by using categorical exclusions.  See 40 C.F.R. §§ 1500.4(p) & 1500.5(k) (AR0005-0007); see also 40 C.F.R. § 1500.1(c) (AR0004) ("Ultimately, of course, it is not better documents but better decisions that count.  NEPA's purpose is not to generate paperwork — even excellent paperwork — but to foster excellent action.").  Similarly, in a 1983 Memorandum entitled "Guidance Regarding NEPA Regulations," CEQ stated, with respect to the reluctance of some agencies to use categorical exclusions where appropriate, that "[t]he Council encourages the agencies to consider broadly defined criteria which characterize the types of actions that, based on the agency's experience, do not cause significant environmental effects" and that "the Council strongly discourages procedures that would require the preparation of additional paperwork to document that an activity has been categorically excluded."  48 FED. REG. 34,263, 34,265 (July 28, 1983) (AR0066-0072, at 0068). See also *Fund for Animals v. Babbitt*, 89 F.3d 128, 130 (2d Cir. 1996) (noting that "the CEQ has authorized the use of categorical exclusions to promote efficiency in the NEPA review process").

Accordingly, in 1983 and with the CEQ's concurrence, the USDA defined by regulation which of its actions and activities do no have any environmental consequences necessitating NEPA analysis and, therefore, do not require any particular NEPA documentation.  See 7 C.F.R. § 1b.3 and § 1b.4; 48 FED. REG. 11,403 (March 18, 1983) (Department of Agriculture, NEPA

Policies and Procedures, Final Rule) (AR0064-0065). In relevant part, 7 C.F.R. § 1b.4(a) provides that:

> The USDA agencies and agency units listed in paragraph (b) of this section conduct programs and activities that have been *found to have no individual or cumulative effect on the human environment*. The USDA agencies and agency units listed in paragraph (b) of this section are *excluded from the requirements of preparing procedures to implement NEPA*. Actions of USDA agencies and agency units listed in paragraph (b) of this section are *categorically excluded from the preparation of an EA or EIS* unless the agency head determines that an action may have a significant effect on the environment.
>
> \*  \*  \*  \*  \*  \*  \*  \*  \*
>
> (b)(6) *Food Safety and Inspection Service*. . . .

(Emphasis added.) Thus, the USDA has already determined — through formal notice-and-comment rulemaking conducted more than 23 years ago — that the programs and activities of the FSIS presumptively have no significant effect on the human environment. See 48 FED. REG. at 11,404 (AR0065); see also 47 FED. REG. 42,364 (Sept. 27, 1982) (Proposed Rule, establishing comment deadline of Nov. 26, 1982) (AR0062-0063); 60 FED. REG. 66,479 (Dec. 22, 1995) (Revised Final Rule moving continuing categorical exclusion for FSIS from § 1b.4(a)(8) to § 1b.4(b)(6)) (AR0072-0075).

Pursuant to this categorical exclusion, the FSIS is expressly excluded from NEPA's requirement to prepare either an EIS or EA for its actions — including issuance of the Interim Final Rule — unless the head of the FSIS specifically rebuts the presumptive exclusion and specifically determines that the particular action may have a significant effect on the human environment. The categorical exclusion of 7 C.F.R. § 1b.4(b)(6) does not require the agency head to make an affirmative determination that each particular activity of the FSIS shall be categorically excluded from NEPA's procedural requirements. Such an interpretation of the

regulation would defeat the purpose of the categorical exclusions, as the FSIS would have to go through a paperwork exercise of documenting the exclusion and rebutting the possibility of significant environmental effects with respect to every action undertaken by the agency. To the contrary, the plain language of the regulation confirms that exclusion is ***presumed*** unless and until the agency head makes a specific determination that a particular activity may have a significant environmental impact.

This conclusion necessarily compels the dismissal of Plaintiffs' NEPA claim for failure to state a claim upon which relief can be granted. Plaintiffs do not allege and admittedly cannot establish that the head of FSIS made a determination that the Interim Final Rule might have a significant effect on the environment. Consequently, their NEPA claim must fail as a matter of law.

> **2.** **The Administrative Record Further Documents the Agency's Reasonable Conclusion that Promulgation of the Interim Final Rule Was Categorically Excluded from NEPA's Procedural Requirements.**

The Administrative Record in this case resolves the question posed by the Court in the MEMORANDUM OPINION regarding whether and when the FSIS considers the continuing applicability of the categorical exclusion from NEPA for its actions. See MEMORANDUM OPINION at 20-21. The FSIS Directive and the Regulatory Review Workplan conclusively demonstrate that the FSIS considers the applicability of NEPA in every rulemaking action, including the promulgation of the Interim Final Rule. See Ex. 2, FSIS Directive at pp. 9-10 (AR0200-0201); Ex. 1, Workplan at p. 4 (AR0205). Moreover, the Administrative Record readily confirms that the FSIS determined that further NEPA review was not required in conjunction with agency's promulgation of the Interim Final Rule. See Ex. 1, Workplan at p. 4 (AR0205).

As a threshold matter, the USDA has consistently interpreted 7 C.F.R. § 1b.4 to preclude the need to prepare an EIS or EA for programs of the FSIS unless the agency head makes specific, affirmative determination that a particular action may have a significant environmental impact. See Ex. 2, FSIS Directive at p. 10 (AR0201). This interpretation is consistent with the regulation itself and must be given considerable deference and controlling weight by the Court. See *Alaska Center for the Environment v. Forest Service*, 189 F.3d 851, 857 (9th Cir. 1999) (citing *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 510-12 (1990)) ("An agency's interpretation of the meaning of its own categorical exclusion should be given controlling weight unless plainly erroneous or inconsistent with the terms used in the regulation."); *West Houston Air Comm. v. FAA*, 784 F.2d 702, 705 (5th Cir. 1986) (same); *City of Alexandria v. Federal Highway Administration*, 756 F.2d 1014, 1020 (4th Cir. 1985) (same).

