# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE HUMANE SOCIETY OF <br> THE UNITED STATES, et al., <br><br> **Plaintiffs,** <br><br> v. <br><br> MIKE JOHANNS, Secretary <br> United States Department of Agriculture, et al., <br><br> **Defendants.** <br><br><br> BELTEX CORPORATION, CAVEL <br> INTERNATIONAL, INC., and DALLAS <br> CROWN, INC., <br><br> **Defendant-Intervenors.** | Civ. No. 1:06cv00265 (CKK) |

## DEFENDANT-INTERVENORS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Defendant-Intervenors Beltex Corporation, Cavel International, Inc., and Dallas Crown, Inc. (collectively "Defendant-Intervenors") hereby oppose PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT on the grounds that Plaintiffs have not demonstrated they are entitled to judgment on their NEPA claim as a matter of law. More specifically, the Court must deny PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT because Plaintiffs have failed to establish that the USDA's Food Safety and Inspection Service ("FSIS") has engaged in any "major federal action" whatsoever potentially triggering NEPA's procedural requirements. Three separate reasons independently compel this conclusion:

(1) Plaintiffs have failed to demonstrate that the Interim Final Rule may significantly affect the quality of the human environment;

(2) Plaintiffs have not established that the Interim Final Rule does anything other than maintain the existing status quo of the longstanding FSIS ante-mortem inspection program, which does not have any significant environmental effects; and

(3) Plaintiffs have not demonstrated that the FSIS' conclusion that the Interim Final Rule was categorically excluded from further NEPA analysis was arbitrary or capricious.

Defendant-Intervenors previously filed their own MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT (*i.e.*, the NEPA claim) together with a supporting memorandum on May 1, 2006. The grounds supporting Defendant-Intervenors' opposition to the PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT are more fully set forth in those previously-filed documents as well as the attached DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, all of which are incorporated herein by reference.

Respectfully submitted,

/s/
James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 626-6793
Fax: (202) 626-6780

Date: May 10, 2006

Attorney for Defendant-Intervenors
BELTEX CORPORATION, CAVEL INTERNATIONAL, INC., and DALLAS CROWN, INC.

-3-

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE HUMANE SOCIETY OF ) <br> THE UNITED STATES, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MIKE JOHANNS, Secretary ) <br> United States Department of Agriculture, et al., ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> BELTEX CORPORATION, CAVEL ) <br> INTERNATIONAL, INC., and DALLAS ) <br> CROWN, INC., ) <br> ) <br> Defendant-Intervenors. ) <br> ) | Civ. No. 1:06cv00265 (CKK) |

**DEFENDANT-INTERVENORS' MEMORANDUM IN OPPOSITION**

**TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C.  20004
Telephone:  (202) 626-6793
Fax:  (202) 626-6780

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 3

III. LAW AND ARGUMENT ................................................................................................. 5

    A. Defendant-Intervenors' Private Commercial Operations Do Not Constitute Any "Federal" Activity Potentially Triggering NEPA Requirements ............................................................................................................ 5

    B. The Interim Final Rule Merely Maintains the Status Quo of the Longstanding Ante-Mortem Inspection Program, and Does Not Constitute Any "Major Federal Action." ............................................................ 8

    C. The FSIS' Conclusion that the Interim Final Rule Was Categorically Excluded from Further NEPA Analysis Was Not Arbitrary or Capricious. .............................................................................................................. 11

IV. CONCLUSION ................................................................................................................ 13

## TABLE OF AUTHORITIES

### **CASES**

*Alaska Center for the Environment v. Forest Service*,
   189 F.3d 851 (9th Cir. 1999) ...................................................................................10

*Born Free USA v. Norton*,
   278 F. Supp. 2d 5, 19 (D.D.C. 2003), *vacated on other grounds*, 2003 U.S. App.
   LEXIS 936 (D.C. Cir. Jan. 21, 2004) ........................................................................7

*Burbank Anti-Noise Group v. Goldschmidt*,
   623 F.2d 115 (9th Cir. 1981) .....................................................................................9

*Citizens Alert Regarding the Env't v. EPA*,
   259 F. Supp. 2d 9 (D.D.C. 2003) ...............................................................................6

