UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**THE HUMANE SOCIETY**                  )
**OF THE UNITED STATES, ET AL.,**       )
                                        )        Civ. No. 1:06CV00265 (CKK)
               Plaintiffs,              )
      v.                                )
                                        )
**MIKE JOHANNS, ET AL.,**               )
                                        )
               Defendants.              )
_____)


**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT, AND DEFENDANT-INTERVENORS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

Of Counsel:

REBECCA G. JUDD
JONATHAN R. LOVVORN
THE HUMANE SOCIETY OF THE UNITED
STATES
2100 L. St., N.W.
Washington, DC  20037
(202) 676-2333

ERIC R. GLITZENSTEIN
ETHAN CARSON EDDY
HOWARD M. CRYSTAL

MEYER GLITZENSTEIN & CRYSTAL
Suite 700
1601 Connecticut Ave., N.W.
Washington, DC  20009
(202) 588-5206
(202) 588-5049 (fax)

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.  THE MOTIONS TO DISMISS ARE BASELESS.  . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT SHOULD
ALSO BE DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  Intervenors' Motion Should Be Denied Because Intervenors Have
Failed To Comply With the Local Rules And This Court's Standing
Order Governing Summary Judgment Motions. . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  Defendants' Contention That USDA's Adoption Of The Rule Was
Not Subject To NEPA Is Groundless. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  Either Federal Defendants Have The Burden Under USDA's NEPA
Regulations Of Establishing That The Rule At Issue Is Categorically
Excluded From Any NEPA Review Under The Unusual Circumstances
Here, Or USDA's  NEPA Regulations Are Arbitrary and Capricious As
Applied To This Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                          **PAGE**

Alliance for Bio-Integrity v. Shalala,
    116 F. Supp. 2d 166 (D.D.C. 2000) ......................................................... 6, 8, 9

American Bioscience, Inc. v. Thompson,
    269 F.3d 1077 (D.C. Cir. 2001) ................................... 16

Burbank Anti-Noise Group v. Goldschmidt,
    623 F.2d 115 (9th Cir. 1980) ....................................... 10

Burke v. Gould,
    286 F.3d 513 (D.C. Cir. 2002) ..................................... 4, 6

Cellular Telecommunications & Internet Association v. FCC,
    330 F.3d 502 (D.C. Cir. 2003) ..................................... 14

Citizens for Responsible Area Growth v. Adams,
    680 F.2d 835 (1st Cir. 1982) ....................................... 16

City and County of San Francisco v. United States,
    615 F.2d 498 (9th Cir. 1980) ....................................... 9

Committee for Auto Responsibility v. Solomon,
    603 F.2d 992 (D.C. Cir. 1979) ..................................... 8

Diamond Shamrock Corp. v. Costle,
    580 F.2d 670 (D.C. Cir. 1978) ..................................... 15

Dunn-McCampbell Royalty Interest Inc. v. National Park Service,
    112 F.3d 1283 (5th Cir. 1997) ..................................... 14

Fund for Animals, Inc. v. Thomas,
    127 F.3d 80 (D.C. Cir. 1987) ....................................... 7, 9

Gardels v. Central Intelligence Agency,
    637 F.2d 770 (D.C. Cir. 1980) ..................................... 5

Gifford Pinchot Task Force v. U.S. FWS,
    378 F.3d 1059 (9th Cir. 2004) ..................................... 15

Harris v. Ladner,
    127 F.3d 1121 (D.C. Cir. 1997) ........................................................................ 2, 4

Independent Community Bankers of America v. Board of Governors of the Federal Reserve
    System,
    195 F.3d 28 (D.C. Cir.1999) ........................................................................ 15

Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,
    101 F.3d 145 (D.C. Cir. 1996) ........................................................................ 5

Kowal v. MCI Communications Corp.,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................................................ 2

National Forest Preservation Group v. Butz,
    485 F.2d 408 (9th Cir. 1973) ........................................................................ 16

National Wildlife Federation v. Espy,
    45 F.3d 1337 (9th Cir. 1995) ........................................................................ 10

Natural Resources Defense Council, Inc. v. Morton,
    458 F.2d 827 (D.C. Cir. 1972) ........................................................................ 16

NextWave Personal Communications, Inc. v. F.C.C.,
    254 F.3d 130 (D.C. Cir. 2001) ........................................................................ 15

Peroff v. Manuel,
    421 F. Supp. 570 (D.D.C. 1976) ........................................................................ 5

Robertson v. Methow Valley Citizens Council,
    490 U.S. 332 (1989) ........................................................................ 7

Scheuer v. Rhodes,
    416 U.S. 232 (1974) ........................................................................ 4

Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission,
    481 F.2d 1079 (D.C. Cir. 1973) ........................................................................ 16

Sierra Club v. Andrus,
    581 F.2d 895 (D.C. Cir. 1978) ........................................................................ 9

Sierra Club v. Marsh,
    872 F.2d 497 (1st Cir. 1989) ........................................................................ 17

Western Land Exchange Project v. U.S. Bureau of Land Management,
    315 F. Supp. 2d 1068 (D. Nev. 2004) ........................................................................ 8

iii

**FEDERAL STATUTES**

5 U.S.C. § 706(2) ............................................................................... 13, 16

42 U.S.C. § 4321 et seq .......................................................................... 2

Fed. R. Civ. P. 12(b)(6) ........................................................................... 6

