# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THE HUMANE SOCIETY OF <br> THE UNITED STATES, et al. <br><br> Plaintiffs, <br><br> v. <br><br> MIKE JOHANNS, Secretary <br> United States Department of Agriculture, et al., <br><br> Defendants. <br><br><br> BELTEX CORPORATION, CAVEL <br> INTERNATIONAL, INC., and DALLAS <br> CROWN, INC., <br><br> Defendant-Intervenors. | Civ. No. 1:06cv00265 (CKK) |

**DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR**

**MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C. 20004
Telephone: (202) 626-6793
Fax: (202) 626-6780

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  LAW AND ARGUMENT ....................................................................................................2

    A.   THE COURT MUST DISMISS PLAINTIFFS' NEPA CLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. ..................................................2

    B.   ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-INTERVENORS AND AGAINST PLAINTIFFS BECAUSE THE UNDISPUTED MATERIAL FACTS ESTABLISH THAT PLAINTIFFS' NEPA CLAIM FAILS AS A MATTER OF LAW. ..................................................................................4

        1.   Plaintiffs Have Failed to Demonstrate that the Interim Final Rule Does Anything Other than Maintain the Status Quo of the Longstanding Ante-Mortem Inspection Program. ..............................................................4

        2.   Plaintiffs Have Failed to Establish that the FSIS' Determination that the Interim Final Rule Was Categorically Excluded from Further NEPA Analysis Was Arbitrary or Capricious. ............................................7

III. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Alaska Center for the Environment v. Forest Service*,
   189 F.3d 851 (9th Cir. 1999) .................................................................................................9

*Alliance for Bio-Integrity v. Shalala*,
   116 F. Supp. 2d 166 (D.D.C. 2000) ........................................................................................4

*Bicycle Trails Council v. Babbitt*,
   1994 U.S. Dist. LEXIS 12805 (N.D. Cal. 1994), *aff'd* 82 F.3d 1445 (9th Cir. 1994) ...............9

*Hells Canyon Preservation Council v. Jacoby*,
   9 F. Supp. 2d 1216 (D. Or. 1998) ...........................................................................................9

*N.A.A.C.P. v. Medical Center, Inc.*,
   584 F.2d 619 (3rd Cir. 1978) ..................................................................................................7

*Nat'l Forest Preservation Group v. Butz*,
   485 F.2d 408 (9th Cir. 1973) ..................................................................................................6

*Nat'l Trust for Historic Preservation v. Dole*,
   828 F.2d 776 (D.C. Cir. 1987) ................................................................................................5

*Scientists' Inst. for Public Information, Inc. v. Atomic Energy Commission*,
   481 F.2d 1079 (D.C. Cir. 1973) ..............................................................................................6

*Thomas Jefferson University v. Shalala*,
   512 U.S. 504 (1990) ................................................................................................................9

## STATUTE

42 U.S.C. § 3442(2) .......................................................................................................................2

## FEDERAL REGULATIONS

7 C.F.R. § 1b.4 ................................................................................................................3, 5, 7, 8, 9

40 C.F.R. § 1508.18 .......................................................................................................................6

## OTHER

71 Fed. Reg. 6,337 (Feb. 8, 2006) ...............................................................................................5, 6

I.     **INTRODUCTION**

Plaintiffs' MEMORANDUM IN OPPOSITION TO DEFENDANT-INTERVENORS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT ("PLAINTIFFS' OPPOSITION") only confirms that their National Environmental Policy Act ("NEPA") claim fails on its face for one straightforward reason: promulgation of the Interim Final Rule by the Food Safety and Inspection Service ("FSIS") was not a "major federal action" that could potentially trigger any additional procedural requirements under NEPA. No set of facts consistent with the allegations in Plaintiffs' First Amended Complaint establish this core requirement for any potential NEPA claim. Further, even if the Court were to ignore this underlying deficiency, Plaintiffs have failed to identify the existence of any genuine disputed material fact that would permit their NEPA claim to survive summary judgment. Accordingly, this Court must either dismiss Plaintiffs' NEPA claim for failure to state a claim upon which relief can be granted or, in the alternative, grant summary judgment in favor of Defendant-Intervenors and against Plaintiffs on their NEPA claim as a matter of law.

