UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |  |
|---|---|---|
| **THE HUMANE SOCIETY** | ) |  |
| **OF THE UNITED STATES, ET AL.,** | ) |  |
|  | ) | Civ. No. 1:06CV00265 (CKK) |
| Plaintiffs, | ) |  |
| v. | ) |  |
|  | ) |  |
| **MIKE JOHANNS, ET AL.,** | ) |  |
|  | ) |  |
| Defendants, | ) |  |

———————————————————————

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON CLAIM ONE

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiffs The Humane

Society of the United States, *et al*., move for summary judgment against the United States

Department of Agriculture ("USDA"), *et al*., under the Administrative Procedure Act ("APA"), 5

U.S.C. §§ 553.  As explained in the accompanying Memorandum, plaintiffs contend that

defendants violated the APA's notice and comment requirements by promulgating an Interim

Final Rule creating new regulations that establish a "fee-for-service" inspection system designed

to facilitate the continued slaughter of American horses for human consumption abroad, without

engaging in prior notice and comment.

In support of this motion, plaintiffs rely on the accompanying Memorandum in Support of

Plaintiffs' Motion for Summary Judgment on Claim One, Plaintiffs' Statement of Material Facts

Not in Dispute, and the declaration of Rebecca Judd, as well as the affidavits, exhibits, and

attachments plaintiffs filed previously along with their Motion for a Preliminary Injunction.

                                        Respectfully submitted,


                                        _____/s/_____
                                        Howard M. Crystal
                                        D.C. Bar No. 446189
                                        Eric R. Glitzenstein
                                        D.C. Bar No. 358287

                                        Meyer Glitzenstein & Crystal
                                        Suite 700
                                        1601 Connecticut Ave., N.W.
                                        Washington, D.C.  20009
                                        (202) 588-5206

September 8, 2006                       Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                    )
**THE HUMANE SOCIETY**              )
**OF THE UNITED STATES, ET AL.,**   )
                                    )    Civ. No. 1:06CV00265 (CKK)
            Plaintiffs,             )
    v.                              )
                                    )
**MIKE JOHANNS, ET AL.,**           )
                                    )
            Defendants.             )
———————————————————————— )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT ON CLAIM ONE**

Of Counsel:

REBECCA G. JUDD
ETHAN CARSON EDDY
JONATHAN R. LOVVORN
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L. St., N.W.
Washington, DC 20037
(202) 676-2333

HOWARD M. CRYSTAL
ERIC R. GLITZENSTEIN
MEYER GLITZENSTEIN & CRYSTAL
Suite 700
1601 Connecticut Ave., N.W.
Washington, DC 20009
(202) 588-5206
(202) 588-5049 (fax)

September 8, 2006

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RELEVANT BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    THERE WAS NO "GOOD CAUSE" FOR DISPENSING WITH
      NOTICE AND COMMENT RULEMAKING HERE. . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    Advance Notice And Comment Was Not Impracticable . . . . . . . . . . . . . . . . . 9

      B.    Dispensing With Notice And Comment Was Not In The
            Public Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.   FSIS'S REQUEST FOR PUBLIC COMMENTS AT THE TIME
      THE INTERIM FINAL RULE WAS ISSUED ALSO CANNOT
      EXCUSE THIS VIOLATION OF THE APA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                      **PAGE**

Air Transport Association of America v. Department of Transport,
    900 F.2d 369 (D.C. Cir. 1990), vacated as moot on other grounds, 933
    F.2d 1043 (D.C. Cir. 1991) ........................................................................ 14

Alabama Power Co. v. Costle,
    636 F.2d 323 (D.C. Cir. 1979) ............................................................. 15, 17

*American Bioscience, Inc. v. Thompson,
    269 F.3d 1077 (D.C. Cir. 2001) ............................................................. 8, 19

American Coke and Coal Chemical Institute v. EPA,
    452 F.3d 930 (D.C. Cir. 2006) ............................................................... 7, 18

American Medical Association v. Reno,
    57 F.3d 1129 (D.C. Cir. 1995) ..................................................................... 7

Amoco Oil Co. v. EPA,
    501 F.2d 722 (D.C. Cir. 1974) ..................................................................... 3

Analysas Corp. v. Bowles,
    827 F. Supp. 20 (D.D.C. 1993) ................................................................. 15

Asiana Airlines v. FAA,
    134 F.3d 393 (D.C. Cir. 1998) ............................................................... 9, 11

Associated Builders & Contractors, Inc. v. Herman,
    976 F. Supp. 1 (D.D.C. 1997) ................................................................... 19

*Chamber of Commerce v. SEC,
    443 F.3d 890 (D.C. Cir. 2006) ......................................................... 2, 10, 17

Clinton Mem'l Hospital v. Sullivan,
    783 F. Supp. 1429, aff'd 10 F.3d 854 (D.C. Cir. 1993) ............................... 16

―――――――――――――――――――――――――――

* Authorities upon which plaintiffs chiefly rely

Environmental Defense Fund v. EPA,
    716 F.2d 915 (D.C. Cir. 1983) ..................................................... 12

Jifry v. FAA,
    370 F.3d 1174 (D.C. Cir. 2004) ............................................... 2, 13

Levesque v. Block,
    723 F.2d 175 (1st Cir. 1983) .................................................... 12

Louisiana Federal Land Bank Association v. Farm Credit Admin.,
    336 F.3d 1075 (D.C. Cir. 2003) ................................................. 16

Marcello v. Bonds,
    349 U.S. 302 (1955) .................................................................. 9

National Mining Association v. U.S. Army Corps of Engineers,
    145 F.3d 1399 (D.C. Cir. 1998) ................................................ 19

National Committee Reinvestment Coalition v. National Credit Union Admin.,
    290 F. Supp. 2d 124 (D.D.C. 2003) ........................................... 16

National Women, Infants and Children Grocer's Association v. Food and Nutr. Serv.,
    416 F. Supp. 2d 93 (D.D.C. 2006) ............................................. 15

