UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **THE HUMANE SOCIETY OF THE UNITED STATES, ET AL.** )<br>)<br>)<br>)<br>Plaintiffs, )<br>v. )<br>)<br>**MIKE JOHANNS, ET AL.** )<br>)<br>Defendants. )<br>) | Civ. No. 1:06CV00265 (CKK) |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON
CLAIM ONE AND OPPOSITION TO DEFENDANT AND DEFENDANT-
INTERVENORS' MOTIONS FOR SUMMARY JUDGMENT ON CLAIM ONE**

Of Counsel:

REBECCA G. JUDD
ETHAN CARSON EDDY
JONATHAN R. LOVVORN
THE HUMANE SOCIETY OF THE UNITED STATES
2100 L. St., N.W.
Washington, DC 20037
(202) 676-2333

HOWARD M. CRYSTAL
MEYER GLITZENSTEIN & CRYSTAL
1601 Connecticut Ave., N.W.,
Suite 700
Washington, DC 20009
(202) 588-5206
(202) 588-5049 (fax)

September 26, 2006

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Defendants Had No "Good Cause" For Dispensing With Notice And
Comment Rulemaking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    Defendants' Post-Hoc Comment Period Did Not Cure The APA
Violation Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      C.    The Court Also Cannot Excuse Defendants' APA Violation
On "Harmless Error" Grounds. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **PAGE**

Air Transport Association of America v. Department of Transport,
    900 F.2d 369 (D.C. Cir. 1990), vacated as moot on other grounds, 933
    F.2d 1043 (D.C. Cir. 1991) .......................................................................... 12

Alabama Power Co. v. Costle,
    636 F.2d 323 (D.C. Cir. 1979) .................................................................... 2

American Fed. of Gov't Employees, AFL-CIO v. Block,
    655 F.2d 1153, 1157 (D.C. Cir. 1981) ........................................................ 7

Atkins v. Parker,
    472 U.S. 115 (1985) ..................................................................................... 14

Black v. Snow,
    272 F. Supp. 2d 21 (D.D.C. 2003) .............................................................. 9

Burtch v. U.S. Department of Treasury,
    120 F.3d 1087 (9th Cir. 1997) ..................................................................... 9

*Chamber of Commerce of the United States v. SEC,
    443 F.3d 890 (D.C. Cir. 2006) .................................................................... 13

Detroit Newspaper Agency v. NLRB,
    435 F.3d 302 (D.C. Cir. 2006) .................................................................... 3

Environmental Defense Center v. Babbitt,
    73 F.3d 867 (9th Cir. 1995) ......................................................................... 9

Esch v. Yeutter,
    876 F.2d 976 (D.C. Cir. 1989) .................................................................... 9

Federal Election Commission v. Akins,
    524 U.S. 11 (1998) ....................................................................................... 4

Gerber v. Norton,
    294 F.3d 173 (D.C. Cir. 2002) .................................................................... 5

_____

\* Authorities upon which plaintiffs chiefly rely

Goldring v. District of Columbia,
    416 F.3d 70 (D.C. Cir. 2005) ........................................................ 10

Herbert v. National Academy of Sciences,
    974 F.2d 192 (D.C. Cir. 1992) ...................................................... 5

*Home Box Office v. FCC,
    567 F.2d 9 (D.C. Cir. 1977) ......................................................... 11

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ...................................................................... 3

McLouth Steel Products Corp. v. Thomas,
    838 F.2d 1317 (D.C. Cir. 1998) .................................................... 13

National Fed. of Fed. Emps. v. Devine,
    671 F.2d 607 (D.C. Cir. 1982) ....................................................... 7

National Women, Infants and Children Grocer's Association v. Food and Nutr. Serv.,
    416 F. Supp. 2d 92 (D.D.C. 2006) ................................................. 6

Omnipoint Corp. v. FCC,
    78 F.3d 620 (D.C. Cir. 1996) ........................................................ 11

Richardson v. Belcher,
    404 U.S. 78 (1971) ........................................................................ 14

Roeder v. Islamic Republic of Iran,
    333 F.3d 228 (D.C. Cir. 2003) ...................................................... 10

Spirit of the Sage Council v. Norton,
    294 F. Supp. 2d 67 (D.D.C. 2003), vacated in part as moot on other grounds
    411 F.3d 225 (D.C. Cir. 2005) ...................................................... 12

