IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF<br>THE UNITED STATES, et al.<br>    Plaintiffs,<br><br>    v.<br><br><br>MIKE JOHANNS, Secretary<br>United States Department of Agriculture, et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civ. No. 1:06cv00265 (CKK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT-INTERVENORS' REPLY IN SUPPORT OF THEIR CROSS-MOTION
FOR SUMMARY JUDGMENT ON CLAIM ONE OF PLAINTIFFS'
<u>FIRST AMENDED COMPLAINT</u>**

James P. Murphy, Esq. (D.C. Bar No. 380857)
Katherine L. Halpin, Esq. (D.C. Bar No. 494139)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, DC  20004
Telephone:  202.626.6600
Fax:  202.626.6780

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................... 2

III.  CONCLUSION ............................................................................................................ 6

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Building Services Co. v. National R.R. Passenger Corp.*, 305 F.Supp.2d 85 (D.D.C. 2004) ..................................................................................................................................1

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F. Supp. 2d 15 (D.D.C. 2003) ..................................................................................................................................1

*Qutb v. Chief Charles Ramsey*, 285 F.Supp.2d 33 (D.D.C. 2003) ..................................................1

*Sokos v. Hilton Hotels Corp.*, 283 F.Supp.2d 42 (D.D.C. 2003)......................................................2

*Stephenson v. Cox*, 223 F.Supp.2d 119 (D.D.C. 2002)......................................................................2

*Tenn. Valley Authority v. Hill*, 437 U.S. 153 (1978) ........................................................................5

### DOCKETED CASES

*Humane Society of the United States v. Johanns*, Civil Action No. 06-00265 (D.D.C) (CKK) ...........................................................................................................................4, 5

### FEDERAL STATUTES

5 U.S.C. § 553 ..................................................................................................................................2

21 U.S.C. § 601, *et seq.*..............................................................................................................1, 2, 4

### FEDERAL REGULATIONS

71 *Fed.Reg.* 6,337, 6,341 (Feb. 8, 2006)(codified at C.F.R. § 352.19) ......................................2, 3

### LEGISLATIVE MATERIALS

Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of November 10, 2005, Pub. L. 109-97 ....................................................1

S. Doc. No. 248, 79th Cong., 2d Sess. 200 (1946) ..........................................................................2

## I.    INTRODUCTION

In their Reply in Support of Motion for Summary Judgment on Claim One and Opposition to Defendant and Defendant-Intervenors' Motion for Summary Judgment on Claim One (hereinafter "Pls. Reply and Opp."), Plaintiffs misconstrue and, in some instances, disregard the arguments of the Defendants and Defendant-Intervenors in an effort to diminish the significant effect the Federal Meat Inspection Act, 21 U.S.C. § 601, *et seq.* ("FMIA") had upon the Interim Final Rule's being promulgated without notice and comment.

The net effect of Plaintiffs' approach is to essentially concede Defendants' and Defendant-Intervenors' assertion that the Food Safety Inspection Service's ("FSIS") obligation to provide ante-mortem inspection of horses "before they shall be allowed to enter any slaughtering, packing, meat-canning, rendering, or similar establishment" is more than sufficient "good cause" to promulgate the Interim Final Rule without notice and comment.   21 U.S.C. § 603(a), as amended by the Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act of November 10, 2005, Pub. L. 109-97 (hereinafter "Appropriations Act").   For this reason, alone, summary judgment should be granted for the Defendants and Defendant-Intervenors on Claim One of Plaintiffs' First Amended Complaint. *See Bldg. Services Co. v. Nat'l R.R. Passenger Corp.,* 305 F. Supp. 2d 85, 93 (D.D.C. 2004) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (citing *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).   *See also Qutb v. Chief Charles Ramsey,* 285 F. Supp 2d 33, 37 n4 (D.D.C. 2003) ("Plaintiff also does not respond to defendants' arguments that his unjust enrichment claims are without merit.   The Court will therefore treat

1

these arguments as conceded and grant summary judgment on this count as well."); *Sokos v. Hilton Hotels Corp.,* 283 F. Supp. 2d 42, 53 (D.D.C. 2003); *Stephenson v. Cox,* 223 F. Supp. 2d 119, 121-122 (D.D.C. 2002).

