UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | )<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>) Civil Action No. 06-0265(CKK) |
| MIKE JOHANNS, Secretary, United States Department of Agriculture, et al., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON CLAIM ONE**

The Food Safety Inspection Service ("FSIS") of the United States Department of Agriculture ("USDA") promulgated the interim final rule establishing a voluntary fee-for-service program to fund the antemortem inspection of horses.[1] This interim final rule was promulgated as a means of reconciling the agency's on-going responsibility to inspect all meat that is commercially produced in the United States for human consumption with Congress' temporary prohibition on the use of federal funds to pay for the ante-mortem inspection of horses being commercially slaughtered to prepare such meat. This prohibition, which is set forth in section 794 of the Fiscal Year 2006 Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act ("FY 2006 Appropriations Act"),[2] prohibited the use

---

[1] See Ante-Mortem Inspection of Horses; Interim final rule with request for comments, 71 Fed. Reg. 6337 (February 8, 2006).

[2] See Pub. L. 109-97, § 794, 119 Stat. 2120, 2164 (2005).

of appropriated funds to pay the salaries and expenses of USDA personnel to conduct antemortem inspection of horses pursuant to section 603 of the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 603. It did not otherwise repeal or amend USDA's legal obligation to conduct antemortem inspection of other animals being commercially slaughtered to produce meat intended for human consumption or USDA's obligation to conduct postmortem inspection of all such meat, including horse meat, pursuant to section 604 of the FMIA, 21 U.S.C. § 604.[3, 4] It

---

[3] Plaintiffs argue that FSIS' "decision to forego notice and comment must rise or fall on the justification *provided at the time the Interim Final Rule was promulgated*" and then assert that Defendants argued in their Reply Brief "*for the first time*, that FSIS was obligated to immediately enact the fee-for-service program to comply with its 'longstanding, mandatory and unmodified statutory obligation under the Federal Meat Inspection Act' (emphasis added)". Pls.' Reply at 3. Plaintiffs are plainly wrong. FSIS argued that the interim final rule was necessary because of its on-going obligation to inspect all meat intended for human consumption in the interim final rule itself. See 71 Fed. Reg. 6337, 6337-6339. Therefore, this rationale *was* provided at the time the interim final rule was promulgated.

[4] The conference report accompanying the FY 2006 Appropriations Act clearly states that USDA "is obliged under existing statutes to provide for inspection of meat intended for human consumption (domestic and exported)" and does not express any qualification, exception, or exemption of horse meat produced for this purpose. H.R. Rep. No. 109-255, p. 107 (2005)(AR 112). Furthermore, the opening paragraph of the Joint Explanatory Statement of the Committee of Conference plainly states, "The managers on the part of the House and Senate at the conference on the disagreeing votes of the two Houses . . . submit the following joint statement to the House and Senate *in explanation of the effect agreed upon by the managers* and recommended in the accompanying conference report (emphasis added)." H.R. Rep. No. 109-255, p. 51 (2005)(AR 56). Faced with these undeniable facts, plaintiffs try to undermine it by noting that the first quotation cited above actually is taken from the Joint Explanatory Statement, which plaintiffs claim "is not a significant piece of legislative history" because "Congress votes only on the conference report" and thus may not be properly relied upon by defendants. Pls.' Reply at footnote 7 (citing Goldring v. District of Columbia, 416 F.3d 70, 75, n.3 (D.C. Cir. 2005). However, plaintiffs distort the holding of the case which they cite. The sole significance of the fact that Congress does not vote on Joint Explanatory Statements is that "the explanatory remarks in the 'conference report' do not have the force of law." Roeder v. Islamic Republic of Iran, 333 F.3d 228, 237 (D.C. Cir. 2003). The Roeder court further stated, "*We do not say* material in the joint explanatory statement is of no value in determining Congress' intent" (emphasis added). Id. at 236. Indeed, "[b]ecause the conference report represents the final

(continued...)

also did not repeal or amend USDA's statutory authority under the Agricultural Marketing Act of 1946 (7 U.S.C. §§ 1622 and 1624) to develop a voluntary fee-for-service program as an alternative method of funding for the antemortem inspection of horses. USDA thus created a program of voluntary inspection services for the antemortem inspection of horses whereby Defendant-Intervenors could pay the salaries and expenses of USDA personnel who conduct such inspections at their plants. This program was announced in an interim final rule published in the Federal Register on February 8, 2006, and it became effective on March 10, 2006.

