UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al., | ) ) ) | |
| Plaintiffs | ) ) | |
| v. | ) ) ) | Civil Action No. 06-0265(CKK) |
| MIKE JOHANNS, Secretary, United States Department of Agriculture, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**Defendants' Sur-reply**

Convenient misinterpretation or misapplication of the law[1] and hyperbole, as Plaintiffs

present in their Reply, are insufficient bases upon which to support a motion for a preliminary

---

[1]Just two examples are presented for illustration. First, although the case, Environmental Defense Center v. Babbitt, 73 F.3d 867, 871 (9th Cir. 1995), does suggest that a Congressionally-mandated de-funding provision can act as a suspension of a federal program, the case does not discuss whether the defendant agency (i.e., the Department of Interior) had statutory authority to utilize an alternative funding mechanism to continue the program as the USDA has here.   See Pls. Reply at 26.  Accordingly, the circumstances of the Environmental Defense Center case and similar cases cited by Plaintiffs are readily distinguishable.  Notably, the Environmental Defense Center case states, "[t]he appropriations rider does not remove [the Secretary's] statutory duty [to make a final determination that a species is threatened or endangered]; instead it only temporarily removes the funds available for carrying out the duty....By its terms,...it does not prohibit the Secretary from making a final determination." Id. at 871 (emphasis added).  In the above-captioned case, as discussed in Defendants' opposition memorandum, the USDA has authority to continue its on-going statutory duty under the Federal Meat Inspection Act, 21 U.S.C. § 601, et seq. and the terms of section 794 of the 2006 Appropriations Act does not prohibit the USDA from carrying out this duty.
  Second, Plaintiff cites Richardson v. Belcher, 404 U.S. 78, 81 (1971) and Atkins v. Parker, 472 U.S. 115, 129-31 (1980) apparently to rebut Defendants' argument that the applicable 2006 Appropriations Act should not be construed in a manner that would feasibly impinge upon the due process rights of Petitioners under 21 U.S.C. § 671. Pls.' Reply at 32.  However, the two cases cited by Plaintiffs are inapposite as both involve Congress's right to effectuate substantive changes in law, and do not involve a funding provision, as here, which, if Plaintiffs have their way, would nullify substantive law when there is absolutely no indication from Congress to do so.

injunction.  These deficiencies are readily illuminated by a review of the case law and the record.

Accordingly, Defendants, in this sur-reply, primarily focus on three factual issues on which

further clarification is appropriate.

**I.    Plaintiffs' "Suggestion" that Public Comment Could have Coincided with the Agency's Internal Deliberative Review of the Interim Final Rule Makes No Sense.**

Plaintiffs suggest that the USDA should have undertaken an activity that is extraordinary

for a federal agency - i.e., publish a Rule before concluding its internal, deliberative review

procedure for finalizing the Rule.  Pls.' Reply at 17.  Plaintiffs would have the U.S. Department

of Agriculture ("USDA") ignore the very procedures which facilitate and ensure publication of a

legally-sufficient regulation.[2]  The USDA, of course, will not act in such an irresponsible manner

at Plaintiffs' behest or otherwise.

Plaintiffs also take umbrage at the time frame required to publish the Interim Final Rule,

i.e., questioning why the Rule could not be published to allow a period for advance comment on

the Rule after receipt of the Intervenors' Petition for an Interim Rule.  See Pls.' Reply at 17 - 18.

The declaration of Philip S. Derfler attached hereto as Defendants' Exhibit 6 demonstrates that

there was no undue delay in publishing the Interim Final Rule, and thus, forecloses Plaintiffs'

speculation in this regard.  See National Women, Infants, and Children Grocers Ass'n v. Food

and Nutrition Service, -- F.Supp.2d --, 2006 WL 416266, *10-11 (D.D.C. Feb. 23,

2006)(discussing favorably the invocation of the "good cause" exception to the requirement for

advance notice and comment under the Administrative Procedure Act, 5 U.S.C. § 701 et seq.,

where the Agency, with less of a time constraint than presented in this case, demonstrated that it

---

[2]See http://ocio.usda.gov/directives/files/dr/DR1512-001.pdf.

worked diligently to complete its interim final rule and proffered that it would have been difficult to set aside a period to undertake advance notice and comment.)

## II.     The National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, <u>et</u> <u>seq.</u> Does Not Apply.

Plaintiffs inaccurately state that Defendants "do not dispute that the [Interim Final Rule at issue] will have adverse environmental effects that should be scrutinized in the NEPA process..." Pls.' Reply at 21. Defendants never stated or implied in any manner, nor did they in any way concede, that the Interim Final Rule applicable here would have adverse environmental impacts. Indeed, contrary to Plaintiffs' factually unsupported argument, Defendants expressly stated that NEPA requirements were not implicated by the Interim Final Rule published by the Food Safety and Inspection Service ("FSIS"). <u>See</u> 7 C.F.R. § 1b.4; 48 Fed. Reg. 11403, 11404 (March 18, 1983).

