# EXHIBIT 1

# Case No. 1:06cv00265

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

|  |  |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al. Plaintiffs, | ) ) ) ) ) |
| v. | ) Civ. No. 1:06cv00265 (CKK) ) ) |
| MIKE JOHANNS, Secretary United States Department of Agriculture, et al. | ) ) ) ) |
| Defendants. | ) ) |

## DECLARATION OF LUC VAN DAMME, CAVEL INTERNATIONAL, INC.

Mr. Luc Van Damme, President of Cavel International, Inc. declares pursuant to 28 U.S.C. § 1746:

1.      My name is Luc Van Damme. I reside in Zele, Belgium. I am currently President of Cavel International, Inc.

2.      Cavel International, Inc. ("Cavel") is located in DeKalb, Illinois, and has been in operation since 1987.

3.      Cavel is a meat processing facility that processes fresh and frozen horsemeat solely for export. The company purchases horses from buyers who have purchased horses from owners, mainly farmers and ranchers in the Midwest and Western states, who no longer have need for their livestock. Cavel exports about 13,000 tons of horsemeat each year. In 2006, Cavel had $26,059,224.00 in sales.

4.      The company operates under a horsemeat license issued by the Illinois Department of Agriculture, and is subject to, among others, the federal law and regulations

established pursuant to the Federal Meat Inspection Act, the Agricultural Marketing Act, and the Humane Methods of Slaughter Act. *See* 21 U.S.C. § 601, *et seq.*; 7 U.S.C. § 1621 *et seq.*; 7 U.S.C. § 1901, *et seq.*

5.    Cavel will be irreparably harmed if the Court's March 28, 2007 Order is not stayed pending appeal. Because horses intended for human consumption must be inspected by the Food Safety and Inspection Service ("FSIS") prior to slaughter, enjoining the United States Department of Agriculture ("USDA") from implementing the voluntary fee-for-service ante-mortem inspection program has forced Cavel to cease its operations entirely.

6.    The vast majority of Cavel's customers are foreign businesses that import and sell horse meat. Its customers vary in size. They sell Cavel's products to small store-front businesses and to major European wholesalers. Cavel's customers are very well known to its competitors, particularly our competitors in Canada who are obviously not affected by the March 28 Order.

7.    Immediately following the Court's March 28 Order, a Canadian processing company, the Bouvry company, began to contact our customers in Europe to secure their business. This Canadian company has the capacity to expand its production to handle the volume of horse meat currently processed by Cavel.

8.    If the March 28 Order is not stayed and Cavel is unable to restart production, it will be extremely difficult to regain these customers, who demand North American horse meat, which is considered to be of a much higher quality than horse meat from other parts of the world. It will be extremely difficult, if not impossible, to regain our customers in the event the Court's Order is reversed or the U.S. Department of Agriculture duly adopts a new regulation.

9.      Cavel knows from experience that even a temporary "shut down" of the slaughter facility will have a severe detrimental impact on its business.  After a fire in April 2002, Cavel was forced to rebuild its facility in DeKalb.  When the facility reopened in June 2004, Cavel was capable of processing only 300-400 head per week.  It took Cavel approximately one year to re-establish the market for its products, and it has taken almost two years for the company to increase its productivity so that it is capable of meeting the full demand of well over 500 head per week.  Even a temporary closure of the facility will retard Cavel's ability to meet processing demands and re-establish its customer base when it is able to resume operations.

10.     In summary, a shutdown of Cavel's facilities will cause Cavel a loss of more than $2 million per month in sales.  Moreover, even if Cavel at a later time were permitted to reopen it would thereafter continue to suffer sales losses because its customer base would have been taken away by competitors.

I declare under penalty of perjury that the foregoing is true and correct.


                                                    Luc Van Damme

Dated:  March 30, 2007.