# EXHIBIT 2

# Case No. 1:06cv00265

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF<br>THE UNITED STATES, et al.<br>      Plaintiffs,<br><br>        v.<br><br><br><br>MIKE JOHANNS, Secretary<br>United States Department of Agriculture, et al.<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)  Civ. No. 1:06cv00265 (CKK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF JAMES TUCKER, CAVEL INTERNATIONAL, INC.

Mr. James D. Tucker, General Manager of Cavel International, Inc. declares pursuant to 28 U.S.C. § 1746:

1.    My name is James D. Tucker. I reside in Sycamore, Illinois. I am currently General Manager of Cavel International, Inc.

2.    Cavel International, Inc. ("Cavel") is located in DeKalb, Illinois, and has been in operation since 1987.

3.    Cavel is a meat processing facility that processes fresh and frozen horsemeat solely for export. The company purchases horses from buyers who have purchased horses from owners, mainly farmers and ranchers in the Midwest and Western states, who no longer have need for their livestock. Cavel exports about 13,000 tons of horsemeat each year. In 2006, Cavel had $26,059,224.00 in sales.

4.    The company operates under a horsemeat license issued by the Illinois Department of Agriculture, and is subject to, among others, the federal law and regulations

DC/192679.2

established pursuant to the Federal Meat Inspection Act, the Agricultural Marketing Act, and the Humane Methods of Slaughter Act. *See* 21 U.S.C. § 601, *et seq.*; 7 U.S.C. § 1621 *et seq.*; 7 U.S.C. § 1901, *et seq.*

5.      Cavel is a significant employer and contributor of tax revenues in the DeKalb area. Taxes paid include real estate tax of $28,864.00, estimated state and federal income taxes of $150,000.00, estimated state and local sales taxes of $50,000.00, and payroll taxes of $50,245.00. The company employs 56 workers from around the Central Illinois region. Our employees include 5 administrative and clerical staff plus 5 supervisor and lead operators. Our total payroll was in excess of $2 million in 2006.

6.      Cavel also contributes in other ways to local and regional economies: over the past year Cavel has spent more than $1 million for service, supplies and utilities in the local area. It also has paid millions of dollars, either directly or indirectly, to tens of thousands of individual horse owners to purchase of their livestock.

7.      Cavel will be irreparably harmed if the Court's March 28, 2007 Order is not stayed pending appeal. Because horses intended for human consumption must be inspected by the Food Safety and Inspection Service ("FSIS") prior to slaughter, enjoining the United States Department of Agriculture ("USDA") from implementing the voluntary fee-for-service ante-mortem inspection program has forced Cavel to cease its operations entirely.

8.      The vast majority of Cavel's customers are foreign businesses that import and sell horse meat for human consumption. Only a small percentage of Cavel's business is selling horse paracaria (heart sacks) for use in making prosthetic heart valves and horse ovaries for reproductive research. In addition, Cavel donates other horse byproducts to colleges and

DC/214567.v3                                                  2

universities who use these materials to conduct research and instruct students. Cavel has no way to operate profitably unless it can continue to slaughter horses for human consumption.

9.    The three-year-old facility in which Cavel operates was designed specifically to slaughter horses. The facility is too small to adapt to the slaughter of cattle, and it cannot operate profitably by turning to the slaughter of "exotic animals," such as deer, elk or water buffalo.

10.    Cavel also could not operate profitably by selling horse meat to other potential customers such as zoos, pharmaceutical companies and universities. These entities can and will pay only a fraction – approximately 10% -- of what Cavel's foreign customers currently pay for horse meat. Those prices are far too low to allow Cavel to operate profitably.

11.    As stated above, Cavel employs 56 workers from the DeKalb, Illinois area. If the March 28 Order is not stayed, these workers will lose their jobs. Fifty production workers are losing their positions immediately. Five administrative personnel will be employed in closing activities but only for a short period of time and at significant cost to the company; specifically administrative employment for necessary shut down duties for over a three to nine month period would cost more than $150,000.

12.    In order to run an efficient, productive business Cavel maintains and has inventories of packaging and shipping supplies. Specifically, Cavel currently has over $127,000 worth of supplies stored at its facility in anticipation of future shipments of horse meat. In addition, the company has a contract on utility purchases until the end of the year, which must be honored. If Cavel is not permitted to operate pending the appeal, it will lose the value of its stockpiled supplies, and also be required to honor a utility contract for which the company would have no need.

13. Finally, Cavel's operations are housed in a state-of-the-art, modern facility, which was rebuilt just under three years ago. This is a valuable piece of property for which Cavel pays over $12,000 per month in rent. Cavel is required to maintain the property and ensure that its value does not decline, and it will therefore need to pay rent and maintenance fees, as well as property taxes, even if the March 28 Order is not stayed.

I declare under penalty of perjury that the foregoing is true and correct.

James D. Tucker

Dated: March 30, 2007.