# Exhibit 1 to Plaintiffs' Opposition to Defendant-Intervenor's Emergency Motion for a Stay

# Civ. No. 06-0265 (CKK)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY<br>OF THE UNITED STATES, ET AL.<br><br>　　　　　Plaintiffs,<br>v.<br><br>MIKE JOHANNS and<br>BARBARA J. MASTERS,<br>U.S. Department of Agriculture<br><br>　　　　　Defendants,<br><br>BELTEX CORPORATION,<br>CAVEL INTERNATIONAL, INC., and<br>DALLAS CROWN, INC.<br><br>　　　　　Defendant-Intervenors. | Civ. No. 06-0265 (CKK) |

## DECLARATION OF SARAH RADTKE

I, Sarah Radtke, declare as follows:

1. I am a member of The Humane Society of The United States ("The HSUS"). I joined The HSUS so that it would represent my interests on various animal protection and environmental issues, such as preventing the slaughter of horses at the Cavel International, Inc. ("Cavel") plant in DeKalb, Illinois, one of the Defendant-Intervenors in the above-entitled action.

2. I have lived in DeKalb, Illinois for eight years. My home is located at 2230 North First Street, a few miles from the Cavel horse slaughter plant.

3. I am an avid horse and animal lover and am appalled that horses have been slaughtered and could again be slaughtered in my community. My father owns a ranch in

Wisconsin, and my sister and I both enjoy riding horses. My sister, who lives with me and my husband, owns a horse and rides regularly. I am also a strong advocate of environmental conservation and am concerned about the quality of water in my community.

4.  I live only five blocks from the Kishwaukee River, and I regularly walk along the river and enjoy viewing the river and the wildlife that use the river. My dog likes to jump into the river, but I am concerned about the water quality and whether it is safe for swimming. My enjoyment of the river and my community has been ruined by the fact that the Cavel slaughterhouse has failed to comply with wastewater discharge standards repeatedly in the past. When I learned that The HSUS has recently notified Cavel of more than 145 total violations of local and federal water pollution laws, including potentially unlawful discharges of pollutants directly into the Kishwaukee River without a permit, I became further concerned about the cleanliness of the river, and my ability to enjoy the river was further lessened. See The HSUS's Citizen Suit Notice Under the Clean Water Act (submitted March 20, 2007) (Attachment 1).

5.  I am also disturbed that Cavel's recently installed wastewater holding tank has been leaking and oozing polluted foam and frozen chunks of polluted wastewater, which may have the potential of seeping into my groundwater or the river that I frequently use. See Aracely Hernandez, *Ooze at Cavel Not a Worry, Says Manager*, DEKALB DAILY CHRONICLE, Feb. 19, 2007 (Attachment 2).

6.  I also know that the local sanitary district has ordered the facility to fix the wastewater problems at the plant or face closure on May 31, 2007. See DeKalb Sanitary District's Administrative Order for 2006 Violations (Oct. 18, 2006) (Attachment 3). And I am further aware that the sanitary district has fined Cavel $500 in 2004, $5,500 in 2005, and $25,500 in 2006 for excess wastewater discharge violations. Id.; see also DeKalb Sanitary District's

2

Administrative Order for 2004 Violations (Mar. 17, 2005) (Attachment 4); DeKalb Sanitary District's Administrative Order for 2005 Violations (Jan. 30, 2006) (Attachment 5). The fact that so many fines have been levied against the plant, and that it faces a closure order, make my concern about using the river all the more real and significant.

7. When the court order was issued removing federal meat inspectors from the plant, the plant shut down. As a result, I am very relieved to know that the wastewater violations at Cavel have stopped, and my enjoyment of the river will increase as the risk of pollution reduces over time.

8. However, if the court's decision is overturned or stayed, and Cavel is permitted to reopen and resume its horse slaughtering operations, the unlawful wastewater discharges and other problems will occur again, and my ability to use and enjoy the river that runs just a few blocks from my house will be further damaged.

9. Cavel's water pollution problems and inhumane horse slaughter operations have given DeKalb, Illinois a bad reputation, since we are one of only three communities in the entire country with a horse slaughter plant. I am very concerned that the location of the Cavel plant so close to my home has reduced my home's property value. If the plant stays closed, I believe the value of my home will increase. If the plant is allowed to reopen, my property value will continue to drop. As the pollution problems continue to increase at the plant, I am concerned that no one will want to live in this community, and that my home could become practically worthless. The operation of the Cavel plant has thus made it impossible for me to enjoy my home and community.

10. I was also deprived of the right to participate in any environmental review process before the federal agency issued its rule authorizing horse slaughter to continue after Congress

passed a bill to de-fund it. Because this rule allowed the horse slaughterhouses to operate after March of 2006, the rule also enabled Cavel's excess wastewater pollutant discharges to continue. I believe that, had I been given a chance to comment on Cavel's serious water pollution problems, the agency might have made a different decision. As a result, I am now looking forward to participating in the environmental review process that will occur as a consequence of the court's decision, and I look to The HSUS to represent me in that process. I believe that the federal agency should thoroughly and adequately review the environmental impacts of any rule that allows horse slaughter to take place, including analyzing Cavel's water pollution violations before the plant is allowed to reopen. If Cavel is allowed to resume operations before the requisite environmental analysis and review is concluded, that process will be meaningless, and my ability to participate in that process will be irreparably harmed.

11. Pursuant to 28 U.S.C. § 1746, I declare, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

Dated: April 2, 2007

Sarah Radtke