# Attachment 1 to Declaration of Sarah Radtke
# Civ. No. 06-0265

**CLEAN WATER ACT NOTICE, U.S. DISTRICT COURT**

|  |  |
|---|---|
| **THE HUMANE SOCIETY** <br> **OF THE UNITED STATES** <br> 2100 L Street, NW <br> Washington, DC  20037, <br><br> *Proposed Plaintiff,* <br><br> v. <br><br> **CAVEL INTERNATIONAL, INC.** <br> 108 Harvestore Drive <br> DeKalb, IL  60115-8604 <br><br> *Proposed Defendant.* | **CITIZEN SUIT NOTICE UNDER** <br> **THE CLEAN WATER ACT** |

**NOTICE IS HEREBY PROVIDED TO:**

Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Room 3000
Washington, DC 20460

Mary A. Gade
Regional Administrator
U.S. Environmental Protection Agency, Region 5
Ralph Metcalfe Federal Building
77 West Jackson Blvd.
Chicago, IL  60604

Douglas P. Scott
Director
Illinois Environmental Protection Agency
1021 North Grand Avenue East
P.O. Box 19276
Springfield, IL  62794-9276

Marcia T. Willhite
Bureau Chief
Illinois Environmental Protection Agency
Bureau of Water
1021 North Grand Avenue East
P.O. Box 19276
Springfield, IL  62794-9276

Cavel International, Inc.
108 Harvestore Drive
DeKalb, IL  60115-8604

James D. Tucker
General Manager
Cavel International, Inc.
108 Harvestore Drive
DeKalb, IL  60115-8604

DeKalb Sanitary District
303 Hollister Avenue
P.O. Box 624
DeKalb, IL  60115

## INTRODUCTION

On behalf of its 402,000 members and constituents in the State of Illinois, The Humane Society of the United States ("The HSUS") hereby provides sixty-day notice of its intent to file suit against Cavel International, Inc. ("Cavel") pursuant to section 505(a)(1)(A) of the Clean Water Act ("CWA").  33 U.S.C. § 1365(a)(1)(A).  As described below, Cavel has violated and continues to violate section 307(d) of the CWA as a result of its ongoing failure to comply with the pretreatment standards set forth in its Industrial User Discharge Permit, issued by the local publicly owned treatment works facility ("POTW").  33 U.S.C. § 1317(d); 40 C.F.R. § 403.5(d). Moreover, Cavel has violated and may continue to violate section 301(a) of the CWA as a result of its discharge of pollutants into waters of the United States without a permit.  33 U.S.C. § 1311(a).

Pursuant to section 505(b)(1)(A) of the CWA, Cavel is hereby given notice that, upon the expiration of the sixty day statutory waiting period, The HSUS will file a civil action in federal district court. Id. § 1365(b)(1)(A).

## BACKGROUND

Cavel is a horse slaughtering facility located in DeKalb, Illinois and is one of only three horse slaughterhouses in the United States. Cavel has been in operation since 1987 and currently slaughters well over 500 horses per week. Cavel processes the carcasses for meat for human consumption in Europe and Asia.

### A.  Indirect Wastewater Discharges to the DeKalb Sanitary District

Cavel is classified as a "Significant Industrial User" because it is subject to pretreatment standards as a result of its indirect discharge of approximately 13,000 gallons per day of process wastewater to the local POTW, the DeKalb Sanitary District ("Sanitary District").[1] After additional treatment, the Sanitary District then discharges the wastewater into the Kishwaukee River.[2] The Sanitary District has authorized Cavel to discharge process wastewater into the Sanitary District's sewer system in accordance with the conditions set forth in Industrial User Discharge Permit No. 130 ("Permit"). See Industrial User Discharge Permit No. 130 (issued Oct. 2, 2005 and June 4, 2004) (Attachment 2). The Permit proscribes that Cavel's discharge shall not exceed the following effluent limitations:

---

[1] The term "Significant Industrial User" includes "[a]ll Industrial Users subject to Categorical Pretreatment Standards under 40 C.F.R. 403.6 and 40 C.F.R chapter N." 40 C.F.R. § 403.3(v)(1)(i). Although there are currently no federal categorical pretreatment standards for existing or new slaughterhouse point sources, see 40 C.F.R. Part 432, Cavel remains subject to general pretreatment standards under its categorical class as a concentrated animal feeding operation, 40 C.F.R. § 412.3. Moreover, under 40 C.F.R. § 403.5(d), Cavel is subject to local pretreatment standards, as established in its Industrial User Permit.

