# Exhibit 5 to Plaintiffs' Opposition to Defendant-Intervenor's Emergency Motion for a Stay

# Civ. No. 06-0265 (CKK)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, ET AL.<br><br>Plaintiffs,<br>v.<br><br>MIKE JOHANNS and BARBARA J. MASTERS, U.S. Department of Agriculture<br><br>Defendants,<br><br>BELTEX CORPORATION, CAVEL INTERNATIONAL, INC., and DALLAS CROWN, INC.<br><br>Defendant-Intervenors. | Civ. No. 06-0265 (CKK) |

### DECLARATION OF JAMES KITCHEN

I, James Kitchen, declare as follows:

1. I am a member of The Humane Society of The United States ("The HSUS"). I joined The HSUS so that it would represent my interests in preventing the slaughter of horses at the Cavel International, Inc. ("Cavel") plant in DeKalb, Illinois, one of the Defendant-Intervenors in the above-entitled action.

2. I am a resident of DeKalb, Illinois, and have been so for fifteen years. My home is located at 134 Berkshire Drive, approximately one-half (1/2) mile from the Cavel horse slaughter plant. My property backs up to Interstate 88, and I can view the Cavel slaughterhouse from my property.

3. I am concerned about animal welfare generally, but am particularly upset that horses have been slaughtered in my community for the purpose of human consumption despite the fact that horsemeat is not consumed by people in the United States. I am also appalled that healthy horses could again be slaughtered in my community.

4. I drive past the Cavel slaughterhouse everyday during my commute to and from work. I have seen trucks entering and leaving the plant. In the past, I have seen long trails of blood and animal residue on the streets left by trucks leaving the slaughterhouse.

5. From my neighborhood, I can smell odors coming from the Cavel slaughterhouse. The odors vary in intensity depending on the time of day and time of year. I have also seen a green foamy discharge overflowing from the recently installed wastewater holding tank on the west side of the property. I find these overflowing discharges disturbing.

6. I am concerned that Cavel's wastewater holding tank has been leaking and oozing foam and frozen chunks of polluted wastewater, which may have the potential of seeping into groundwater or the Kishwaukee River.

7. It is common knowledge in my community that Cavel has failed to comply with local wastewater pretreatment standards, issued by the local sanitary district. The sanitary district then discharges the wastewater into the Kishwaukee River. It has also been reported that Cavel may have discharged or has the potential to discharge pollutants directly into the river without a permit. As a result, I am concerned that our community river is polluted.

8. I have also learned that the local sanitary district has fined Cavel thousands of dollars for its repeated water pollution violations over the last several years and that Cavel's wastewater discharge permit will be terminated if it does not come into compliance by May 31,

2007. The seriousness of these fines makes me further concerned about water pollution in our community.

9.  When the court order was issued removing federal meat inspectors from the Cavel plant, the plant suspended operations. In a hasty and haphazard effort to move horses from the plant on the morning the court order took effect, a truck pulling a trailer with horses in it turned the corner at the entrance to the plant and tipped, getting stuck in a ditch. A wrecker truck was required to pull the trailer from the ditch. This event evidenced to me that Cavel is not adequately concerned with the welfare of the animals in its control.

10.  Cavel's water pollution problems and inhumane horse slaughter operations have brought negative attention to DeKalb, Illinois, since we are one of only three communities in the entire country with a horse slaughter plant. I am offended that my community is associated with the continued operation of the Cavel slaughterhouse.

11.  I am happy that the recent court order has resulted in the plant suspending operations, since it can no longer pay for the required federal inspections. However, if the court issues a stay, and Cavel is permitted to reopen and resume its horse slaughtering operations, the unlawful wastewater discharges, odor, and other problems will occur again, and my neighborhood and the DeKalb community will again be harmed.

12.  Given the recent negative attention that the Cavel horse slaughter operations have brought to my community, if the Cavel plant is allowed to reopen, I believe the value of my property may decrease. Prior to opening its current facility, Cavel proposed locating the plant closer to my residential community. I participated in public hearings wherein residents expressed concern with potential decreases in property values if the plant was located closer to my neighborhood.

13. I was also deprived of the right to participate in any environmental review process before the federal agency issued its rule allowing the horse slaughter plants to pay the salaries and expenses of federal meat inspectors. Because this rule allowed the plants to operate despite Congress's decision to de-fund horse slaughter, the rule also enabled Cavel's water pollution violations and stench to continue. I believe that, had I been given a chance to comment on Cavel's environmental, community, and neighborhood impacts, the agency might have made a different decision. As a result, I am now looking forward to participating in the environmental review process that will occur as a consequence of the court's decision, and I look to The HSUS to represent me in that process. I believe that the federal agency should thoroughly and adequately review the environmental costs of its rule, including analyzing Cavel's excess wastewater pollutant discharges before the plant is allowed to reopen. If Cavel is allowed to resume operations before the requisite environmental analysis and review is concluded, that process will be rendered meaningless, and my ability to participate in that process will be irreparably harmed.

14. Pursuant to 28 U.S.C. § 1746, I declare, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

Dated: April 4th, 2007

James Kitchen