# Exhibit 8 to Plaintiffs' Opposition to Defendant-Intervenor's Emergency Motion for a Stay

# Civ. No. 06-0265 (CKK)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY
OF THE UNITED STATES, ET AL.,  )
)
Plaintiffs-Respondents,  )
v.  )          Civ. No. 06-0265 (CKK)
)
MIKE JOHANNS and  )
BARBARA J. MASTERS,  )
)
Defendants-Appellants,  )
)
BELTEX CORPORATION,  )
CAVEL INTERNATIONAL, INC., and  )
DALLAS CROWN, INC.,  )
)
Intervenors-Appellants.  )
)

## DECLARATION OF HON. EDWARD WHITFIELD

I, Edward Whitfield, declare as follows:

1.      I represent the First District of Kentucky in the United States Congress, where I

am serving my seventh term.  I hold a juris doctor degree from the University of Kentucky.  I am

the first Republican to represent my district since the Civil War.

2.      In light of the animal welfare, environmental, public health, and economic

problems caused by horse slaughtering, I, along with other members of Congress introduced an

Amendment to the FY2006 Agriculture Appropriations Act, "the goal of [which] is simple: to

end the slaughter of America's horses for human consumption overseas." 151 CONG. REC.

S10,218 (daily ed. Sept. 20, 2005) (remarks of Senator Ensign).  To effect this ban on horse

slaughter, we proposed to eliminate funding for the inspections required by federal law prior to

slaughter. House Amendment 236 to H.R. 2744, 109th Cong. (2005); Senate Amendment 1753 to H.R. 2744, 109th Cong. (2005) (hereinafter the "Amendment").

3.      The Amendment was advocated by the plaintiff organizations in this action, see 151 CONG. REC. S10,220, and sponsored by a bipartisan coalition, including myself (R-KY), and Congressmen John Sweeney (R-NY), John Spratt (D-SC), and Nick Rahall (D-WV), and Senators John Ensign (R-NV), Robert Byrd (D-WV), Trent Lott (R-MS), Lindsey Graham (R-SC), Jon Corzine (D-NJ), Jim DeMint (R-SC), Diane Feinstein (D-CA), Mary Landrieu (D-LA), Frank Lautenberg (D-NJ), and Debbie Stabenow (D-MI).

4.      In a reflection of the overwhelming public sentiment that horse slaughter for human consumption should be ended, the House passed the Amendment on June 8, 2005 by a vote of 269-158. The Senate approved the identical Amendment on September 20, 2005 by a vote of 69-28. On November 10, 2005, the President signed the Amendment into law as Section 794 of the FY 2006 Agriculture Appropriations Act.

5.      Because the Amendment was introduced for the first time on the floor of both chambers as an amendment to an appropriations bill, there were no committee or subcommittee hearings or reports, and therefore the floor debate chronicled in the Congressional Record represents the entirety of the Amendment's legislative history. *See* Attachment A.

6.      The Congressional Record reflects Congress's policy judgment that animal welfare concerns, when combined with environmental and financial harms to the plants' communities and neighboring residents, compelled passage of the Amendment, notwithstanding any financial impact on the slaughtering businesses themselves. See, e.g., 151 CONG. REC. H4250 (statement of Rep. Moran urging colleagues to vote for the Amendment despite "the bottom line"); id. at H4248 (floor statement of Rep. Bonilla that the Amendment was designed to

"shut down an industry"); id. at H4249 (statement of co-sponsor Rep. Spratt prompting his colleagues to consider "who is affected?  Slaughterhouses in two States.  That is it.  Those are the net effects because, you see, Americans do not eat horse meat").

7.      Congress perceived a grave problem – namely, the inhumane nature of horse slaughter and transport to slaughter – and determined that it was in the public interest to halt these precise practices.  For instance, on the floor of the House, I described the "process of the captive penetrating bolt being administered by low-skilled workers," and stated that such methods are "not humane" for killing horses.  Id. at H4250.  Representative Sweeney, who co-sponsored the Amendment with me, also lamented horses' "unnecessary pain and suffering before death" at the slaughterhouses.  Id. at H4247.  Senator Byrd further described that "horses often suffer unnecessarily while in transit to slaughter[ ]. . . in trucks with ceilings so low that they prevent the horses from holding their heads in a normal, upright position." Id. at S10,220.

8.      In addition to animal welfare considerations, another purpose of the Amendment, as I stated in the Congressional Record during floor debate on the Amendment, was "to shut these plants down because of their consistent violation of environmental laws." Id. at H4250 (June 8, 2005); id. at S10,219 (detailing plight of local residents plagued by "air quality and other environmental concerns" and "the most horrific stench").  The Congressional Record reflects that children living near the plants, while "playing in their yards, do so with the noise of horses being sent to their deaths in the background," id. at S10,219, and otherwise describes the blight inflicted upon the towns and their residents by the plants, including noxious fumes.  Id. These environmental harms, which the Court in this case held were not properly considered by USDA, and which have been alleviated by the Court's Order dated March 27, 2007, will resume if the Court's order is stayed or reversed.

3

9.    On January 17, 2006, I and thirty-nine other members of Congress wrote USDA not only to express disapproval for the agency's unlawful and "complex regulatory maneuver to willfully circumvent legislation that was passed by an overwhelming majority," but also to remind the agency that, at the very least, "each and every one of our constituents is entitled to prior notice and a full opportunity to comment on the USDA's [fee-for-service] proposal *before* it is implemented," i.e., under the National Environmental Policy Act and the Administrative Procedure Act. Letter from Whitfield, et al. to Johanns at 1-2 (Jan. 17, 2006) (Ex. 14 to Pls.' Mot. For Prelim. Inj.) (italics in original).

10.    On February 15, 2007, the President signed Public Law 110-5, which continues the Fiscal Year 2006 appropriations bills for many agencies, including the USDA, through fiscal year 2007 – *i.e.,* September 30, 2007. As a result, the appropriations restriction on funding inspectors contained in the Fiscal Year 2006 Agricultural Appropriations Act will continue at least until the end of the current fiscal year, and will most likely be renewed in subsequent appropriations bills. Additionally, Congress continues to deliberate the permanent ban on the slaughter of horses slaughter for human consumption, which passed the House of Representatives last year by a vote of 263-146. See H.R. 503, 110th Cong. (2007); S. 311, 110th Cong. (2007). I, along with the 161 Congressional co-sponsors of this bill, am determined to see it pass.

11.    By enacting the Amendment, Congress weighed both sides and made a specific policy determination that halting horse slaughter was in the public's best interest. Compare 151 CONG. REC. S10,220 (Sen. Byrd decrying the "suffering these animals endure"); id. at S10,219 (detailing plight of local residents plagued by "air quality and other environmental concerns" and "the most horrific stench"); with id. at H4248 (floor statement of Rep. Bonilla that the

4

Amendment would "shut down an industry"). In sum, the Amendment embodies Congress's specific consideration of competing policy interests in deciding whether to ban horse slaughter.

Pursuant to 28 U.S.C. § 1746, I declare, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

Edward Whitfield

Dated: April 3, 2007

5