# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 07-5120**                             **September Term, 2006**

06cv00265

Filed On:

The Humane Society of the United States, et al.,
    Appellees

v.

Cavel International, Inc.,
    Appellant

Michael Johanns, Secretary, U.S. Department of
Agriculture and Barbara J. Masters, Administrator,
Food Safety and Inspection Service,
    Appellees



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

MAY 1 2007

CLERK

**BEFORE:**   Rogers,* Brown, and Kavanaugh, Circuit Judges

### ORDER

Upon consideration of appellant's emergency motion for a stay of the district court's March 28, 2007 order, the response thereto, and the reply, it is

**ORDERED** that the emergency motion for a stay be granted.

The United States Department of Agriculture (USDA) promulgated an Interim Final Rule regarding a horse slaughter inspection system. Appellees (The Humane Society of the United States, et al.) challenged the rule on the ground that it violated requirements of the National Environmental Policy Act (NEPA) and Administrative Procedure Act. Appellant is an affected business and was an intervenor in the district court. The district court granted summary judgment to the appellees. Appellant then filed a notice of appeal and now seeks a stay pending appeal. As to likelihood of success on the merits, appellant argues that USDA regulations, see 7 C.F.R. § 1b.3(a), 7 C.F.R. § 1b.4, validly exclude USDA's Interim Final Rule from NEPA requirements and that USDA properly invoked that exclusion in this case. With respect to irreparable injury, appellant argues that it will go out of business absent a stay, because it will be

---

* Judge Rogers would deny the emergency motion for a stay for the reasons set forth in the attached statement.

Exhibit A

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 07-5120**                                        **September Term, 2006**

unable to operate during the pendency of this appeal as a result of the district court's order. Appellant further argues that appellees will not be substantially harmed by a stay and that a stay will serve the public interest. Based on our analysis of the parties' submissions in light of the factors governing a stay pending appeal, we conclude that appellant has made a sufficient showing to justify a stay pending appeal. See Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977).

**Per Curiam**

BK

No. 07-5120, <u>Cavel International, Inc. v. Michael Johanns, Secretary, U.S. Department of Agriculture, et al.</u>

ROGERS, *Circuit Judge*, dissenting: The district court denied the motion of Cavel International, Inc. for a stay pending appeal of its March 28, 2007 order and I would deny Cavel's emergency motion to stay that order pending appeal. Among other things, the challenged order vacated the Food Safety and Inspection Service's ("FSIS") Interim Final Rule (involving fee-for-service ante-mortem horse inspections) because it violated the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 et seq. Cavel was, as of the time the district court order issued, the only U.S. facility still in operation processing horsemeat for human consumption.[1] I respectfully disagree with my colleagues that Cavel has met its burden of showing that a stay is justified. See <u>Va. Petroleum Jobbers Ass'n v. FPC</u>, 259 F.2d 921, 925 (D.C. Cir. 1958). See generally <u>Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.</u>, 559 F.2d 841, 842-43 (D.C. Cir. 1977) (balancing the degree of likelihood of success on the merits; prospect of irreparable injury to plaintiff absent injunctive relief; harm to others; and the public interest). As the movant, Cavel cannot rely on bald assertions but must "justify the court's exercise of such an extraordinary remedy." <u>Cuomo v. U.S. Nuclear Regulatory Comm'n</u>, 772 F.2d 972, 978 (D.C. Cir. 1985). Neither the Government nor former competitors of Cavel have joined in its motion or filed an appeal of the March 28, 2007 order.

Cavel fails to demonstrate a likelihood of success on the merits. See <u>Blankenship v. Boyle</u>, 447 F.2d 1280 (D.C. Cir. 1971) (per curiam). First, Cavel argues that no environmental impact statement or environmental assessment was needed because a categorical exclusion under NEPA applies. The district court rejected the application of a categorical exclusion because nothing in the record suggests that the agency contemplated invoking the exclusion. Cavel provides no basis for this court to consider the agency's *post hoc* rationalization. See generally <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 87 (1943). Second, Cavel contends that the plaintiffs failed to prove that the Interim Final Rule may have a significant environmental effect. As Cavel reasons, the *inspection-related* activities at the establishments conducted by FSIS, considered independent of the horse-slaughter operations themselves, do not significantly affect the environment. But, as the district court recognized, the plaintiffs did not bear the burden to establish the environmental impact because the government defendants never made a no-extraordinary-circumstances determination that the exclusion should continue to apply. Moreover, the disjunction that Cavel posits between inspections and slaughterhouse activities blinks at the interconnected reality; Cavel points to nothing that would require us to upset the district court's finding of interconnectedness. Under the circumstances, Cavel fails to show "a substantial case on the merits." See <u>Holiday Tours</u>, 559 F.2d at 843.

