## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 07 C 50100 | DATE | 6/1/2007 |
| CASE TITLE | Cavel International, Inc vs. Lisa Madigan, et al | | |

**DOCKET ENTRY TEXT:**

Plaintiffs' motion for temporary restraining order is granted. The defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with the defendants are temporarily restrained and enjoined from prosecuting plaintiffs for any and all violations of P.A. 95-0002 (225 ILCS 635/1.5) occurring after the issuance of this order. This order is effective until and including Thursday June 14, 2007, and expires thereafter unless extended by this court pursuant to Rule 65(b).

■ [ For further details see text below.]

Notices mailed by Judicial staff.

### STATEMENT

Plaintiffs, Cavel International, Inc., James D. Tucker, Randy Beasley, Angela Fabris, Ruben Gonzalez, Brad D. Melville, Amparo Milan, Paul Milan, Raul Escutia Milan, Roberto Resendez, Ron Warner, and Isaac Zamora, have filed an eight count complaint seeking a declaration that P.A. 95-0002 (to be codified as section 1.5 of the Illinois Horse Meat Act (225 ILCS 635/1.5)) is unconstitutional, and seeking to temporarily and permanently enjoin defendants, Illinois Attorney General Lisa Madigan, DeKalb County State's Attorney Ron Matekaitis, Governor Rod Blagojevich, and Director of the Illinois Department of Agriculture Charles A. Hartke, from enforcing the statute. This matter comes before the court on plaintiffs' Rule 65(b) motion for a temporary restraining order (TRO). Defendants have received notice and have filed written responses in opposition of plaintiffs' motion. The parties have appeared before the court, have been given the opportunity to present additional materials, and have answered the court's questions. This decision is based solely on the limited record before the court. For the reasons that follow plaintiffs' motion for a TRO is granted.

  The standard for the issuance of a TRO is the same standard that is applied for the issuance of a preliminary injunction. Bernina of America, Inc. v. Fashion Fabrics International, Inc., 2001 WL 128164, (N.D. Ill. 2001). The 7th Circuit has stated the applicable standard as follows:

> " '[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' Mazurek v. Armstrong, 520 U.S. 968, ----, 138 L. Ed. 2d 162, 117 S. Ct. 1865, 1867 (1997) (per curiam) (quoting 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2948 (2d ed.1995) (emphasis added and footnotes omitted)). An injunction is an equitable remedy warranted only when the plaintiff has no adequate remedy at law, such as monetary damages. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381, 112 S. Ct. 2031, 2035-36, 119 L. Ed.2d 157 (1992); Franklin v. Gwinnett City. Public Schools, 503 U.S. 60, 75-76, 117 L. Ed. 2d 208, 112 S. Ct. 1028, 1037-38(1992). As an initial matter, the plaintiff must demonstrate (1) a 'better than

07C50100 Cavel International, Inc vs. Lisa Madigan, et al            Page 1 of 4

Exhibit B

STATEMENT

negligible' chance of succeeding on the merits, Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1114-15 (7th Cir.1997) (quoting International Kennel Club of Chicago, Inc. v. Mighty Star, Inc., 846 F.2d 1079 (7th Cir.1988)), and (2) the inadequacy of legal remedies, id. at 1114. If the plaintiff makes a satisfactory showing of both of these requisites, the district court proceeds to balance the harm the injunction would impose on the defendant against the injury the plaintiff would suffer without the injunction. See Vencor, Inc. v. Webb, 33 F. 3d 840, 845 (7th Cir. 1994). In this balancing, each party's potential injury must be adjusted for the probability that that party will prevail on the merits. For example, the less likely it is the plaintiff will prevail on the merits, the greater the harm the plaintiff would have to suffer to justify an injunction. The court must also take into account the public interest in granting or denying the motion. See id." Boucher v. School Board of the School District of Greenfield, 134 F. 3d 821, 823-824 (7th Cir. 1998).

INITIAL SHOWING

The likelihood of success on the merits criteria has been described as a low threshold, plaintiff needing to establish only a "better than negligible chance of succeeding." Cooper v. Salazar, 186 F. 3d 809 (7th Cir. 1999). In their complaint, plaintiffs allege in eight counts their constitutional claims advanced in support of enjoining the defendants from enforcing P.A. 95-0002.

The constitutional claims alleged in counts IV and VI are not advanced by plaintiffs in their memorandum in support of their motion for a TRO. Consequently, the court will not evaluate these claims in assessing the likelihood of their success on the merits.