Additionally, even if there was some requirement for the FSIS to document its consideration of NEPA and the applicability of the categorical exclusion of 7 C.F.R. § 1b.4 on a case-by-case basis, the undisputed facts readily confirm that the FSIS completed that step in this instance. The Regulatory Analysis section of the Regulatory Review Workplan provides a mechanism by which the FSIS indicates whether an environmental impact analysis is required under NEPA by checking a box to indicate such an affirmative determination. See Ex. 1, Workplan at pp. 4-5 (AR0205-0206). Here, the box is notably unchecked. *Id.* at p. 4 (AR0205). The FSIS agency head and USDA Under/Assistant Secretary confirmed the determination that no further NEPA analysis was required by approving the Regulatory Review Workplan without comment. *Id.* at pp. 1, 5 (AR0202, AR0206).

The Administrative Record thus forecloses any unsupported allegation or argument by Plaintiffs that the FSIS failed to consider the applicability of NEPA in promulgating the Interim

Final Rule. Additionally, the record amply supports the agency's reasonable conclusion that the Interim Final Rule was squarely within the applicable categorical exclusion. The Court must dismiss Plaintiffs' NEPA claim or, alternatively, grant summary judgment against Plaintiffs with respect to that claim.

**C.      Even if Promulgation of the Interim Final Rule by the FSIS Was Not Categorically Excluded from NEPA Review, NEPA Was Never Implicated because the Interim Final Rule Merely Maintains the Environmental Status Quo and Does Not Constitute a "Major Federal Action."**

Plaintiffs' NEPA claim also fails as a matter of law because the Interim Final Rule merely maintains that substantive status quo of the ante-mortem inspection program for horses at the official establishments. As this Court properly recognized in the MEMORANDUM OPINION, this Circuit frequently has held that agency actions that do not change the environmental status quo (such as the Interim Final Rule) do not trigger review under NEPA because such actions cannot be characterized as "major federal actions." See, e.g., *Fund for Animals v. Thomas*, 127 F.3d 80, 84 (D.C. Cir. 1997) ("Because the new national policy maintained the substantive status quo, it cannot be characterized as a 'major federal action' under NEPA."); *Committee for Auto Responsibility v. Solomon*, 603 F.2d 992, 1,002-03 (D.C. Cir. 1979) ("The duty to prepare an EIS normally is triggered when there is a proposal to change the status quo."); *Sierra Club v. Andrus*, 581 F.2d 895, 902 (D.C. Cir. 1978), *rev'd on other grounds*, 442 U.S. 347 (1979) ("In general, however, if there is no proposal to change the status quo, there is in our view no 'proposal for legislation' or 'other major Federal action' to trigger the duty under NEPA to prepare an EIS."); *Alliance for Bio-Integrity et al. v. Shalala*, 116 F. Supp. 2d 166, 174 (D.D.C. 2000) ("[A]gency

decisions that maintain the substantive status quo do not constitute major federal actions under NEPA.").[3]

The entire premise of Plaintiffs' First Amended Complaint is that the USDA's decision to provide a voluntary fee-for-service inspection program facilitates the "*continued* transport and slaughter" of horses for human consumption abroad. See PL. CMPLT. ¶1. Indeed, the Interim Final Rule makes patently clear that the rule does not otherwise change or alter either the substance of the ante-mortem inspection program or the regulatory requirements applicable to the operations of the official establishments. See 71 FED. REG. at 6,339. Quite simply, there is no proposal under the Interim Final Rule to change the long-standing status quo of the inspection program. Therefore, there is no "major federal action" to trigger any alleged duty under NEPA to conduct an environmental review. See *Fund for Animals*, 127 F.3d at 84; *Committee for Auto Responsibility*, 603 F.2d at 1,002-03; *Sierra Club*, 581 F.2d at 902.

Plaintiffs have failed to allege (and cannot establish) that the Interim Final Rule does anything other than adjust the funding arrangement, from direct federal funding to a voluntary fee-for-service program, in order to maintain the status quo of the ante-mortem inspection services already being provided by the FSIS. Because Plaintiffs cannot establish this most basic element of their NEPA claim — that the FSIS engaged in a "major federal action" — their NEPA claim falls short as a matter of law.

---

[3] See also *Nat'l. Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343-1344 (9th Cir. 1995) (NEPA does not apply when agency transfers title to wetlands to a private party where the lands would be used for grazing before and after the transfer); *Burbank Anti-Noise Group v. Goldschmidt*, 623 F.2d 115, 116-17 (9th Cir. 1981) (NEPA does not apply when an agency finances the purchase of an airport already built because "an EIS need not discuss the environmental effects of mere continued operation of a facility"); *City of San Francisco v. United States*, 615 F.2d 498, 501 (9th Cir. 1980) (Navy's decision to lease a shipyard did not require an EIS because "the Navy was not required to evaluate the environmental consequences of the lease as if the Navy were proposing to establish this multi-million dollar industrial complex for the first time").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss Claim Three of Plaintiffs' First Amended Complaint or, in the alternative, grant summary judgment in favor of Defendant-Intervenors and against Plaintiffs on Claim Three.

Respectfully submitted,

/s/_____
James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C.  20004
Telephone:  (202) 626-6793
Fax:  (202) 626-6780

Date:  May 1, 2006          Attorney for Defendant-Intervenors
BELTEX CORPORATION, CAVEL INTERNATIONAL,
INC., and DALLAS CROWN, INC.