*City of Alexandria v. Federal Highway Administration*,
   756 F.2d 1014 (4th Cir. 1985) .................................................................................10

*Committee for Auto Responsibility v. Solomon*,
   603 F.2d 992 (D.C. Cir. 1979) ...................................................................................9

*Confederated Tribes and Bands of Yakima Indian Nation v. Baldridge*,
   746 F.2d 466 (9th Cir. 1984) .....................................................................................9

*Fund for Animals v. Clark*,
   27 F. Supp. 2d 8 (D.D.C. 1998) .................................................................................9

*Fund for Animals v. Mainella*,
   283 F. Supp. 2d 418 (D. Mass. 2003) ........................................................................9

*Fund for Animals v. Thomas*,
   127 F.3d 80 (D.C. Cir. 1997) .....................................................................................9

*Harris v. Federal Aviation Admin.*,
   353 F.3d 1 (D.C. Cir. 2004), *cert. denied*, 543 U.S. 809 (U.S.) .......................11, 12

*Landmark West! v. U.S. Postal Service et al.*,
   840 F. Supp. 994 (S.D.N.Y. 1993), *aff'd* 441 F.3d 1500 (2d Cir. N.Y. 1994) ..........7

*Macht v. Skinner*,
   916 F.2d 13 (D.C. Cir. 1990) .....................................................................................6

*Mineral Policy Center et al. v. Norton*,
   292 F. Supp. 2d 30 (D.D.C. 2003) .............................................................................6

*N.A.A.C.P. v. Medical Ctr., Inc.*,
    584 F.2d 619 (3rd Cir. 1978) ...................................................................................7

*Nat'l Org. for the Reform of Marijuana Laws v. U.S. Dep't of State*, 452 F. Supp. 1226,
    1234 (D.D.C. 1978) .................................................................................................3

*Nat'l Wildlife Fed'n v. Espy*,
    45 F.3d 1337 (9th Cir. 1995) ....................................................................................9

*Oregon Nat'l Desert Ass'n v. Green*,
    953 F. Supp. 1133 (D. Or. 1997) ..............................................................................9

*Ringsred v. City of Duluth*,
    828 F.2d 1305 (8th Cir. 1987) ..................................................................................7

*Save the Bay, Inc. v. U.S. Corps of Eng'r*,
    610 F.2d 322 (5th Cir. 1980), *cert. denied*, 449 U.S. 900 (1980) .............................7

*State of Alaska v. Andrus*,
    580 F.2d 465, 485-86 (D.C. Cir. 1978) .....................................................................3

*Sugarloaf Citizens Ass'n v. FERC et al.*,
    959 F.2d 508 (4th Cir. 1992) ....................................................................................7

*Thomas Jefferson University v. Shalala*,
    512 U.S. 504 (1990) ................................................................................................10

*Upper Snake River v. Hodel*,
    921 F.2d 232 (9th Cir. 1990) ....................................................................................9

*West Houston Air Comm. v. FAA*,
    784 F.2d 702 (5th Cir. 1986) ..................................................................................10

### STATUTES

21 U.S.C. § 603 *et. seq*..................................................................................................1

28 U.S.C. § 2401(a) ................................................................................................11, 12

42 U.S.C. § 4321 *et seq*.................................................................................................1

42 U.S.C. § 4332(2) ....................................................................................................5, 6

-iv-

## FEDERAL REGULATIONS

7 C.F.R. § 1b.4 ..................................................................................................................2, 10, 11, 12

40 C.F.R. § 1508.4 .........................................................................................................................12

40 C.F.R. § 1508.18 ......................................................................................................................6, 8

## OTHER

71 Fed. Reg. 6,337 (Feb. 8, 2006).............................................................................1, 3, 4, 5, 6, 7

47 Fed. Reg. 42,364 (Sept. 27, 1982).........................................................................................9

48 Fed. Reg. at 11,403 (March 18, 1983) ..................................................................................9

**I.      INTRODUCTION**

For three separate and distinct reasons, Plaintiffs have failed to establish that promulgation of the Interim Final Rule[1] by the Food Safety and Inspection Service ("FSIS") could have triggered — much less violated — the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA").