**FEDERAL REGULATIONS**

7 C.F.R. § 1b.3.....................................................................................14

7 C.F.R. § 1b.4.................................................................................12, 14

40 C.F.R. § 1508.4............................................................................13, 14

40 C.F.R. § 1508.18 ............................................................................... 6

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HUMANE SOCIETY** ) | |
| **OF THE UNITED STATES, ET AL.,** ) | |
| ) | |
| Plaintiffs, ) | Civ. No. 1:06CV00265 (CKK) |
| v. ) | |
| ) | |
| **MIKE JOHANNS, ET AL.,** ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO FEDERAL
DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
FOR SUMMARY JUDGMENT, AND DEFENDANT-INTERVENORS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY
JUDGMENT ON CLAIM THREE OF PLAINTIFFS' FIRST AMENDED COMPLAINT**

**INTRODUCTION**

Plaintiffs hereby oppose the dispositive motions that have been filed by federal defendants and defendant-intervenors. Since most of the issues raised by defendants and intervenors have already been fully addressed in plaintiffs' May 1, 2006 Memorandum in Support of their Motion for Summary Judgment (Doc. 39) ("Pfs. Mem."), in the interests of judicial economy and efficiency, plaintiffs incorporate those arguments by reference, and will confine this memorandum to responding only to those few points raised by defendants that plaintiffs have not previously addressed, as well as to highlighting what is <u>not</u> contained in defendants' cursory summary judgment memoranda and supporting materials.[1]

---

[1] For purposes of clarity, plaintiffs will refer to the government as the "federal defendants" and the defendant-intervenors as "intervenors." Where plaintiffs are referring to arguments made by both sets of parties, they will be referred to collectively as "defendants."

As discussed further below, defendants have not demonstrated that they are entitled to summary judgment on plaintiffs' claim that federal defendants have violated the National Environmental Policy Act, 42 U.S.C. § 4321 <u>et</u> <u>seq</u>. ("NEPA"), by failing to engage in any NEPA review whatsoever before adopting an entirely new regulation that is necessary to operation of the horse slaughter facilities. To the contrary, if anything, defendants' submissions simply underscore that the Court cannot sustain defendants' position without running roughshod over NEPA's overriding purposes, the implementing regulations issued by the Council on Environmental Quality ("CEQ"), and prior judicial constructions of the statute.

Since defendants have styled their filings as motions to dismiss, or in the alternative, motions for summary judgment, plaintiffs will first briefly address why the motions to dismiss are baseless, and then explain why defendants' summary judgment motions also cannot be granted.

## I.    THE MOTIONS TO DISMISS ARE BASELESS.

As acknowledged by federal defendants, a motion to dismiss may be granted only "if the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Fed. Def. Mem. at 3 (citing <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Indeed, since, at the motion to dismiss stage, the Court "must accept [plaintiffs'] factual allegations as true," and "draw all inferences in [plaintiffs'] favor," <u>Harris v. Ladner</u>, 127 F.3d 1121, 1123 (D.C. Cir. 1997), "'[t]o prevail on a motion to dismiss under rule 12(b)(6), the defendants must show 'beyond doubt that the plaintiff can prove no set of facts in support of [plaintiffs'] claim which would entitle [them] to relief.'" <u>Id</u>. (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)). As defendants further acknowledge, if a "party relies on matters outside the pleading to support a motion to dismiss pursuant to Rule 12(b)(6), such motion is treated and disposed of as one for summary

2

judgment pursuant to Rule 56 of the Federal Rules."  Fed. Def. Mem. at 3 (citing Fed. R. Civ. P. 12(b)(6)).

Here, plaintiffs' Complaint clearly alleges facts that are sufficient to support a NEPA claim. In particular, the First Amended Complaint for Declaratory and Injunctive Relief alleges, among other things, that the United States Department of Agriculture created a "new and unprecedented regulatory system, which was expressly designed to sidestep the statute [] passed by Congress," Compl. at ¶ 78; that, as a consequence, there will be "adverse and 'significant environmental effects,'" id. at ¶ 91; that the "head of [the Food Safety Inspection Service ("FSIS")] apparently did not undertake any environmental review in conjunction with the Final Rule, as required by NEPA," id., and that "[t]here is no mention of any NEPA review in the Final Rule or its preamble, and Plaintiffs have been unable to locate any other publicly-availale environmental analysis in conjunction with the fee-for-service program."  Id.

The Complaint further alleges that, "[e]ach year, hundreds of wild horses put up for adoption . . . are slaughtered at the plants," id. at ¶ 67; that, "[i]n passing the [FY 2006] amendment, Congress "expressly took into account the grievances of residents who live near the plants," including "a letter from Kaufman, Texas Mayor Paula Bacon, who . . . described the economic and aesthetic blight inflicted upon her town," id. at ¶ 75; and that, as a result of the rule under review, the individual plaintiffs will be exposed to degradation of their air and water.  Id. at ¶¶ 29, 30, 34-45.  On their face, these factual allegations are sufficient to support plaintiffs' claim that, "[b]y creating a fee-for-service ante-mortem horse slaughter inspection system without first conducting any environmental review under [NEPA], USDA has violated NEPA and the CEQ's implementing regulations, abused its discretion, and acted arbitrarily and capriciously in violation" of the APA.  Id. at ¶ 98.

3

Accordingly, since the Complaint clearly states, and makes factual allegations to support, all elements of an APA claim predicated on a NEPA violation – and defendants do not seriously contend otherwise – there is no substance to the motions to dismiss.  See Scheuer v. Rhodes, 416 U.S. 232, 236-37 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); Harris, 127 F.3d at 1123.