The primary arguments advanced in PLAINTIFFS' OPPOSITION have been fully refuted by Defendant-Intervenors in their prior memoranda in this case.[1] Defendant-Intervenors therefore incorporate those arguments by reference. Defendant-Intervenors focus their present reply on briefly responding to the several additional, unpersuasive arguments asserted in PLAINTIFFS' OPPOSITION.

---

[1] Defendant-Intervenors' prior memoranda include Defendant-Intervenors' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT filed on May 1, 2006 ("DEFENDANT-INTERVENORS' MEMORANDUM" or "DEF.-INT. MEMO.") and their MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT filed on May 10, 2006 ("DEFENDANT-INTERVENORS' OPPOSITION" or "DEF.-INT. OPP.").

**II.     LAW AND ARGUMENT**

    **A.     THE COURT MUST DISMISS PLAINTIFFS' NEPA CLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Plaintiffs are wrong (and transparently self-serving) in their assertion that Defendant-Intervenors do not "seriously contend" that the First Amended Complaint fails to state a proper claim under NEPA. See PL. OPP. at 3. Defendant-Intervenors moved to dismiss Plaintiffs' NEPA claim because Plaintiffs have not alleged (and cannot prove) that, by promulgating the Interim Final Rule, the FSIS engaged in any "major Federal action significantly affecting the quality of the human environment" triggering NEPA. 42 U.S.C. § 3442(2)(C); see, e.g., DEF.-INT. MEMO. at pp. 1-2.

In response to Defendant-Intervenors' well-grounded request that the Court accordingly dismiss Plaintiffs' NEPA claim, PLAINTIFFS' OPPOSITION fails to provide any substantive reason why dismissal for failure to state a claim is not only appropriate, but fully warranted in this case. See PL. OPP. at pp. 2-3. Indeed, Plaintiffs concede that the only federal agency action they have even alleged in this case is the FSIS' "creation of the fee-for-service ante-mortem horse slaughter inspection system." PL. CMPLT. ¶98; see also PL. OPP. at p. 3. As explained in both DEFENDANT-INTERVENORS' MEMORANDUM and DEFENDANT-INTERVENORS' OPPOSITION, Plaintiffs are unable to show that creation of the fee-for-service inspection program is a "major federal action" potentially triggering NEPA's procedural requirements.

Moreover, the paragraphs of the First Amended Complaint cited by Plaintiffs as the factual allegations supposedly sufficient to support their NEPA claim only further reinforce the facial deficiency of that claim. See PL. OPP. at pp. 3-4. While Plaintiffs devoted considerable attention in their First Amended Complaint to emphasizing the alleged environmental effects purportedly associated with the longstanding slaughter operations at the official establishments,

nowhere do they allege that there will be any environmental effects associated with the actual *inspection services* provided by the FSIS under the fee-for-service program.  See PL. CMPLT. Additionally, while PLAINTIFFS' OPPOSITION invites the Court to infer from their conclusory arguments that there is some consequential link between the alleged environmental effects of the ongoing slaughter operations and the inspection services provided under the fee-for-service program, such inferences are totally unsupported by the factual allegations made in the First Amended Complaint.  See PL. OPP. at 2.

PLAINTIFFS' OPPOSITION also conveniently fails to address a critical issue that even Plaintiffs expressly acknowledged in their First Amended Complaint:  NEPA does not require a federal agency to conduct an environmental analysis for actions that the agency has "categorically excluded" from NEPA review.  PL. CMPLT. ¶62.  As Defendant-Intervenors have previously explained in great detail, the USDA has categorically excluded the actions of the FSIS from NEPA's review requirements "unless the agency head determines that an action may have a significant effect on the environment."  7 CFR § 1b.4; see DEF.-INT. MEMO. at pp. 14-18; DEF.-INT. OPP. at 11-12.  Plaintiffs do not allege that the FSIS agency head made any such determination with respect to the Interim Final Rule, nor do they even try to argue in the First Amended Complaint that the pertinent categorical exclusion does not apply in this case.  See PL. CMPLT.

Therefore, even accepting Plaintiffs' allegations as true, there is no set of facts under which Plaintiffs could prove their claim that the USDA violated NEPA by establishing a fee-for-service ante-mortem inspection program without conducting further NEPA review.  Accordingly, Plaintiffs' NEPA claim must be dismissed for failure to state a claim upon which relief can be granted.