Nuclear Military Monitoring v. Perry,
    933 F. Supp. 36 (D.D.C. 1996) ................................................. 16

Petry v. Block,
    737 F.2d 1193 (D.C. Cir. 1984) ............................................. 2, 10

Regan v. United States,
    421 F. Supp. 2d 319 (D. Ma. 2006) ........................................... 18

SEC v. Chenery Corp.,
    332 U.S. 194 (1947) .................................................................. 9

Spirit of the Sage Council v. Norton,
    294 F. Supp. 2d 67 (D.D.C. 2003), vacated in part as moot on other
    grounds 411 F.3d 225 (D.C. Cir. 2005) ................................ 14, 19

_____

\* Authorities upon which plaintiffs chiefly rely

*State of New Jersey v. EPA,
    626 F.2d 1038 (D.C. Cir. 1980) ....................................................... 10, 11, 14

Universal Health Services of McAllen v. Sullivan,
    770 F. Supp. 704 (D.D.C. 1991), aff'd 978 F.2d 745 (D.C. Cir. 1992) .................... 3, 16

Utility Solid Waste Activities Group v. EPA ,
    236 F.3d 749 (D.C. Cir. 2001) ............................................................. 9, 13

WWHT, Inc. v. FCC,
    656 F.2d 807 (D.C. Cir.1981) ................................................................ 10

Walter O. Boswell Hospital v. Heckler,
    749 F.2d 788 (D.C. Cir. 1984) ............................................................... 3

**FEDERAL STATUTES**

5 U.S.C. § 553 ........................................................................... *passim*

5 U.S.C. § 706(2) ........................................................................ 8, 13

21 U.S.C. § 603 ............................................................................. 3

21 U.S.C. § 695 ........................................................................ 5, 6, 18

42 U.S.C. § 4321 ........................................................................... 1

---

\* Authorities upon which plaintiffs chiefly rely

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**THE HUMANE SOCIETY**                    )
**OF THE UNITED STATES, ET AL.**          )
                                          )        Civ. No. 1:06CV00265 (CKK)
                Plaintiffs,               )
        v.                                )
                                          )
**MIKE JOHANNS, ET AL.**                  )
                                          )
                Defendants.               )
_____ )

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT ON CLAIM ONE[1]**

**INTRODUCTION**

In Claim One – which has been reinstated by the Court – Plaintiffs contend that the

United States Department of Agriculture's ("USDA") Food Safety and Inspection Service

("FSIS") violated Section 553 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, by

issuing the "Interim Final Rule" at issue without first providing any public notice and opportunity

for public comment.  71 Fed. Reg. 6337 (Feb. 8, 2006) (AR 177).   In response, Defendants have

suggested that FSIS had "good cause" for dispensing with prior notice and comment, and that, in

any event, the agency "preserved the procedural interests" of Plaintiffs by providing a *post-hoc*

comment period.  Def. Opp. to Plfs.' Mot. for a Prelim. Inj. ("Def. P.I. Opp.") (Feb. 27, 2006) at

19; see also Def.-Int. Opp. to Plfs.' Mot. for a Prelim. Inj. ("Def.-Int. P.I. Opp.") (Feb. 27, 2006)

at 30.

_____

[1]    Plaintiffs' Motion for Summary Judgment on Claim Three (concerning the
National Environmental Policy Act, 42 U.S.C. § 4321, et seq.), has already been briefed by the
parties, and the Court has dismissed Claim Two.  See Order of March 14, 2006; see also Order of
Aug. 28, 2006 (denying motion to reinstate Claim Two).

As discussed further below, neither of these defenses withstands scrutiny.  As for the "good cause" exception to notice and comment rulemaking, presumably because the exception may only be invoked in "*emergency situations*," <u>Chamber of Commerce v. SEC</u>, 443 F.3d 890, 908 (D.C. Cir. 2006) (emphasis added), Plaintiffs have been unable to locate a *single* decision where a court has sanctioned the use of this narrow exception to protect the economic interests of a few companies, as FSIS has done here.  Rather, the courts have allowed the exemption to be invoked only when national security or other compelling public interests preclude the opportunity for prior public input, <u>see, e.g</u>, <u>Jifry v. FAA</u>, 370 F.3d 1174, 1179 (D.C. Cir. 2004), or where immediate promulgation of a rule is necessary to comply with a specific Congressional mandate. <u>See, e.g.,</u> <u>Petry v. Block</u>, 737 F.2d 1193, 1200-02 (D.C. Cir. 1984).

As for FSIS's *post-hoc* comment period, the central problem with that defense is that FSIS has never even bothered to publish a *post-hoc* response to the comments it solicited. Thus, while, to defeat Plaintiffs' request for a preliminary injunction, Defendants claimed that there was "no indication that the Secretary of Agriculture or Administrator of the FSIS does not intend to consider public comments on the interim rule or address pertinent concerns in a *final rule*," <u>see</u> Def.-Int. P.I. Opp. at 30 (emphasis added); <u>see also</u> Def. P.I. Opp. at 29, more than six months later it has become abundantly clear that, in fact, that is *exactly* what FSIS intended to do – *i.e.*, to *not* address the public comments and to *not* issue any Final Rule.  While FSIS originally issued its regulations as an "Interim" Final Rule, to date it has never issued a *Final* Rule, responding to any of the *more than 50,000* comments it received.  <u>See</u> Declaration of Rebecca Judd ("Judd Decl."), ¶¶ 5- 9 (Attached).  Certainly, asking the public to submit comments *following* the issuance of a rule, and then *ignoring* even the *post-hoc* comments, turns the APA's

2

notice and comment requirement on its head, and cannot form the basis for finding that FSIS

*complied* with 5 U.S.C. § 553.[2]

## RELEVANT BACKGROUND

The background of this case has been extensively reviewed in prior briefs and Court

Memoranda, and thus Plaintiffs will simply highlight the points most relevant to Plaintiffs'

notice and comment claim here:

1.    The Fiscal Year 2006 Agricultural Appropriations Act, P. L. 109-97, included a

provision prohibiting FSIS from spending appropriated funds to pay for personnel to conduct

ante-mortem inspections of horses:

> [e]ffective 120 days after the date of enactment of this Act, none of the funds made
> available in this Act may be used to pay the salaries or expenses of personnel to inspect
> horses under section 3 of the Federal Meat Inspection Act (21 U.S.C. § 603) or under the
> guidelines issued under section 903 of the Federal Agriculture Improvement and Reform
> Act of 1996.