Sprint Corp. v. FCC,
    315 F.3d 369 (D.C. Cir. 2003) ...................................................... 13

*State of New Jersey v. EPA,
    626 F.2d 1038 (D.C. Cir. 1980) .............................................. 5, 6, 12

Sugar Cane Growers Cooperative of Fla. v. Veneman,
    289 F.3d 89 (D.C. Cir. 2002) ........................................................ 13

---

* Authorities upon which plaintiffs chiefly rely

**FEDERAL STATUTES**

5 U.S.C. § 553  ................................................................................................  1, 11

21 U.S.C. § 695  ..............................................................................................  6, 13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
**THE HUMANE SOCIETY**                 )
**OF THE UNITED STATES, ET AL.**       )
                                       )       Civ. No. 1:06CV00265 (CKK)
            Plaintiffs,                )
       v.                              )
                                       )
**MIKE JOHANNS, ET AL.**               )
                                       )
            Defendants.                )
_____)

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT AND DEFENDANT-INTERVENORS' MOTIONS
FOR SUMMARY JUDGMENT**

**INTRODUCTION**

While Defendants and Defendant-Intervenors offer a long list of rationales for the Food

Safety and Inspection Service's ("FSIS") failure to provide *any* advance notice and comment

before implementing its "fee-for-service" program as an Interim Final Rule, none of these

arguments can excuse the agency's fundamental violation of the Administrative Procedure Act

("APA") here.  5 U.S.C. § 553.  Indeed, if the Court were to adopt these arguments, it is difficult

to imagine when an agency *would* be required to follow notice and comment rulemaking.

For example, according to Defendants, FSIS "followed the APA by accepting comments

on the ante-mortem horse inspection rule" *after* issuing a Final Rule, but before its *effective date*.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment ("Def. Opp.") at 23.

Certainly, if a comment period held *after* a Final Rule is issued but before its *effective date*

complied with the APA, then the requirement for notice and comment would become

meaningless, especially where, as here, *the agency does not repromulgate the rule on, or after,*

*that effective date.* In short, since the APA requires agencies not only to solicit comments, but to *consider them in agency decision-making*, Defendants' "effective date" argument makes a mockery of notice and comment rulemaking. See, e.g., Alabama Power Co. v. Costle, 636 F.2d 323, 384 (D.C. Cir. 1979) (discussing agency's "duty to respond to significant comments")(other citations omitted).

As we show below, each of Defendants' other arguments are similarly without merit. Accordingly, the Court should grant Plaintiffs' Motion for Summary Judgment on Claim One.[1]

## **ARGUMENT**

In light of Defendants' filing, it is critical at the outset to clarify precisely what is *not* at issue in this round of briefing. First, although the Federal Defendants argue at length about Plaintiffs' Claim Two, see Def. Opp. at 10-15, the Court has dismissed that Claim, and the only Claim at issue here is whether Defendants violated the APA's notice and comment requirement in issuing the Interim Final Rule without any advance notice and comment. There is therefore no reason for the Court to consider Defendants' arguments on that score.

Second, while Defendants present a host of *post-hoc* arguments to the Court, none of these arguments are at all relevant here, for, as the D.C. Circuit reiterated earlier this year, "[n]o principle is better-settled in administrative law than that we are to uphold an agency order based

---

[1]     In addition to opposing Plaintiffs' Motion for Summary Judgment, which was filed pursuant to the Court's Order, see Order of Aug. 28, 2006, Defendant and Defendant-Intervenors have also filed their own Motions for Summary Judgment on this Claim. Plaintiffs presume that Defendants will follow the Court's expedited schedule in filing any Reply briefs in support of their Motions. Id. (requiring Reply brief within seven calendar days of opposition brief). As for Defendants' alternative Motion to Dismiss Plaintiffs' Claim One, since Defendants ask the Court to rely on the Administrative Record, there is no separate basis to consider that request. See Fed. R. Civ. P. 12(b); see also Order of Mar. 1, 2006, ¶ 3.