## II.    ARGUMENT

The Administrative Procedure Act ("APA") provides that an agency may dispense with notice and comment rulemaking procedures where it establishes "good cause" that the requirements are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553 (b)(B); *see* S. Doc. No. 248, 79th Cong., 2d Sess. 200, 258 (1946)(defining an "impracticable situation" as one where the "due and required execution of agency functions would be unavoidably prevented by its undertaking public rule-making proceedings."). When the Appropriations Act was signed into law, the USDA and FSIS were faced with a truly "impracticable" situation: the imminent discontinuation of federal funding for the ante-mortem inspection of horses, *and,* at the same time, the continued mandate that such inspections be performed.

Consequently, and contrary to Plaintiffs' assertions, the mandate that the United States Department of Agriculture ("USDA") "shall cause to be made, by inspectors appointed for that purpose, an examination of all amendable species…," 21 U.S.C. § 603(a), has been an appropriate justification for asserting the "good cause" exception to the notice and comment provisions of the APA since the date on which the Interim Final Rule was promulgated. *See* Pls. Reply and Opp. at 3. Throughout the Rule, the FSIS makes clear that the FMIA requires the agency to conduct ante- and post-mortem inspection of horses and horse meat to "prevent adulterated meat and meat food products from entering interstate commerce." 71 *Fed. Reg.* 6,337, 6,341 (Feb. 8, 2006)(codified at C.F.R. § 352.19); *id.* at 6,338 ("horses slaughtered for use as human food…continue to be subject to applicable provisions of the FMIA"); *id.* at 6,339

2

("…the FMIA requires that horses, like all amenable species, undergo examination and inspection before they can enter an establishment in which they are to be slaughtered for their meat that will be used for human consumption."); *id.* ("the FMIA requires that horses undergo examination and inspection before they can enter an official establishment in which they are to be slaughtered.").

Most significantly, in the section of the Interim Final Rule which describes the "Need for Immediate Action," the FSIS noted that while the Appropriations Act prohibits the use of federal funds for ante-mortem inspection of horses, the legislation did not affect the requirements of the FMIA or the concomitant obligations of the FSIS: "horses slaughtered for human food continue to be subject to all requirements of the FMIA, including the requirements for ante-mortem inspection, post-mortem inspection, and other inspection activities." *Id.* at 6,340.

Though the agency's appropriate reliance on the FMIA was thoroughly briefed by Defendant-Intervenors and also explained by Defendants in their Opposition to Plaintiffs' Motion for Summary Judgment on Claim One and Defendants' Motion to Dismiss, or, Alternatively, for Summary Judgment (hereinafter "Def. Opp."), [1] Plaintiffs did not address this argument. Instead, Plaintiffs mischaracterized Defendants' explanation of their continuing obligation to inspect all animals to be slaughtered for human consumption as an argument in relation to Plaintiffs' Claim Two, which has been dismissed by this Court. However, even a cursory read of the Defendants' opposition brief makes clear that the Government Defendants were explaining their continuing responsibility to enforce the FMIA, despite the de-funding

---

[1] Defendants also addressed the time constraints imposed by the March 10, 2006 effective date of the Appropriations Act and the "significant, immediate, and concrete financial and economic harm to the Petitioners, their employees, and their suppliers and customers." Def. Opp. at 15-23. Defendant-Intervenors likewise maintained, and continue to maintain, that any delay in the rulemaking would have caused real, irreversible harm to their businesses. Defendant-Intervenors' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Claim One at 5-7 (hereinafter "Def. Int. Opp.").

3

provision included in the Appropriations Act. This obligation more than establishes the "good cause" necessary to forego the APA's notice and comment provisions, particularly when the notice and comment procedures would hinder the agency's obligations under federal law or interrupt the enforcement of the FMIA.