Contrary to Plaintiffs' objections, FSIS had good cause not to engage in advance notice and comment for the interim final rule on the antemortem inspection of horses because the conduct of such a notice and comment period was impracticable and contrary to the public interest.[5] As Defendants previously have explained, requiring a prior notice and comment period for this rule was impracticable because there was insufficient time to complete the notice and comment period prior to the effective date of section 794 and still meet all the requirements of USDA's deliberative rule-making process as set forth in USDA's Departmental Regulation DR-

---

[4](...continued)
statement of terms agreed to by both houses, *next to the statute itself it is the most persuasive evidence of congressional intent* (emphasis added)." Demby v. Schweiker, 671 F.2d 507, 510 (D.C. Cir. 1981). This is particularly true when, as in the present matter, "the language of two statutes leaves [the court] in doubt as to whether they represent truly irreconcilable intentions." Id.

[5]Plaintiffs rely upon State of New Jersey v. EPA, 626 F.2d 1038 (D.C. Cir. 1980), to refute USDA's invocation of the good cause exception to the notice and comment provisions of the Administrative Procedures Act. Pls.' Reply at 5-6. Such reliance is misplaced, as this case concerned a final rule that was effective immediately upon publication in the Federal Register with no opportunity for notice and comment. In contrast, the present matter involves an interim final rule that was published on February 8, 2006, became effective on March 10, 2006, and for which comments were in fact collected during the 30 day period between the date of publication and the effective date.

1512-1, Regulatory Decision-Making Requirements. Advance notice and comment likewise was impracticable because it would have delayed the implementation of the interim final rule and caused significant, immediate, and concrete financial and economic harm to the Petitioners and their employees, suppliers, and customers.[6]

> As this Court has previously noted, an
>
> interim final rule is exactly what it says–*a temporary rule that is subject to amendment by public comment. The interim nature of a challenged rule is a 'significant factor' in evaluating an agency's good cause claim. Further, an agency's failure to engage in pre-promulgation notice and comment can be partially cured when there is opportunity for post-promulgation comment.* Of course, an agency must remain open at the later stage to consider the comments garnered (emphasis added).

National Women, Infants and Children Grocer's Ass'n v. Food and Nutr. Serv., 416 F. Supp. 2d 92, 107-108 (D.D.C. 2006). Accordingly, Defendants did engage in post-promulgation notice and comment from February 8, 2006, the date that the interim final rule was published in the Federal Register, and March 10, 2006, the effective date of the interim final rule.[7] See 71 Fed.

---

[6] Plaintiffs argue that the economic and financial impacts on the Defendant-Intervenors and their employees, suppliers, and customers are insufficiently grave to warrant a departure from advance notice and comment, and they cite National Fed. of Fed. Emps. v. Devine, 671 F.2d 607, 611 (D.C. Cir. 1982) for the proposition that there *must* be a threat of "serious damage to important interests" before the courts will allow such departures "based purely on the economic impacts to several companies." Pls.' Reply at fn. 5. However, this case actually states, "Courts have upheld a 'good cause' exception when notice and comment *could result* in serious damage to important interests (emphasis added)." 671 F.2d at 611-612. Without addressing whether the economic and financial impacts on the Defendant-Intervenors and their employees, suppliers, and customers constitute important interests, it is sufficient to note that Plaintiffs once again distort the holding of a case by attempting to create the mis-impression that its holding is far more limiting than it actually is.

[7] Plaintiffs claim that FSIS failed "to provide any advance notice and comment before implementing" the interim final rule and that "the public never had an opportunity to weigh in on" it. See Pls.' Reply at 1, 4. These assertions are plainly false, as evidenced by the fact that
(continued...)

Reg. 6337, 6337 (2006). As plaintiffs themselves have noted, FSIS received between 50,000 and 60,000 comments and has had only slightly more than seven months in which to review them. Faced with these facts, plaintiffs have resorted to attacking defendants' intentions with respect to the comments gathered during the notice and comment period by claiming that FSIS is not "open . . . to consider the comments garnered", that it "can no longer 'give real consideration to alternative ideas,'" and that it "'is not likely to be receptive to suggested changes' in the program." Pls.' Reply at 12. However, plaintiffs have not shown and, indeed, cannot show *any* evidence that defendants have engaged in any bad faith with respect to the conduct of their notice and comment period or their review of the 50,000+ comments received,[8] and plaintiffs'

---

[7](...continued)
FSIS conducted notice and comment between the date the rule was published and the date it went into effect, i.e., was implemented, and as evidenced by the fact that FSIS received between 50,000 and 60,000 comments during that time frame. *See* 71 FR 6337, 6337; *see also* Judd Decl. at ¶¶ 5, 6, 7, and 9.