The USDA's NEPA regulation at 7 C.F.R. § 1b.4 expressly exempts FSIS's programs and activities from further analysis pursuant to NEPA. The critical point here is that the USDA has already made a determination that the FSIS's actions and activities do not require any particular NEPA documentation because those actions and activities, in fact, do not have any environmental consequences necessitating NEPA analysis. <u>Id.</u> The regulation does not require the agency head to make an affirmative determination that a program shall be categorically excluded from NEPA's procedural requirements as Plaintiffs suggest. <u>See</u> Pls.' Reply at 23. The regulation presumes exemption of the FSIS's programs unless and until the agency head makes an affirmative determination that an action may have a significant environmental impact. 7 C.F.R. § 1b.4. Further, the sole purpose of the Interim Final Rule at issue here is to establish a

fee-for-service program to continue USDA's on-going and longstanding requirement to do ante-mortem meat inspection - the Rule simply maintains the status quo ante, and thus, does not trigger NEPA procedural requirements.  See, e.g. Committee for Auto Responsibility v. Solomon, 603 F.2d 992, 1003 (D.C. Cir. 1979).

Finally, to the extent Plaintiffs' argument is construed as a collateral attack on the exemptions asserted in 7 C.F.R. § 1b.4 (see Pls.' Reply at 22), the argument is barred by the general six-year statute of limitations applicable to suits against the United States.  See 28 U.S.C. § 2401(a); Harris v. FAA, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004), cert. denied, 543 U.S. 809 (2004); Common Sense Salmon Recovery v. Evans, 329 F. Supp. 2d 96, 100 (D.D.C. 2004). Under this limitations provision, a right of action challenging final agency action accrues on the date of the final agency action.  Harris, 353 F.3d at 1010.  Plaintiffs' right of action with respect to 7 C.F.R. § 1b.4 could not have accrued any later than the publication date of the final rule on March 18, 1983.  See 48 Fed. Reg. 11403(March 18, 1983).  Thus, any challenge that Plaintiffs are now asserting to the regulation, and its exempting provision, was time-barred after March 19, 1989.

## III.    Opinions of Plaintiffs' "Expert" Should Be Disregarded.

Plaintiffs rely on the declaration of Charles H. Mahla to provide an assessment of the alleged economic impact of the closing of the three facilities operated by the Intervenors.[3]   It

---

[3]It should be noted further that Plaintiffs' assertion that Defendants should not consider the significant economic impacts on the Intervenors in invoking the "good cause" exception for purposes of publishing the Rule here as an "Interim Final Rule" lacks merit and legal support. First, contrary to Plaintiffs' assertion, Jifry v. FAA, 370 F.3d 1174, 1179 (D.C. Cir. 2004), cert. denied, 543 U.S. 1146 (2005), does not define or limit the implication of the "good cause" exception to situations where the public health, national security, or similar public interests will

(continued...)

does not appear from Dr. Mahla's declaration that he is intimately familiar with the operations of

Intervenors.  Pls. Reply, Declaration of Charles R. Mahla, Ph.D., ¶¶ 13 - 17.   In fact, the

declarations supplied by those with intimate knowledge of the economic impact on the Intervenor

establishments that will result if the Rule at issue here is not implemented reach a contrary

conclusion to that of Dr. Mahla.  Accordingly, Dr. Mahla's opinion in this regard should be

discounted.

---

[3](...continued)
be harmed.  Pls.' Reply at 18.  The "good cause" exception may be invoked to excuse advance
notice and comment in (1) emergency situations and (2) where delay could result in serious harm.
Id.  The exception as defined does not exclude and can encompass consideration of significant
adverse economic impact as presented in this case.  Second, the USDA has not done anything
unusual here in considering the economic impact on a Party when publishing a Rule in advance
of comment, and indeed, has relied on private concerns of adverse economic consequences in
publishing previous Rules. See, e.g. Karnal Bunt; Compensation for Custom Harvesters in
Northern Texas, Interim rule and request for comments, 69 Fed. Reg. 24909 (effective date May
5, 2004; comments accepted until July 6, 2004; regulations "provide for the payment of
compensation to custom harvesters for losses they incurred", id. at 24909); Irradiation of Sweet
Potatoes from Hawaii, Interim rule and request for comments, 68 Fed. Reg. 37931 (effective date
June 26, 2003; comments accepted until August 23, 2003; "Immediate action is warranted to
alleviate the negative economic effects that Hawaiian growers and shippers face as a result of . . .
our regulations . . . ," id. at 37392); Spring Viremia of Carp; Payment of Indemnity, Interim rule
and request for comments, 69 Fed. Reg. 27823 (effective date May 12, 2004; comments accepted
until July 16, 2004; regulations amended "to provide for the payment of indemnity to owners for
fish destroyed because of spring viremia of carp," id. at 27823).

Respectfully Submitted,

/s/ Kenneth L. Wainstein /rcl

_____
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney

/s/ R. Craig Lawrence

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

/s/ Beverly M. Russell

_____

Of Counsel:                        BEVERLY M. RUSSELL, DC Bar #454257
Thomas Bolick, Esq.                Assistant United States Attorney
Rick Herndon, Esq.                 U.S. Attorney's Office for the
U.S. Dept. of Agriculture            District of Columbia, Civil Division
                                   555 4th Street, N.W., Rm. E-4915
                                   Washington, D.C.  20530
                                   Ph:  (202) 307-0492