[2] The term "indirect discharge" means the "introduction of pollutants into a POTW from any non-domestic source regulated under section 307(b), (c), or (d) of the [CWA]." 40 C.F.R. § 403.3(i). A POTW is a treatment works, as defined by section 212 of the CWA, 33 U.S.C. § 1292, which is owned by a state or municipality. POTWs treat domestic and municipal wastes, as well as industrial wastewaters, and discharge these treated wastewaters to U.S. waters pursuant to the National Pollutant Discharge Elimination System ("NPDES") permits issued by the U.S. Environmental Protection Agency or by a state having NPDES authority, id. § 1342. The DeKalb Sanitary District holds NPDES Permit No. IL0023027.

| Parameter | Daily Maximum Limit | Monthly Average Limit |
|---|---|---|
| pH | 5.5 - 9.5 | ---- |
| Fats, Oil, & Grease ("F.O.G.") | 100 mg/liter | 100 mg/liter |
| Total Suspended Solids ("TSS") | 2000 mg/liter | 400 mg/liter |
| Biological Oxygen Demand ("CBOD-5" or "BOD-5") | 2000 mg/liter | 500 mg/liter |
| Ammonia ("$NH_3$") | 24 mg/liter | 24 mg/liter |

Id.

However, Cavel has violated and continues to violate the above discharge limits. For example, during the last six months of 2004, Cavel exceeded the established daily maximum and monthly average limits for biological oxygen demand, the monthly average limit for total suspended solids, and the daily maximum limits for pH and ammonia multiple times. See generally 2004 Notices of Violations and Monitoring Forms (Attachment 3); DeKalb Sanitary District Public Notice of Cavel's Significant Non-Compliance for Calendar Year 2004 (Attachment 4); DeKalb Sanitary District's Administrative Order (Mar. 17, 2005) (Attachment 5).

In addition, throughout 2005, Cavel repeatedly exceeded its Permit's effluent limitations for biological oxygen demand, total suspended solids, ammonia, and pH. See generally 2005 Notices of Violations and Monitoring Forms (Attachment 6); DeKalb Sanitary District Public Notice of Cavel's Significant Non-Compliance for Calendar Year 2005 (Attachment 7); DeKalb Sanitary District's Administrative Order (Jan. 30, 2006) (Attachment 8). Throughout 2006, Cavel also exceeded its Permit's parameters for biological oxygen demand, ammonia, and pH numerous times. See generally 2006 Notices of Violations and Monitoring Forms (Attachment 9); DeKalb Sanitary District's Administrative Order (Oct. 18, 2006) (Attachment 10).[3]

---

[3] The Administrative Order of October 18, 2006 includes a permit termination clause if compliance is not achieved by May 31, 2007. Additionally, Cavel committed to installing new pretreatment equipment so as to meet their

4

In January 2007, Cavel exceeded the daily maximum limit for pH and the daily maximum and monthly average limits for biological oxygen demand and ammonia. See January 2007 Monitoring Form (Attachment 11). As a result of these chronic violations, Cavel is in "significant non-compliance status."[4] See generally DeKalb Sanitary District Public Notices of Cavel's Significant Non-Compliance (Attachments 4 and 7); August 7, 2006 Letter from DeKalb Sanitary District to Cavel (Attachment 12).

Pursuant to 40 C.F.R. § 135.3(a), a table summarizing the above violations is attached. See Attachment 1.

**B.    Direct Wastewater Discharges to Waters of the United States**

Cavel may also be directly discharging pollutants to waters of the United States as a result of its concentrated animal feeding operations ("CAFO"). Under the CWA, a facility that stables or confines at least 500 horses for a total of forty-five days or more in any twelve-month period may be designated as a large CAFO. 40 C.F.R. § 122.23(b)(1)(i), (b)(2), (b)(4)(vi), (c). Because the CWA explicitly lists CAFOs as a point source, 33 U.S.C. § 1362(14), and because the CWA prohibits the discharge of pollutants from a point source into the waters of the United States without a permit, id. § 1311(a), each CAFO may have to apply for an individual National Pollutant Discharge Elimination System ("NPDES") permit or submit a notice of intent for

---

effluent limitation parameters by March 31, 2007. However, Cavel's newly installed water holding tank does not appear to be working effectively, as the tank has apparently oozed frozen, dirty wastewater foam from the top and seams of the tank. Aracely Hernandez, *Ooze at Cavel Not a Worry, Says Manager*, DEKALB DAILY CHRONICLE, Feb. 19, 2007 (Attachment 16).

[4] "[A] Significant Industrial User . . . is in significant noncompliance if its violation meets one or more of the following criteria: (A) Chronic violations of wastewater Discharge limits, defined here as those in which 66 percent or more of all of the measurements taken for the same pollutant parameter during a 6-month period exceed (by any magnitude) a numeric Pretreatment Standard or Requirement, including instantaneous limits, as defined by 40 CFR 403.3(1); (B) Technical Review Criteria (TRC) violations, defined here as those in which 33 percent or more of all of the measurements taken for the same pollutant parameter during a 6-month period equal or exceed the product of the numeric Pretreatment Standard or Requirement including instantaneous limits, as defined by 40 CFR 403.3(1) multiplied by the applicable TRC (TRC-1.4 for BOD, TSS, fats, oil, and grease, and 1.2 for all other pollutants except pH); . . . ." 40 C.F.R. § 403.8(f)(2)(viii).

coverage under an NPDES general permit for all of its manure, litter, and process wastewater generated by the confinement or production of its animals. 40 C.F.R. § 122.23(a), (d), (e).

Cavel's CAFO or processing operations has resulted and may continue to result in the unlawful discharge of pollutants into the Kishwaukee River. On February 15, 1993, an employee of the DeKalb Sanitary District witnessed three employees at Cavel pumping the manure pit located at the southwest corner of the processing facility over ground into a field culvert under the runway from the horse holding pens to the processing plant. See DeKalb Sanitary District's Notice of Imposition of Civil Fine to Cavel (Attachment 13). Sanitary District employees witnessed "the flow of raw animal wastes into the aforementioned field culvert," traced the outflow of the culvert into the creek running adjacent to Harvestore Drive, and confirmed that "[t]his same creek empties into the South branch of the Kishwaukee River just South of the First Street overpass of I-88." Id.

Upon receipt of this information, the Illinois Environmental Protection Agency ("Illinois EPA") also informed Cavel that "personnel employed by Cavel International, Inc. intentionally discharged wastewater containing manure and paunch solids to a stormwater culvert tributary to the Kishwaukee River" and advised Cavel that it must cease this type of activity immediately or obtain a permit if the paunch manure is applied to farm ground. See February 19, 1993 Letter from Illinois EPA to Cavel (Attachment 14); see also March 15, 1993 Letter from Illinois EPA to Cavel (Attachment 15) (again requesting a response to Illinois EPA's letter of February 19, 1993).

However, it remains unclear whether Cavel ceased these violations or applied for and obtained a NPDES permit for its horse confinement or meat processing operations that have resulted or may result in the discharge or potential discharge of pollutants to the Kishwaukee

6

River.[5]  Moreover, Cavel's recently installed water holding tank appears to be leaking frozen chunks of polluted wastewater, which may have the potential of seeping into waters of the United States.  Aracely Hernandez, *Ooze at Cavel Not a Worry*, *Says Manager*, DEKALB DAILY CHRONICLE, Feb. 19, 2007 (Attachment 16).

## CWA VIOLATIONS

### A.  Violations of Section 307(d) of the CWA

Section 307(d) of the CWA provides that it is "unlawful for any owner or operator of any source to operate any source in violation of any such effluent standard or prohibition or *pretreatment standard*."[6]  33 U.S.C. § 1317(d) (emphasis added).  Moreover, "[w]here specific prohibitions or limits on pollutants or pollutant parameters are developed by a POTW in accordance with [40 C.F.R. § 403.5(c)], *such limits shall be deemed Pretreatment Standards for the purposes of section 307(d) of the Act*."  40 C.F.R. § 403.5(d) (emphasis added).

Numerous cases confirm that citizens can bring suit against indirect dischargers for violating pretreatment standards, even where the POTW is in compliance with applicable requirements of the CWA.  See, e.g., Int'l Union v. Amerace Corp., 740 F. Supp. 1072, 1082 (D.N.J. 1990) (if violations of categorical pretreatment standards were not actionable without proof of POTW's violation, the pretreatment standards would be superfluous); Atlantic States Legal Found., Inc. v. Karg Bros, Inc., 841 F. Supp. 51, 55 (N.D.N.Y. 1993) ("POTW's compliance with its permit limitations neither absolves an indirect source's violation of categorical pretreatment standards, nor prevents the introduction of such pollutants into the Nation's waterways"); United States v. Alley, 755 F. Supp. 771 (N.D. Ill. 1990); Illinois Public

---

[5] On February 26, 2007 and March 5, 2007, representatives from the Illinois EPA confirmed to The HSUS via telephone that there are no current NPDES applications or permits on file for Cavel.
[6] For purposes of section 307(d), a "source" is "any building, structure, facility or installation from which there is or may be the discharge of further pollutants."  33 U.S.C. § 1316(a)(3).

7

Interest Research Group v. PMC, Inc., 835 F. Supp. 1070 (N.D. Ill. 1993) (holding that plaintiffs could seek penalties for defendant's failure to comply with POTW local limits).

There is no doubt that Cavel is violating section 307(d) of the CWA. Since 2004, there have been at least 145 documented violations showing that Cavel is exceeding the local effluent limits established by the Sanitary District. See Attachment 1. Because such limits are deemed pretreatment standards, Cavel is operating in clear violation of section 307(d) of the CWA. 33 U.S.C. § 1317(d); 40 C.F.R. § 403.5(d).

**B.**     **Potential Violations of Section 301(a) of the CWA**

Section 301(a) of the CWA makes it unlawful for any person to discharge any pollutant from a point source into waters of the United States, unless in compliance with a NPDES or other permit.[7] 33 U.S.C. §§ 1311(a), 1342(a). The CWA defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source." Id. § 1362(12)(A). The CWA further defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, *concentrated animal feeding operation*, or vessel or other floating craft, from which pollutants are or may be discharged." Id. § 1362(14) (emphasis added).

Because Cavel apparently does not have a NPDES permit and is a CAFO point source that has discharged or has the potential to discharge pollutants to the Kishwaukee River, see supra pp. 5-7, the facility may also be operating in violation of section 301(a) of the CWA. Id. §§ 1311(a), 1342(a).

---

[7] Pursuant to section 402(b) of the CWA, the Administrator of the U.S. Environmental Protection Agency has authorized the Illinois EPA to implement and enforce the Clean Water Act in the State of Illinois, including the NPDES permit program. 33 U.S.C. § 1342(b).

8

## INJUNCTIVE RELIEF AND PENALTIES

The HSUS intends, at the close of the sixty (60) day notice period, to file a citizen suit in a United States District Court under section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A), against Cavel for the statutory maximum of $32,500 per day for each violation stated above, id. § 1319(d); 40 C.F.R. § 194, in addition to those which have occurred and those occurring subsequent to this letter, plus injunctive and remedial relief, costs, attorney and expert witness fees, and such other relief as may be appropriate, along with potential supplemental state law and common law claims, where applicable.

## PARTIES GIVING NOTICE

The full name, address, and telephone number of the party providing notice is:

THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street, NW
Washington, DC  20037
(202) 452-1100

## CONCLUSION

Cavel is hereby on notice of a claim under the Federal Water Pollution Control Act. During the sixty (60) day notice period, The HSUS will be available to discuss actions that might be taken to avoid suit.

Respectfully submitted,

*Rebecca G. Judd*

_____
Rebecca G. Judd
(D.C. Bar No. 486315)
Jonathan R. Lovvorn
(D.C. Bar No. 461163)
The Humane Society of the United States
2100 L. Street, NW
Washington, DC  20037
Date:  March 20, 2007    (202) 452-1100

9