Cavel asserts that it will sustain irreparable harm beyond mere economic losses absent a stay. In support, it proffers two sparsely-substantiated declarations, <u>see</u> Appellant's Emergency Motion for a Stay Exhs. 3, 4. Neither of these exhibits establishes the "certain and great" and

---

[1] Two slaughterhouses in Texas, intervenors below, have admitted that they are in violation of Texas law and have ceased operations. See <u>Empacadora de Carnes de Fresnillo v. Curry</u>, 476 F.3d 326, 336 (5th Cir. 2007).

1

imminent irreparable harm needed to justify imposition of a stay. Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam). Cavel's President, Luc Van Damme, declares that the company will be irreparably harmed absent a stay, because it would be "extremely difficult" to regain customers lost if it is unable to restart production. Van Damme Decl. ¶ 8. In Wisconsin Gas Co., this court held that "[b]are allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." 758 F.2d at 674. To that end, "[t]he movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof that the harm is certain to occur in the near future." Id. Not only does Cavel fail to demonstrate that any harm will in fact occur, it concedes that when faced in the past with a two-year temporary shutdown occasioned by a fire, the company did not fold. Van Damme Decl. ¶ 9. If Cavel's competitive edge and financial security were not irreparably harmed then, how can it be that the current temporary shutdown would bring about the certain, great, imminent, and irreparable harm that would justify issuing a stay? Cavel does not explain. Also, until recently, Cavel had two domestic horse-slaughter competitors. But the other two plants closed prior to the district court's March 28 order. If Cavel was able to recover its clientele after a temporary shutdown when it faced competition, its current predicament without competition might be less dire than Cavel proposes. Cavel does not explain. Any customers or revenue that Cavel loses in the interim cannot constitution irreparable harm. See Cent. & S. Motor Freight Tariff Ass'n v. United States, 757 F.2d 301, 309 (D.C. Cir. 1985).

The declaration of Cavel's general manager, Tucker, is no more probative. Rather than discuss or explore alternatives to a total shutdown of operations (including ways to mitigate any economic losses, such as selling supplies or terminating rent payments to the facility's owner, Luc Van Damme) Tucker declares, without more, that the facility is "too small" to adapt to the slaughter of some other animals and "cannot operate profitably" were it to slaughter certain "exotic animals." These conclusory statements amount to no more than an articulation of a *potential*, rather than a certain, great, and irreparable economic harm that will necessarily result from the facility's shutdown during the pendency of the appeal. See Wisc. Gas Co., 758 F.2d at 674.

The likely harm to others and the public interest also weigh against entering a stay. Congress found real environmental and public health risks attendant to the slaughtering operations. See Plaintiffs-Appellees' Opposition to Emergency Motion for a Stay at 2-5 (citing legislative record of overwhelming bipartisan support for funding ban signed into law by President Bush on Nov. 10, 2005); see also Agriculture, Rural Development, Food and Drug Administration, and Related Agencies Appropriations Act, 2006, Pub. L. No. 109-97, § 794, 119 Stat. 2120, 2164 (2005) Cavel has not met its burden to show the contrary. The district court noted in its Memorandum Opinion that neither Cavel nor the two since-shuttered Texas slaugherhouses "refute[s] Plaintiffs' argument that horse slaughter operations have 'significantly' impacted the environment within the meaning of NEPA as set forth in 40 C.F.R. § 1508.27." Mem. Op. of Mar. 28, 2007, at 16. Instead, their argument was that the *inspection-related* activities at the establishments conducted by FSIS, considered independent of the horse-slaughter operations themselves, do not significantly affect the environment. Id. at 17.

For these reasons, Cavel has failed to meet its burden to demonstrate to the court that a balance of the equities weighs in favor of issuing an emergency stay pending appeal.