Moreover, although not binding in this circuit, the Fifth Circuit Court of Appeals decision in Empacadora De Carres De Fresnillo v. Curry, 476 F. 3d 326 (2007), calls into doubt the likelihood of success of the plaintiffs' claims of federal regulatory and statutory preemption alleged in count II of the complaint. In Curry the court concluded that Congress had not demonstrated any intent through the Federal Meat Inspection Act, expressly or implicitly, to limit legislation similar to the statute at issue in the case at bar. Curry, 476 F. 3d at 335.

Also, upon the court's preliminary review of "Agreement Between the United States of America and the European Community on Sanitary Measures to Protect Public and Animal Health in Trade in Live Animals and Animal Products." it appears that the treaty does not conflict with P.A. 95-0002. The treaty's primary purpose is to prevent the spread of diseased livestock and meat and not to assure or facilitate the importing or exporting of horse meat. Thus, plaintiffs have not demonstrated a likelihood of success on their claim of treaty and trade preemption in count III of the complaint.

The claim in count V of the complaint, that P.A. 95-0002 is an unconstitutional bill of attainder, is also likely to be without merit as P.A. 95-0002 is not a legislatively determined and inflicted punishment without provision of a judicial trial. See Nixon v. Administrator of General Services, 433 U.S. 425, 468, 97 S. Ct. 2777, 53 L. Ed. 2d 867 (1977) (a law is a bill of attainder if it "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial"). The determination of guilt based upon current, and not past, violations of this newly enacted law are left to the executive and judicial branches of the State of Illinois.

In count VII, plaintiffs claim that P.A. 95-0002 is an unconstitutional exercise of Illinois' police power because it does not promote the health, safety, and welfare of the citizens of the State of Illinois and does nothing to advance the goal of saving the lives of horses. In response, the State argues that the Act is presumptively valid and that plaintiffs have the burden of showing that they are without a reasonable basis and entirely arbitrary. See Wroblewski v. City of Washburn, 965 F. 2d 452, 459 (7th Cir 1992) (in determining whether a statute is a valid exercise of police power courts apply the rational basis test and presume that the statute is constitutional). The State asserts that the Illinois has long legislated the areas of foods for human consumption and the humane treatment of animals and that banning the slaughter of horses for human consumption is a reasonable method to promote those public interests. The State argues that the fact that horses may still be slaughtered for other purposes is of no consequence because "the legislature need

STATEMENT

not choose between legislating against all evils of the same kind or not legislating at all. Instead it may choose to address itself to what it perceives to be the most acute need." Chicago National League Ball Club, Inc. v. Thompson, 108 Ill 2d 361, 365 (1985). At this point, it appears to the court that P.A. 95-0002 is rationally related to the Illinois' legitimate state interest in the humane treatment of animals. Thus, the court finds that plaintiffs have not demonstrated a likelihood of success on the merits of the claim stated in count VII.

Nor does the court find that plaintiffs are likely to succeed on their claim in count VIII that P.A. 95-0002 is special legislation in violation of the Illinois Constitution which provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const.1970, art. IV, § 13. "All statutes enjoy a strong presumption of constitutionality, and the party challenging the statute bears the burden of clearly rebutting this presumption." County of Cook v. Illinois Labor Relations Board Local Panel, 347 Ill. App. 3d 538, 549 (2004). The special legislation clause prohibits the legislature from conferring a special benefit or exclusive privilege upon one group while excluding other similarly situated groups. In re Estate of Jolliff, 199 Ill. 2d 510, 519 (2002). P.A. 95-0002 appears to be a general prohibition regarding horse meat for human consumption which operates uniformly. The fact that the law incidently impacts only plaintiffs because they are the only entities slaughtering horses for human consumption in Illinois does not invalidate the law.

Plaintiff's claim in count I, that P.A. 95-0002 burdens Foreign Commerce, has more traction. This claim, at a minimum, demonstrates a "better than negligible" chance of succeeding on the merits. The Foreign Commerce Clause provides that "[t]he Congress shall have power to ... regulate commerce with foreign nations." U.S. Const. art. I, § 8, cl. 3. State regulations that facially discriminate against foreign commerce are per se invalid. Piazza's Seafood World, LLC v. Odom, 448 F. 3d 744, 750 (5th Cir. 2006). In addition, nondiscriminatory state regulations affecting foreign commerce violate the Foreign Commerce Clause if they create a substantial risk of conflicts with foreign governments or impede the federal government's ability to speak with one voice in regulating commercial affairs with foreign states. Id. See also Japan Line v. County of Los Angeles, 441 U.S. 434, 446, 60 L. Ed. 2d 336, 99 S. Ct. 1813 (1979). Although defendants argue that it is "highly unlikely" that plaintiffs will be able to show that banning the slaughter of horses for human consumption in Illinois and the export of horse meat for human consumption from Illinois will create a substantial risk of conflict with foreign governments or impede the federal government's ability to speak with one voice in regulating commercial affairs with foreign states, such a showing is tenable. Moreover, it is significant that the court in Curry wrote:

> "This case does not implicate the Foreign Commerce Clause as statutes placing import and export restrictions do, see, e.g., South-Cent. Timber Dev., Inc. v. Wunnicke, 467 U. S. 82, 104 S. Ct. 2237, 81 L. Ed. 2d 71 (1984), or in the way restrictions on products 'used constantly and exclusively ... in foreign commerce' would. Japan Line Ltd. v. Los Angeles County, 441 U.S. 434, 99 S. Ct. 1813, 60 L. Ed. 2d 336 (1979). The slaughter houses here face potential prosecution for sales and activity that take place directly in Texas." Curry, 476 F. 3d at 335.

Unlike the Texas statute at issue in Curry, P.A. 95-0002 appears to place an import and export restriction on horse meat and potentially extends to or directly affects activities taking place outside of Illinois. Therefore, the court finds that plaintiffs have made a satisfactory showing of a better than negligible likelihood of success on the merits of the claim stated in count I of the complaint. The court finds further that plaintiffs have demonstrated that they have no adequate remedy at law.

BALANCING

In balancing the harm the TRO would impose on defendants against the injury the plaintiffs would suffer without the TRO it is important to note that the likelihood of success on the merits requirement is a low threshold and plaintiffs have just cleared it. As such, the relative harm and injury that is suffered is discounted for the minimal showing of likelihood of success on the merits, such that the plaintiffs must show

**STATEMENT**

a substantial injury to obtain a TRO. See <u>Boucher</u>, 134 F. 3d at 824.

The verified pleadings filed by the plaintiffs do not demonstrate that going out of business would necessarily result in the short amount of time that will pass before the court can decide the matter on the merits. In the "Declaration of James Tucker," however, Mr. Tucker swears that since the statute in question became law on May 24, 2007, Cavel, Inc. has laid off 54 of its 63 employees. He swears further that, over the five work days since May 24, 2007, Cavel Inc. has lost over $350,000 in revenue, and instead of turning a weekly profit Cavel has lost in excess of $20,000 attributable to the wages of its remaining 9 employees, fixed costs, and overhead. The court finds this to be a sufficient demonstration that a substantial injury would be suffered by plaintiffs if a TRO is not granted. On the other side of the scale, the defendants maintain that the People of the State of Illinois will be deprived of the benefits of the law, including the cessation of the slaughtering of a significant number of horses, thereby frustrating the will of the people.

The court further finds that, even when discounted for plaintiffs' minimal showing of likelihood of success on the merits, on balance, the injury shown by plaintiffs if a TRO is not granted outweighs the harm the defendants will suffer should the TRO enter and later prove to have been entered erroneously. This is true even taking into account that such harm to defendants need only be minimal to outweigh the discounted injury plaintiff has shown. This balance of the relative injuries and harms is equitable in view of the fact that Cavel, Inc. has lawfully operated a horse slaughtering plant in De Kalb County for 20 years and the Illinois General Assembly has only recently seen fit to outlaw much of Cavel's activities at their plant.

**CONCLUSION**

Plaintiffs' motion for a TRO is granted. The court finds that it is unnecessary for plaintiffs to give any security pursuant to Rule 65(c) prior to the issuance of the TRO. See <u>Wayne Chemical, Inc. V. Columbus Agency Service Corp.</u>, 567 F. 2d 692, 701 (7th Cir. 1977). The Court orders that the defendants and their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with the defendants are temporarily restrained and enjoined from prosecuting plaintiffs for any and all violations of P.A. 95-0002 (225 ILCS 635/1.5) occurring after the issuance of this order. This order is effective until and including Thursday June 14, 2007, and expires thereafter unless extended by this court pursuant to Rule 65(b).