Initially, Plaintiffs have not demonstrated that the activity of which they really complain is even a *federal* action in the first place.  As its name clearly indicates, the FSIS engages in *inspection-related activities* under the Federal Meat Inspection Act, 21 U.S.C. § 603 *et seq*. ("FMIA") for purposes of ensuring that food products produced for human consumption are wholesome.  These inspection activities plainly do not federalize the underlying commercial operations.  The alleged environmental impacts that Plaintiffs claim are caused by the slaughter operations at Defendant-Intervenors' *private establishments* are flatly irrelevant for purposes of establishing their NEPA claim because such operations are not "federal" actions to which NEPA applies.   The FSIS does not control and is not responsible for the operation of these establishments, and the Interim Final Rule does not otherwise change any regulatory requirements applicable to the operations of these establishments.

Second, Plaintiffs have not established that the Interim Final Rule does anything other than maintain the FSIS' longstanding and statutorily-mandated ante-mortem inspection program at these establishments.  The rule merely adjusts the funding arrangement, from direct federal funding to a voluntary fee-for-service program, in order to continue the inspection services historically conducted by the FSIS as required by law.  In doing so, the FSIS has not proposed any changes to the environmental status quo of the FSIS' ante-mortem inspection program and,

---

[1]  71 FED. REG. 6,337 (February 8, 2006) (to be promulgated at 9 C.F.R. Part 352), hereinafter the "Interim Final Rule."

-1-

accordingly, it is not undertaking any "major federal action" for purposes of NEPA. Contrary to Plaintiffs' assertions, there is no legal requirement that an agency must have previously completed any particular NEPA analysis or documentation in order to validate the agency's current, reasonable conclusion that the status quo remains unchanged. Even if such a requirement could possibly be imposed here, the USDA considered the environmental effects of existing FSIS activities (including the ante-mortem inspection program) when it determined that activities of the FSIS have no individual or cumulative effect on the human environment. In light of that determination, the USDA promulgated the categorical exclusion currently set forth in 7 C.F.R. § 1b.4(b)(6).

Finally, Plaintiffs have not demonstrated that the FSIS acted arbitrary, capriciously or otherwise not in accordance with law when the agency concluded that its promulgation of the Interim Final Rule fell within the duly promulgated categorical exclusion. Under 7 C.F.R. §1b.4(b)(6), the FSIS is expressly and presumptively excluded from any requirement to prepare either an Environmental Impact Statement ("EIS") or Environmental Assessment ("EA") under NEPA for its actions — including issuance of the Interim Final Rule — unless the head of the FSIS specifically rebuts the presumptive exclusion and specifically determines that the particular action may have a significant effect on the human environment. It is undisputed that the head of the FSIS made no such determination in this case. To the extent that Plaintiffs contend the FSIS was required to document its invocation of the categorical exclusion in the Administrative Record, the FSIS has in fact done so through its Regulatory Review Workplan.

In sum, Plaintiffs cannot establish that the FSIS violated NEPA in this case.[2] Accordingly, the Court's consideration of the relevant law and undisputed facts mandates summary judgment *for Defendants and Defendant-Intervenors* and precludes it for Plaintiffs.

## II.     STATEMENT OF FACTS

DEFENDANT-INTERVENORS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ON CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT filed on May 1, 2006 ("MEMORANDUM" or "DEF.-INT. MEM.") sets forth the relevant facts necessary for the Court to enter summary judgment on the NEPA claim against Plaintiffs and in favor of the Defendants and Defendant-Intervenors, and is incorporated herein by reference. Defendant-Intervenors provide this limited supplemental Statement of Facts to respond to several significant mischaracterizations and omissions of relevant facts in the background section provided by Plaintiffs. See PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ("PL. MEM.") at pp. 5-17.

---

[2] Additionally, even if the Court were to overlook all of the fundamental flaws in Plaintiffs' position and find that the Defendants must take some additional procedural action pursuant to NEPA (which Defendant-Intervenors strongly dispute), Plaintiffs have also failed to demonstrate entitlement to the remedy that they request from the Court. Plaintiffs are flatly incorrect that vacating the Interim Final Rule would be the appropriate remedy. Should the Court decide that any remedy is necessary at all, the appropriate approach would be for the Court to leave in place the Interim Final Rule while requiring the agency to conduct whatever NEPA analysis or documentation is deemed to be required. Such a remedy is particularly appropriate given that the FSIS is subject to an on-going statutory mandate to conduct the ante-mortem inspections and the Defendant-Intervenors would be severely harmed if the Interim Final Rule was vacated. See *State of Alaska v. Andrus*, 580 F.2d 465, 485-86 (D.C. Cir. 1978) ("where an injunction is not required to preserve the decisionmaker's opportunity to choose, an ongoing project should obviously not be enjoined, especially where, as here, there are substantial public interests in the project's continuation"); *Nat'l Org. for the Reform of Marijuana Laws v. U.S. Dep't of State*, 452 F. Supp. 1226, 1234 (D.D.C. 1978) (declining to vacate the federal agency's program, and requiring agency "forthwith to complete the required environmental impact statement and circulate it for comment and consideration.").

First, while Plaintiffs place considerable weight on the alleged "environmental impacts" claimed to be caused by the operation of Defendant-Intervenors' establishments, these alleged facts are plainly *irrelevant* to the Court's consideration of Plaintiffs' NEPA claim.  See PL. MEM. at pp. 6-12.  NEPA is concerned with "major *federal* actions," and in this case, the major federal action that Plaintiffs are challenging is the FSIS' promulgation of the Interim Final Rule establishing a voluntary fee-for-inspection program for the ante-mortem inspection of horses at official establishments that slaughter horses.  See Plaintiffs' Complaint ("CMPLT.") ¶98; 71 FED. REG. 6,337 (Interim Final Rule).  Accordingly, the only federal action at issue here is the alternative funding mechanism provided by the FSIS in the Interim Final Rule for its longstanding and statutorily-mandated obligation to perform ante-mortem inspections at the establishments.  Defendant-Intervenors' operations — *which are private, commercial activities* — are not "federal" and, thus, are not the relevant activity to evaluate in determining whether NEPA's procedural requirements were triggered in this instance.

Second, Plaintiffs mischaracterize the fee-for-service inspection program established by the Interim Final Rule as a "new federal regulatory scheme."  See, *e.g.*, PL. MEM. at p. 18.  To the contrary, the Interim Final Rule repeatedly makes clear that it merely changes the source of funding for the ongoing ante-mortem inspection of horses conducted by the FSIS.  71 FED. REG. at 6,337.  The rule does not otherwise change or alter either the substance of the ante-mortem inspection program or the regulatory requirements applicable to the operations of these official establishments.  *Id*.  Similarly, Plaintiffs mischaracterize the agency's decision to promulgate the Interim Final Rule as the USDA's "decision to keep the plants operating."  See PL. MEM. at p. 12.  As expressly provided in the Interim Final Rule, the rule was intended to address the newly-created conflict between the FMIA's statutory mandate that the FSIS is to conduct ante-mortem

-4-

inspections and the Fiscal Year 2006 Appropriations Act's change in the established federal funding arrangement for such inspections.

Finally, Plaintiffs falsely assert that the Administrative Record does not contain any documentation or other indication that the FSIS gave consideration to whether its programs and rulemaking actions implicated NEPA, either generally or with respect to the Interim Final Rule. See PL. MEM. at pp. 13-17. Plaintiffs conveniently ignore two documents in the Administrative Record — FSIS Directive No. 1232.4 and FSIS Regulatory Review Workplan No. 05-007 — which conclusively demonstrate that the FSIS considers the applicability of NEPA in *every* rulemaking action, including its promulgation of the Interim Final Rule. See FSIS Directive 1232.4, "Regulations Development and Clearance" (Nov. 20, 2001) ("FSIS Directive," AR0192-AR0201), at pp. 9-10 (AR0200-0201); USDA-FSIS Regulatory Review Workplan #05-007 (Nov. 23, 2005) ("Workplan," AR0202-0206).[3] Moreover, the Administrative Record readily confirms that the FSIS specifically determined that further NEPA review was not required in conjunction with the agency's promulgation of the Interim Final Rule. See Workplan at p. 4 (AR0205).

### III.   LAW AND ARGUMENT

    **A.   Defendant-Intervenors' Private Commercial Operations Do Not Constitute Any "Federal" Activity Potentially Triggering NEPA Requirements.**

NEPA requires that federal agencies consider the environmental consequences only of "major *Federal* actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C) (emphasis added). Thus, a threshold issue is whether Plaintiffs have established that the FSIS has done anything constituting a "major federal action" that might significantly affect the environment. The only federal agency action that Plaintiffs challenge is the FSIS'

---

[3] The official administrative record for this rulemaking has been marked and is referenced herein as "AR____."

promulgation of the Interim Final Rule, which established a voluntary fee-for-service program for the ante-mortem inspection of horses slaughtered at official establishments for human consumption. See CMPLT. ¶98; 71 FED. REG. 6,337. Plaintiffs' claim that this rulemaking action significantly affected the quality of the human environment is entirely devoid of merit, both legally and factually.

Of significant importance in this case, Plaintiffs do not set forth any facts to suggest that the inspection-related activities conducted by the FSIS at the establishments — whether carried out pursuant to federal funding or the voluntary payment of fees — in and of themselves significantly affect the human environment, which clearly they do not. Instead, the crux of Plaintiffs' summary judgment argument is that the precursor slaughter operations conducted at Defendant-Intervenors' ***privately owned and operated establishments*** allegedly affect the human environment and, "but for" the Interim Final Rule, those establishments would be forced to cease operating. See, *e.g.*, PL. MEM. at pp. 18-22. While Plaintiffs would like to make this lawsuit into a federal case about the Defendant-Intervenors' horse slaughter operations, NEPA plainly does not provide a platform for them to do so.

NEPA applies only to "major ***Federal*** actions." 42 U.S.C. § 4332(2)(C). Actions undertaken by private, commercial entities are not subject to NEPA. *Macht v. Skinner*, 916 F.2d 13, 18 (D.C. Cir. 1990); *Mineral Policy Center et al. v. Norton*, 292 F. Supp. 2d 30, 55-56 (D.D.C. 2003). The very limited circumstances in which NEPA may be applicable to non-federal activities are when a federal agency exercises sufficient control or responsibility over the activity to "federalize" it. 40 C.F.R. § 1508.18 (defining "major federal action"); see, *e.g.*, *Mineral Policy Center*, 292 F. Supp. 2d at 56 (NEPA does not apply to commercial endeavors that are undertaken by private actors without federal funds or federal approval); *Citizens Alert*

*Regarding the Env't v. EPA*, 259 F. Supp. 2d 9, 27 (D.D.C. 2003) (NEPA does not apply to private projects that are not federally funded or federally controlled).  No such "federalizing" circumstances are present here.  The undisputed facts establish that the FSIS merely conducts inspection related activities and does ***not*** exercise general control or responsibility for the establishment's slaughter operations by means of funding, approval authority or any other method.  See 71 FED. REG. 6,337.

Despite these facts, Plaintiffs speciously assert throughout their various filings — without any factual support whatsoever — that the Interim Final Rule "authorizes" or "allows" the slaughter operations to continue, and reflects the USDA's "decision to keep the plants operating." See, *e.g*., PL. MEM. at pp. 12, 23, 27.  That is plainly not the case.  The Interim Final Rule expressly states that it only changes the method of funding the ante-mortem inspection services for horses already provided by the FSIS pursuant to its statutory duties under the FMIA, and that the rule does not alter any statutory and regulatory requirements applicable to the operation of these establishments.  71 FED. REG. 6,337.  Moreover, even if Plaintiffs' contention could somehow be factually supported (that "but for" the Interim Final Rule slaughter operations would likely cease), "the fact that a federal action is a 'but for' cause of a non-federal action does not, in itself, subject the non-federal action to NEPA."  *Born Free USA v. Norton*, 278 F. Supp. 2d 5, 19 (D.D.C. 2003), vac'd on other grounds, 2003 U.S. App. LEXIS 936 (D.C. Cir. Jan. 21, 2004); *Landmark West! v. U.S. Postal Service et al.*, 840 F. Supp. 994, 1005-06 (S.D.N.Y. 1993), *aff'd* 441 F.3d 1500 (2d Cir. N.Y. 1994) (citing *Ringsred v. City of Duluth*, 828 F.2d 1305, 1308 (8th Cir. 1987); *Save the Bay, Inc. v. U.S. Corps of Eng'r*, 610 F.2d 322, 327 (5th Cir. 1980), cert. denied, 449 U.S. 900 (1980); *N.A.A.C.P. v. Medical Ctr., Inc.*, 584 F.2d 619, 630-34 (3rd Cir. 1978); *Sugarloaf Citizens Ass'n v. FERC et al.*, 959 F.2d 508, 514 (4th Cir. 1992)).

In sum, the Court must reject Plaintiffs' attempt to "federalize" the Defendant-Intervenors' slaughter operations and boot-strap an argument that the FSIS' promulgation of the Interim Final Rule constituted a major federal action significantly affecting the human environment. No such federal action exists in this case.

> **B.     The Interim Final Rule Merely Maintains the Status Quo of the Longstanding Ante-Mortem Inspection Program, and Does Not Constitute Any "Major Federal Action."**

As set forth in Defendant-Intervenors' MEMORANDUM, there simply is no federal proposal under the Interim Final Rule to change the longstanding status quo of the FSIS' ante-mortem inspection program. See DEF.-INT. MEM. at pp. 19-20. Therefore, the Interim Final Rule does not constitute a "major federal action" compelling any alleged duty on the part of the FSIS to conduct an environmental review under NEPA. See id.

In an attempt to overcome this patently obvious shortcoming of their NEPA claim, Plaintiffs make the untenable assertion that "where an agency makes a new, discretionary decision to authorize an action that has never been previously analyzed in any NEPA document, the agency cannot consistent with NEPA's mandate . . . maintain that it is continuing the status quo." PL. MEM. at p. 27. Here again, Plaintiffs' theory is flawed both legally and factually for multiple reasons.

First, none of the cases cited by Plaintiffs support the proposition that, *as a matter of law*, an agency must have *previously* conducted an environmental review under NEPA in order to *currently* determine that a particular proposal for action simply maintains the substantive status quo of an existing program and therefore does not constitute a major federal action. Rather, the cases cited by Plaintiffs simply stand for the rather modest propositions that: (i) as provided in 40 C.F.R. § 1508.18(a), major federal actions for purposes of NEPA may include both new and

-8-

continuing federal activities;[4] and (ii) if an agency has previously conducted an environmental review pursuant to NEPA, such environmental review may be considered in determining whether there is any current proposal to change the environmental status quo.[5] Furthermore, many other cases have held that an agency's activity merely maintained the status quo without indicating any consideration (much less reliance) by the Court on the issue of whether the agency had previously analyzed the activity under NEPA.[6]

Second, Plaintiffs are fundamentally mistaken in their factual assertions that the FSIS has never previously evaluated the environmental effects of its inspection-related programs, and that

---

[4] See *Fund for Animals v. Clark*, 27 F. Supp. 2d 8, 14-15 (D.D.C. 1998) (federal programs which pre-date the enactment of NEPA are not automatically exempt from NEPA's requirements); *Fund for Animals v. Mainella*, 283 F. Supp. 2d 418, 430 (D. Mass. 2003) (same); *Confederated Tribes and Bands of Yakima Indian Nation v. Baldridge*, 746 F.2d 466, 476 (9th Cir. 1984) (NEPA is implicated when the agency's present decision-making process contemplates **more** than a mere continuation of the existing status quo and the agency is **independently required** to affirmatively consider environmental factors as part of its decision-making process); *Oregon Nat'l Desert Ass'n v. Green*, 953 F. Supp. 1133, 1147 (D. Or. 1997) (same).

[5] See *Fund for Animals v. Thomas*, 127 F.3d 80 (D.C. Cir. 1997) (where the record, including a previously prepared EA, indicated that the new national policy simply maintained the substantive status quo, the policy could not be characterized as a major federal action under NEPA); *Committee for Auto Responsibility v. Solomon*, 603 F.2d 992, 1,002-03 (D.C. Cir. 1979) (where the record, including a prior "environmental analysis" conducted by the agency, indicated that the agency had not proposed a change in the status quo, the agency's action did not constitute a major federal action triggering NEPA; also, an agency's failure to previously prepare an EIS for an activity does not necessarily transgress NEPA's requirements).

[6] See, *e.g.*, *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1343-1344 (9th Cir. 1995) (NEPA does not apply when agency transfers title to wetlands to a private party where the lands would be used for grazing before and after the transfer); *Burbank Anti-Noise Group v. Goldschmidt*, 623 F.2d 115, 116-17 (9th Cir. 1981) (NEPA does not apply when an agency finances the purchase of an airport already built because "an EIS need not discuss the environmental effects of mere continued operation of a facility"); *Upper Snake River v. Hodel*, 921 F.2d 232, 235 (9th Cir. 1990) (EIS not required for periodic adjustment to flow levels from existing dam, since continuing operation of a facility is not subject to NEPA).

the FSIS "ignored" NEPA when it promulgated the Interim Final Rule.[7] The Administrative Record establishes that the USDA determined more than 23 years ago — subject to the CEQ's review and approval — that the inspection-related activities of the FSIS have no significant effect on the human environment. See 48 FED. REG. 11,403, 11,404 (March 18, 1983) (AR0065); see also 47 FED. REG. 42,364 (Sept. 27, 1982) (Proposed Rule, establishing comment deadline of Nov. 26, 1982) (AR0062-0063). This determination was reiterated by the FSIS in 1987 in a memorandum regarding the NEPA-related Executive Order 12114. See Letter from Ralph Stafko to Dinah Bear, attached as Ex. 6 to MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT ("DEFENDANT'S MEMORANDUM"). Moreover, as thoroughly discussed in Defendant-Intervenors' MEMORANDUM, the Administrative Record demonstrates that the FSIS considers the potential applicability of NEPA in every rulemaking action, including promulgation of the Interim Final Rule, as part of its completion of the Regulatory Review Workplan. See DEF.-INT. MEM. at pp. 3-5, 10-12.

Plaintiffs have not met their burden of establishing that the FSIS unreasonably determined that the Interim Final Rule does anything other than adjust the funding arrangement in order to maintain the status quo of the ante-mortem inspection services already being provided by the FSIS. Accordingly, Plaintiffs cannot show that the FSIS has taken any major federal action in the present case violating NEPA's procedural requirements.

---

[7] Again, contrary to Plaintiffs' attempt to blur the distinction between the federal and private actions involved in this case, the relevant federal action that must be evaluated for purposes of NEPA's applicability is the FSIS' *federal* action (*i.e.*, the adjustment in the funding for ante-mortem inspections services), and not Defendant-Intervenors' *private* action (*i.e.*, continued operation of the slaughter establishments).

 

     **C.**     **The FSIS' Conclusion that the Interim Final Rule Was Categorically Excluded from Further NEPA Analysis Was Not Arbitrary or Capricious.**

Plaintiffs have also failed to meet their burden of establishing that the FSIS acted arbitrary or capriciously in determining that promulgation of the Interim Final Rule properly fell within the categorical exclusion from NEPA provided in 7 C.F.R. § 1b.4. As discussed below, none of the reasons proffered by Plaintiffs on this issue provides any legitimate basis for the Court to decline giving considerable deference and controlling weight to the agency's interpretation and application of its own regulations. See *Alaska Center for the Environment v. Forest Service*, 189 F.3d 851, 857 (9th Cir. 1999) (citing *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 510-12 (1990)) ("An agency's interpretation of the meaning of its own categorical exclusion should be given controlling weight unless plainly erroneous or inconsistent with the terms used in the regulation."); *West Houston Air Comm. v. FAA*, 784 F.2d 702, 705 (5th Cir. 1986) (same); *City of Alexandria v. Federal Highway Administration*, 756 F.2d 1014, 1020 (4th Cir. 1985) (same).

As established in both DEFENDANTS' MEMORANDUM and Defendant-Intervenors' MEMORANDUM, 7 C.F.R. § 1b.4(b)(6) expressly and presumptively excludes the activities of the FSIS from any further analysis under NEPA, unless the head of the FSIS affirmatively rebuts the presumptive exclusion and specifically determines that a particular action may have a significant effect on the human environment. See DEFENDANT'S MEMORANDUM at pp. 10-12 and Defendant-Intervenors' MEMORANDUM at pp. 7-10. The opposing interpretation of this regulation suggested by Plaintiffs simply does not comport with the CEQ regulations, the USDA's regulations, and the CEQ's mandate that federal agencies must adopt and enforce categorical exclusions in order reduce excessive paperwork, avoid unnecessary delay and promote efficiency in the NEPA process. See DEFENDANT'S MEMORANDUM at pp. 10-12 and

Defendant-Intervenors' MEMORANDUM at pp. 7-10.  Moreover, any attempt by Plaintiffs to now challenge the categorical exclusion itself, as set forth in 7 C.F.R. § 1b.4, is time-barred by the applicable six-year statute of limitations.  See 28 U.S.C. § 2401(a); *Harris v. Federal Aviation Admin.*, 353 F.3d 1,006, 1,009-10 (D.C. Cir. 2004), cert. denied, 543 U.S. 809 (U.S.).

Second, the most pertinent portions of the Administrative Record — which Plaintiffs conveniently ignore — completely undercut their argument that the FSIS failed to consider and document its consideration of NEPA and the squarely applicable categorical exclusion.  The Regulatory Review Workplan provides a specific mechanism by which the FSIS indicates for each rulemaking action whether an "Environmental Impact Assessment" is required under NEPA.  If further review is required, the agency checks a corresponding box in the "Required Analysis" section to indicate such an affirmative determination.  See Workplan at pp. 4-5 (AR0205-0206).  Here, the box is notably unchecked.  *Id.* at p. 4 (AR0205).  The FSIS agency head and USDA Under/Assistant Secretary confirmed the determination that no further NEPA analysis was required by approving the Regulatory Review Workplan without comment.  *Id.* at pp. 1, 5 (AR0202, AR0206).  Thus, even if NEPA could be interpreted to impose a documentation requirement for an agency's invocation of a categorical exclusion, the Administrative Record in this case conclusively forecloses Plaintiffs' unsupported claim that the FSIS failed to consider and document its determination contemporaneously with its decision to promulgate the Interim Final Rule.

Finally, Plaintiffs' discussion of the "extraordinary circumstances" exception to the ability of the FSIS to invoke a categorical exclusion is erroneous on both the law and the facts. See PL. MEM. at pp. 36-41.  As a threshold matter, the CEQ regulations require that the ***procedures*** for categorical exclusions by an agency must provide "for extraordinary

circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4. The USDA has implemented this mandate by including a provision in 7 C.F.R. § 1b.4(a) providing that the otherwise-applicable categorical exclusion for activities of the FSIS will not apply *if and when* the head of the FSIS determines that an action may have a significant effect on the environment. Plaintiffs cannot dispute that no such determination was made here. Furthermore, any attempt by Plaintiffs to challenge the USDA's chosen method of implementing the "extraordinary circumstances" exception would be time-barred at this late juncture. See 28 U.S.C. § 2401(a); *Harris*, 353 F.3d at 1,009-10 (D.C. Cir. 2004), cert. denied, 543 U.S. 809 (U.S.). Finally, Plaintiffs have not established any factual basis for their contention that such extraordinary circumstances exist in this case. Quite the opposite, the Administrative Record demonstrates that promulgation of the Interim Final Rule does not have any significant effect on the environment and, therefore, the agency's action fits squarely within the normal exclusion for the inspection-related activities of the FSIS.

### IV.  CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court deny PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT.

Respectfully submitted,

/s/
James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 626-6793
Fax: (202) 626-6780

Date: May 10, 2006

Attorney for Defendant-Intervenors
BELTEX CORPORATION, CAVEL INTERNATIONAL, INC., and DALLAS CROWN, INC.