## II.    DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT SHOULD ALSO BE DENIED.

Defendants' motions for summary judgment should also be denied.  As discussed below, intervenors' motion should be disregarded in its entirety because intervenors have failed to comply with the Court's clear instructions for the filing of summary judgment motions.  As for the government's motion, it essentially concedes that federal defendants did not engage in even perfunctory NEPA review in connection with the regulation at issue, but offers no legally valid rationale for that course of conduct.

### A.    Intervenors' Motion Should Be Denied Because Intervenors Have Failed To Comply With the Local Rules And This Court's Standing Order Governing Summary Judgment Motions.

Intervenors failed to file, in support of their summary judgment motion, a separate statement of material facts as to which there is no genuine dispute, in violation of Local Rules 7(h) and 56.1 and this Court's Standing Order.  See Order Establishing Procedures for Electronic Filing (Doc. 13) (admonishing parties that this Court "strictly adheres to the dictates of Local Civil Rules 7(h) and 56.1 and may strike pleadings not in conformity with these rules") (citing Burke v. Gould, 286 F.3d 513, 519 (D.C. Cir. 2002)).  While intervenors' brief makes broad reference to "the undisputable facts, as set forth herein," Interv. Mem. at 2, this hardly satisfies the Court's Standing Order and local rules.

4

Not only does the "Facts and Background" section of the brief mix fact with legal argument, see, e.g., id. at 2 (asserting the existence of a "newly-created conflict between [FSIS's] statutory mandate and the Congressional funding authorization"), but it completely fails to delineate the specific "material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement." Local Civ. R. 7(h); see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 153 (D.C. Cir. 1996) (finding that "the 'relevant facts' section does not satisfy the purposes of a Rule [56.1] statement" because it "repeatedly blend[s] factual assertions with legal argument").

Moreover, the Court of Appeals has held that "strict compliance with the local rule" regarding the filing of, and response to, statements of material fact, is not merely a formality, but "is justified both by the nature of summary judgment and by the rule's purposes." Gardels v. Central Intelligence Agency, 637 F.2d 770, 773 (D.C. Cir. 1980). Specifically,

> [t]he moving party's statement specifies the material facts and directs the district judge and the opponent of summary judgment to the parts of the record which the movant believes support his statement. The opponent then has the opportunity to respond by filing a counter-statement and affidavits showing genuine factual issues. The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record. These purposes clearly are not served when one party, particularly the moving party, fails in his statement to specify the material facts upon which he relies."

Id. Hence, in the absence of such a statement, plaintiffs are deprived of the opportunity to respond, and therefore to "isolate[ ] the facts that the parties assert are material." Id. (citing Thompson v. Evening Star Newspaper Co., 394 F.2d 774, 776-77 (D.C. Cir. 1968), cert. denied, 393 U.S. 884 (1968)); Peroff v. Manuel, 421 F. Supp. 570, 576 n.15 (D.D.C. 1976) (awarding judgment to non-moving party as a matter of law based on moving party's "utter[ ] fail[ure] to meet his obligation to

properly 'set forth specific facts showing that there is a genuine issue for trial'"); see also Burke, 286 F.3d at 513 (observing that the Court of Appeals "has long upheld strict compliance with the district court's local rules on summary judgment when invoked by the district court"); Alliance for Bio-Integrity v. Shalala, 116 F. Supp. 2d 166, 169-70 (D.D.C. 2000) (relying on parties' statements of materials facts in setting forth pertinent background).   Accordingly, since intervenors have not complied with the Court's instructions for the filing of summary judgment motions, their motion can only be considered as a motion under Fed. R. Civ. P. 12(b)(6).[2]

**B.     Defendants' Contention That USDA's Adoption Of The Rule Was Not Subject To NEPA Is Groundless.**

Defendants again acknowledge that, but for the discretionary decision by the United States Department of Agriculture ("USDA") to grant intervenors' petition for a new inspection rule, the slaughter operations – and hence the environmental impacts occasioned by them – would, by operation of law, have stopped on March 10, 2006.  See Fed. Def. Mem. at 7 ("This funding mechanism allows the continuation" of USDA inspections, and hence the slaughter operations) (emphasis added).  Nonetheless, defendants maintain that the Rule "simply maintains the status quo ante and does not constitute 'major federal action' that triggers NEPA requirements."  Id.

In advancing this argument, defendants ignore the pertinent CEQ regulations, which define "major federal actions" that must undergo NEPA review to include both "new and continuing activities," including "new or revised agency rules" and the "[a]doption of programs."  See 40 C.F.R. § 1508.18; Pfs. Mem. at 24-25.  At the same time, however, federal defendants recognize that the

---

[2]   Although intervenors have not filed a valid summary judgment motion, plaintiffs will nonetheless respond to their legal arguments in the event that the Court opts to overlook the non-compliance.  In responding to these arguments, plaintiffs are not waiving their threshold contention that the motion should be disregarded in its entirety.

CEQ regulations are binding on USDA and its constituent agencies. <u>See</u> Fed. Def. Mem. at 5 ("The CEQ, an agency created by NEPA, has promulgated regulations <u>that are applicable to federal agencies in their compliance with NEPA</u>.") (emphasis added).

Defendants also make no effort to reconcile their position that NEPA has no bearing on the rule under review with NEPA's purposes, which defendants concede is to "<u>ensure</u> informed agency decision making . . . ." Fed. Def. Mem. at 5 (emphasis added) (citing <u>Robertson v. Methow Valley Citizens Council</u>, 490 U.S. 332, 350 (1989)). Defendants do not explain how FSIS was "ensur[ing] informed agency decisionmaking" when it totally disregarded the environmental impacts associated with its decision to adopt a new funding scheme in the face of Congress's cutoff of federal funds – environmental impacts that, once again, have <u>never</u> been analyzed in any NEPA document.

Instead, federal defendants cite, with no accompanying discussion, <u>Fund for Animals, Inc. v. Thomas</u>, 127 F.3d 80, 83 (D.C. Cir. 1997); <u>see</u> Fed. Def. Mem. at 6. Plaintiffs have already explained at length why the reasoning in that decision in fact supports plaintiffs' position here because, in <u>Fund for Animals</u>, the Forest Service <u>did</u> prepare an Environmental Assessment ("EA") analyzing the environmental impacts associated with the policy statement at issue, and because the administrative record demonstrated that the environmental impacts of concern to the plaintiffs would have continued irrespective of the policy's adoption. <u>See</u> Pfs. Mem. at 28-29.

Defendants have not explained how that (or any other) ruling undercuts plaintiffs' NEPA claim here, where no NEPA document has ever been prepared, there is nothing in the Administrative Record that reflects any consideration of environmental impacts associated with the rule and, most important, it is undisputed that the environmental impacts at issue <u>would not occur</u> in the absence of the discretionary agency decision before the Court. As plaintiffs have explained, in cases with these

7

characteristics, courts have consistently held that NEPA's purposes and the CEQ regulations <u>do</u> mandate NEPA review, regardless of whether the action is characterized as a "continuing" or a "new" one.  <u>Id</u>. at 25-27.  <u>See</u> <u>also</u> <u>Western Land Exchange Project v. U.S. Bureau of Land Mgmt.</u>, 315 F. Supp. 2d 1068, 1089 (D. Nev. 2004) (determining in NEPA context that "[t]he impacts here are 'caused by the action,' in the most straightforward sense, insofar as they <u>would not occur but for</u> [the agency action]") (emphasis added).

Similarly, the cases cited by intervenors also serve to underscore why NEPA review must be conducted here.  In addition to <u>Committee for Auto Responsibility v. Solomon</u>, 603 F.2d 992, 1002-03 (D.C. Cir. 1979) – which plaintiffs also discussed extensively in their opening brief, <u>see</u> Pfs. Mem. at 29-31 – intervenors cite this Court's ruling in <u>Alliance for Bio-Integrity</u>, <u>supra</u>.  <u>See</u> Interv. Mem. at 12-13.  In that case, the Court considered whether a "<u>policy statement</u>" that did "not have a binding effect" on any agency or private activities was required to comply with NEPA.  <u>Alliance for Bio-Integrity</u>, 116 F. Supp. 2d at 172 (emphasis added).  Consistent with that informal legal status, the challenged policy – which simply created a "rebuttable presumption" that foods produced through a certain process were not subject to regulation by the Food and Drug Administration ("FDA") as food additives – "neither made a final determination that any particular food will be allowed into the environment, <u>nor [took] any particular regulatory action that could affect the environment</u>."  116 F. Supp. 2d at 174 (emphasis added).

Moreover, not only did the policy "not bind [FDA's] decisionmaking authority" in any fashion, but the Court specifically found that defendants "maintain correctly that their actions have not altered the status quo because 'rDNA modified foods . . . <u>were regulated no differently before the publication of the Policy Statement than they are now.</u>'"  <u>Id</u>. (emphasis added).  Since, on the record

before the Court, the policy did "not affect the substantive <u>regulatory</u> status quo" – <u>i.e.</u>, the FDA did not modify <u>any</u> of its regulations in a manner that could have any demonstrable bearing on future environmental impacts – the Court concluded that NEPA's obligations were not triggered.  <u>Id</u>. (emphasis added) (citing <u>Fund for Animals</u>, 127 F.3d at 84).  Indeed, the Court concluded that the "reversible," non-binding policy did not even rise to the level of an "overt act," and hence could "not constitute a major federal action under NEPA."  116 F. Supp. 2d at 175.

If the same reasoning is applied here, the unavoidable conclusion is that the formal <u>rule</u> at issue <u>does</u> trigger NEPA obligations.  Here, federal defendants have admittedly adopted a substantive, binding regulation to be published in the Code of Federal Regulations.  This regulation <u>does</u> modify the "regulatory status quo" by establishing an entirely new private funding mechanism for FSIS inspections of horse slaughter facilities.  And, most important, it is indisputable that this change in the agency's formal regulatory apparatus not only "<u>could</u> affect the environment," 116 F. Supp. 2d at 174 (emphasis added), but that it <u>is</u> affecting the environment because, once again, without the new rule, the adverse environmental impacts associated with the horse slaughter operations would, as Congress contemplated, have ceased on March 10, 2006.  In short, the analysis applied in <u>Alliance for Bio-Integrity</u> compels the conclusion that the change in USDA's rules <u>is</u> an "overt act" that triggers the obligation to "compile an Environmental Assessment or Environmental Impact Statement in conjunction with" the rule.[3]

---

[3]  The other authorities cited by intervenors are likewise readily distinguishable.  In <u>Sierra Club v. Andrus</u>, 581 F.2d 895, 902-03 (D.C. Cir. 1978), <u>rev'd on other grounds</u>, 442 U.S. 347 (1979), the issue was whether, where particular actions had <u>already</u> been the subject of EIS's at both the individual and programmatic level, the agency had to prepare a <u>duplicative</u> NEPA document when making annual appropriations requests.  <u>Id</u>. at 903-04.  Likewise in <u>City and County of San Francisco v. United States</u>, 615 F.2d 498 (9th Cir. 1980), the agency concluded, "<u>on the basis of a 68-page draft EIS</u>" – which specifically addressed impacts on the local

**C.    Either Federal Defendants Have The Burden Under USDA's NEPA Regulations Of Establishing That The Rule At Issue Is Categorically Excluded From Any NEPA Review Under The Unusual Circumstances Here, Or USDA's NEPA Regulations Are Arbitrary and Capricious As Applied To This Case.**

In response to the Court's inquiry as to whether they have any burden to explain, in the Administrative Record, why the particular rule at issue is categorically excluded from any NEPA review, USDA's unequivocal response is that they have no such obligation at all, regardless of the impacts of the rule on the environment. Fed. Def. Mem. at 10-11. Rather, USDA's position is that the agency's NEPA regulations do in fact exempt everything that FSIS has ever done, or ever will do, from NEPA review, id. at 11 ("the Agency met its obligation under the NEPA by issuing a proposed and final rule categorically excluding FSIS activities and programs from NEPA requirements") (emphasis added), and yet impose no obligation on the agency ever to explain why – or even consider whether – an "extraordinary circumstance" exception does or does not apply in a particular situation. Id. ("The categorical exclusion expressly means that a determination has already been made that FSIS activities have no significant environmental impact. Accordingly, no EIS or EA is required, and there

---

environment, including "air and water quality" – that the "the environmental effects associated with the [action at issue] would not be 'significant' within the meaning of NEPA." Id. at 500-01 (emphasis added). And, in National Wildlife Federation v. Espy, 45 F.3d 1337 (9th Cir. 1995), and Burbank Anti-Noise Group v. Goldschmidt, 623 F.2d 115, 116-17 (9th Cir. 1980), the record reflected that the environmental impacts of concern to the plaintiff would have occurred regardless of the agency action under review. See National Wildlife Fed'n, 45 F.3d at 1342-43 (Farmers Home Administration's "decision" not to impose wetlands conservation easements during the transfer of a quitclaim deed to a defaulting farmer's mortgagee did not require NEPA review because "the wetlands were used for [cattle] grazing before [the agency] acquired the Ranch and are now used for that purpose by the [new titleholder]"); Burbank Anti-Noise Group, 623 F.2d at 116-17 (defendant agency did not violate NEPA by offering federal assistance to a private entity for the purchase of an existing municipal airport without conducting an EIS as to the noise impacts of the airport, because there was no indication that the number and pattern of flights at the airport would cease or change but for the federal assistance provided to the particular purchaser).

has been no affirmative determination by the Agency head to the contrary.") (emphasis added).

In advancing this remarkable position, federal defendants make no effort to support the proposition they had previously "suggest[ed]" to the Court, i.e., that the "FSIS at least periodically considered whether its programs had a 'significant environmental impact,' and each time rejected such a possibility." March 14, 2006 Memorandum Opinion ("Mem. Op.") at 21. As plaintiffs have previously explained, in view of the Administrative Record and subsequently filed "supplement," federal defendants have avoided any such argument for the obvious reason that they cannot support their earlier representation to the Court that they have "time and again evaluated and determined that such programs and activities have no cumulative effect on the environment." Def. Opp'n to Prel. Inj. Mot. at 27 n. 10; see Pfs. Mem. at 13-17.

Accordingly, the government's position reduces to the proposition that the Court appeared to find problematic at the preliminary injunction stage, i.e., that "FSIS simply assumed that it was always exempt from the requirements of NEPA," Mem. Op. at 21 (emphasis added), and that it may mechanically apply that "assumption" to this – and, presumably, every other – action undertaken by the agency, irrespective of the potential presence of extraordinary circumstances that might warrant NEPA review in a particular context. Indeed, federal defendants' own description of their decisionmaking process here reinforces that precise understanding of how FSIS is approaching (or, more accurately, not approaching) its NEPA responsibilities:

> [t]he Regulatory Workplan for the Interim Final Rule on Ante-Mortem Inspection of Horses has a listing of potential required analyses, including but not limited to an Environmental Impact Assessment, with a requirement to check all that apply. AR0202-06. Consistent with 7 C.F.R. § 1b.4 and FSIS's regulatory clearance directive, 'Environmental Impact Assessment' is not checked on the Workplan for the Interim Final Rule at issue thus indicating that neither an EA nor an EIS is required. AR0205.

11

Fed. Def. Mem. at 11-12 (emphasis added).  Thus, according to federal defendants, no NEPA review

is required here simply because no FSIS employee "checked" the necessary box on the "Workplan,"

and no one checked the box on the "Workplan" because of 7 C.F.R. § 1b.4, which excludes FSIS

programs and activites from NEPA review.  It could hardly be clearer, therefore, that nothing in the

Administrative Record here reflects – and, according to the government, need not reflect – any <u>actual</u>

consideration of whether this <u>particular</u> rule is better suited for an EA or EIS than a categorical

exclusion.[4]

As plaintiffs have already explained, the notion that an agency may adopt a wholesale

categorical exclusion that applies to <u>everything</u> it does or ever will do, and <u>never</u> revisit the propriety

of that exclusion in either a general or case-specific context – and thereby, in effect, totally evade

meaningful judicial review of whether a <u>particular</u> agency action <u>should</u> be subject to NEPA review

– flies in the face of the entire reason why NEPA was enacted.  Plaintiffs have already explained why,

at least in the context of this case, that novel approach to NEPA cannot be reconciled with extensive

contrary precedent, the CEQ regulations, the Court's judicial review obligation under NEPA, and the

---

[4]  In evident tension with the government's position, intervenors assert that the
"Regulatory Review Workplan <u>conclusively</u> demonstrate[s] that the FSIS <u>considers the</u>
<u>applicability of NEPA in every rulemaking</u> action, including the promulgation of the Interim
Final Rule."  Interv. Mem. at 10 (emphasis added).  If this statement is intended to mean that
FSIS did something other than automatically refrain from checking the environmental review box
on the form – and instead affirmatively "<u>considered</u>" whether NEPA compliance was appropriate
in this particular situation – there is not a stitch of evidence in the record to support that negative
inference.  Nor is it consistent with the government's position, which is that FSIS views
<u>everything</u> it does as exempt from NEPA review, and that its regulations did <u>not</u> even obligate it
to address whether this particular rule fell within an exemption.  However, if intervenors are
correct – <u>i.e.</u>, that federal defendants did in fact "consider" the particular facts of this case in
implicitly deciding not to prepare an EA or EIS – then such a "decision" not only lacks any
explanation in the record, but is clearly arbitrary and capricious under the circumstances,
including that the rule implicates at least six of the CEQ's "significance" criteria.  <u>See</u> Pfs. Mem.
at 18-23.

Act's overriding purposes. See Pfs. Mem. at 32-41. Accordingly, once again, plaintiffs respectfully submit that the Court can and should construe the USDA regulations – in conjunction with the CEQ regulations, with which USDA concedes it is bound, see Fed. Def. Mem. at 5 – as imposing on federal defendants the obligation to furnish some record-based explanation for why the "extraordinary circumstances" standard is not met here. See 40 C.F.R. § 1508.4 (all agencies "shall provide for extraordinary circumstances in which a normally excluded action may have a significant effect"); Pfs. Mem. at 40.

Nonetheless, even if the Court were to accept government counsel's counterintuitive and unnecessary interpretation of USDA's regulations, then plaintiffs must still prevail. At least as applied to the facts of this case, a NEPA implementing regulation that would, in effect, immunize an entire agency's programs from NEPA review, as well as from any judicial review as to whether NEPA analysis should be conducted in a particular case, is patently "arbitrary, capricious, an abuse of discretion, or not in accordance with law." 5 U.S.C. § 706(2).

Indeed, as plaintiffs have explained at length and as the case law and CEQ regulations make crystal-clear, the only reason why the categorical exclusion concept can itself be harmonized with NEPA is because of critical safety valves that ensure that, in appropriate circumstances, a "normally excluded action" with potentially significant effects will not bypass NEPA review. 40 C.F.R. § 1508.4. If, as federal defendants maintain, their regulations eliminate those safety valves – and instead leave it entirely up to the unfettered discretion of agency officials whether even to make an "affirmative determination" on the need for NEPA compliance, Fed. Def. Mem. at 11 (emphasis added) – that approach cannot be reconciled with the government's own characterization of NEPA's core "purpose" as that of "ensur[ing] informed agency decision making," id. at 4-5, at least where,

13

as here, there are clear indicia that a particular action <u>does</u> have environmental ramifications that warrant scrutiny.  <u>See</u> Pfs. Mem. at 18-23.[5]

Evidently anticipating that plaintiffs would contend that this is the unavoidable upshot of USDA's position, federal defendants argue that plaintiffs are foreclosed from <u>facially</u> challenging 7 C.F.R. § 1b.4, by the six-year statute of limitations that generally applies to suits against the federal government.  <u>See</u> Fed. Def. Mem. at 12-13.   It is well-settled, however, that an as-applied challenge to defendants' <u>implementation</u> of their regulation in the context of the specific facts here is <u>not</u> precluded by any statute of limitations that might apply if plaintiffs were seeking challenge USDA's NEPA regulations on their face.  <u>See</u> <u>Cellular Telecommunications & Internet Ass'n v. FCC</u>, 330 F.3d 502, 508-09 (D.C. Cir. 2003) (explaining that a plaintiff may challenge a regulation as applied to a specific setting, irrespective of whether he may challenge the regulations across-the-board); <u>see also</u> <u>Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.</u>, 112 F.3d 1283, 1287 (5th Cir. 1997) ("[i]t is possible, however, to challenge a regulation after the limitations period has expired, provided that the ground for the challenge is that the issuing agency exceeded its . . . statutory authority" and

---

[5]  Indeed, if, as defendants contend, they have no affirmative obligation to address whether particular FSIS activities fall within an exception to the categorical exclusion, then this necessarily raises the question of whether it is lawful to categorically exempt an entire agency from NEPA review.  Once again, the CEQ regulations – which authorize categorical exclusions in the first instance – allow agencies to exempt a "category of <u>actions</u> which do not individually or cumulatively have a significant effect on the environment . . . ." 40 C.F.R. § 1508.4 (emphasis added).  The CEQ regulations say nothing about exempting entire <u>agencies</u> from NEPA review.  Once again, however, the USDA regulations not only expressly exempt various "categories of <u>activities</u>," 7 C.F.R. § 1b.3(a) (emphasis added), but separately exempt entire "agencies," including FSIS.  <u>Id.</u> at § 1b.4.  This clear tension with the plain terms of the CEQ regulations takes on greater legal and practical significance in conjunction with defendants' position that they need never even revisit the propriety of invoking such a vast exclusion in a particular situation – a position that also violates defendants' own regulatory mandate that agencies "shall continue to scrutinize their activities to determine continued eligibility for categorical exclusions."  7 C.F.R. § 1b.3(c).

the plaintiff can "show some direct, final agency action involving the particular plaintiff within six years of filing suit") (citing Public Citizen v. Nuclear Regulatory Comm'n, 901 F.2d 147, 151-52 (D.C. Cir. 1990)); Gifford Pinchot Task Force v. U.S. FWS, 378 F.3d 1059, 1069-70 (9th Cir. 2004) (finding Fish and Wildlife Service longstanding regulatory definition invalid because it violated the Endangered Species Act in an as-applied challenge).

As the Court of Appeals has made clear, "we have held that 'a party against whom a rule is applied may, at the time of application, pursue substantive objections to the rule – even where the petitioner had notice and opportunity to bring a direct challenge within statutory time limits' but failed to do so." NextWave Personal Communications, Inc. v. F.C.C., 254 F.3d 130, 141 (D.C. Cir. 2001) (quoting Indep. Cmty. Bankers of Am. v. Bd. of Governors of the Fed. Reserve Sys., 195 F.3d 28, 34 (D.C. Cir. 1999)); see also Diamond Shamrock Corp. v. Costle, 580 F.2d 670, 674 (D.C. Cir. 1978) (affirming that "[j]udicial review is generally facilitated by waiting until administrative policy is implemented for then a court can be freed, at least in part, from theorizing about how a rule will be applied and what its effect will be . . . . [t]herefore, rather than speculate about the consequences the regulations will have, we believe it more appropriate in the absence of hardship to the appellants to wait until the regulations are applied and their consequences realized).

Accordingly, the law is clear that there is no statute of limitations barrier to plaintiffs' contention that USDA's NEPA regulations cannot lawfully be applied so as to foreclose meaningful judicial review of whether a categorical exclusion is proper here. Once again, however, plaintiffs' principal argument – which avoids any need to reach the statute of limitations issue – is that the NEPA regulations should be construed in a manner that would render them compatible with NEPA's purposes and the CEQ regulations, i.e., as imposing some burden on agency officials to at least

15

explain, in the Administrative Record, why an entirely new rule that is indispensable to the operation

of horse slaughter facilities with adverse environmental impacts may avoid any NEPA review.  See

Pfs. Mem. at 39 (citing Jones v. Gordon, 792 F.2d 821, 828 (9th Cir. 1986)).[6]

## CONCLUSION

For the foregoing reasons, as well as those set forth in plaintiffs' opening brief, defendants'

motions to dismiss and for summary judgment should be denied, and the rule at issue should be set

aside and remanded, at least pending defendants' full compliance with NEPA.[7]

---

[6]  In a footnote, federal defendants appear to suggest that they have no NEPA obligations here because the slaughter operations themselves are private entities.  See Fed. Def. Mem. at 7 n.2.  Any such argument is devoid of merit.  The lone case cited by defendants, which involved the construction of an airplane hangar that required no federal involvement, see Citizens for Responsible Area Growth v. Adams, 680 F.2d 835, 839 (1st Cir. 1982), has no bearing on the Final Rule at issue or similar "enablement" actions of a federal agency, without which the "nonfederal entity" would be prevented from affecting the environment; such actions "ha[ve] consistently been held to be subject to NEPA."  National Forest Preservation Group v. Butz, 485 F.2d 408, 411-12 (9th Cir. 1973) (citing Natural Resources Defense Council, Inc. v. Morton, 458 F.2d 827 (D.C. Cir. 1972)).  Indeed, as the Court of Appeals explained in a seminal NEPA decision, "there is 'Federal action' within the meaning of the statute . . . whenever an agency makes a decision which permits action by other parties which will affect the quality of the environment."  Scientists' Institute for Public Information, Inc. v. Atomic Energy Commission, 481 F.2d 1079, 1088-89 (D.C. Cir. 1973).  That is precisely the situation here.  See also id. at 1089 n.35 ("'NEPA's implications are similar where the Government does not undertake or finance activities directly but regulates the private concerns that do.'") (quoting Council on Environmental Quality, Third Annual Report 225 (1972)).

[7]  Federal defendants contend that, even if the Court agrees that USDA violated NEPA in issuing the rule, the "Court should exercise its discretion and allow the Agency to move forward with funding ante-mortem inspection activities while conducting whatever NEPA analysis and documentation are deemed required for the Interim Final Rule."  Fed. Def. Mem. at 13.  As plaintiffs have explained, see Pfs. Mem. at 41, such a course of conduct would violate the APA – which provides that, where final agency action is adopted "without observance of procedure required by law," the action "shall" be "set aside" and remanded, 5 U.S.C. § 706(2) – as well as the D.C. Circuit's admonition that "[i]f a[] [party] has standing" (which defendants do not dispute here) and "prevails on its APA claim, it is entitled to relief under that statute, which normally will be [] vacatur."  American Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1084

Respectfully submitted,

/s/ _____
Eric R. Glitzenstein

D.C. Bar No. 358287

Ethan Carson Eddy

D.C. Bar No. 496406

Howard M. Crystal

D.C. Bar No. 446189

Meyer Glitzenstein & Crystal

Suite 700

1601 Connecticut Ave., N.W.

Washington, D.C.  20009

(202) 588-5206

Of Counsel:

Rebecca G. Judd

(Member of Maryland Bar)

Jonathan R. Lovvorn

(D.C. Bar No. 461163)

The Humane Society of the

United States

2100 L St., N.W.

Washington, D.C.  20037

---

(D.C. Cir. 2001) (emphasis added).  Moreover, allowing the rule to remain in place during NEPA review would render the NEPA process a pointless, make-work exercise.  This is precisely why, as then-Judge Breyer has explained, courts ordinarily halt agency actions during NEPA review of them.  See Sierra Club v. Marsh, 872 F.2d 497, 503 (1st Cir. 1989) ("[T]he risk implied by a violation of NEPA is that real environmental harm will occur through inadequate foresight and deliberation.  The difficulty of stopping a bureaucratic steam roller, once started, still seems to us . . . a perfectly proper factor for a district court to take into account in assessing that risk[.]").

(202) 676-2333

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HUMANE SOCIETY**<br>**OF THE UNITED STATES, ET AL.,** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| **MIKE JOHANNS, ET AL.,** | )<br>) |
| Defendants. | )<br>) |

Civ. No. 1:06CV00265 (CKK)

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATEMENT**
**OF MATERIAL FACTS NOT IN DISPUTE**

Pursuant to Local Civil Rules 7(h) and 56.1, plaintiffs hereby respond to federal defendants'
"Statement of Material Issues Not In Dispute."  As explained in the accompanying memorandum,
intervenors failed to file a statement of material facts as to which there is no genuine dispute, as
required by Local Rules 7(h) and 56.1, as well as this Court's standing order.  See Order Establishing
Procedures for Electronic Filing (Doc. 13).  Since plaintiffs have no way of ascertaining which facts
intervenors view as both "material" and "undisputed" in support of intervenors' motion for summary
judgment, plaintiffs have no way of responding to any such facts; intervenors' motion should
therefore be treated solely as a motion to dismiss.  See Pfs.' Opp'n to Defs.' Mot. for Summ. J. at
4-6.  Accordingly, all references below are to federal defendants' statement of material issues only.

1.    The first sentence is undisputed.  The second sentence is disputed, in that it attributes
a specific proposition to a Federal Register notice, but omits a key term from the text of the Federal
Register notice which substantially alters the meaning of that proposition.  Plaintiffs refer the Court
to the entire document for a complete understanding of its contents, and to the specific provision

paraphrased by defendants, which, in its entirety, reads: "Agencies will identify in their own procedures the activities which <u>normally</u> would not require an environmental assessment or environmental impact statement."  National Environmental Policy Act; Proposed Policies and Procedures, 44 Fed. Reg. 25,606, 25,607 (May 1, 1979) (to be codified at 7 C.F.R. § 3100.22(b)) (AR 00057-00058) (emphasis added).  The third sentence is not disputed.

2.   This paragraph is undisputed, but plaintiffs note that the rulemaking exercise described therein codified several other provisions in addition to "categorically excluding the actions and activities of certain agencies," Def. Stmt. of Facts ¶ 2, including a mandate that FSIS and the other agencies listed "shall continue to scrutinize their activities to determine continued eligibility for categorical exclusions."  National Environmental Policy Act (NEPA) Policies and Procedures, 48 Fed. Reg. 11,403, 11,404 (Mar. 18, 1983) (to be codified at 7 C.F.R. § 1b.3(c)) (AR 00064-00065).

3.   With respect to the first sentence, plaintiffs do not dispute that the "Regulatory Workplan" has a heading called "Required Analysis," but defendants' characterization of the elements listed under the "Required Analysis" heading as "potentially required" as opposed to actually required is a legal conclusion not requiring a response.  AR 0202-0205.  Additionally, plaintiffs admit that the "Required Analysis" heading states "(check all that apply)," but lack sufficient information as to admit or deny that this text amounts to an actual "requirement to check all that apply," as plaintiffs do not know the source of this "requirement," and the Administrative Record does not indicate that any deliberation was undertaken in deciding whether or not an "Environmental Impact Assessment" was in fact a "Required Analysis" for this rulemaking.  With respect to the second sentence, plaintiffs do not dispute that the box next to the phrase "Environmental Impact Assessment" in the Regulatory Workplan "is not checked," but the

2

remainder of the sentence is a legal conclusion not requiring a response.  Additionally, plaintiffs do

not know what the "regulatory clearance directive" is, as no citation to the record is given.  In any

event, the statement that the "regulatory clearance directive" is "[c]onsistent with" the fact that the

"'Enviromental Impact Assessment' [box] is not checked on the workplan" appears to be a legal

conclusion to which no response is required.


                                                  Respectfully submitted,


                                                  /s/_____
                                                  Eric R. Glitzenstein
                                                  D.C. Bar No. 358287
                                                  Ethan Carson Eddy
                                                  D.C. Bar No. 496406
                                                  Howard M. Crystal
                                                  D.C. Bar No. 446189

                                                  Meyer Glitzenstein & Crystal
                                                  Suite 700
                                                  1601 Connecticut Ave., N.W.
                                                  Washington, D.C.  20009
                                                  (202) 588-5206

                                                  Of Counsel:

                                                  Rebecca G. Judd
                                                  (Member of Maryland Bar)

                                                  Jonathan R. Lovvorn
                                                  (D.C. Bar No. 461163)

                                                  The Humane Society of the
                                                  United States
                                                  2100 L St., N.W.
                                                  Washington, D.C.  20037
                                                  (202) 676-2333

May 10, 2006                                      Counsel for Plaintiffs