3

> **B.    ALTERNATIVELY, THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-INTERVENORS AND AGAINST PLAINTIFFS BECAUSE THE UNDISPUTED MATERIAL FACTS ESTABLISH THAT PLAINTIFFS' NEPA CLAIM FAILS AS A MATTER OF LAW.**
>
> > **1.    Plaintiffs Have Failed to Demonstrate that the Interim Final Rule Does Anything Other than Maintain the Status Quo of the Longstanding Ante-Mortem Inspection Program.**

As explained at length in DEFENDANT-INTERVENORS' MEMORANDUM and DEFENDANT-INTERVENORS' OPPOSITION, there is no federal proposal under the Interim Final Rule to change the longstanding status quo — from a substantive or an environmental perspective — of the FSIS' ante-mortem inspection program. See DEF.-INT. MEMO. at pp. 19-20; DEF.-INT. OPP. at 8-10. Thus, the Interim Final Rule cannot constitute a "major federal action" compelling any alleged duty on the part of the FSIS to conduct an environmental review under NEPA. In advancing their novel theory that the Interim Final Rule does more than maintain the existing status quo of the ante-mortem inspection program because it incorporates a "new funding scheme" that has "never been analyzed in any NEPA document" (see PL. OPP. at 6-9), Plaintiffs miss the mark both legally and factually.

First, as discussed in DEFENDANT-INTERVENORS' OPPOSITION, Plaintiffs' attempt to distinguish the numerous cases within and outside of this jurisdiction holding that NEPA's procedural requirements are not triggered where the agency's action merely maintains the environmental status quo are baseless.[2] See DEF.-INT. OPP. at pp. 8-10. Contrary to Plaintiffs' assertions, there is no requirement that an agency must have previously prepared an

---

[2] Plaintiffs' rationale for distinguishing this Court's holding in *Alliance for Bio-Integrity v. Shalala*, 116 F. Supp. 2d 166 (D.D.C. 2000) is likewise misplaced. In *Alliance for Bio-Integrity*, the Court correctly held that a policy statement issued by the FDA was not a "major federal action" under NEPA for several reasons, including the fact that the policy statement did not alter the substantive status quo of the FDA's regulatory program. *Id*. at 174-75. Similarly, the FSIS' establishment of the fee-for-service program in the present case only serves to maintain the agency's operation of an existing regulatory program and does not in any way affect the environmental status quo.

4

environmental assessment or environmental impact statement under NEPA in order to presently determine that a particular proposal for action simply maintains the substantive status quo of an existing agency program and its environmental effects (if any). See *id.* Furthermore, Plaintiffs fail to reconcile their position with the undisputed fact that the USDA did evaluate the environmental effects of the FSIS' inspection-related programs during the rulemaking process that resulted in the promulgation of the categorical exclusion set forth in 7 C.F.R. § 1b.4. See DEF.-INT. MEMO. at pp. 15-16. By promulgating that categorical exclusion, the USDA necessarily determined that the inspection-related activities of the FSIS have no significant effect on the human environment. See *Nat'l Trust for Historic Preservation v. Dole*, 828 F.2d 776, 781 (D.C. Cir. 1987) (emphasis added) ("By definition, [categorical exclusions] are categories of actions that have been predetermined not to involve significant environmental impacts, and therefore require no further agency analysis absent extraordinary circumstances").

Second, Plaintiffs make no effort to provide any factual basis to support their allegation that the mere change in the source of funding for the ante-mortem inspection services provided by the FSIS somehow changes the substantive status quo of the ongoing inspection activities or their effect on the environment (of which there are none). Plaintiffs have offered nothing to dispute what the Interim Final Rule expressly and repeatedly makes clear: the actual inspection services rendered by the FSIS will remain subject to the substantive requirements of the FMIA and are otherwise unchanged. See 71 FED. REG. 6,337, 6,339 (Feb. 8, 2006); DEF-INT. MEMO. at pp. 4-5.

Instead, Plaintiffs continue to assert — without legal or factual authority — that the Interim Final Rule "allows the continuation" of the slaughter operations. See, *e.g.*, PL. OPP. at p. 6. This argument is totally devoid of merit. As fully explained in DEFENDANT-INTERVENORS'

OPPOSITION, the very limited circumstances in which NEPA may be applicable to non-federal activities are when a federal agency exercises sufficient *control* or *responsibility* over the activity to "federalize" it. 40 C.F.R. § 1508.18 (defining "major federal action"); see DEF.-INT. OPP. at pp. 6-7. Plaintiffs do not contend that the USDA has exerted any such control or responsibility over the Defendant-Intervenors' establishments. See PL. CMPLT. Indeed, it is undisputed that the Interim Final Rule merely provides that the official establishments that slaughter horses may themselves pay for ante-mortem inspection services that were already being provided to them by the FSIS. See 71 FED. REG. at 6,339; DEF-INT. MEMO. at pp. 4-5. It is similarly undisputed that the rule does not constitute federal approval of the establishments' operation, nor does it constitute significant involvement in or control over their operations. In fact, the FSIS has no authority to exert such control or responsibility outside of the limited inspection-related obligations mandated by the dictates of the FMIA.

Attempting to overcome this obvious weakness of their case with a mere footnote, Plaintiffs appear to suggest that the Court should permit Plaintiffs to "federalize" Defendant-Intervenors' slaughter operations for purposes of maintaining their NEPA claim based on the tenuous and factually unsupported argument that the Interim Final Rule "enables" the non-federal Defendant-Intervenors to affect the environment. See PL. OPP. at 16, n. 6. However, the very case law cited by Plaintiffs for this proposition belies their contention that this supposed "enablement" theory has any application to the present facts. See *Nat'l Forest Preservation Group v. Butz*, 485 F.2d 408 (9th Cir. 1973) (finding that the agency's action of exchanging federal park land with a private party was analogous to the licensing or granting of federal funds to a nonfederal entity to enable it to act); *Scientists' Inst. for Public Information, Inc. v. Atomic Energy Commission*, 481 F.2d 1079, 1088-89 (D.C. Cir. 1973) (noting that NEPA's procedures

have been held to apply where the federal government leases land to private parties, grants leases, permits and federal authorizations, or approves funding). The common theme underlying findings of a "major federal action" based on federal enablement is the existence of an underlying federal agency action that is a *legal condition precedent* for the private activity in question. See, *e.g.*, N.A.A.C.P. v. Medical Center, Inc., 584 F.2d 619, 632 (3rd Cir. 1978) ("Cases involving enablement entail discretionary decisions of federal agencies which serve as conditions precedent to actions taken by private entities. . . . In other words, the agency's action under the statute must be a legal precondition which authorizes the other party to proceed with action which will affect the environment.") Application of Plaintiffs' "enablement" theory to the case at hand yields the inevitable conclusion that the Interim Final Rule is not a legal prerequisite to — and therefore does not enable — Defendant-Intervenors' slaughter operations. In other words, even if the FSIS inspection program went away entirely, continued operation of the official establishments to slaughter horses would not be prohibited by law.

Plaintiffs have not met their burden of establishing that the FSIS was arbitrary or capricious in its determination that the Interim Final Rule does anything other than adjust a funding arrangement in order to maintain the status quo of the ante-mortem inspection services that the agency is statutorily obligated to provide. Because Plaintiffs cannot establish the most basic element of their NEPA claim — that the FSIS engaged in a "major federal action" — their NEPA claim falls short as a matter of law.

> **2. Plaintiffs Have Failed to Establish that the FSIS' Determination that the Interim Final Rule Was Categorically Excluded from Further NEPA Analysis Was Arbitrary or Capricious.**

Plaintiffs attempt to rewrite the CEQ and USDA regulations in their favor by ignoring the fact (and the resulting impact on their NEPA claim) that actions of the FSIS, such as issuance of the Interim Final Rule, are categorically excluded from further NEPA review. See PL. OPP. at

7

10-16. For the reasons already explained in both DEFENDANT-INTERVENORS' MEMORANDUM and DEFENDANT-INTERVENORS' OPPOSITION, 7 C.F.R. § 1b.4 expressly and presumptively excludes all activities of the FSIS from any further analysis under NEPA, unless the head of the FSIS affirmatively determines that a particular action may have a significant effect on the human environment. See DEF.-INT. MEMO. at pp. 14-17; DEF.-INT. OPP. at 11-13.

      Contrary to this clear delineation, Plaintiffs' proffered interpretation of the applicable categorical exclusion flies in the face of the plain language of the USDA's regulations, the CEQ's regulations, and the fundamental purpose of establishing categorical exclusions for certain agency activities in the first place. See DEF.-INT. MEMO. at pp. 14-17; DEF.-INT. OPP. at 11-13 (noting that it is the CEQ's mandate that federal agencies adopt and utilize categorical exclusions in order to reduce excessive paperwork, avoid unnecessary delay, and promote efficiency in the NEPA process). While PLAINTIFFS' OPPOSITION amply highlights their disdain for the duly promulgated categorical exclusion, Plaintiffs provide no additional support for their flawed interpretation of the regulation. Moreover, even if NEPA could be interpreted to impose a documentation requirement for an agency's invocation of a categorical exclusion, the Administrative Record in this case forecloses Plaintiffs' unsupported claim that the FSIS failed to consider and document its determination contemporaneously with its decision to promulgate the Interim Final Rule. See DEF.-INT. MEMO. at pp. 17-19; DEF.-INT. OPP. at 11-13.

      Furthermore, the rationale asserted by Plaintiffs in support of their erroneous contention that they are challenging 7 C.F.R. § 1b.4 as applied to the specific facts of this case is, at best, a thinly veiled attempt to circumvent the statute of limitations and collaterally challenge the categorical exclusion itself. See PL. OPP. at pp. 14-16. While Plaintiffs conveniently pluck quotations from various cases discussing the permissible grounds for "as applied" challenges,

they fail to provide any analysis explaining how those grounds apply to their present objections to 7 C.F.R. § 1b.4. That is because they clearly do not apply. The plain language of the categorical exclusion provides that the activities of the FSIS are categorically excluded from the preparation of an EA or EIS "unless the agency head determines that an action may have a significant effect on the environment." 7 C.F.R. § 1b.4. No matter how they may attempt to characterize it, the crux of Plaintiffs' argument is that the USDA's chosen method of providing for an "extraordinary circumstances" exception to the otherwise-applicable categorical exclusion is invalid. See DEF.-INT. OPP. at 12-13. Contrary to their attempted rationalization, Plaintiffs are in fact attempting to assail the validity of the regulation itself, which this Court should not permit. See *Bicycle Trails Council v. Babbitt*, 1994 U.S. Dist. LEXIS 12805, *32 n.5 (N.D. Cal. 1994), aff'd 82 F.3d 1445 (9th Cir. 1996) (plaintiffs are unable to challenge the validity of established categorical exclusions in a NEPA case involving an agency's particular actions because categorical exclusions, once promulgated, are "indisputably valid" regulations under NEPA); *Hells Canyon Preservation Council v. Jacoby*, 9 F. Supp. 2d 1216, 1236 (D. Or. 1998) (attempts by plaintiffs to challenge the validity of NEPA categorical exclusions in subsequent litigation regarding the exclusion's application are barred).

To the extent that Plaintiffs may permissibly challenge the agency's present determination that the promulgation of the Interim Final Rule fell within the categorical exclusion, their claim fails as a matter of law. The USDA's longstanding interpretation and application of its categorical exclusions must be afforded considerable deference and controlling weight. See *Alaska Center for the Environment v. Forest Service*, 189 F.3d 851, 857 (9th Cir. 1999) (citing *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 510-12 (1990) ("an agency's interpretation of the meaning of its own categorical exclusion should be given controlling weight

9

unless plainly erroneous or inconsistent with the terms used in the regulation"). Plaintiffs have not overcome their burden of demonstrating why the Court should decline to afford the agency due deference in its regulatory interpretation, nor have they established that the FSIS somehow acted arbitrarily and capriciously in determining that promulgation of the Interim Final Rule was categorically excluded from further NEPA review.

### III.  CONCLUSION

For the foregoing reasons, Defendant-Intervenors respectfully request that the Court dismiss Claim Three of Plaintiffs' First Amended Complaint or, in the alternative, grant summary judgment in favor of Defendant-Intervenors and against Plaintiffs on that claim.

Date:  May 26, 2006                             Respectfully submitted,

/s/
James P. Murphy, Esq. (D.C. Bar No. 380857)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, D.C.  20004
Telephone:  (202) 626-6793
Fax:  (202) 626-6780

Attorney for Defendant-Intervenors
BELTEX CORPORATION, CAVEL INTERNATIONAL,
INC., and DALLAS CROWN, INC.