House Amendment 236 to H.R. 2744, 109th Cong. (2005); Senate Amendment 1753 to H.R.

2744, 109th Cong. (2005) ("the Amendment") (AR 51).  Because the plain language of the

Federal Meat Inspection Act, 21 U.S.C. § 603, requires such an inspection before certain species,

---

[2]    Because the comment period post-dated the challenged Interim Final Rule, by
definition the comments are not formally part of the Administrative Record ("AR") for the Rule.
See, e.g., Walter O. Boswell Hospital v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) (AR
comprises the records before the agency when it made its decision).  Nonetheless, to the extent
the Court considers Defendants' argument that its post-decision solicitation of public comment
somehow cured its violation of the APA's notice and comment requirement, it is appropriate for
the Court to consider what happened to those comments.  See, e.g., Universal Health Services of
McAllen v. Sullivan, 770 F. Supp. 704 (D.D.C. 1991), aff'd 978 F.2d 745 (D.C. Cir. 1992)
(taking post-decision comment period, and subsequent issuance of a final rule, into account in
considering validity of an interim final rule); see also Amoco Oil Co. v. EPA, 501 F.2d 722, 729
(D.C. Cir. 1974) ("Rule-making is necessarily forward-looking, and by the time judicial review is
secured events may have progressed sufficiently to indicate the truth or falsity of agency
predictions. We do not think a court need blind itself to such events . . . .").

including horses, may be slaughtered for human consumption, the undisputed effect of the

Amendment was to prevent the three remaining horse slaughter plants in the United States from

continuing to slaughter horses for human consumption during the effective period of the

Appropriations Act.  See, e.g., 151 Cong. Rec. S10,218-220 (daily ed. Sept. 20, 2005).  To

permit the plants a reasonable period to adjust to this new requirement, Congress provided that

the funding ban would not go into effect for 120 days – i.e., until March 10, 2006.

      2.      In response to this Amendment, and, importantly, *even before it had become law*,

the Undersecretary of Agriculture directed FSIS to begin working on a new regulatory scheme

that would allow the slaughter companies to pay for these inspections through a "fee-for-service"

program.  AR 166 (email of Oct. 31, 2005, explaining that FSIS "will propose" a fee-for-service

program); AR 171 (email of Nov. 16, 2005 stating that "this is being imposed by the Under

Secretary").

      3.      While that process was moving forward, and within several weeks after the

Amendment was signed into law, the slaughter plant companies submitted a Rulemaking Petition

to FSIS requesting regulations authorizing such a "fee-for-service" program.  See AR 115.  The

Petition requested that the regulations be issued as an Interim Final Rule, and that FSIS dispense

with advance notice and comment.  Id. at 115, 123.  Petitioners argued that notice and comment

was unnecessary because the companies would be the only ones impacted by the regulation, and

that there was "good cause" to dispense with notice and comment because the companies might

otherwise suffer some economic loss.  Id. at 123.

      4.      Two weeks later, several members of Congress, including sponsors of the funding

ban, wrote to USDA to express their objection to the fee-for-service regulations, explaining that

such an approach would be directly contrary to congressional intent.  Letter of Dec. 7, 2005 (AR

150).  USDA responded that the Amendment does not prevent horse slaughter, and that the

agency was considering adopting a fee-for-service program.  Letter of Dec. 21, 2005 (AR 151).

5.      In light of FSIS's apparent intention to grant the Rulemaking Petition, and to do

so without first issuing a proposed regulation for public comment, in early January 2006 the

organizational Plaintiffs wrote to USDA urging that the Petition be denied.  Letter of Jan. 5, 2006

(AR 133).  Plaintiffs explained that a fee-for-service program would be contrary to the intent of

the Amendment, and would also violate the Federal Meat Inspection Act, 21 U.S.C.

§ 601, et seq., which requires that the cost of these inspections "shall be borne by the United

States."  21 U.S.C. § 695.  At bare minimum, Plaintiffs urged USDA not to implement a new

regulation without at least providing an advance opportunity for full public notice and comment.

AR 133, at 12.

6.      On January 17, 2006, forty members of Congress wrote USDA to express serious

concerns with the agency's plan to "engage in a complex regulatory maneuver to willfully

circumvent legislation that was passed by an overwhelming majority in both the House and the

Senate."  Letter of Jan. 17, 2006 (AR 159).   These members stressed that "the issue of horse

slaughter is of significant national interest, and each and every one of our constituents is entitled

to prior notice and a full opportunity to comment on the USDA's proposal *before* it is

implemented."  Id. at 2 (emphasis in original).

7.      Ignoring all of these arguments, on February 8, 2006, FSIS published the

challenged "Interim Final Rule," implementing the requested fee-for-service program without

any advance public notice and comment.  71 Fed. Reg. 6337 (AR 177).  Thus, although the plain

language of the Amendment, which prohibited the use of federal funds for antemortem inspection of horses, should have prevented these inspections from occurring during the effective period of the Amendment (particularly in light of the plain language of the FMIA, which requires that these inspection costs "be borne by the United States," 21 U.S.C. § 695), FSIS's new regulations permitted the inspections to continue uninterrupted, by allowing the slaughter plants themselves to pay for these inspections. In issuing the Interim Final Rule, FSIS did not explain how the Rule could be reconciled with either the Amendment or the FMIA.

8.    Recognizing that the Interim Final Rule is clearly a substantive rule subject to the APA's notice and comment requirements, 5 U.S.C. § 553, FSIS claimed that immediate promulgation of the rule was appropriate to "ensure continuity of operations at official establishments that slaughter horses." 71 Fed. Reg. at 6340; see also id. ("[t]his interim final rule is necessary to avoid disruption of operations at official establishments that slaughter horses"). On that basis – and on that basis alone – FSIS invoked the APA's "good cause" exception to notice and comment. Id.

9.    In addition, concurrently with issuing the Interim Final Rule, FSIS invited public comment on it, 71 Fed. Reg. 6337, thereby representing to the public that these comments would be taken into consideration in the development of a "Final Rule." In response, more than 50,000 individuals and entities submitted public comments, most of whom objected to the rule on environmental, animal cruelty and other grounds. See Judd Decl., ¶¶ 7-9. However, to date, FSIS has issued no such "Final Rule," nor has it in any other manner addressed these public comments. Id. ¶ 10.

## ARGUMENT

The APA requires that, before enacting regulations like the Interim Final Rule, an

administrative agency must publish the regulation as a *proposal*, and provide interested persons

an opportunity to comment on the proposal before the agency makes a final decision.  5 U.S.C.

§ 553.  Thus, Section 553 provides:

> (b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law.  The notice shall include –
>
> (1)     a statement of the time, place, and nature of public rule making proceedings;
> (2)     reference to the legal authority under which the rule is proposed; and
> (3)     either the terms or substance of the proposed rule or a description of the subjects and issues involved.
>
> *          *          *
>
> (c)     After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation.  After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

5 U.S.C. § 553.  As the D.C. Circuit recently reiterated, this APA requirement is critical "(1) to

ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure

fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in

the record to support their objections to the rule and thereby enhance the quality of judicial

review."  American Coke and Coal Chem. Inst. v. EPA, 452 F.3d 930, 938 (D.C. Cir. 2006)(other

citations omitted); see also American Medical Ass'n v. Reno, 57 F.3d 1129, 1134 (D.C. Cir.

1995) ("The notice-and-comment requirement helps to ensure that the rule is subjected to

thoroughgoing analysis and critique by interested parties and the agency").

Notice and comment is especially important in a rulemaking such as this one, where it appears that the agency is acting contrary to congressional intent, and to advance the interests of a few private companies.  See 151 Cong. Rec. S10,218, H4249 (daily ed. Sept. 20, 2005); see also AR 150 and 159 (letters from Congress explaining that the rulemaking is contrary to the intent of the Amendment).  Accordingly, because FSIS did not provide for any advance notice and comment before implementing the challenged Interim Final Rule, and cannot justify its failure to do so, the regulation was issued "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), and should be vacated and remanded on that basis.  See, e.g., American Bioscience, Inc. v. Thompson, 269 F.3d 1077 (D.C. Cir. 2001).

## I.    THERE WAS NO "GOOD CAUSE" FOR DISPENSING WITH NOTICE AND COMMENT RULEMAKING HERE.

In issuing the Interim Final Rule without any advance notice and comment, FSIS relied on the "good cause" exception to the APA's general notice and comment requirement.  71 Fed. Reg. at 6340.  That exception provides that advance notice and comment is not required "when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefore in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest."  5 U.S.C. § 553(b)(3)(B).  As noted, FSIS invoked this exception on the sole ground that immediate implementation was necessary to "avoid [the] disruption of operations" at the slaughterhouses that would occur if the ban on inspections were to go into effect.  71 Fed. Reg. at 6340.  According to FSIS, due to the need to

"ensure continuity" at these plants, "prior notice and opportunity for public comment are impracticable and contrary to the public interest . . . ." Id.[3]

In fact, FSIS's decision to immediately implement the Interim Final Rule cannot be justified on the basis of either impracticability or public interest concerns. As a threshold matter, the D.C. Circuit has repeatedly admonished that the "good cause" exception must be "narrowly construed and only reluctantly countenanced in order to assure that an agency's decisions will be informed and responsive." Asiana Airlines v. FAA, 134 F. 3d 393, 396 (D.C. Cir. 1998); see also Marcello v. Bonds, 349 U.S. 302, 310 (1955) ("[e]xemptions from the terms of the [APA] are not lightly to be presumed . . . ."). Thus, far from being "utilized at the agency's whim," the D.C. Circuit has made it absolutely clear that this exception "should be limited to *emergency situations*." Utility Solid Waste Activities Group, 236 F.3d at 754 (emphasis added). FSIS cannot satisfy this heavy burden with regard to either its "impracticability" or its "public interest" defense.

## A.    Advance Notice And Comment Was Not Impracticable.

Quoting from the APA's legislative history, the D.C. Circuit has explained that an agency may invoke the "impracticable" exception only where "the due and required execution of the *agency functions* would be *unavoidably prevented* by" providing advance notice and comment.

---

[3]    Although, in their Petition, the slaughter plants had requested that FSIS also find that notice and comment is "unnecessary" on the grounds that they "are the only persons that will be currently affected" by the regulation, AR 123, FSIS did not even *try* to justify its denial of advance notice and comment on that basis, see Utility Solid Waste Activities Group v. EPA , 236 F.3d 749, 755 (D.C. Cir. 2001) (explaining that the "unnecessary" exception applies only where the regulation is "inconsequential to the industry and to the public") – and certainly may not seek to do so now.  SEC v. Chenery Corp. 332 U.S. 194, 196 (1947) (agency decision must be defended based on the agency's stated rationale).

State of New Jersey v. EPA, 626 F.2d 1038, 1043 (D.C. Cir. 1980), quoting S. Doc. No. 248,

79th Cong., 2d Sess. 200, 258 (1946) (emphasis added).   Thus, for example, use of this

exception has been upheld where Congress *requires* an agency to promulgate a regulation on a

tight statutory deadline that cannot reasonably be met by undertaking notice and comment

rulemaking.   See, e.g., Petry v. Block, 737 F.2d 1193, 1200-02 (D.C. Cir. 1984) (where Congress

required interim rules within 60 days, agency could invoke the "good cause" exception); see also

Chamber of Commerce, 443 F.3d at 908 (noting limited circumstances where this exception may

apply).

 However, not surprisingly, no court appears to have ever permitted an agency to rely on

an "impracticability" defense with regard to an entirely *discretionary*, rather than a statutorily-

mandated, rulemaking.   Yet, in this case, not only was there no statutory deadline by which the

agency was compelled by Congress to act, the agency was under no obligation to act *at all* – as

reflected by the fact that, ultimately, USDA made its decision in response to the Petition for

rulemaking, rather than in response to a congressional directive for new regulations.   Indeed, had

FSIS not acted, the only consequence would have been that the funding ban would have gone

into effect, and thus the slaughter plants would no longer have been permitted to slaughter horses

for human consumption – as the sponsors and authors of the Amendment evidently intended.

 Moreover, FSIS was certainly under no obligation to grant the Rulemaking Petition, since

granting such a petition is an inherently discretionary act.   See WWHT, Inc. v. FCC, 656 F.2d

807, 818-19 (D.C. Cir.1981) ("It is only in the rarest and most compelling of circumstances that

this court has acted to overturn an agency judgment not to institute rulemaking").   And, while

permitting the funding ban to take effect may have interfered with the functioning of the plants

themselves, that certainly cannot be characterized as the kind of impairment of "agency

functions" that is necessary to invoke the "good cause" exemption based on a finding of

impracticability.  <u>State of New Jersey</u>, 626 F.2d at 1046.

     Moreover, even assuming *arguendo* that there were some relevant deadline by which the

agency had to act, contrary to FSIS's claim, the Record reflects that the agency *could* still have

provided an appropriate public comment period prior to promulgating the regulation.  <u>See</u> <u>Asiana</u>

<u>v. FAA</u>, 134 F.3d 393, 398 (D.C. Cir. 1998)("[s]tatutory language imposing strict deadlines,

*standing alone*, does not constitute good cause . . . justifying departure from standard notice and

comment")(emphasis in original).  Indeed, the Record reflects that as early as October 2005 –

before the Amendment *had even been enacted* – the agency had *already decided exactly how it*

*was going to proceed*.  <u>See</u> AR 166 ("FSIS will propose that official establishments that

slaughter horses apply for voluntary ante mortem inspection under 9 CFR 352");  <u>see also</u>

Regulatory Review Workplan (AR 202-205) at 3 ("FSIS is establishing a program under which

official establishments that wish to slaughter horses can pay for ante-mortem inspection").

Certainly, then, there was ample time to provide for a period of advance notice and comment,

had FSIS chosen to do so.[4]

---

     [4]    In their Surreply opposing Plaintiffs' motion for a preliminary injunction,
Defendants claimed that it would have been "extraordinary" for FSIS to have published a
proposed regulation for notice and comment "before concluding its internal, deliberative review
procedure for finalizing the Rule."  Defendants' Surreply (Mar. 7, 2006) at 2.  This makes no
sense, since the precise purpose of publishing a *proposed* regulation is to consider the public's
input *before* concluding the deliberative process and making a final decision on the proposal.
Accordingly, FSIS could have – and should have – published a proposed regulation, and sought
and considered public comment concurrently with its "internal" review process, and *before*
issuing its final regulation.

**B.**    **Dispensing With Notice And Comment Was Not In The Public Interest.**

In the Interim Final Rule FSIS also asserted, with scant support, that prior public

comment was somehow "contrary to the public interest."  71 Fed. Reg. at 6340.  The problem

with this argument here is that the only interests FSIS promoted by proceeding without public

comment were the *private* interests of the slaughterhouse companies in uninterrupted operations.

If the "public" in "public interest" is given *any* meaning, it must distinguish the advancement of

this kind of quintessentially private interest, Envtl. Def. Fund v. EPA, 716 F.2d 915, 920 (D.C.

Cir. 1983) (rejecting as a good cause rationale the agency's need "to take . . . action [ ] before the

regulated community expend[ed] resources") – particularly where, as here, it is clear that there is

a *great deal* of public interest and controversy over the issue, see Judd Decl., ¶¶ 5-7 (discussing

over 50,000 comments, most of which opposed the Rule).  Levesque v. Block, 723 F.2d 175, 185

(1st Cir. 1983) ("any time one can expect real interest from the public in the content of the

proposed regulation, notice-and-comment rulemaking will not be contrary to the public

interest").

Certainly, were it otherwise, *any* regulations protecting an industry could be promulgated

without advance notice and comment, in direct contravention of the purpose of such a comment

period to insure the *public* has an opportunity to weigh in on the matter.  Indeed, the baselessness

of this argument in this particular case is even further highlighted by the fact that, in passing the

Amendment, Congress expressly took into consideration the fact that the Amendment would

have economic effects on a few companies.  See, e.g., 151 Cong. Rec. S.10,218 ("Without these

inspections . . . it would be impossible for these companies to slaughter horses in the U.S., or to

transport horses abroad for slaughter"); 151 Cong. Rec. H.4249 ("The amendment in simple

terms will stop the slaughter [f]or human consumption of horses . . . "). In other words, Congress considered the various interests and found that, taken together, they counseled in favor of the funding ban. In the face of that determination, FSIS was at least obligated to involve the public before devising an alternative funding scheme designed to benefit the horse slaughter plant companies.

Indeed, the courts have made clear that reliance upon the "public interest" rationale is appropriate only where, in fact, "'*the interest of the public* would be defeated by any requirement of advance notice.'" Util. Solid Waste Activities Group, 236 F.3d at 755 (citing U.S. Department of Justice, Attorney General's Manual on the Administrative Procedure Act at 31 (1947)) (emphasis added). For example, it may apply where a prior "announcement of a proposed rule would enable the sort of financial manipulation the rule sought to prevent," id., or where advance notice might pose a threat to national security or public health. See, e.g., Jifry v. FAA, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (concerning FAA's ability to revoke flight certificates for pilots considered a security risk). Certainly, none of these legitimately "public" interests, or anything remotely like them, is implicated here.

In sum, since Defendants failed to provide advance notice and public comment, and cannot meet the "good cause" exception, the Interim Final Rule was "adopted without observance of procedure required by law," 5 U.S.C. § 706(2)(D), and should be "[held] unlawful and set aside." Id. § 706(2).

13

## II.    FSIS'S REQUEST FOR PUBLIC COMMENTS AT THE TIME THE INTERIM FINAL RULE WAS ISSUED ALSO CANNOT EXCUSE THIS VIOLATION OF THE APA.

Defendants have also suggested that their failure to provide an opportunity for advance notice and comment can be excused because FSIS invited public comment at the same time it published the Interim Final Rule.  Def. P.I. Opp. at 29 (claiming Defendants are "following the APA by accepting comments on the ante-mortem horse inspection rule between February 8, 2006 and March 10, 2006").  This argument, especially on the facts here, makes a mockery of 5 U.S.C. § 553.

To begin with, the Courts view with considerable skepticism an agency argument that it has cured a notice and comment violation through a *post-hoc* consideration of comments.  See, e.g., New Jersey v. U.S. Envtl. Prot. Agency, 626 F.2d at 1049-50.  As the D.C. Circuit has also explained, "an agency is not likely to be receptive to suggested changes once the agency put[s] its credibility on the line in the form of 'final' rules.  People naturally tend to be more close-minded and defensive once they have made a 'final' determination."  Air Transport Assn of Am. v. Dep't of Transp., 900 F.2d 369, 379 (D.C. Cir. 1990), vacated as moot on other grounds, 933 F.2d 1043 (D.C. Cir. 1991) (internal citations omitted); see also New Jersey, 626 F.2d at 1049-50 ("notice and an opportunity for comment are to precede rule-making," in light of the "psychological and bureaucratic realities of *post-hoc* comments," and to thus insure that "the agency is more likely to give real consideration to alternative ideas"); Spirit of the Sage Council v. Norton, 294 F. Supp. 2d 67, 91 (D.D.C. 2003), vacated in part as moot on other grounds 411 F.3d 225 (D.C. Cir. 2005)(vacating regulation promulgated based on a *post-hoc* comment period).  Therefore,

14

especially at this late date, were FSIS to *repromulgate* the Interim Final Rule, and actually

respond to the comments it received, that would not cure the notice and comment violation here.[5]

However, in this case the Court is not even faced with this question because, while it is

now almost *six months* since the comment period closed, *FSIS has yet to promulgate a Final*

*Rule that addresses the more than 50,000 public comments*.  See Analysas Corp. v. Bowles, 827

F. Supp. 20, 23 (D.D.C. 1993) ("affirmative evidence that [the agency] is moving quickly would

tend to make the absence of notice and comment less significant").  As a result, it is evident at

this point – again, many months after the Interim Final Rule was issued – that FSIS has no

intention, and evidently never had any intention, of actually *addressing* the public comments

received, and complying with the APA's requirement to publish a Final Rule that reasonably

responds to the matters raised in the public comments.  See, e.g., Alabama Power Co. v. Costle,

636 F.2d 323, 384 (D.C. Cir. 1979) ("it bears repeating that the duty to respond to significant

comments finds a statutory basis in required notice and comment procedures, for 'the opportunity

to comment is meaningless unless the agency responds to significant points raised by the

public'") (quoting Home Box Office v. FCC, 567 F.2d  9, 35-36 (D.C. Cir. 1977)); see also

---

[5]     In this regard, it also bears emphasizing that in the Interim Final Rule itself FSIS
made it absolutely clear that the agency did not intend to seriously consider the matters raised in
any comments.  When an agency of the USDA intends to consider post-promulgation comments,
it says so.  See, e.g., Oranges, Grapefruit, Tangerines, and Tangelos Grown in Florida; Increased
Assessment Rate, 71 Fed. Reg. 5157, 5159 (Feb. 1, 2006) (assuring that all comments on an
Interim Final Rule "will be considered prior to issuance of a final rule").  Here, by contrast, in the
Interim Final Rule FSIS studiously *avoided* claiming that it would either address the post-
promulgation comments, or issue a Final Rule at a later date.  71 Fed. Reg. 6337 (2006); see also
National Women, Infants and Children Grocer's Assn. v. Food and Nutr. Serv., 416 F. Supp. 2d
93 (D.D.C. 2006) (permitting invocation of "good cause" exception where agency promised to
issue a final rule after considering public comment).

Louisiana Federal Land Bank Assn v. Farm Credit Admin., 336 F.3d 1075, 1080 (D.C. Cir. 2003).

Thus, for example, in the few cases where courts have allowed agencies to issue "interim" rules *before* considering comment, not only have the agencies promised to repromulgate the Rule after fully taking public comments into account – which FSIS did *not* do here – but the agencies have in fact *kept that promise* by subsequently issuing a Final Rule *with detailed responses to the comments received*.  See, e.g., Universal Health Services of McAllen v. Sullivan, 770 F. Supp. 704 (D.D.C. 1991), aff'd 978 F.2d 745 (D.C. Cir. 1992) (upholding interim rule that included a request for comments, where the agency subsequently issued a final rule that responded to the comments received); Clinton Mem'l Hosp. v. Sullivan, 783 F. Supp. 1429, aff'd 10 F.3d 854 (D.C. Cir. 1993) (same); National Comm. Reinvestment Coalition v. Nat'l Credit Union Admin., 290 F. Supp. 2d 124, 137 (D.D.C. 2003) (distinguishing cases where "an agency provided an opportunity to submit comments after a rule was promulgated, but did not actually consider the comments received"); Nuclear Military Monitoring v. Perry, 933 F. Supp. 36, 38 (D.D.C. 1996) (agency issued final rule with response to comments after issuing interim rule).  Here, having failed to repromulgate the Interim Final Rule, FSIS's "*post-hoc* comment period" certainly cannot excuse the agency's notice-and-comment violation.

The fact that FSIS received *tens of thousands* of comments further highlights the necessity that the agency meaningfully take those comments into consideration before even suggesting that the existence of a *post-hoc* comment period could have any bearing on the outcome here.  See Judd Decl., ¶¶ 5-8.  Indeed, it also bears emphasizing that, in issuing the Interim Final Rule, FSIS also completely ignored the legal and factual arguments raised in the

lengthy letter that several Plaintiffs sent to Defendants *prior* to publication of the Interim Final

Rule.  See AR 133.[6]

Responding to the concerns raised by Plaintiffs and many others here would certainly not

have been a *pro forma* exercise.  To the contrary, had FSIS been forced to grapple with these

concerns, it might have concluded that, in fact, there were inadequate grounds to grant the

Rulemaking Petition and immediately implement the fee-for-service program.  See Chamber of

Commerce, 443 F.3d at 904 ("an utter failure to comply with notice and comment cannot be

considered harmless if there is any uncertainty at all as to the effect of that failure") (other

citations omitted).

For example, in their comments Plaintiffs and others argued that implementing the fee-

for-service program would be contrary to the expressed intent of Congress, in passing the

Amendment, to *stop* the use of USDA inspectors for ante-mortem inspection at these plants, and

thereby to temporarily reduce or cease the slaughter of horses there.  See, e.g., AR 133 at 4-9; see

also Judd Decl., ¶ 7.  Yet, to date, despite promulgation of the Interim Final Rule, production of

the AR underlying the regulation, and submission of numerous briefs to the Court, Defendants

have studiously *avoided ever explaining what other purpose Congress was seeking to achieve in*

---

[6]    Curiously, in opposing Plaintiffs' preliminary injunction motion, Defendants'
claimed that the fact that Plaintiffs submitted these comments before the Interim Final Rule was
published suggested that FSIS *had* considered these comments.  Def. P.I. Opp. at 19.  However,
since neither the Interim Final Rule itself, nor any other document in the AR, *addresses* these
comments or any of the concerns raised there, FSIS's mere *receipt* of the comments certainly
does not comply with the APA.  See, e.g., Costle, 636 F.2d at 384 (agency must "respond[ ] to
significant points raised by the public"); see also, e.g., 71 Fed. Reg. 49,319 (Aug. 23, 2006)
(recently issued USDA Final Rule that includes a detailed response to the comments submitted).

*passing the Amendment.*  See, e.g., Regan v. United States, 421 F. Supp.2d 319, 335 (D. Ma.

2006) ("Courts and agencies must follow the expressed intent of Congress").

Similarly, the comments argued that a fee-for-service program was incompatible with the

FMIA, because that statute requires that the cost of these inspections "shall be borne by the

United States."  AR 133 at 10 (quoting 21 U.S.C. § 695).[7]  However, again, without having been

required to respond to these comments, FSIS has never been forced to resolve this apparent

inconsistency.

Moreover, even had FSIS meaningfully responded to these legal arguments, in addressing

the comments it would also have had to grapple with the animal cruelty and environmental

concerns raised by commentors.  AR 133 at 2, 7-9; Judd Decl., ¶ 8.  For example, FSIS might

have at least crafted its regulation so as to condition the slaughter plants' participation in the fee-

for-service program on their taking concrete steps to address these concerns.

Because FSIS's refusal to address the public comments runs contrary to the entire

purpose of the APA's notice-and-comment requirements to "ensure that agency regulations are

tested via exposure to diverse public comment," American Coke and Chem. Inst., 452 F.3d at

938, the agency's patent violation of 5 U.S.C. § 553 should not be sanctioned by this Court.

_____

[7]      Defendants' own exhibit makes this point most succinctly:

when the consumer sees [the USDA] mark, he knows that it was placed there – on that
particular piece of meat – by a trained and competent inspector, employed by the United
States government, operating neither in fear nor in favor of the meat packer, who has
personally inspected that specific piece of meat and certified it to be wholesome and pure
and of the grade and quality indicated.

Def. P.I. Opp., Ex. 1, at p. 1707.

Rather, the Court should conclude that FSIS's *post-hoc* comment period does not excuse the agency's flagrant disregard of the APA's notice and comment requirements.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for summary judgment on Claim One, and vacate and remand the Interim Final Rule to FSIS. <u>See</u> <u>American Bioscience, Inc. v. Thompson</u>, 269 F.3d 1077 (D.C. Cir. 2001) (remedy for a violation of the APA "will be a vacatur of the agency's order"); <u>Nat'l Mining Ass'n v. U.S. Army Corps of Engineers,</u> 145 F.3d 1399, 1409 (D.C. Cir. 1998); <u>Norton</u>, 294 F. Supp. 2d at 91 (where agency violated notice and comment requirements, "vacatur of the [rule] is required in order to vindicate the procedural rights conferred by the APA").[8]

|                                                   | Respectfully submitted,                          |
|---------------------------------------------------|--------------------------------------------------|
| Of Counsel:                                       |                                                  |
| Rebecca G. Judd (Md. Bar Member)                  |                                                  |
| Ethan Carson Eddy (D.C. Bar No. 496406)           | _____/s/_____                              |
| Jonathan R. Lovvorn (D.C. Bar No. 461163)         | Howard M. Crystal (D.C. Bar. No. 446189)         |
| The Humane Society of                             | Eric R. Glitzenstein (D.C. Bar No. 358287)       |
| the United States                                 | Meyer Glitzenstein & Crystal                     |
| 2100 L St., N.W.                                  | 1601 Conn. Ave., N.W., Suite 700                 |
| Washington, D.C. 20037                            | Washington, D.C. 20009                           |
| (202) 676-2333                                    | (202) 588-5206                                   |
|                                                   |                                                  |
| September 8, 2006                                 | Counsel for Plaintiffs                           |

---

[8]     Plaintiffs urge the Court to rule on the pending summary judgment motions as soon as practicable. Nonetheless, Plaintiffs note that although the Amendment was included in a Fiscal Year 2006 Appropriations Bill, and the fiscal year will end on September 30, 2006, it appears that the Amendment may have continued vitality beyond that date in light of the uncertain status of the Fiscal Year 2007 appropriations process. <u>See</u> http://thomas.loc.gov/home/approp/app07.html (showing that none of the 2007 appropriations bills have been finalized)(last visited Sept. 8, 2006); <u>Associated Builders & Contractors, Inc. v. Herman</u>, 976 F. Supp. 1, 4 (D.D.C. 1997) ("The 1995 Department of Labor Appropriations Act also barred the Department from expending funds to implement the helper regulations; this prohibition extended into fiscal year 1996 through several continuing resolutions").

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **THE HUMANE SOCIETY** | ) | |
| **OF THE UNITED STATES, ET AL.** | ) | |
| | ) | Civ. No. 1:06CV00265 (CKK) |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| **MIKE JOHANNS, ET AL.** | ) | |
| | ) | |
| Defendants. | ) | |

_____

### PLAINTIFFS' STATEMENT OF MATERAL FACTS NOT IN
### DISPUTE IN SUPPORT OF SUMMARY JUDGMENT ON CLAIM ONE

1.      The Fiscal Year 2006 Agricultural Appropriations Act, P. L. 109-97, included a provision prohibiting FSIS from spending appropriated funds to pay for personnel to conduct ante-mortem inspections of horses:

> [e]ffective 120 days after the date of enactment of this Act, none of the funds made available in this Act may be used to pay the salaries or expenses of personnel to inspect horses under section 3 of the Federal Meat Inspection Act (21 U.S.C. § 603) or under the guidelines issued under section 903 of the Federal Agriculture Improvement and Reform Act of 1996.

Pub. L. 109-97, § 794, 119 Stat. 2164 (AR 51).  To permit the plants a reasonable period to adjust to this new requirement, Congress provided that the funding ban would not go into effect for 120 days – *i.e.*, until March 10, 2006.  Id.

2.      In response to this Amendment, and before it had become law, the Undersecretary of Agriculture directed FSIS to begin working on a new regulatory scheme that would allow the slaughter companies to pay for these inspections through a "fee-for-service" program.  AR 166; AR 171.

3.     Within several weeks after the Amendment was signed into law, the slaughter

plant companies submitted a Rulemaking Petition to FSIS requesting regulations authorizing

such a "fee-for-service" program.  See AR 115.  The Petition requested that the regulations be

issued as an Interim Final Rule, and that FSIS dispense with advance notice and comment.  Id. at

115, 123.

4.     Two weeks later, several members of Congress, including sponsors of the funding

ban, wrote to USDA to express their objection to the fee-for-service regulations, explaining that

such an approach would be directly contrary to congressional intent.  Letter of Dec. 7, 2005 (AR

150).  USDA responded that the Amendment does not prevent horse slaughter, and that the

agency was considering adopting a fee-for-service program.   Letter of Dec. 21, 2005 (AR 151).

5.     In light of FSIS's apparent intention to grant the Rulemaking Petition, and to do

so without first issuing a proposed regulation for public comment, in early January 2006 the

organizational Plaintiffs wrote to USDA urging that the Petition be denied.  Letter of Jan. 5, 2006

(AR 133).  Plaintiffs explained that a fee-for-service program would be contrary to the intent of

the Amendment, and would also violate the Federal Meat Inspection Act, 21 U.S.C.

§ 601, et seq., which requires that the cost of these inspections "shall be borne by the United

States."  21 U.S.C. § 695.  At bare minimum, Plaintiffs urged USDA not to implement a new

regulation without at least providing an advance opportunity for full public notice and comment.

AR 133, at 12.

6.     On January 17, 2006, forty members of Congress wrote USDA to express serious

concerns with the agency's plan to "engage in a complex regulatory maneuver to willfully

circumvent legislation that was passed by an overwhelming majority in both the House and the

2

Senate." Letter of Jan. 17, 2006 (AR 159). These members stressed that "the issue of horse slaughter is of significant national interest, and each and every one of our constituents is entitled to prior notice and a full opportunity to comment on the USDA's proposal *before* it is implemented." Id. at 2 (emphasis in original).

7.      On February 8, 2006, FSIS published the challenged "Interim Final Rule," implementing the requested fee-for-service program without any advance public notice and comment. 71 Fed. Reg. 6337 (AR 177). FSIS's new regulations permitted the inspections to continue uninterrupted, by allowing the slaughter plants themselves to pay for these inspections. In issuing the Interim Final Rule, FSIS did not explain how the Rule could be reconciled with either the Amendment or the FMIA.

8.      Recognizing that the Interim Final Rule is clearly a substantive rule subject to the APA's notice and comment requirements, 5 U.S.C. § 553, FSIS claimed that immediate promulgation of the rule was appropriate to "ensure continuity of operations at official establishments that slaughter horses." 71 Fed. Reg. at 6340. On that basis FSIS invoked the APA's "good cause" exception to notice and comment. Id.

9.      Concurrently with issuing the Interim Final Rule, FSIS invited public comment on it. 71 Fed. Reg. 6337. In response, more than 50,000 individuals and entities submitted public comments, most of whom objected to the rule on environmental, animal cruelty and other grounds. See Declaration of Rebecca Judd, ¶¶ 7-9. However, to date, FSIS has issued no such "Final Rule," nor has it in any other manner addressed these public comments. Id. ¶ 10.

Respectfully submitted,

Of Counsel:

Rebecca G. Judd (Md. Bar Member)
Ethan Carson Eddy (D.C. Bar No. 496406)                                   /s/
Jonathan R. Lovvorn (D.C. Bar No. 461163)        Howard M. Crystal (D.C. Bar. No. 446189)
The Humane Society of                            Eric R. Glitzenstein (D.C. Bar No. 358287)
the United States                                Meyer Glitzenstein & Crystal
2100 L St., N.W.                                 1601 Conn. Ave., N.W., Suite 700
Washington, D.C.  20037                          Washington, D.C.  20009
(202) 676-2333                                   (202) 588-5206

September 8, 2006                                Counsel for Plaintiffs

4