*only* on reasoning fairly stated by the agency in the order under review." <u>Detroit Newspaper Agency v. NLRB</u>, 435 F.3d 302, 313 (D.C. Cir. 2006) (emphasis in original). Therefore, the agency's decision to forego notice and comment must rise or fall on the justification provided *at the time the Interim Final Rule was promulgated*, rather than on the various additional rationales now put forward. <u>See, e.g.</u>, Def. Opp. at 26, n.15 (arguing, for the first time, that FSIS was *obligated* to immediately enact the fee-for-service program to comply with its "longstanding, mandatory and unmodified statutory obligation" under the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 601, <u>et</u> <u>seq</u>.)).

Finally, as explained further below, Defendants' lengthy recitation of the purported economic impacts of permitting the Congressional funding ban on ante-mortem horse inspection, Pub. Law 109-97, § 794, 119 Stat. 2164 ("2006 Amendment"), to take effect is both a red herring, and further supports *Plaintiffs'* contentions here. Def. Opp. at 19-23. Agency regulations often impose or relieve economic burdens on regulated industries. <u>See, e.g.</u>, 66 Fed. Reg. 38,822 (2001) (proposal to withdraw energy efficiency standards for residential central air conditioners). Since notice and comment is obviously necessary before an agency *imposes* these economic burdens, it also must be provided where the regulations are designed to assist an industry – especially where, as here, that protection comes at a concrete social cost that the earlier *status quo* – <u>i.e.</u>, the 2006 Amendment here – had safeguarded against. <u>See, e.g.</u>, Pl. Motion for Preliminary Injunction ("Pl. P.I. Mem."), Exs. 6-9 (declarations discussing adverse consequences of continued horse slaughter).[2]

---

[2]    Plaintiffs' injuries from the uninterrupted continuation of operations at these slaughter plants is more than sufficient to satisfy any Article III standing requirements, which is presumably why Defendants are no longer contesting Plaintiffs' standing. <u>See, e.g.,</u> <u>Lujan v.</u>

Moreover, the economic harms to the slaughter plants upon which Defendants rely were contained in a Rulemaking Petition that the public *never had an opportunity to weigh in on*, once again defeating the entire purpose of notice and comment rulemaking. Indeed, as Plaintiffs have demonstrated in a Declaration – and would have had the opportunity to demonstrate in the Administrative Record ("AR") had there *been* notice and comment – there are serious grounds to dispute the grave economic consequences that the slaughter plant companies claimed they would suffer were Congress' enactment to have become effective. See Pl. P.I. Mem., Declaration of Charles R. Mahla, Ph.D. ("Mahla Decl.").

**A.    Defendants Had No "Good Cause" For Dispensing With Notice And Comment Rulemaking.**

As Plaintiffs explained in their opening brief, Defendants cannot demonstrate that there was "good cause" to immediately promulgate the Interim Final Rule on the basis of either "impracticability" or the protection of the "public interest." Plaintiffs' Summary Judgment Memorandum on Claim One ("Pl. Mem.") at 9-13. None of Defendants' arguments counsels a different conclusion here.

*First,* Defendants claim that advance notice was impracticable in light of the window between enactment of the 2006 Amendment and its effective date. Def. Opp. at 16-17. Of course, that argument only has any relevance if, in fact, there was a reason that the fee-for-service program *needed to be in effect* before the 2006 Amendment's effective date, after which FSIS could no longer pay inspectors to conduct ante-mortem inspection of horses. On that score, and

---

Defenders of Wildlife, 504 U.S. 555, 573, n. 7 (1992) (discussing standing for procedural rights challenges); Federal Election Comm'n v. Akins, 524 U.S. 11, 25 (1998); see also Mem. Op. of Aug. 28, 2006 (finding that Plaintiffs have prudential standing to pursue the notice and comment claim).

as explained further below, Defendants have failed to explain why their desire to avoid *any* economic impacts to the companies – even temporary impacts associated with a minor delay in order to properly consider notice and comment – appropriately trumped the public's right to participate in the rulemaking process.

In any event, while Defendants suggest that they had no time for a Proposed Regulation because there were onerous administrative steps that had to be completed first, id., they fail to acknowledge that the agency began working on the regulation *even before the Amendment became law*. See AR 166. Moreover, in neither the AR nor Defendants' brief is there any *specific* information regarding the timelines involved in issuing a Proposed Regulation, which, at bare minimum, would be necessary before the agency could demonstrate that, in fact, the agency *could not have built in a notice and comment period here* had it chosen to do so. If vague claims of "inadequate time" constitute "good cause" to avoid notice and comment, it is difficult to imagine when agencies would ever be required to comply with the APA.[3]

The D.C. Circuit's decision in State of New Jersey v. EPA, 626 F.2d 1038 (D.C. Cir. 1980), is instructive in this regard. In that case, the Court rejected the agency's invocation of the "good cause" exemption where, by statute, the agency had only *sixty days* to promulgate regulations after receiving submissions from the States. Id. at 1040. Certainly, if a sixty day window in which an agency *must* act is insufficient to make notice and comment

---

[3]    Should Defendants try to provide the Court with more specific information in their Reply brief, that would certainly be too little, too late, because any such data would be yet more *post-hoc* rationalizations, see Gerber v. Norton, 294 F.3d 173, 184 (D.C. Cir. 2002) (a reviewing court should not "give credence to . . . *post hoc* rationalizations"), and, in any event, cannot be introduced for the first time in a Reply brief. Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992).

"impracticable," then, even assuming *arguendo* that the March 10, 2006 effective date in fact had

any significance here, the more than 120 days FSIS had from October 31, 2005 (AR 166) to

March 10, 2006 should have been more than sufficient.[4]

Defendants' reliance on the district court's ruling in National Women, Infants and

Children Grocer's Ass'n v. Food and Nutr. Serv., 416 F. Supp. 2d 92 (D.D.C. 2006), is

misplaced. Def. Mem. at 17. The court upheld reliance on the "good cause" exception in that

case because (a) Congress had specifically authorized the agency to promulgate "interim rules";

(b) the rules were necessary to insure continuation of a "multi-billion dollar federal program that

directly affects the health and nutrition of millions of Americans"; and (c) the agency at issue

specifically promised in its interim rule that it would *repromulgate* the rule after considering

public comment. Id. at 104-108. In this case, by contrast, not only is there no indication that

Congress intended the agency to engage in *any* rulemaking (let alone an interim rule without any

notice and comment), the agency never indicated that it would repromulgate the rule in final

form, *it still has not done so.*

---

[4]    Defendants in State of New Jersey argued that providing notice and comment would conflict with their Clean Air Act mandate to act expeditiously in order to protect public health. 626 F.2d at 1046. However, as the Court explained, "this assumption fundamentally misconceives the purpose and shrugs off the wisdom of the APA," for notice and comment helps to "*insure that the Administrator fulfills* his obligations under the Clean Air Act . . . ." Id. (emphasis added). Similarly, in this case, again assuming *arguendo* that there was some legitimate basis for Defendants' contention that they were *obliged* to complete their rulemaking by March 10, 2006, notice and comment rulemaking would have assisted the agency in insuring that the rulemaking was consistent with its obligations under the FMIA and the Amendment – by, for example, forcing the agency to explain how its fee-for-service program can be reconciled with the statutory requirement that inspection fees "shall be borne by the United States." 21 U.S.C. § 695.

*Second*, Defendants claim that a notice and comment period would have been "contrary to the public interest because it would have delayed the implementation of the interim final rule and caused significant, immediate, and concrete financial harm to the Petitioners, their employees, and their suppliers and customers." Def. Mem. at 18. As to the delay, *any* notice and comment period necessarily "delays" the implementation of a regulation, and thus again, this rationale would permit the promulgation of an interim final rule in any and all circumstances.

As for the potential harm to the horse slaughter companies and other interests, this rationale also cannot demonstrate "good cause," since changes in agency regulations very frequently impose, or relieve, economic burdens on industries, and, thus, once again, Defendants' rationale would put a gaping loophole in the APA's notice and comment requirement. Moreover, while Defendants conveniently choose to focus on the consequences of a shutdown of the plants for the *entire fiscal year*, neither in the Interim Final Rule, nor even in their brief to the Court, do Defendants address the significantly less burdensome consequences that might have resulted from a *slight delay* in the fee-for-service program's inception in order to accommodate meaningful consideration of public comment.[5]

---

[5]    While Defendants claim that the public interest exception "can encompass consideration of significant adverse economic impact," and refer the Court to other instances where *Defendants* have relied on this rationale in recent years, Def. Mem. at 18, n.12, they notably fail to identify a single court ruling sanctioning an exception to notice and comment based purely on the economic impacts to several companies. To the contrary, as explained in the case Defendants themselves cite, see Def. Opp. at 19 (citing National Fed. of Fed. Emps. v. Devine, 671 F.2d 607 (D.C. Cir. 1982)), the cases make clear that the kind of "emergency" warranting immediate promulgation of regulations must threaten "*serious* damage to *important* interests." Id. at 611 (finding no APA violation where prior notice and comment would have been "potentially harmful" and "might threaten the financial stability of the federal employee health benefit program") (emphasis added).

As for Defendant-Intervenors, the single case they rely on is also inapposite, see Defendant-Intervenors' Summary Judgment Opposition ("Def.-Int. Opp.") at 6 (discussing

In addition, there can be no doubt that, in passing the Amendment, Congress recognized

that it would have *economic consequences on these businesses*.  See, e.g., H4248 (floor statement

of Rep. Bonilla warning that the Amendment would "shut down an industry").  Under these

circumstances, Congressional passage of the 2006 Amendment, with absolutely no requirement

that the agency take *any* action at all, simply cannot constitute an "emergency" permitting the

agency to avoid the basic APA requirement of advance notice and comment.

In any event, Defendants' reliance on the economic harms to the slaughter companies

only further bolsters *Plaintiffs*' argument here, for had their been a notice and comment period,

the public would have had the opportunity to *weigh in on* the legitimacy of these economic loss

claims and to bring to the agency's attention other economic factors that should have been

considered.  For example, as noted earlier, Plaintiffs' economic expert raised important concerns

regarding these claims.  See Mahla Decl., ¶¶ 5-12.  Similarly, had there been notice and

comment, the local community near the plants would have had the opportunity bring the *adverse*

economic effects of these plants to the agency's attention.  See, e.g., Pl. P.I. Mem., Declarations

of Robert Eldridge (Ex. 6); Tonja Runnels (Ex. 7); Yolanda Salazar (Ex. 8); and Paula Bacon

(Ex. 9) (Mayor of Kaufman, Texas, home of the Dallas Crown slaughter plant, detailing the

---

American Fed. of Gov't Employees, AFL-CIO v. Block, 655 F.2d 1153, 1157 (D.C. Cir. 1981)),
for in that case the Court upheld an agency's regulations issued without notice and comment
where the regulations were "a reasonable and perhaps inevitable response to" *a court order*, and
the "harm" at issue was not only to the poultry industry – an exponentially larger number of
businesses than the three plants nationwide at issue here – but also explicitly to "the *consumer* in
the form of poultry shortages or increases in consumer prices."  Id. (emphasis added).  In this
case, by contrast, Defendants were under *no* judicial or other requirement to act, and have never
sought to rely on a purported harm to the *overseas* consumers of horsemeat to justify FSIS's
failure to afford a public comment opportunity to *Americans* concerned about this regulation.

"massive economic and environmental problems" the horse slaughter plant has wrought on the town).[6]

*Third*, Defendants argue that FSIS was under some *obligation* to find a way to continue ante-mortem inspections. Def. Opp. at 26, n.15. This misapprehends the significance of a defunding provision, which courts "interpret[ ] as a suspension" of that provision during the affected period. Burtch v. U.S. Dep't of Treasury, 120 F.3d 1087, 1090 (9th Cir. 1997). For example, in Environmental Defense Center v. Babbitt, the court upheld the agency's refusal to act when an appropriations amendment de-funded the listing program under the Endangered Species Act ("ESA"), even though the ESA itself had not been amended. 73 F.3d 867, 871 (9th Cir. 1995) (although "the rider does not repeal the Secretary's listing duty," it nonetheless "prevents [the agency] from taking final action . . . . at this time"). Accordingly, in light of the 2006 Amendment, which defunded inspections, there is no serious argument that Defendants were *required* to act here. See also Black v. Snow, 272 F. Supp. 2d 21 (D.D.C. 2003).

As for Defendants' reliance on the 2006 Amendment's Joint Explanatory Statement, see Def. Opp. at 11, this Court has already ruled that, in light of the Amendment's plain language, the legislative history is *not relevant* to discerning the Amendment's purpose or meaning. See Mem. Op. of Aug. 28, 2005 at 15-16. In any event, the Joint Explanatory Statement does not support Defendants' interpretation of the 2006 Amendment, for it merely reiterates that, with the exception of the "salaries or expenses of personnel to inspect *horses*," the Department is

---

[6]     Plaintiffs had no opportunity to make these submissions as part of the AR precisely because there was no notice and comment opportunity. Nonetheless, since they point out information the agency should have, but did not, consider, it is appropriate for the Court to consider these submissions here. See, e.g., Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989).

expected to continue to "provide for the inspection of *meat* intended for human consumption. . . ." JA 112 (emphasis added). Thus, the statement does not, as Defendants claim, suggest that Congress intended – let alone *directed* – FSIS to make herculean efforts to implement a fee-for-service program that would permit horse slaughter to continue uninterrupted in the face of a Congressional funding ban that would otherwise effectively halt that activity.[7]

*Finally*, Defendant-Intervenors' argument that immediate promulgation of the Rule was in the public interest to "ensure the safety of food for consumption," Def.-Int. Opp. at 8, simply makes no sense, for, in the absence of the Interim Final Rule, there is no dispute that these plants would no longer have been permitted to sell horsemeat for human consumption at all. Therefore, the immediate implementation of the fee-for-service program also cannot be justified on a need to ensure continuous inspection.

**B.     Defendants' Post-Hoc Comment Period Did Not Cure The APA Violation Here.**

Defendants also argue that, by providing a comment period prior to the regulations' *effective* date, FSIS "followed the APA . . . ." Def. Opp. at 23. However, this argument conflates two distinct APA requirements, and, again, is fundamentally at odds with the entire purpose of notice an comment rulemaking.

---

[7]     In any event, a Joint Explanatory Statement is not a significant piece of legislative history, for as the D.C. Circuit has explained, "while both the conference report and the joint explanatory statement are printed in the same document, *Congress votes only on the conference report* . . . ." Goldring v. District of Columbia, 416 F.3d 70, 75, n.3 (D.C. Cir. 2005)(emphasis added); see also Roeder v. Islamic Republic of Iran, 333 F.3d 228, 236-37 (D.C. Cir. 2003) (same). If the Court is willing to even consider this snippet of legislative history, then, at the very least the Court would have to give equal weight to the many other pieces of legislative history unambiguously explaining that the purpose and intent of the Amendment *was to stop ante-mortem inspections of horses*. See, e.g., Pl. P.I. Mem. at 9-13 (discussing this legislative history).

As Plaintiffs have explained – and Defendants seem unwilling to recognize – the purpose of the APA's notice and comment requirement is not simply to permit the public to *speak*, but to permit them to *be heard* by requiring the agency to consider what members of the public have to say when deciding whether, and how, to proceed with a rulemaking.  See, e.g., Home Box Office v. FCC, 567 F.2d  9, 35-36 (D.C. Cir. 1977) ("the opportunity to comment is meaningless unless the agency *responds* to significant points raised by the public")(emphasis added).  Accordingly, an agency cannot comply with this requirement by first issuing its regulation, and *then* seeking public comment on it.

In any event, the 30-day time period between issuance of a regulation and its effective date has nothing to do with public comment, but rather is a *distinct* requirement of APA Section 553(d), required in order to "give affected parties a reasonable time *to adjust their behavior* before the final rule takes effect."  Omnipoint Corp. v. FCC, 78 F.3d 620, 630 (D.C. Cir. 1996) (emphasis in original).  Therefore, Defendants cannot use their compliance with that requirement as a defense of their failure to provide a notice and comment period before issuing the Final Rule.[8]

Defendants also accuse Plaintiffs of "denigrat[ing] FSIS's notice and comment period" by pointing out that, to date, Defendants have not responded to any of the more than 50,000 public comments that were submitted.  Def. Opp. at 24.  According to Defendants, it has assigned an

---

[8]        Thus, full compliance with Section 553 requires (1) publication of a proposed rule with a comment period, and then (2) publication of a final rule that includes *both* (a) meaningful responses to the comments received, and (b) a 30-day delay before the rule's effective date.  5 U.S.C. § 553.

"analyst who is reviewing and developing responses to the comments," and thus it is *not* the case that FSIS "has no intention of ever" issuing a Final Rule.  Id.

As a threshold matter, FSIS cannot cure its notice and comment violation by simply repromulgating its fee-for-service regulation at this time.  To the contrary, as is evident from Defendants' brief, the agency can no longer "give real consideration to alternative ideas," because it long ago decided exactly what it wanted to do here.  New Jersey, 626 F.2d at 1049. Thus, since there can be no serious dispute that FSIS "is not likely to be receptive to suggested changes" in the program, only a remand and set aside of the regulation can insure that the agency in fact *considers* the public's comments.  Air Transport Assn of Am. v. Dep't of Transp., 900 F.2d 369, 379 (D.C. Cir. 1990), vacated as moot on other grounds, 933 F.2d 1043 (D.C. Cir. 1991) (internal citations omitted); Spirit of the Sage Council v. Norton, 294 F. Supp. 2d 67, 91 (D.D.C. 2003), vacated in part as moot on other grounds 411 F.3d 225 (D.C. Cir. 2005).

More importantly, Defendants' accusations that Plaintiffs are seeking to "dictate FSIS' priorities and timetables," Def. Opp. at 24, should not distract the Court from the fact that Defendants continue to studiously avoid providing the Court with any *evidence that FSIS is actually working on repromulgating the Rule and responding to the public comments or when that process may be completed*.  This is not surprising, since, according the Department of Agriculture's Semiannual Regulatory Agenda, the Interim Final Rule is one of FSIS's "*Completed Actions*."  71 Fed. Reg. 22,278, 22,350 (Apr. 24, 2006)(emphasis added).  In short, since to date Defendants have neither responded to the public's comments nor demonstrated that they will ever do so, the *post-hoc* comment period certainly cannot excuse Defendants' APA violation here.

12

C.    **The Court Also Cannot Excuse Defendants' APA Violation
On "Harmless Error" Grounds.**

Finally, Defendants argue that even if FSIS did violate the APA's notice and comment

requirement, the Court should excuse that failure on "harmless error" grounds because Plaintiffs

cannot demonstrate the requisite "prejudice from the error."  Def. Opp. at 25.  However,

Defendants ignore that the D.C. Circuit has set forth a decidedly more *lenient* test for "prejudice"

where "the agency has completely failed to comply with § 553."  McLouth Steel Products Corp.

v. Thomas, 838 F.2d 1317, 1324 (D.C. Cir. 1998).   In particular, as the Court reiterated earlier

this year, "an utter failure to comply with notice and comment cannot be considered harmless if

there is *any uncertainty at all* as to the effect of that failure."  Chamber of Commerce of the

United States v. SEC, 443 F.3d 890, 904 (D.C. Cir. 2006), quoting Sugar Cane Growers Coop. of

Fla. v. Veneman, 289 F.3d 89, 96 (D.C. Cir. 2002).  Thus, so long as "petitioner's comments

*[c]ould have had some effect if they had been considered when the issue was open*," there is no

harmless error.  Thomas, 838 F.2d at 1324 (emphasis added); see also Sprint Corp. v. FCC, 315

F.3d 369, 376 (D.C. Cir. 2003).

Plaintiffs certainly meet this minimal burden here.  As noted, had Plaintiffs – and the

public – been afforded an opportunity to submit public comments, FSIS would have been forced

to grapple with issues that it has still entirely failed to address, such as, *inter alia*,  how its fee-

for-service program can be reconciled with the statutory requirement that inspection fees "shall

be borne by the United States,"  21 U.S.C. § 695; why Congress passed the 2006 Amendment if

not to temporarily stop horse slaughter; and whether it is appropriate to condition the availability

of the fee-for-service program on concrete steps by the slaughter plants to ameliorate the humane

13

and environmental concerns that animated Congress' decision to pass the Amendment in the first place.[9]

In short, if FSIS had responsibly considered and thoughtfully responded to public comments, there can be no legitimate dispute that at the very least the agency *may* have made a different decision here. Accordingly, FSIS cannot obtain a free pass from its APA violation on "harmless error" grounds either.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Summary Judgment on Claim One, and deny Defendants and Defendant-Intervenors' Motions for Summary Judgment on this Claim.

Respectfully submitted,

Of Counsel:
Rebecca G. Judd (Md. Bar Member)                    _____/s/_____
Ethan Carson Eddy (D.C. Bar No. 496406)             Howard M. Crystal (D.C. Bar No. 446189)
Jonathan R. Lovvorn (D.C. Bar No. 461163)           Eric R. Glitzenstein (D.C. Bar No. 358287)
The Humane Society of the United States             Meyer Glitzenstein & Crystal
2100 L St., N.W.                                    1601 Conn. Ave., N.W., Suite 700
Washington, D.C. 20037                              Washington, D.C. 20009
(202) 676-2333                                      (202) 588-5206

September 26, 2006                                  Counsel for Plaintiffs

---

[9]    During the notice and comment period Plaintiffs would also have had the opportunity to weigh in on Defendants' other purported rationales for the regulation, such as its *post-hoc* claim that, had FSIS failed to enact emergency regulations and thus had permitted the funding ban imposed by Congress to take effect, it could have been subject to a "viable constitutional challenge," Def. Opp. at 13 – a contention fundamentally at odds with the relevant caselaw. See, e.g., Richardson v. Belcher, 404 U.S. 78, 81 (1971) (procedural due process does not "impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits"); Atkins v. Parker, 472 U.S. 115, 129-31 (1985) (holding that Congress has plenary power to define the scope of a program and to terminate the resources available to fund that program without a procedural due process requirement, because the "legislative determination provides all the process that is due," especially where there is a time delay in implementation).

14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| **THE HUMANE SOCIETY** ) | |
| **OF THE UNITED STATES, ET AL.** ) | |
| ) | Civ. No. 1:06CV00265 (CKK) |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| **MIKE JOHANNS, ET AL.** ) | |
| ) | |
| Defendants. ) | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS AND DEFENDANT-INTERVENORS'
STATEMENTS OF MATERAL FACTS NOT IN DISPUTE**

Pursuant to Local Rule 7(h), plaintiffs hereby respond to Defendants' and Defendant-

Intervenors' Statements of Material Facts as follows:

**Defendants' Statement**:

1.      Admitted

2.      The Rulemaking Petition speaks for itself and is the best evidence of its contents.

However, Plaintiffs deny that, in fact, the economic consequences outlined in the Petition have

been substantiated.  See Plaintiff's Preliminary Injunction Memorandum ("P.I. Mem."),

Declaration of Charles R. Mahla, Ph.D. ("Mahla Decl."), ¶¶ 5-12.  Plaintiffs further deny that the

economic impacts outlined in the Petition are material facts relevant to Plaintiffs' Claim One.

3.-9.    Defendants' declaration speaks for itself and is the best evidence of its contents.

However, because Defendants never explain why a notice and comment period could not have

occurred in conjunction with the steps outlined in the declaration, Defendants' list of dates are

not material facts relevant to Plaintiffs' Claim One.

10.     Admitted.

**Defendant-Intervenors' Statement**:

1.    Admitted.

2.    Denied.  The plain language of the Appropriations Act prohibits the expenditure of federal funds for the ante-mortem inspection of horses, and thus suspended Defendants' obligation to conduct such inspections during the affected period.  <u>Burtch v. U.S. Dep't of Treasury</u>, 120 F.3d 1087, 1090 (9th Cir. 1997).  It is also denied that the language Intervenors refer to was contained in the Conference Report.  It was contained in the Joint Explanatory Statement, and is thus entitled to no more weight than the ample legislative history demonstrating that the intent of the Appropriation Act was to temporarily halt horse slaughter.  <u>Goldring v. District of Columbia</u>, 416 F.3d 70, 75, n.3 (D.C. Cir. 2005); <u>see also, e.g.,</u> 151 Cong. Rec. S10,218, 10,220 (daily ed. Sept. 20, 2005); H4247-50.

3.-4.    These paragraph contains statements of law, not of fact, and therefore require no response.  However, Plaintiffs note that the purposes of the Federal Meat Inspection Act, 21 U.S.C. § 602, would be fulfilled by a faithful application of the 2006 Amendment because no horsemeat would be sold for human consumption during the effective period of the Amendment.

5.    Admitted.

6.    Admitted.

7.-8.    Plaintiffs admit that Defendants failed to provide advance notice and comment based on these rationales.  Plaintiffs deny that these rationales were adequate to excuse

Defendants' obligations under the Administrative Procedure Act, 5 U.S.C. § 553, for the reasons

discussed in Plaintiffs' Motion for Summary Judgment on Claim One.


Respectfully submitted,


_____/s/_____
Howard M. Crystal
(D.C. Bar No. 446189)

Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, Suite 700
Washington, DC 20009
202-588-5206

September 26, 2006