Furthermore, Plaintiffs misconstrued Defendant-Intervenors argument that by making the Interim Final Rule immediately effective on March 10, 2006, and thereby ensuring that the FSIS would continue to be in compliance with its legal obligations under the FMIA, the public also benefited. Def. Int. Opp. at 8-10. This conclusion is logical, considering that the FMIA's purpose is to protect the health and welfare of consumers at home and abroad. *See* 21 U.S.C. § 602; *see also Humane Society of the United States v. Johanns,* Civil Action No. 06-00265 (CKK) (D.D.C. March 14, 2006) (Memorandum Opinion at 29) (finding that the "public has an interest in ensuring that foreign markets, where they exist, are maintained and that livestock producers of meat, processors of meat, and consumers be treated in a fair and equitable manner with respect to their interests").

Plaintiffs collapsed the analysis contained in the Defendant-Intervenors' opposition brief in order to ignore the fact that the immediate promulgation of the Rule was in the public interest *because it ensured the ability of the FSIS to continue to enforce the FMIA*, which, *in turn*, ensures the safety of food for consumption. *See* Def. Int. Opp. at 8-10; Pls. Reply and Opp. at 10.

Finally, Plaintiffs incorrectly argued that the Government Defendants are under no "obligation to find a way to continue ante-mortem inspections" because the Appropriations Act acted as a suspension of Defendants' obligations to continue to fulfill its statutory requirements under the FMIA. Pls. Reply and Opp. at 9. Plaintiffs previously made this argument in Relation

4

to Claim Two of their First Amended Complaint. *See* Plaintiffs' Motion for a Temporary Restraining Order and for a Preliminary Injunction, and Request for a Hearing at 25. This Court has held that because the Appropriations Act does not explicitly prohibit the slaughter of horses, it "cannot rightly [be construed] that Congress intended to execute such a prohibition using an appropriations amendment, particularly considering that the FMIA recognizes the legality of procedures relating to the slaughter of horses for meat pursuant to 21 U.S.C. § 603." *Humane Society of the United States v. Johanns,* Civil Action No. 06-00265 (CKK) (D.D.C. August 28, 2006) (Memorandum Opinion at 16); *see also Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 190 (1978) ("The doctrine disfavoring repeals by implication…applies with even greater force when the claimed repeal rests solely on an Appropriations Act. We recognize that both substantive enactments and appropriations measures are 'Acts of Congress,' but the latter have the limited and specific purpose of providing funds for authorized programs.").

Plaintiffs' manipulate Defendants' and Defendant-Intervenors' arguments in a vain effort to ignore the fact that there was, and is, a law that obligates Government Defendants to "find a way to continue ante-mortem inspections." Pls. Reply and Opp. at 9. Because this mandate is not repeated within the Appropriations Act does not, as Plaintiffs wish, nullify the Government Defendants' obligation to ensure their continued compliance with the FMIA. In fact, contrary to Plaintiffs' suggestion, there is a very "serious argument that Defendants were *required* to act here." *Id.* Consequently, the Government Defendants acted prudently and promulgated an Interim Final Rule that not only ensures the ante-mortem inspection of horses, without interruption, but also gives effect to the dictate of the Appropriations Act.

## III.    CONCLUSION

For the foregoing reasons, as well as those included in Defendant-Intervenors'
Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment on Claim One and by
the Government Defendants in their briefs, Defendant-Intervenors respectfully urge that the
Plaintiffs' Motion for Summary Judgment on Claim One be denied.

Respectfully submitted,


/s/ James P. Murphy
James P. Murphy, Esq. (D.C. Bar No. 380857)
Katherine L. Halpin, Esq. (D.C. Bar No. 494139)
SQUIRE, SANDERS & DEMPSEY L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, DC  20004
Telephone:  202.626.6600
Fax:  202.626.6780

Date:  October 3, 2006                    *Attorneys for Defendant-Intervenors*