[8]Plaintiffs attempt to prove that FSIS is acting in bad faith by asserting that FSIS has "studiously [avoided] providing the Court with any evidence that FSIS is actually working on repromulgating the Rule and responding to the public comments or when that process may be completed." Pls.' Reply at 12. However, plaintiffs are unable to cite any statute or case law or provide any evidence to show that the agency's rule-making process compels it to produce such information. Plaintiffs also cite the fact that FSIS listed the ante-mortem inspection rule as a "completed action" in USDA's Semiannual Regulatory Agenda, Spring 2006 (71 Fed. Reg. 22278, 22350-22351), as proof that FSIS is not reviewing the comments received and/or is not open to further action on the interim final rule in response to those comments. Id. However, given the uncertain legislative environment that currently exists with respect to commercial horse slaughter in the United States, including, but not limited to, the pending FY 2007 Agriculture appropriations bill, which could repeal, amend, or supercede the current ban on the use of appropriated funds to pay for antemortem inspection of horses, and the recent passage of H.R. 503, which actually bans commercial horse slaughter in the United States and currently has a companion bill pending a vote in the United States Senate, FSIS clearly must monitor any potential legislative developments that could impact the interim final rule even as it continues its review of the comments received during the notice and comment period. Thus FSIS currently is unable to determine the appropriate next step in the rule-making process or set an anticipated
(continued...)

insinuations constitute nothing more than rank speculation, as well as feigned indignation that FSIS has not yet promulgated a final version of a rule that plaintiffs do not wish to see finalized in the first place.

Plaintiffs misconstrue defendants' arguments on pages 10-15 of defendants' opposition to plaintiffs' motion for summary judgment on claim one by asserting that these arguments actually concern claim two of plaintiffs' complaint, which the present Court has dismissed, and thus should not be considered. Pls.' Reply at 2. Defendants' arguments on pages 10-15 of its opposition memorandum actually address plaintiffs' insistence on continuing to argue that the actual purpose of section 794 was to ban the commercial slaughter of horses in the United States after the present Court expressly and unambiguously rejected this argument. See <u>Humane Society of the United States v. Johanns</u>, Civil Action No. 06-00265(CKK)(D.D.C. August 28, 2006)(mem. op.). It is noteworthy that plaintiffs are *still* trying to advance this argument, albeit more obliquely.[9] Therefore, defendants' arguments on pages 10-15 of their opposition memorandum are relevant and deserving of this Court's consideration.

Finally, plaintiffs misinterpret the fact that defendants declined to contest in their most recent filing plaintiffs' Article III standing to bring claim one of their amended complaint as a concession by defendants that plaintiffs do in fact enjoy such standing. Pl.s' Reply at footnote 2. Plaintiffs are flatly wrong. For the record, defendants still take the position that plaintiffs do not

---

[8](...continued)
date for final action. In light of these circumstances, plaintiffs' claims that the designation of the interim final rule as a "completed action" in the semi-annual regulatory agenda somehow signals that the agency is not engaging in active and open rule-making with respect to the antemortem inspection of horses is without merit.

[9]<u>See</u> Pls.' Reply at footnote 7 and p. 13.

have standing to bring any of their claims, whether Article III standing or prudential standing. The reason defendants elected not to continue pursuing this argument for now is that the present Court, having reconsidered its *sua sponte* dismissal of this claim, has decided that it will recognize plaintiffs' standing to bring it and has requested arguments on the merits.

Accordingly, for reasons stated herein and in *Defendants' Opposition to Plaintiffs' Motion for Summary Judgment on Claim One and Defendants' Motion to Dismiss, or Alternatively, for Summary Judgment on this Claim*, defendants respectfully request that this Court deny Plaintiffs' Motion for Summary Judgment, and dismiss Count One of Plaintiffs' Amended Complaint or alternatively grant summary judgment to defendants on this claim.

Respectfully Submitted,

/s/ Jeffrey A. Taylor /mj

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ Rudolph Contreras

RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

/s/ Beverly M. Russell

Of Counsel:
Thomas Bolick, Esq.
Rick Herndon, Esq.
U.S. Dept. of Agriculture

BEVERLY M. RUSSELL, DC Bar #454257
Assistant United States Attorney
U.S. Attorney's Office for the
District of Columbia, Civil Division
555 4th Street, N.W., Rm. E-4915
Washington, D.C. 20530
Ph: (202) 307-0492

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of the foregoing ***Defendants' Reply to Plaintiffs' Opposition to the Defendants' Motion for Summary Judgment on Claim One*** was sent by the Court's Electronic Case Filing System, this <u>6th</u> day of October, 2006 to:

Eric R. Glitzenstein, Esq.
Howard M. Crystal, Esq.
Meyer Glitzenstein & Crystal
1601 Connecticut Avenue, N.W., Suite 700
Washington, D.C. 20009
eric@meyerglitz.com
howardcrystal@meyerglitz.com

James P. Murphy, Esq.
Squire, Sanders & Dempsey L.L.P.
1201 Pennsylvania Ave., N.W., Suite 500
Washington, DC 20004
JMurphy@ssd.com

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney